# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| LUV N' CARE LTD,<br>Plaintiff | CIVIL ACTION NO. 3:16-CV-00777 |
| VERSUS | JUDGE JAMES |
| LINDSEY LAURAIN, *ET AL.*,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

---

## MEMORANDUM ORDER

Before the Court are: (1) Plaintiff Luv N' Care LTD's ("LNC's") Motion and Supporting Memorandum to Revise the Scheduling Order or In the Alternative for Leave to File an Early Summary Judgment Motion ("Motion to Revise") (Doc. 76); and (2) Defendant Eazy-PZ, LLC's ("EZPZ's") Emergency Motion to Enforce the Stipulated Protective Order and Exclude One of Counter-Defendants' Attorneys, Mr. Robert Chiaviello ("Chiaviello"), From Having Access to EZPZ's Confidential Information ("Motion to Enforce") (Doc. 85).

The Court heard oral argument on both motions on December 18, 2017, and took the motions under advisement. LNC's Motion to Revise (Doc. 76) is denied in part as moot regarding deletion of claim construction briefing deadlines and granted in part to delete the claim construction hearing deadline and allow for extension of discovery deadlines. LNC's request for leave to file Motion for Summary Judgment (Doc. 76) is denied as premature, as this Court has determined claims need to be construed first per the Scheduling Order. EZPZ's Motion to Enforce (Doc. 85) is granted on the basis that Chiaviello is determined to be a competitive decisionmaker.

# I.    Background

LNC filed a Complaint, as amended, against Lindsey Laurain ("Laurain") and EZPZ for damages and injunctive relief for false advertising, false representation, unfair competition under the Lantham Act, 15 U.S.C. §§ 1051, *et seq.*, and the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401, *et seq.* (Doc. 21). LNC also seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that LNC violates no valid claim of EZPZ's[1] design patent, utility patent, or any other intellectual property right of EZPZ. (Doc. 21). The alleged intellectual property rights at issue are:

(1) On July 17, 2014, Laurain filed United States Patent Application No. 14/333,682 ("the '682 Utility Application") for *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat*. (Doc. 21, Doc. 27).

(2) On December 3, 2014, Laurain filed a design patent application for *Dining Mat with Integrated Tablewear*, and on December 15, 2015, the United States Patent and Trademark Office ("USPTO") issued United States Patent No. D745,327 ("the '327 Design Patent"). (Doc. 21, Doc. 27).

(3) On March 17, 2016, the application for the '682 Utility Application published as United States Published Patent Application No. 2016/0073805, *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat* ("the '805 Publication"). (Doc. 27).

(4) On October 11, 2016, the USPTO issued United States Patent No. 9,462,903, *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat* ("the '903 Utility Patent"). (Doc. 21, Doc. 27).

LNC seeks an injunction and damages for EZPZ's alleged acts of false advertising, false representation, and unfair competition allegedly based on false claims of infringement. (Doc. 21). LNC alleges the product giving rise to this action

---

[1] At the time LNC filed this action, the intellectual property ("IP") that is the subject of this action listed Laurain as the title owner. (Doc. 31). Subsequent to the filing of this action, Laurain documented a transfer of her right, title, and interest in and to the IP to EZPZ. (Doc. 31). Laurain was dismissed without prejudice by Joint Motion for Voluntary Partial Dismissal. (Doc. 32).

is a feeding mat, which is an integrated self-sealing silicone place mat with a built-in bowl or plate that attaches to the table using suction. (Doc. 21). LNC alleges EZPZ has no valid existing intellectual property right that covers any aspect of LNC's feeding mats. (Doc. 21). LNC alleges EZPZ sells competing feeding mats. (Doc. 21).

EZPZ filed an Answer to Complaint, Answer to Amended Complaint, and Counterclaim against LNC alleging that LNC infringed the '903 Utility Patent and the '327 Design Patent, violated 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and unfairly competed with EZPZ in violation of state and common law. (Doc. 27). EZPZ seeks monetary damages and a permanent injunction against LNC. (Doc. 27).

LNC answered EZPZ's Counterclaim asserting various affirmative defenses. (Doc. 33). EZPZ amended its Counterclaim asserting claims against third party Counter-Defendants Admar International, Inc. ("Admar") and Nouri E. Hakim ("Hakim"). (Doc. 40). Defendants Admar, Hakim, and LNC answered asserting various affirmative defenses. (Doc. 45).

This Court adopted EZPZ's proposed scheduling order in this case so that the parties would be able to identify any disputed terms, discovery, or expert issues at the outset of this case.[2] (Doc. 62). The parties filed a Joint Motion for Protective Order to govern the production, use, and disclosure of confidential information of the

---

[2] The deadline for the parties to exchange proposed terms and claim elements for claim construction was July 28, 2017. The deadline for parties to exchange claim constructions and extrinsic evidence was August 11, 2017. The deadline for EZPZ's opening claim construction brief was September 8, 2017. The deadline for LNC's claim construction response brief was September 29, 2017. The deadline for EZPZ's claim construction reply brief was October 11, 2017. The parties have fully briefed claim construction. A claim construction hearing date has not been set. (Doc. 62).

parties. (Doc. 65). The Court granted in part and denied in part the joint motion. (Doc. 70), and issued a Stipulated Protective Order. (Doc. 71).

## II. Law and Analysis

### A. LNC's Motion to Revise (or in the alternative leave to file Summary Judgment) (Doc. 76) is denied in part and granted in part.

LNC's Motion to Revise seeks to revise the scheduling order to delete the deadlines relating to claim construction and for leave to file an early summary judgment motion as to infringement and invalidity. (Doc. 76).

#### 1. Standards governing claim construction.

Absent a local rule to the contrary,[3] a judge has complete discretion regarding when to make his or her claim construction ruling, with one exception. Cytologix Corp. v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1172-73 (Fed. Cir. 2005); Sofamor Danck Grp. V. DePuy-Motech, 74 F.3d 1216, 1221 (Fed. Cir. 1996). The exception is that, in a case where the right to trial by jury has not been waived, the judge should complete the claim construction before giving the jury its final instructions because the jurors should know the claim construction to apply in their deliberations. Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1366-68 (Fed. Cir. 2004); Hewlett-Packard Co. v. Mustck Sys., Inc., 340 F.3d 1314, 1320-21 (Fed. Cir. 2003). Jurisdictions that have adopted local patent rules generally favor claim construction earlier in the action, following a mandatory exchange of contentions by the parties, but before the

---

[3] This Court has not adopted local patent rules for procedural issues presented in patent actions.

close of fact discovery.  See N.D. Cal. Patent Local Rules 4-1 – 4-6 (2014); E.D. Tex. Local Civil Rules, Appendix B., Patent Rules 4-1 – 4-6 (2015).[4]

Claim construction can also be addressed as part of the dispositive motion process.  See, e.g., MediaCom Corp. v. Rates Tech., 4 F.Supp. 2d 17, 20-24, 35-38 (D. Mass. 1998); but cf. Amgen, Inc. v. Hoechst Marion Roussell, Inc., 126 F.Supp. 2d 69, 80 (D. Mass. 2001) (suggesting the better practice was to hold a claim construction hearing before any hearing on dispositive motions, and independent of that hearing), aff'd in part, rev'd in part, 314 F.3d 1313 (Fed. Cir. 2003).

### 2. LNC's Motion to Revise is denied in part as moot regarding deletion of claim construction briefing deadlines, and granted in part to delete the claim construction hearing and to allow for extension of discovery deadlines pending a ruling on claim construction.

Under Fed. R. Civ. P. 16(b)(3)(A), the scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.  Under Fed. R. Civ. P. 16(b)(4), a schedule may be modified only for good cause and with the court's consent.  Squyres v. Heico Companies, L.L.C., 782 F.3d 224, 237 (5th Cir. 2015).

This Court adopted EZPZ's proposed scheduling order in this case so that the parties would be able to identify any disputed claim terms, discovery, or expert issues at the outset of this case, and to allow for claim construction.  (Doc. 62).  While claim construction can be addressed as part of the dispositive motion process, see, e.g.,

---

[4] While the Court has not adopted local patent rules, this Court agrees that claim construction is most appropriate before the close of fact discovery.

MediaCom Corp., 4 F. Supp. 2d at 20-24, 35-38, this Court has already determined that the better practice is to construe the claims first.

Since the filing of LNC's Motion to Revise, the parties have fully briefed claim construction in accordance with this Court's scheduling order claim construction deadlines – those which LNC seeks to delete. (Docs. 79, 83, 84). The deadlines remaining on claim construction are for the Court to set a hearing on claim construction, and for final infringement and validity contentions from the parties after a claim construction ruling. (Doc. 62). LNC's motion seeks to delete the claim construction deadlines to allow for early summary judgment on the '903 patent infringement issues.

Upon oral argument, the parties agreed that LNC's Motion to Revise is partially moot as to LNC's request for deletion of claim construction briefing deadlines, considering the parties had since fully briefed claim construction. Both parties agreed there would be no need for expert testimony at a claim construction hearing, but oral argument could be presented by the attorneys for the benefit of the Court. The parties agreed that there was still a need to revise the scheduling order to remove a claim construction hearing and to account for additional fact discovery and expert discovery following a ruling on claim construction. LNC argued an additional six months would be needed if the Court were to grant EZPZ's Motion to Enforce (Doc. 85) for time to review document production of approximately 300,000 pages without assistance from Chiaviello. EZPZ argues three months should be

ample time for LNC to complete discovery upon document production after the Court's ruling on its Motion to Enforce.

Considering the agreement of the parties and the record before the Court, LNC's Motion to Revise is denied in part as moot regarding deletion of claim construction briefing deadlines, and granted in part to delete the claim construction hearing and to revise the scheduling order to allow for extension of discovery deadlines pending a ruling on claim construction. LNC's request to delete claim construction briefing deadlines is moot as it has been fully briefed. Further, the Court agrees that the parties briefing is sufficient at this time for the Court to make a ruling on claim construction.[5] Additionally, the parties agree no testimonial evidence will be presented at a hearing. Thus, LNC's request to delete the deadline to hold a claim construction hearing is granted. Given the pendency of the parties' motions and the fact discovery expired on January 18, 2018, LNC's request for a six month extension of discovery deadlines is granted.

### 3. LNC's request for leave to file an early summary judgment motion is denied as premature.

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Johnston v. IVAC Corp., 885 F.2d 1574, 1576-77 (Fed. Cir. 1989). When a motion for summary judgment is properly supported by documentary

---

[5] A claim construction ruling will follow separately. The claims will be construed using the parties' claim construction submissions. Should the Court need any additional explanation or argument, the Court is satisfied with addressing any questions it has through a conference with the parties.

and testimonial evidence, however, the nonmoving party may not rest upon mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. <u>Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).

Summary judgment is as available in patent cases as in other areas of litigation. <u>Continental Can Co. USA, Inc. v. Monsanto Co.</u>, 948 F.2d 1264, 1265 (Fed. Cir. 1991). Where the parties do not dispute any relevant facts regarding the accused product, but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment. <u>See</u> <u>General Mills, Inc. v. Hunt-Wesson, Inc.</u>, 103 F.3d 978, 983 (Fed. Cir. 1997). When a district court's determination of infringement is premised on an erroneously construed claim, however, that determination is not entitled to deference. <u>Flex-Rest, LLC v. Steelcase, Inc.</u>, 455 F.3d 1351, 1357 (Fed. Cir. 2006); <u>Warren v. Kyler</u>, 422 F.3d 132 (3d Cir. 2005).

The presumption of validity under 35 U.S.C. § 282 that a patent enjoys must be overcome only through facts supported by clear and convincing evidence. <u>See</u> <u>U.S. Surgical Corp. v. Ethicon, Inc.</u>, 103 F.3d 1554, 1563 (Fed. Cir. 1997). Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise. <u>See</u> <u>Ryko Mfg. Co. v. Nu-Star, Inc.</u>, 950 F.2d 714, 716 (Fed. Cir. 1991).

Evaluation of summary judgment of noninfringement is a two-part inquiry: first, a court construes the scope and meaning of the asserted patent claims, and then

compares the construed claims to the accused product or process. Infringement is a question of fact. As such, a grant of summary judgment of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent. <u>Medgraph, Inc. v. Medtronic, Inc.</u>, 843 F.3d 942 (Fed. Cir. 2016).

As an alternative to revisiting the Scheduling Order, LNC seeks leave to file a motion for summary judgment that the LNC products do not infringe and that the EZPZ patent is invalid. (Doc. 76). LNC argues there should be no factual dispute regarding the accused LNC product and that it has a curved surface molded into the bottom surface of the mat. (Doc. 76). LNC claims the only issue would be the proper construction of two EZPZ patent claim terms relating to the mat bottom surface and EZPZ's requirement that the bottom surface be flat and not curved. (Doc. 76).

LNC argues the mat sold by LNC has a curved bottom surface that is neither flat nor non-curved. (Doc. 76). Additionally, LNC argues under either parties' constructions, the EZPZ patent is invalid, having been invented by another more than a year prior to the filing date of the EZPZ patent.[6] (Doc. 76). LNC stated it understands that, under the current scheduling order, a summary judgment based on a claim interpretation should only be filed after the Court issues its claim construction order. (Doc. 76). LNC requests this Court forgo the claim construction

---

[6] LNC submits that subsequent to the Court issuing Letters Rogatory, it is negotiating with Yanko Design to obtain evidence regarding a dog bowl mat combination that was published more than a year prior to the EZPZ patent filing date.

hearing and decide any claim construction issues in the context of a summary judgment motion.[7] (Doc. 76).

EZPZ opposes an early summary judgment on the basis that it would be inefficient and prejudicial to EZPZ. (Doc. 78). EZPZ argues there are more than two terms that remain in dispute and need to be construed. (Doc. 76). EZPZ claims that an early summary judgment would result in a fully briefed claim construction without a ruling on the proposed constructions. (Doc. 78). EZPZ argues both sides would also be without the other side's final contentions. (Doc. 78). EZPZ suggests the parties proceed with the current schedule and prepare final contentions and expert reports after claim construction. (Doc. 78). Further, EZPZ argues that if the Court were to move forward and their proposed constructions adopted, there would still be substantial questions of fact that would remain unanswered in connection with EZPZ's claim for literal infringement. (Doc. 78).

EZPZ also maintains there are numerous accused products – all with different configurations and designs. (Doc. 78). EZPZ argues it has not agreed that the accused LNC product "has a curved surface molded into the bottom surface of the mat." (Doc. 78). EZPZ asserts significant factual issues remain regarding the variety of the accused products. (Doc. 78). Further, depending on the Court's constructions, EZPZ may claim infringement under the doctrine of equivalents – a fact specific inquiry more appropriate for a jury. (Doc. 78).

---

[7] The Court is granting in part LNC's Motion to Revise the scheduling order to delete the claim construction hearing.

EZPZ asserts that LNC's asserted constructions raised by LNC in its motion are incorrect, as the words "flat" and "non-curved" do not appear in the claims. (Doc. 78).[8] EZPZ argues that LNC does not correctly represent the scope of the asserted claims or relevant case law. (Doc. 78). LNC only discusses relief sought with respect to the '903 patent. (Doc. 76). However, as EZPZ points out, LNC's Amended Complaint provides five separate counts, one relating to the relief sought with respect to the '903 patent. (Docs. 21, 78). Also, EZPZ's Counterclaim includes 13 separate counts, three of which relate to the '903 patent. (Docs. 40, 78).

Further, LNC argues that EZPZ contends there are no terms needing construction other than the issue of whether the preamble is limiting. (Doc. 76). LNC cites C.R. Bard, Inc. v. M3 Sys., 157 3d 1340, 1350 (Fed. Cir. 1998) for the general rule that a preamble is not limiting unless it provides antecedents for ensuing claim terms. (Doc. 76). LNC claims that, in this case, the terms recited in the preamble are not referenced in the claim, so the preamble provides no antecedent basis and plays no role in claim construction. (Doc. 76). However, EZPZ asserts this is not true. (Doc. 78).

EZPZ argues the preamble of claim 1 recites: "A surface contact self-sealing integrated tableware and dining mat comprising." (Docs. 40, Ex. B, claim 1; 78). EZPZ argues the body of claim 1 then recites "an entirely suffuse undersurface disposed for sealable contact with an underlying surface upon which said mat is disposed." (Docs. 40, Ex. B, claim 1; 78). EZPZ asserts the preamble is providing the

[8] EZPZ fully briefed the claim construction issues in its separately filed Markman briefing, but addresses certain items raised by LNC in its motion. (Doc. 78).

antecedent basis for the "said mat" in the body of claim 1. EZPZ asserts it relied upon the "self-sealing" limitation of the preamble leading to allowance of the claims, as discussed in greater detail in its Opening Markman Brief. (Doc. 78).

LNC counters that it seeks to eliminate EZPZ's '903 patent infringement claim. (Doc. 81). LNC argues there are only two disputed claim terms to be resolved and the issues of noninfringement and/or invalidity of the '903 patent are ripe for summary judgment. (Doc. 81). LNC notes that EZPZ argues that three claims, not two, are in dispute. (Docs. 78, 81). LNC argues that interpretation of both "planar portion" in claims 1, 2, 5 and 9 and "[a]n entirely suffuse undersurface" in claim 1 necessarily resolves the interpretation of "[a]n undersurface entirely suffuse upon the planar portion" in claims 5 and 9. (Doc. 81). LNC argues that terms in a patent claim must be consistently defined and may not be interpreted one way for one patent claim and another way for another patent claim. (Doc. 81). LNC seeks to combine the claim construction issues with an early LNC summary judgment motion to resolve EZPZ's '903 patent infringement claim. (Doc. 81).

Here, the Court, in its discretion, has adopted a scheduling order that requires claim construction and Markman hearing on the claim terms pursuant to <u>Markman v. Westview, Inc.</u>, 517 U.S. 370, 390 (1996). (Doc. 62). <u>See</u> <u>Cytologix Corp.</u>, 424 F.3d at 1172-73; <u>Sofamor Daneck Grp., Inc.</u>, 74 F.3d 1216 at 1221. A patent describes "the exact scope of an Invention and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them.'" <u>Markman</u>, 517 U.S. at 373 (citation omitted). "[I]t is only fair (and statutorily

required) that competitors be able to ascertain to a reasonable degree the scope of the patentee's right to exclude." Markman v. Westview Instruments, Inc., 52 F. 3d 967, 978 (5th Cir. 1995 (en banc), aff'd, 517 U.S. 370 (1996).  The claims of a patent define the patented invention to which the patentee is entitled the right to exclude. Markman, 517 U.S. at 373-374; Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted).

"Victory in any infringement suit requires a finding that the patent claim[s] 'cover[ ] the alleged infringer's product…' which in turn necessitates a determination of 'what the word[s] in the claim[s] mean.'" Markman, 517 U.S. at 374 (citation omitted).  The meaning and scope of any disputed terms and limiting expressions in the claims are determined by the court as a matter of law.  Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed.Cir.1999) (citing Markman, 52 F.3d at 976 and EMI Group North America, Inc. v. Intel Corp., 157 F.3d 887, 891 (Fed.Cir.1998)); Markman, 517 U.S. at 389–390. "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." Vivid Techs., Inc., 200 F.3d at 803 (citing U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed.Cir.1997) (claim construction is for "resolution of disputed meanings").

District Courts have considerable discretion as to whether, when, and how to conduct claim construction proceedings.  See Vivid Techs., Inc., 200 F.3d at 795; Sofamor Danek Grp., 74 F.3d at 1221. Here, given the dispute among the parties regarding the relevant facts of the accused product, the number of claim terms at

issue, as well as the construction of those terms, the Court finds it necessary to issue its claim construction ruling prior to conducting an infringement analysis on LNC's summary judgment motion as to infringement and invalidity.  LNC's request for leave to file an early summary judgment motion is denied.

**B.  EZPZ's Motion to Enforce (Doc. 85) the Stipulated Protective Order is granted on the basis that Chiaviello is a competitive decisionmaker.**

**1.  Standards governing the Stipulated Protective Order and "competitive decisionmaking."**

Whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law.  <u>In re Deutsche Bank Trust Co. Americas</u>, 605 F.3d 1373, 1378 (Fed. Cir. 2010).  A party seeking a protective order carries the burden of showing good cause for its issuance.  <u>Id.</u> (citing Fed. R. Civ. P. 26(c); <u>Truswal Sys. Cor. V. Hydro-Air Eng'g, Inc.</u>, 813 F.2d 1207, 1209-10 (Fed. Cir. 1987)).  The same is true for a party seeking to include in a protective order a provision effecting a patent prosecution bar.  <u>Id.</u>  "Whether an unacceptable opportunity for inadvertent disclosure exists…must be determined…by the facts on a counsel-by-counsel basis."  <u>Id.</u> (citing <u>U.S. Steel Corp. v. U.S.</u>, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).

The counsel-by-counsel determination should turn on the extent to which counsel is involved in "competitive decision-making" with its client.  <u>Id.</u>  When deciding whether to impose a prosecution bar, courts must balance "one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors."  <u>Ameranth, Inc. v. Pizza Hut, Inc.</u>, 2012 WL 528248, at

*3 (S.D. Cal. 2012) (citing <u>Avocent Redmond Corp. v. Rose Electronics</u>, 242 F.R.D. 574, 577 (W.D. Wash. 2007)).

Status as in-house counsel cannot alone create the probability of serious risk to confidentiality, and cannot serve as the sole basis for denial of access to confidential information. <u>U.S. Steel Corp.</u>, 730 F.2d at 1468-1469. In <u>U.S. Steel Corp.</u>, the parties referred to involvement in "competitive decisionmaking" as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor. <u>Id.</u> at 1468, n. 3.

"[T]he <u>U.S. Steel</u> court's listing of client decisions was not limited to 'pricing and product design.' The court's use of 'etc.' reveals that those are only examples of the kinds of client decisions that may be made 'in light of similar or corresponding information about a competitor.' A number of courts have held that advice by counsel in prosecuting patent applications falls within the scope of 'competitive decisionmaking.'" <u>Cummins-Allison Corp. v. Glory Ltd.</u>, 2003 WL 26620151, at *6 (N.D. Ill. 2003). "A crucial factor in the <u>U.S. Steel</u> case was whether in-house counsel was involved in competitive decisionmaking; that is, advising on decisions about pricing or design made in light of similar or corresponding information about a competitor." <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1470 (9th Cir. 1992) (citing <u>Matsushita Elec. Indus. Co. v. United States</u>, 929 F.2d 1577, 1579 (Fed. Cir. 1991)).

## 2. Chiaviello is a "competitive decisionmaker" under the terms of the Stipulated Protective Order.

This Court previously granted in part and denied in part the parties' Joint Motion for Protective Order. (Doc. 70), and entered a Stipulated Protective Order. (Doc. 71). The Court concluded that EZPZ had not met their burden of establishing good cause to include a patent prosecution bar in the protective order. (Doc. 70). At that time, EZPZ had not yet shown that any in-house counsel at LNC was a competitive decisionmaker or would pose an unacceptable risk of inadvertently disclosing confidential information.

EZPZ's Motion to Enforce (Doc. 85) now seeks to enforce the Joint Stipulated Protective Order and exclude Chiaviello from having access to EZPZ's confidential information. (Doc. 85). EZPZ argues that LNC, Hakim, and Admar fought for a protective order that allowed their in-house counsel to view EZPZ's sensitive business information. (Doc. 85-1). EZPZ argues they do not seek to reargue the protective order, but seek to enforce the terms specifically requested by LNC and adopted by the Court. (Doc. 85-1). EZPZ alleges it has discovered additional facts not previously presented to the Court that render Chiaviello a "competitive decisionmaker" who should be excluded from seeing EZPZ's confidential documents. (Doc. 85-1). Specifically, EZPZ asserts Chiaviello is prosecuting patents on behalf of the Counter-Defendants Hakim and Admar related to the very technology at issue in this case. (Doc. 85-1).

EZPZ argues that one of the primary issues here, and at the time the protective order was disputed, is what defines a "competitive decisionmaker." (Doc. 85-1). EZPZ

points out that under the current protective order, an individual that is a competitive decision maker (as defined in <u>U.S. Steel Corp. v. U.S.</u>, 730 F.2d 1465 (Fed. Cir. 1984)) may not have access to the other party's confidential or highly confidential information. (Doc. 71). EZPZ urges it is now forced to seek an order that Chiaviello is a competitive decisionmaker. (Doc. 85-1).

EZPZ attempted resolution via written correspondence with Chiaviello for him to exclude himself from having access to confidential information under the protective order. (Doc. 85-2). EZPZ alleges they also offered to produce documents to LNC's other attorneys, once LNC provided a written declaration they are not involved in patent prosecution or advising on prosecution. (Doc. 85-2). LNC has not accepted either proposal. (Doc. 85-1).

LNC claims that Chiaviello is not a competitive decisionmaker and is not "substantially involved" in the prosecution of LNC's PCT application. (Doc. 88). LNC argues that removing Chiaviello's access to EZPZ's confidential information will cause undue financial burden, undue hardship, and delay LNC's prosecution of this lawsuit. (Doc. 88). LNC argues there is no allegation that LNC or its counsel has violated the Stipulated Protective Order. (Doc. 88). LNC argues EZPZ's motion is a pretext for withholding its long overdue production of approximately 300,000 documents.[9] (Doc. 88). LNC interprets EZPZ's actions as characterizing the entire 300,000 pages of document production as confidential, to which EZPZ seeks to restrict

---

[9] The deadline for fact discovery was on January 18, 2017. (Doc. 62).

Chiaviello's access.[10]  (Doc. 88).  LNC submits that it has already implemented a solution – Chiaviello plans to transfer LNC's patent application for LNC's feeding mat to outside counsel.  (Doc. 88).  There is no evidence in the record that Chiaviello has transferred the patent application.

LNC submits that EZPZ takes issue with LNC's PCT Patent Application No. PCT/US17/45110.  (Doc. 88).  Chiaviello prepared and filed, on behalf of Hakim, a provisional patent application for a "Feeding Mat" with the PTO on August 10, 2016. (Doc. 88-1).  Chiaviello, through his legal assistant, filed a PCT patent application on August 9, 2017 in the PTO, based on the previous Hakim provisional application for the "Feeding Mat." (Doc. 88-1).

LNC argues Chiaviello made no changes to the patent application itself.  (Doc. 88-1). During the International Phase, there is no substantive prosecution of the PCT patent application.  (Doc. 88-1).  Chiaviello attests that he currently serves as Hakim's legal representative for the Hakim PCT Application.  (Doc. 88-1).  Chiaviello attests that he likely would have not been engaged in any prosecution, substantive or not, while the Hakim PCT Application is in the International Phase and during this litigation.  (Doc. 88-1).  However, Chiaviello attests that as a resolution he was instructed by LNC's CEO and patentee, Hakim, to transfer this application to outside counsel for prosecution of this application.  (Doc. 88-1).

---

[10] LNC submits that it has requested EZPZ's social media posts, messages, texts and blogs, as well as documents and communications containing affidavits submitted by EZPZ to the PTO as well as prior art.  (Doc. 88).  LNC asserts that it will seek sanctions and other appropriate relief if EZPZ has failed to produce among the 300,000 documents those documents that are not confidential and improperly being withheld from production.

Chiaviello attests he is in the process of transferring the application as instructed. (Doc. 88-1). LNC argues and Chiaviello attests that, under PCT patent practice, there is no prosecution activity that could involve Chiaviello before February 2020. (Doc. 88). LNC argues this disposes of EZPZ's sole basis of its position that Chiaviello is a competitive decision maker. (Doc. 88). LNC argues that, effectively, EZPZ's proposed enforcement would remove or disqualify Chiaviello as LNC's counsel in this suit. (Doc. 88).

LNC further argues it provided to one of EZPZ's attorneys, Jordan Bolton, a copy of the provisional application. (Doc. 88-1). LNC asserts EZPZ knew of the filing of PCT application in August of 2016. (Doc. 88-1). However, EZPZ asserts that LNC failed to include anything identifying Chiaviello as the prosecuting patent attorney on the PCT patent application. (Doc. 91). Bolton attested he was never informed by Chiaviello that he handled the filing of the provisional patent application or other design patent applications identified in August 2016. (Doc. 91-5).

EZPZ argues that this was highly relevant to the protective order dispute, yet not known to EZPZ until September 2017, prompting this motion. (Doc. 91). EZPZ asserts Chiaviello could have changed the claims or added claims when filing the PCT application, but chose not to – after the issuance of the EZPZ '903 Patent almost a year earlier. (Doc. 91). EZPZ argues Chiaviello is a competitive decisionmaker who after the filing of this lawsuit acknowledges he prepared and filed the provisional application in August 2016 – two months after this suit was filed. (Doc. 91). Further, EZPZ asserts LNC failed to disclose Chiaviello as a witness on its Rule 26 disclosures.

(Doc. 91). EZPZ argues it assumed that this meant an outside firm would have handled prosecution of LNC's patent application. (Doc. 91).

EZPZ asserts that finding Chiaviello is a competitive decision maker would not exclude Chiaviello from participating in this lawsuit as it would not prevent him from handling claim construction, as well as a majority of the issues related to infringement and validity. (Doc. 91). EZPZ asserts none of the information relating to those issues concerning the prosecution history, the accused products, and the alleged prior art is confidential. (Doc. 91).

LNC argues EZPZ seeks to modify the protective order, and thus bears the burden of proof to show "good cause" for the modification. (Doc. 88). However, EZPZ asserts, rather, it seeks to enforce the protective order to preclude a competitive decisionmaker from access to its confidential information. (Doc. 91). Thus, for the purposes of EZPZ's Motion to Enforce, the Court must determine whether Chiaviello falls within the definition of a competitive decision-maker under the Stipulated Protective Order, Section 2.B.a.[11]

Chiaviello is part of the "Nuby Law legal team" for LNC. (Doc. 65-3). Chiaviello joined LNC on February 17, 2016. (Doc. 88-1). Chiaviello provides legal advice and counseling to LNC primarily with regard to intellectual property issues and on occasion more general legal issues. (Doc. 65-3). Chiaviello is registered to practice before the PTO and is familiar with U.S. Patent Laws and the rules and

---

[11] The Court notes that the Stipulated Protective Order protects the rights of a party to seek determination whether information or material is subject to the terms of the protective order, and relating to any persons to whom such information may be disclosed. (Doc. 62).

regulations of the PTO including those relating to filing, examination, and prosecution of patent applications. (Doc. 88-1).

Chiaviello attests he has not been asked to provide any business advice or participate in competitive decisionmaking for LNC and would not be qualified to give such advice. (Doc. 65-3). Chiaviello, however, also attests he prepared and filed, on behalf of Hakim, a provisional patent application for a "Feeding Mat" with the PTO on August 10, 2016. (Doc. 88-1). Chiaviello, through his legal assistant, filed a PCT patent application on August 9, 2017, in the PTO based on the previous Hakim provisional application for the "Feeding Mat." (Doc. 88-1).

EZPZ asserts this application was not publicly available to anyone other than the inventor or assignee and their counsel. (Doc. 85-1). Chiaviello attests that the PCT Application is the only utility patent application filed by Hakim involving the subject matter of feeding mats. (Doc. 88-1). The parties dispute whether it was disclosed in August 2016 to EZPZ's counsel that Chiaviello was the attorney who filed the application on behalf of LNC. (Doc. 88-1, Doc. 91). Chiaviello also prepared and filed design patent applications for Hakim for five other feeding mat designs. (Doc. 88-1). EZPZ asserts that Chiaviello's role in prosecuting the Hakim PCT application should have been disclosed during the protective order dispute when the question of competitive decisionmaking was presented. (Doc. 85-1).

However, not every patent prosecution attorney is a competitive decisionmaker. Deutsche Bank, 605 F.3d at 1379. In Deutsche Bank, the Federal Circuit distinguished between counsel with administrative and oversight duties

related to patent prosecution and counsel involved "in crafting the content of patent applications or advising clients on the direction to take their portfolios." Id. at 1379–80. A party's counsel engaged in the latter category of activities poses a more significant risk of inadvertent disclosure than the former. Id. at 1380. The court is required to "examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis" to determine the risk of inadvertent disclosure. Id.

EZPZ cites to Deutsche Bank, as the only post-U.S. Steel Federal Circuit case that recites the standard of activities constituting competitive decision making. (Doc. 85-1). EZPZ states that Deutsche Bank, 605 F.3d at 1379, distinguishes between attorneys managerially involved in prosecution and those "substantially engaged" in prosecution. (Doc. 85-1). EZPZ argues Chiaviello falls into the latter category on the basis that "[h]e analyzes and submits prior art, e.g. identifying EZPZ's patent application (Dkt. 83-2 at 1-2 (citing U.S. App. No. 14/333,682)), he makes strategic decisions concerning claim scope, and has the ability to amend the claims." (Doc. 85-1). EZPZ argues that Chiaviello's access to EZPZ's key projects could result in LNC filing patents on EZPZ's inventions or blocking EZPZ from strategic markets – what EZPZ claims LNC is attempting with its Sure Grip mats in this case. (Doc. 85-1).

The court in Deutsche Bank found that attorneys more "substantially engaged" in prosecution are those who participate in "obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent

protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution." <u>Deutsche Bank</u>, 605 F.3d at 1379.

The Court further notes that "the opportunity to control the content of patent applications and the direction and scope of protection sought in those applications may be significant. The risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater for such attorneys. Such attorneys would not likely be properly exempted from a patent prosecution bar." <u>Id.</u> The court noted it is important "to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis." <u>Id.</u>

In light of the submissions of the parties, this Court finds EZPZ has shown that Chiaviello is a competitive decisionmaker. Chiaviello participated in preparing patent applications before the PTO on behalf of LNC. Specifically, Chiaviello prepared and filed both a provisional application and the Hakim PCT patent application – for an integrated feeding mat relevant to this suit – making him a competitive decisionmaker.[12] The record shows Chiaviello is the prosecuting attorney on the applications.

---

[12] <u>See</u> <u>In re Papst Licensing, GmbH, Patent Litig.</u>, MDL 1298, 2000 WL 554219, at *3–4 (E.D. La. May 4, 2000) (upholding protective order which required counsel having access to confidential information to refrain from advice in patent prosecution for one year after conclusion of litigation, including appeals) ("[A]dvice and participation of the Papst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the Non–Papst parties confidential information."); <u>see</u> <u>also</u> <u>Chan v. Intuit, Inc.</u>, 218 F.R.D. 659, 661–662 (N.D.Cal. 2003) ("[I]f advice related to patent prosecution is defined as competitive decision-making ... then advice on the scope of patent claims must also be defined as competitive decision-making.").

Chiaviello would be informed by access to EZPZ's confidential information. EZPZ has legitimate concerns that Chiaviello's access to their confidential material would allow him to draft claims related to products not yet publicly released or disclosed in his ongoing prosecutions. (Doc. 85-2). Chiaviello is the only member of the Nuby Law legal team who is registered to practice before the PTO to prepare and prosecute patent applications. (Docs. 65-3, 65-4, 65-5). Further, Hakim attested the legal team is called on to vet its designs to ensure they violate no valid intellectual property rights of others and for obtaining appropriate legal protection. (Doc. 65-2). Knowledge of EZPZ's confidential information would place Chiaviello in the "untenable position" of having to refuse his employer legal advice on the primary area he provides counsel – intellectual property including representation before the PTO – or try to "lock-up trade secrets in his mind, safe from inadvertent disclosure." (Doc. 65-3); See e.g. Brown Bag Software, 960 F.2d at 1471.

As to prejudice to LNC, the Nuby Law legal team consists of two other lawyers, who have been involved in this litigation from the outset. While not registered to practice before the PTO to prepare and prosecute patents, at least one other member of the Nuby Law legal team is an experienced intellectual property attorney. (Doc. 65-5). Any hardship to LNC is mitigated by the presence of other intellectual property counsel in the case representing LNC.[13] Additionally, this Court has

---

[13] See e.g. Cummins-Allison Corp. v. Glory Ltd., 02 C 7008, 2003 WL 26620151, at *6–7 (citing Mikohn Gaming Corp., 50 U.S.P.Q. at 1785.) ("The court in Mikohn barred defendant's patent counsel from access to the plaintiff's confidential information, finding that the hardship to defendant was mitigated by the presence of other patent counsel in the case representing the defendant and, in any event, was outweighed by the risk of unauthorized disclosure.").

granted a six-month extension for completion of fact and expert discovery, which also alleviates any burden to LNC. The risk of inadvertent disclosure of EZPZ's confidential information outweighs any impairment, if any, of LNC's ability to litigate this action. <u>Deutsche Bank</u>, 605 F.3d at 1381. EZPZ's Motion to Enforce is granted insofar as Chiaviello is determined to be a competitive decisionmaker.

III.    <u>Conclusion</u>

IT IS ORDERED that LNC's Motion to Revise (Doc. 76) is DENIED IN PART as moot as to deletion of claim construction briefing deadlines, and GRANTED IN PART to delete the claim construction hearing[14] and to allow for a six month extension of discovery deadlines pending this Court's ruling on claim construction.

IT IS FURTHER ORDERED that the scheduling order deadlines are extended as follows:

- The deadline for completion of fact discovery is July 18, 2018.

- The deadline for parties to exchange disclosures for expert witnesses by the party with the burden of proof is August 19, 2018.

- The deadline for the parties to exchange rebuttal expert reports is September 22, 2018.

- The deadline for completion of expert discovery is October 2, 2018.

- The deadline for dispositive motions and Daubert motions is October 16, 2018.

---

[14] The deadline for the parties' contentions upon this Court's claim construction ruling remains. EZPZ will have fourteen days for its final infringement contentions. LNC will have fourteen days for its final invalidity and unenforceability contentions. (Doc. 62).

- The deadline for response briefs on dispositive motions and Daubert motions is November 8, 2018.

- The deadline for reply briefs on dispositive motions and Daubert motions is November 21, 2018.

- The deadline for submission of proposed final pretrial order is December 26, 2018.

- The deadline for filing Motions in Limine is February 22, 2019.

- The deadline for responses to Motions in Limine is March 5, 2019.

- The deadline for submissions of proposed joint jury instructions and proposed joint verdict forms is March 25, 2019.

- The pretrial conference and trial date will be set at a later date.

IT IS FURTHER ORDERED that LNC's request for leave to file early motion for summary judgment (Doc. 76) is DENIED as premature.

IT IS FURTHER ORDERED EZPZ's Motion to Enforce (Doc. 85) is GRANTED as this Court finds Chiaviello to be a competitive decisionmaker as set forth in the Stipulated Protective Order. Thus, this Court finds Chiaviello should be treated as a competitive decisionmaker in terms of access to discovery materials designated "Confidential" as set forth in the Stipulated Protective Order.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___29th___ day of January, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge