UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| LUV N' CARE LTD,<br>Plaintiff | CIVIL ACTION NO. 3:16-CV-00777 |
| VERSUS | JUDGE DOUGHTY |
| LINDSEY LAURAIN, *ET AL.*,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## CLAIM CONSTRUCTION MEMORANDUM ORDER

Before the Court is the issue of claim construction. The parties have fully briefed the issue. (Docs. 79, 83, 84). The parties agreed, and the Court determined, a claim construction hearing was not required. (Doc. 96).

## I.    Background

LNC filed a Complaint, as amended, against Lindsey Laurain ("Laurain") and EZPZ for damages and injunctive relief for false advertising, false representation, unfair competition under the Lantham Act, 15 U.S.C. §§ 1051, *et seq.*, and the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 51:1401, *et seq.* (Doc. 21). LNC also seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that LNC violates no valid claim of EZPZ's[1] design patent, utility

---

[1] At the time LNC filed this action, the intellectual property ("IP") that is the subject of this action listed Laurain as the title owner. (Doc. 31). Subsequent to the filing of this action, Laurain documented a transfer of her right, title, and interest in and to the IP to EZPZ. (Doc. 31). Laurain was dismissed without prejudice by Joint Motion for Voluntary Partial Dismissal. (Doc. 32). Although it is clear the patent application and file history were prosecuted on behalf of Laurain, the Court will refer to EZPZ in place of Laurain to avoid confusion.

patent, or any other intellectual property right of EZPZ. (Doc. 21). The alleged intellectual property rights at issue are:

(1) On July 17, 2014, Laurain filed United States Patent Application No. 14/333,682 ("the '682 Utility Application") for *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat*. (Doc. 21, Doc. 27).

(2) On December 3, 2014, Laurain filed a design patent application for *Dining Mat with Integrated Tablewear*, and on December 15, 2015, the United States Patent and Trademark Office ("USPTO") issued United States Patent No. D745,327 ("the '327 Design Patent"). (Doc. 21, Doc. 27).

(3) On March 17, 2016, the application for the '682 Utility Application published as United States Published Patent Application No. 2016/0073805, *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat* ("the '805 Publication"). (Doc. 27).

(4) On October 11, 2016, the USPTO issued United States Patent No. 9,462,903, *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat* ("the '903 Utility Patent"). (Doc. 21, Doc. 27).

LNC seeks an injunction and damages for EZPZ's alleged acts of false advertising, false representation, and unfair competition allegedly based on false claims of infringement. (Doc. 21). LNC alleges the product giving rise to this action is a feeding mat, which is an integrated self-sealing silicone place mat with a built-in bowl or plate that attaches to the table using suction. (Doc. 21). LNC alleges EZPZ has no valid existing intellectual property right that covers any aspect of LNC's feeding mats. (Doc. 21). LNC alleges EZPZ sells competing feeding mats. (Doc. 21).

EZPZ filed an Answer to Complaint, Answer to Amended Complaint, and Counterclaim against LNC alleging that LNC infringed the '903 Utility Patent and the '327 Design Patent, violated 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and unfairly competed with EZPZ in violation of state and common law. (Doc. 27). EZPZ seeks monetary damages and a permanent injunction against LNC. (Doc. 27).

LNC answered EZPZ's Counterclaim asserting various affirmative defenses. (Doc. 33). EZPZ amended its Counterclaim asserting claims against third party Counter-Defendants Admar International, Inc. ("Admar") and Nouri E. Hakim ("Hakim"). (Doc. 40). Defendants Admar, Hakim, and LNC answered asserting various affirmative defenses. (Doc. 45). The parties now seek claim construction as to the disputed terms in the '903 patent. (Docs. 79, 83, 84).

## II.   Law and Analysis

A patent describes "the exact scope of an invention and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them.'" Markman v. Westview, Inc., 517 U.S. 370, 373 (1996) (citation omitted). The patent application contains a specification describing the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . . to make and use the same." 35 U.S.C. § 112. The specification concludes with "one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." Id. Claims may be written in independent or dependent form. Id. Dependent claims shall be construed to incorporate by reference all the limitations of the claim to which it refers. Id. "[I]t is only fair (and statutorily required) that competitors be able to ascertain to a reasonable degree the scope of the patentee's right to exclude." Markman v. Westview Instruments, Inc., 52 F. 3d 967, 978 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

Patent claim construction is a question of law for the court. Markman v. Westview, Inc., 517 U.S. at 372. "Victory in an infringement suit requires a finding

that the patent claim[s] 'cover[ ] the alleged infringer's product . . .' which in turn necessitates a determination of 'what the words in the claim[s] mean.'" Markman, 517 U.S. at 374 (citations omitted). The meaning and scope of any disputed terms and limiting expressions in the claims are determined by the court as a matter of law. Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 803 (Fed.Cir.1999) (citing Markman, 52 F.3d at 976 and EMI Group North America, Inc. v. Intel Corp., 157 F.3d 887, 891 (Fed.Cir.1998)). "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." Vivid Techs., Inc., 200 F.3d at 803 (citing U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction is for "resolution of disputed meanings").

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004); Markman, 517 U.S. at 373-74). The goal of claim construction, then, is to give proper meaning and scope to claim language by giving claim terms their ordinary and customary meanings, according to the customary understanding of an artisan of ordinary skill at the time of the invention. Id. at 1312–13.

"[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." Id. at 1321. While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the

surrounding words of the claim also must be considered. Id. at 1314 (citations omitted). Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . ." Id. (internal citation omitted).

To construe a claim, a court first looks to the intrinsic evidence of record, which is the "patent itself, including 'the claims, the specification [or written description,] and, if in evidence, the prosecution history'". Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing Markman, 52 F.3d at 979). "[T]here is no magic formula or catechism for conducting claim construction." Phillips, 415 F.3d at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." Id. (citing Vitronics, 90 F.3d at 1582).

The court starts with the actual language of the claim. "If the claim language is clear on its face, then [the court's] consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified." Interactive Gift Express, Inc. v. Compuserve, Inc. 256 F.3d 1323, 1331 (Fed. Cir. 2001). The specification always can and should be used as an important source support for claim interpretation. Phillips, 415 F.3d at 1315-17. In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." Markman, 52 F.3d at 980. The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the

patent." Phillips, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. (citations omitted).

Further, the well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." Omega Eng'g Inc. v. Raytek Corp., 334 F.3d 1314, 1323 (Fed. Cir. 2003). By distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover. Spectrum Int'l v. Sterilite Corp., 164 F.3d 1372, 1378-79 (Fed. Cir. 1988). This promotes the public notice function of the intrinsic evidence and the public's reliance on definitive statements made during prosecution. Omega Eng'g, Inc., 334 F.3d at 1324.

When construing claims, the intrinsic evidence of the meaning of the claims are the primary resources; while helpful, extrinsic sources like dictionaries and expert testimony cannot overcome more persuasive intrinsic evidence. Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1328 (Fed. Cir. 2008) (citing Phillips, 415 F.3d at 1318). "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317 (citing Markman, 52 F.3d at 980). "[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract." Id. at 1321. The Court should instead focus on how the patentee

used the claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down. Id.

In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." Teva Pharms. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 837 (2015). While extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Phillips, 415 F.3d at 1318-19. However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful. Phillips, 415 F.3d at 1318. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. See Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing Vitronics, 90 F.3d at 1583).

"The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998). Where two alternative claim constructions are equally plausible based on the instrinsic evidence, claims should be construed so as to preserve their validity. Phillips, 415 F.3d at 1327-28.

## III. Construction of Disputed Claim Terms[2]

The '903 patent contains 9 claims, of which 3 are independent claims (claims 1, 5, and 9), and 6 of the claims are dependent on one of the independent claims. (Docs. 79-2, 83-1). The disputed claim terms appear in claims 1, 2, 5, and 9. (Doc. 79-2, 83-1). The parties dispute whether the preambles of claims 1, 5, and 9 are limiting. (Doc. 79, 83, 84). The parties also seek claim construction of the following disputed terms: (1) "planar portion" (claims 1, 2, 5, and 9); (2) "an entirely suffuse undersurface" (claim 1); and (3) "an undersurface entirely suffuse upon the planar portion" (claims 5, and 9).[3] (Docs. 79, 83, 84).

---

[2] The parties dispute claim terms in the '903 patent. (Docs. 79, 83). The parties agree no claim construction is required for the claim terms in the '327 patent. (Docs. 79, 79-4, 83).

[3] EZPZ seeks to exclude LNC's extrinsic evidence, to the extent LNC failed to respond to EZPZ's requests (Docs. 79-5, 79-6) that LNC disclose the specific evidence it intended to rely upon in its claim construction. (Doc. 79). EZPZ relies upon SCVNGR, Inc. v. DailyGobble, Inc., 2017 WL 3332224, *1-*2 (D.R.I. 2017) (striking expert declaration accused infringer submitted with its claim construction briefing to support its argument on indefiniteness when scheduling order required parties to disclose the proposed claim constructions and supporting intrinsic evidence, and party first identified its expert declaration in its opening claim construction brief).

Here, the record shows that August 11, 2017 was the deadline for the parties to exchange proposed claim constructions and extrinsic evidence (including identification of any experts expected to submit a declaration regarding claim construction, if any). EZPZ shows that LNC submitted its disclosures on August 11, 2017 (Doc. 79-4), which identified the extrinsic evidence LNC relies upon. (Doc. 79-4). However, EZPZ asserts the disclosure merely identified the "types" of extrinsic evidence, rather than provide the specific extrinsic evidence LNC intended to rely on for its claim construction. (Doc. 79-4). EZPZ argues LNC relies extensively on extrinsic evidence in its claim construction. (Doc. 79-4).

In reviewing the record, it appears that the extrinsic evidence at issue includes: the Webster Dictionary definitions of "planar" and "suffuse" (Docs. 83-14, 83-15, respectively); the Bass publication (Doc. 83-8); the Lion Publication (Doc. 83-5); the Kerr patent (Doc. 83-9); the Stravitz patent (Doc. 83-4); and the declaration of Hakim, and its attachments (Doc. 83-2).

It is permissible for the district court in its sound discretion to admit and use extrinsic evidence, bearing in mind the flaws inherent in each type of evidence and assessing that evidence accordingly. Phillips, 415 U.S. at 1319. Given that the ordinary and plain meaning of the disputed claim terms is evident and may be construed from the intrinsic record, it would be improper for the Court to rely on the extrinsic evidence. Vitronics Corp., 90 F.3d at 1583 ("In most situations, an analysis of intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence."); Phillips, 415 F.3d at 1321 ("[O]verly relying on a broad

<u>Claim 1 discloses:</u>

A surface contact self-sealing integrated tableware and dining mat comprising a rubberlike planar portion having a raised perimeter delimiting at least one concavity surrounding at least one receptacle above an upper surface and an entirely suffuse undersurface upon which said mat is disposed, said sealable contact preventative of lateral displacement of the planar portion across the underlying surface, wherein said sealable contact creates a partial vacuum when attempts to separate the undersurface from the underlying surface are made except at an outer edge of the planar portion, whereby removal of the planar portion from the underlying surface is effective only be peeling the undersurface from the underlying surface starting first at the outer edge.

<u>Claim 2 discloses:</u>

The surface contact self-sealing integrated tableware and dining mat of claim 1 wherein the planar portion extends laterally beyond the raised perimeter whereby the planar portion extends surrounding the at least one concavity.

<u>Claim 5 discloses:</u>

A surface contact self-sealing integrated tableware and dining mat comprising:

a nontoxic polymeric planar portion;

an outer edge parametrically bounding said planar portion;

an undersurface entirely suffuse upon the planar portion, said undersurface disposed to sealably contact an underlying surface upon which the planar portion is disposed;
an upper surface; and

---

dictionary definition for claim interpretation risks reaching an overbroad interpretation of the claim."). Thus, EZPZ's motion to exclude the extrinsic evidence is moot. To the extent that it is not moot, the Court gives little weight to the extrinsic evidence. "A court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" <u>Phillips</u>, 415 F.3d at 1318 (citing <u>Key Pharms. V. Hercon Labs. Corp.</u>, 161 F.3d 709, 716 (Fed. Cir. 1998)). Additionally, LNC refers to its extrinsic evidence in support of its non-infringement arguments (Doc. 83), which the Court has already ruled will be addressed subsequent to and separate from claim construction. (Doc. 96).

a raised perimeter disposed within the upper surface, said raised perimeter defining a convacity wrought above the upper surface of the planar portion to delimit at least one receptacle upon the planar portion;

wherein the undersurface sealably contacts an underlying surface upon which the planar portion is disposed, said undersurface thereby preventing lateral displacement of the planar portion upon said underlying surface by frictional engagement therewith and, further, creation of a partial vacuum between the undersurface and the underlying surface when attempt is made to remove said planar portion away from said underlying surface, whereby foodstuffs are positional interior to the at least one receptacle, said receptacle thence maintained in desired position by action of the planar portion contacting said underlying surface, and removal of said planar portion from said underlying surface is effective only when said planar portion is lifted from said underlying surface first at the outer edge of the planar portion.

Claim 9 discloses:

A surface contact self-sealing integrated tableware and dining mat comprising:

a silicone planar portion;

an outer edge parametrically bounding the planar portion;

an undersurface entirely suffuse upon the planar portion, said undersurface disposed to sealably contact an underlying surface upon which the planar portion is disposed;

an upper surface; and

a raised perimeter disposed within the upper surface, said raised perimeter defining a convacity wrought above the upper surface of the planar portion to delimit at least one receptacle upon the planar portion;

wherein the undersurface sealably contacts an underlying surface upon which the planar portion is disposed, said undersurface thereby preventing lateral displacement of the planar portion upon said underlying surface by frictional engagement therewith and, further, creation of a partial vacuum between the undersurface and the underlying surface when attempt is made to remove said planar portion away from said underlying surface, whereby foodstuffs are selectively positional interior to the at least one receptacle, said receptacle thence

maintained in desired position upon the underlying surface by action of the planar portion contacting said underlying surface, and removal of said planar portion from said underlying surface is effective only when said planar portion is separated from said underlying surface first at the outer edge of the planar portion.

(Docs. 79-2, 83-1).

A.    The preambles of claims 1, 5, and 9 are limiting.

| Disputed Claim Term | EZPZ's Construction | LNC's Construction |
| --- | --- | --- |
| "A surface contact self-sealing integrated tableware and dining mat comprising" (preamble) | The preambles of claims 1, 5, and 9 are limiting. | "[T]he preamble does not provide antecedents for ensuing claim terms and is therefore not limiting and does not require construction." |

The preamble is an introductory statement that precedes the body of the patent claim. Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1257 (Fed. Cir. 1989). A recurring issue in claim construction, including in this case, is whether the preamble is a "substantive" limitation such that the preamble itself can be used to define or limit the claim scope.

Whether or not the preamble acts as a limitation is properly an issue of claim construction, and therefore a matter of law within the province of the court. Markman, 52 F.3d at 979. There is no presumption that the preamble either is or is not a claim limitation, and no litmus test to apply. Corning Glass Works, 868 F.2d at 1257. "[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates the use of the preamble to define, in part, the claimed invention." Catalina Mktg. Int'l v. Coolsavings.com, Inc., 289 F.3d 801, 808-09 (Fed.

Cir. 2002) (citing Bristol-Myers Squibb Co. v. Ben Venue Labs, Inc., 246 F.3d 1368, 1375 (Fed. Cir. 2001) (a preamble may limit when employed to distinguish a new use of a prior art apparatus or process)).  In order to limit the claim, the preamble must be "necessary to give life, meaning, and vitality to the claim." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999) (citations omitted).

The preamble preceding the body of each independent claim in the '903 patent states: "[A] surface contact self-sealing integrated tableware and dining mat comprising . . . ."  (Docs. 79-2, 83-1).  Here, the parties dispute whether the preamble is limiting.

EZPZ argues the preambles of claim 1 (and related dependent claims), claim 5 (and related dependent claims), and claim 9 are limiting.  (Docs. 79, 79-3).  EZPZ contends that during prosecution, EZPZ relied on the preamble to distinguish the claimed invention from the prior art. (Doc. 79).  EZPZ asserts that "on December 9, 2015, the USPTO rejected claims 1, 5, and 9, among others on the basis it contended the claims were obvious based on two prior patents, referred to by their inventors' names, 'Bass' and 'Lion.'" (Doc. 79).  The USPTO stated:

> Regarding Claim 1, Bass discloses a surface contact self-sealing integrated tableware and dining mat comprising a planar portion 10 (figure 5) having a raised perimeter delimiting at least one concavity above an upper surface 20 (figure 5), and entirely suffuse undersurface (figure 5) disposed for sealable contact with an underlying surface upon which said mat is disposed for sealable contact with an underlying surface upon which said mat is disposed, said sealable contact preventative of lateral displacement of the planar portion across the underlying surface, wherein said sealable contact creates a partial vacuum when attempts to separate the undersurface from the underlying surface are made except at an outer edge of the planar portion, whereby removal of the planar portion from the underlying

surface is effective only by peeling the undersurface from the underlying surface starting first at the outer edge (figure 5). Bass does not disclose a rubberlike planar portion. However, Lion teaches nontoxic silicone (Paragraph 36). Therefore, it would have been obvious for one of ordinary skill in the art before the effective filing date of the claimed invention to modify Bass to include a vacuum seal and nontoxic silicone, as taught by Lion, in order to allow easy movement and sealing without losing sealable contact with the underlying surface and a flexible durable material.

(Docs. 79-7, 79-8).

EZPZ asserts the USPTO had similar rejections for claims 5 and 9. (Docs. 79-7, 79-8). EZPZ contends that on March 9, 2016, EZPZ responded to the Office Action, distinguishing their present invention's "self-sealing" requirement from Bass, Lion, and any other prior art. (Docs. 79-7, p. 79-9). EZPZ argues it expressly relied on the preamble phrase during prosecution to distinguish prior art, by arguing that the invention must be configured to be self-sealing. (Doc. 79).

EZPZ also contends that when the limitations in the body of the claim are derived from the preamble, or when the claim drafted uses both the preamble and body to define the subject matter of the claimed invention, the preamble provides an antecedent basis for the body of the claim. (Doc. 79). EZPZ cites Claim 1, for example, which recites an "integrated tableware and dining mat." (Docs. 79, 79-2). The additional references in the body of Claim 1 thereafter refer to the "mat" as "said mat," referring back to the "integrated tableware and dining mat" in the preamble. (Docs, 79, 79-2). EZPZ contends the same language is used in the respective preambles of claims 5 and 9. (Doc. 79). EZPZ claims those preambles are also limiting. (Doc. 79).

LNC concedes the preamble of Claim 1 is limiting. (Doc. 83). However, LNC asserts that the file history should not be considered in incorporating the preamble into the body of the claim in Claims 5-9. (Doc. 83). LNC argues the preambles in Claims 5-9 are not limiting.[4] (Doc. 83). LNC asserts EZPZ cites no authority for the proposition that the file history can be used to incorporate the preamble into the body of the claim. (Doc. 83). LNC contends that whether the preamble is limiting is based on the words in the claim and not some statement from the prosecution history. (Doc. 83).

When the preamble serves as an antecedent basis for limitations in the claim body, the preamble can be limiting. See Eaton Corp. v. Rockwell Int'l Corp., 323 F.3d 1332 (Fed. Cir. 2003). EZPZ distinguished itself from prior art relying on the "self-sealing" requirement referenced in the preambles of claims 1, 5, and 9. (Docs. 79-7, 83-13). EZPZ clearly relied upon the language of the preambles to distinguish its present invention. The preamble is the same in Claims 1, 5, and 9. The term "self-sealing" only appears in the preambles, not the body of the claims. (Doc. 79-2, 83-1). EZPZ argued in the prosecution history the "self-sealing" qualities of its present invention that distinguish its product from prior art. (Docs. 79, 79-2, 83-13).

In this case, it is clear that the patent office considered aspects of the claimed invention embodied in the preamble necessary to distinguish '903 from the prior art. Specifically, the file history shows an applicant-initiated interview summary, dated December 14, 2015. (Docs. 79-7, p. 177, 83-12). This summary reflects that, during

---

[4] The preambles of Claims 5 and 9 are independent. Claims 6-8 are dependent on Claim 5.

the interview, the examiners agreed the previous rejection was improper based on the Lion reference which fails to teach the self-sealing property. (Docs. 79-7, p. 177, 83-12). Because language limiting the claims is found only in the preamble, and this language was relied upon in distinguishing '903 from prior art, the Court holds that the preambles to claims 1, 5, and 9 are limiting.[5]

### B.    The meaning of "planar portion"

| Disputed Claim Term | EZPZ's Construction | LNC's Construction |
| --- | --- | --- |
| "planar portion" (claims 1, 2, 5, 9) | "a part that includes an area that relates to a plane" | "'Planar portion' has its plain and ordinary meaning of a flat surface. A flat surface is one that is not curved." |

The term "planar portion" is used in independent claims 1, 5, and 9, and in dependent claim 2 in the '903 patent. (Doc. 79-2).

### EZPZ's proposed construction

EZPZ proposes that the term "planar portion" should align with the intrinsic record. (Doc. 79). EZPZ proposes that the term "planar portion" means "a part that includes an area that relates to a plane." (Doc. 79). EZPZ contends that "planar portion" is not merely a surface, as LNC contends, but a three-dimensional object.

---

[5] LNC includes dependent claims 6-8 in its proposed construction that the preamble is not limiting. (Doc. 83). Here, the dependent claims 6-8 use the same terms in the claim on which they are dependent, Claim 5. "[C]laim terms are presumed to be used consistently throughout the patent, such that the usage of the term in one claim can often illuminate the meaning of the same term in other claims." Research Plastics, Inc. v. Federal Packaging Corp., 421 F.3d 1290, 1295 (Fed. Cir. 2005) (citing Phillips, 415 F.3d at 1313-14, and Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001)). On the other hand, "[w]hen different words or phrases are used in separate claims, a difference in meaning is presumed." Nystrom v. TREX Co., 424 F.3d 1136, 1143 (Fed. Cir. 2005) (citations omitted). Claims 6-8 are dependent on Claim 5, which the Court has found the preamble to be limiting.

(Doc. 79).   EZPZ contends that the claims further define the "planar portion" as having a raised perimeter delimiting at least one concavity as well as upper and under surfaces.  (Doc. 79).   EZPZ states that Claim 1 recites a "mat comprising a rubberlike planar portion having a raised perimeter delimiting at least one concavity surrounding at least one receptacle above an upper surface and an entirely suffuse undersurface." (Docs. 79, 79-2).  Additionally, EZPZ asserts Claims 5 and 9 similarly recite both an "upper surface" and an "undersurface" of the "planar portion" and a "raised perimeter within the upper surface."   (Doc. 79).   EZPZ contends LNC disregards the context of the claims when it refers to the "planar portion" as merely a "flat surface," which is not proper under <u>Phillips</u>, 415 F.3d at 1313.  (Doc. 79).

EZPZ further states the words "flat" and "curved" do not appear anywhere in the specification of the '903 patent.  (Doc. 79).  EZPZ contends the claims specifically recite the type of material that must be used for the "planar portion," materials that are flexible.   (Doc. 79).   EZPZ contends that the flexible material (rubberlike, polymeric, or silicone) may be configured to contact a surface continually, even if that surface is not flat.  (Doc. 79).  EZPZ asserts that construing the term "planar portion" to mean "flat" and "not curved" would be nonsensical in context of the claims, and ignores that the claimed mat can be configured to a variety of different underlying surfaces. (Doc. 79).[6]

---

[6] EZPZ asserts that LNC indicates it relies on the plain and ordinary meaning of "planar portion," but contends that (even if it were extrinsic evidence properly provided), it is improper to rely upon because such evidence contradicts the controlling intrinsic evidence. (Doc. 79).

**LNC's proposed construction**

LNC argues that the term "planar portion" should have its plain and ordinary meaning of a flat surface, one that is not curved. (Docs. 79-4, 83). LNC contends EZPZ will lose on non-infringement if it is held to constructions requiring the "planar portion" limitation requiring a flat non-curved mat. (Doc. 83). LNC states the Court must start with the plain meaning – in accordance with ordinary language. (Doc. 83). LNC contends the plain meaning of "planar" is the generally accepted dictionary definition. (Doc. 83). LNC, however, contends extrinsic sources are not required to construe the term "planar." (Doc. 83). LNC states that the '903 patent and its prosecution history show EZPZ intended "planar" to mean flat with no curves. (Doc. 83).

LNC asserts the Webster's New International Dictionary, Second Edition Unabridged ("Webster"), defines "planar" to mean "of a plane, lying in one plane." (Docs. 83, 83-14). LNC states the word "plane" is derived from the Latin *planaris*, meaning flat. (Doc. 83). LNC contends the term planar is used to describe "portion." (Doc. 83). LNC states the adjectival definition, according to Webster, is "without elevations or depressions; even, level; flat; forming part of a plane; as a *plane* surface." (Docs. 83, 83-14).

LNC asserts the written description of "planar portion 20" is shown in every drawing as a flat object with no curvature. (Doc. 83). LNC argues no structural details of the planar portion 20 are provided other than that it can be constructed of

various materials such as silicone. (Doc. 83).  LNC further argues the written text and drawings of the '903 patent specification are consistent with the plain and ordinary meaning of planar as flat and not curved. (Doc. 83).

LNC contends EZPZ, through its first amendment, distinguished its invention from prior art that disclosed suction cups.  (Doc. 83).  LNC states that EZPZ argued during prosecution that the claimed invention teaches away from Stravitz, and is directed to a mat, "a generic term for a piece of fabric or flat material, generally placed on a floor or other flat surface." (Doc. 83).  LNC asserts EZPZ distinguished its claim from Stravitz who teaches suction-providing means. (Doc. 83).  LNC contends EZPZ conceded during claim prosecution that the '903 patent excludes curved structures such as a suction cup.  (Doc. 83).

The Court's Construction

The ordinary meaning of a term must be determined in the context of the written description and the prosecution history.  Phillips, 415 F.3d at 1313; see also Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum.").  The Court looks to the intrinsic record (claims, specification, prosecution history) to determine the ordinary meaning of the term "planar portion."  The context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms.  See ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1088 (Fed. Cir. 2003).  The claims are part of "a fully integrated written instrument" that "must be read in view of the specification, of which they are a part." Markman, 52 F.3d at 978-

79.  In addition to the specification, the claim terms must be construed in light of the prosecution history in the USPTO.  <u>Markman</u>, 52 F.3d at 980.

Here, the Court construes the term "planar portion" in light of the context of the '903 patent.  To construe the term "planar portion" as flat or not curved would ignore the context of the specification and prosecution history, and read a limitation in the claim that is not referenced in the claim.  Having carefully reviewed the claims and the specifications, the Court finds the term "planar portion" should be construed as "a part of an area relating to a plane."

C.  <u>The meaning of "an entirely suffuse undersurface" and "an undersurface entirely suffuse upon the planar portion"</u>

| <u>Disputed Claim Term</u> | <u>EZPZ's Construction</u> | <u>LNC's Construction</u> |
|---|---|---|
| "an entirely suffuse undersurface" (claim 1) | "a continuous undersurface without other separate adhering elements disposed thereon" | "Suffuse is used in the '903 patent claims, specification and prosecution history to mean a continuous, flat surface, as spread over as with a liquid.  The remaining terms in the phrase have their plain and ordinary meaning. The phrase "suffuse undersurface" is used in conjunction with the term "planar portion" to emphasize that the undersurface is flat and not curved." |
| "an undersurface entirely suffuse upon the planar portion" (Claims 5, 9) | "an undersurface that is continuous on the planar portion, without other separate adhering | "Suffuse is used in the '903 patent claims, specification and prosecution history to mean a continuous, flat |

| | | |
|---|---|---|
| | elements disposed thereon" | surface, as spread over as with a liquid. The remaining terms in the phrase have their plain and ordinary meaning. The phrase "undersurface entirely suffuse" is used in conjunction with the term "planar portion" to emphasize that the undersurface is flat and not curved." |

The term "an entirely suffuse undersurface" is used in claim 1 in the '903 patent. (Docs. 79-2, 83-1). The term "an undersurface entirely suffuse upon the planar portion" is used in claims 5 and 9 in the '903 patent. (Docs. 79-2, 83-1). Given the similarities of the terms, and arguments thereof, both parties address construction of the terms together. Therefore, the Court will likewise address the construction of the two terms together.

<u>EZPZ's proposed construction</u>

EZPZ proposes that an "entirely suffuse undersurface" should be construed to mean "a continuous undersurface without other separate adhering elements disposed thereon." (Doc. 79). EZPZ also proposes that "an undersurface entirely suffuse upon the planar portion" should be construed to mean "an undersurface that is continuous on the planar portion, without other separate adhering elements disposed thereon." (Doc. 79).

EZPZ argues that the goal of claim construction is to make the meaning of the claim terms clear to a jury, and to be able to replace the disputed terms with the

proposed constructions. (Doc. 79). EZPZ argues LNC's construction is, in fact, the same construction proposed for "planar portion," and is incorrect because it is inconsistent with the intrinsic record. (Doc. 79). EZPZ asserts there is no support in the record for the word "flat" or "as spread over as with a liquid." (Doc. 79). EZPZ further contends LNC's construction ignores the different claim terms by contending that the terms "suffuse undersurface" and "planar portion" are essentially the same. (Doc. 79). EZPZ argues if the terms were intended to have the same meaning, it would have used the same term. EZPZ cites <u>Helmsderfer v. Bobrick Washroom Equip., Inc.</u>, 527 F.3d 1379, 1381-82 (Fed. Cir. 2008) (citing <u>CAE Screenplates Inc. v. Heinrick Fiedler GmbH</u>, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

EZPZ contends "flat" and "not curved" do not appear anywhere in the specification. (Doc. 79). EZPZ further contends LNC's proposed constructions present that "suffuse undersurface" and "undersurface entirely suffuse" mean the same thing. (Doc. 79). EZPZ argues LNC's constructions both emphasize the undersurface is flat and not curved, ignoring the term "entirely" and the arguments made by EZPZ during prosecution for allowance of the claims over the prior art. (Doc. 79). EZPZ contends the claim terms should be construed to consider the term "entirely." (Doc. 79). EZPZ further argues that it is incorrect to apply the plain meaning of the entire disputed term except for the word "suffuse," as proposed by LNC. (Doc. 79). EZPZ argues the Court must consider the prosecution history and

intrinsic evidence, specifically the use of the term "entirely" to distinguish the invention from prior art. (Doc. 79).

### LNC's proposed construction

LNC proposes essentially the same construction for both "an entirely suffuse undersurface" and "an undersurface entirely suffuse upon the planar portion." (Doc. 83). LNC proposes "[s]uffuse is used in the '903 patent claims, specification and prosecution history to mean a continuous, flat surface, as spread over as with a liquid. The remaining terms in the phrase have their plain and ordinary meaning." (Doc. 79-4). LNC further contends "[t]he phrase 'suffuse undersurface' is used in connection with the term 'planar portion' to emphasize that the undersurface is flat and not curved." (Doc. 79-4). LNC also proposes "[t]he phrase 'undersurface entirely suffuse' is used in conjunction with the term 'planar portion' to emphasize that the undersurface is flat and not curved." (Doc. 79-4).

LNC contends the disputed term "suffuse" is used in slightly different ways in the independent claims but the meaning is always the same. (Doc. 83). LNC contends in Claim 1, the term is "an entirely suffuse undersurface," and in Claims 5 and 9, the term is "an undersurface entirely suffuse." (Doc. 83). LNC asserts there is no practical difference between the two descriptions. (Doc. 83).

LNC argues that Examiner Volz issued a 2nd Office Action (Doc. 83-7), rejecting all claims in the application. (Doc. 83). LNC asserts the Examiner cited the Bass and Kerr references that together described all the limitations of the claims including a planar portion with a suffuse undersurface. (Doc. 83). LNC contends

EZPZ filed a 2nd Amendment (Doc. 83-10), amending the claims to emphasize the undersurface was <u>entirely</u> suffuse. (Doc. 83). LNC contends the term "suffuse" was agreed to mean "continuous" or "spread out." (Doc. 83-10).

LNC noted it was also stated the invention excludes the use of suction cups. (Doc. 83-10). LNC contends Examiner Volz then finally rejected (Doc. 83-11) EZPZ's patent application essentially arguing the combination of Bass and Lion disclosed entirely the claimed invention. (Doc. 83). LNC asserts that after a video conference interview (Doc. 83-12), Examiner Volz and Examiner Mathew agreed the reliance on Lion was improper, and the final rejection was withdrawn. (Doc. 83). LNC contends that with EZPZ's 3rd Amendment, it acknowledged the language was limiting language and explicitly limits the scope of the claim. (Doc. 83-13). LNC asserts that EZPZ again distinguished its invention from mats with suction cups, supporting the non-obviousness to overcome the Examiners' rejection. (Doc. 83). LNC states this was done by EZPZ arguing the claim language requiring a suffuse undersurface distinguished the invention from prior art. (Doc. 83). LNC states EZPZ amended its claims a third time to add "entirely" as a limitation to the phrase "suffuse undersurface." (Doc. 83). LNC argues EZPZ's purpose was to avoid the prior art's explicit teaching of adhesive (and suction cups).

LNC contends, therefore, the term suffuse requires that the entire undersurface be flat and smooth. (Doc. 83). LNC states suffuse has its plain and ordinary meaning "to spread," consistent with the Webster's dictionary definition (Doc. 83-15) "to overspread, as with a fluid." (Doc. 83). LNC argues this definition

imparts the notion of flat and smooth. (Doc. 83). LNC contends the dictionary definition of the term is consistent with its ordinary meaning. (Doc. 83). LNC states suffuse is a verb, but is used as an adjective to describe the undersurface. (Doc. 83). More specifically, LNC contends the term "suffuse" is used to describe the undersurface 24 of planar portion 20 in the description. LNC argues their construction is consistent with the description of suffuse undersurface 24 in the written text and drawings of the '903 patent, and the prosecution history. (Doc. 83).

<u>The Court's Construction</u>

Here, the Court construes the terms "an entirely suffuse undersurface" and "an undersurface entirely suffuse upon the planar portion" in light of the context of the '903 patent. To construe both terms as "flat or not curved," as LNC proposes, would ignore the context of the specification and prosecution history, and read a limitation in the claim that is not referenced in the claim. The prosecution history reflects that EZPZ distinguished its product from prior art, specifically arguing that its self-sealing claims teach away from an adhesive or suction cups. (Docs. 79-7, 83-13). EZPZ included by amendment the term "entirely" to "better disclose the entirely of the suffuse undersurface whereby no suction cups or other irregularities or roughness is enabled". (Docs. 79-11, 83-13). EZPZ argued during prosecution "the self-sealing quality of the present invention only when attempts to separate the undersurface from an underlying surface is better enabled, whereby use of adhesives, suction cups, or other "active" means of adherence to a surface is obviated." (Doc. 79-11).

The language of the claims should receive their "ordinary and customary meaning" unless the patentee, acting as "his own lexicographer," used the terms in a different manner and defined the special meaning in the patent specification or file history." Vitronics, Corp., 90 F.3d at 1582. EZPZ conceded during prosecution that the term "suffuse" means "continuous" or "spread out." (Doc. 79-11). EZPZ argued its amendment's "limitation that the entirety of the undersurface be rendered 'suffuse' with reference to the planar portion was made in order to rule out any prior art which could be said to have a 'suffuse undersurface' in addition to other elements disposed thereon, such as, for example, a plurality of suction cups intermittently disposed upon a 'suffuse undersurface,' or a suffuse undersurface and an irregular, rough, or other uneven surface." (Doc. 79-11).

EZPZ agreed no suction cups or adhesive are necessary for the "suffuse undersurface" to perform the "sealable contact with an undersurface." (Doc. 79-11). EZPZ did not, however, use the terms flat or not curved in its claims or in its prosecution of the invention. Additionally, the specification and file history show the "silicone or rubberlike nontoxic substrate is yielding, whereby injury from force contact therewith is obviated." (Doc. 79-2). Both parties submit that EZPZ argued the invention functions on an "uneven underlying surface" (Docs. 79, 83, 84).

Having carefully reviewed the claims and the specifications, the Court adopts EZPZ's construction of the two terms. The Court finds that LNC's proposed construction of "suffuse" as a "continuous, flat surface, as spread over with a liquid" to be inconsistent with the intrinsic record which concedes the term "suffuse" to mean

"continuous" or "spread out." The Court further finds LNC's proposed constructions of both "suffuse undersurface" and "undersurface entirely suffuse" used in conjunction with "planar portion" to mean "flat and not curved" is also inconsistent with the intrinsic record. Both proposed constructions insert a limitation which does not appear in the claims, specification, or file history. Additionally, it is clear that during prosecution, EZPZ amended its claims to distinguish itself from prior art, in that "entirely" meant that the "entirely suffuse undersurface" and "undersurface entirely suffuse" were without other elements "disposed thereon," such as a plurality of suction cups or adhering elements.

The Court finds that insertion of the limitations of "flat" or "not curved" would read out the use of the terms "entirely" and "suffuse" in its context with the rest of claims, as well as ignore the flexible property of the materials argued in the file history. The Court finds the term "an entirely suffuse undersurface" should be construed as "a continuous undersurface without other separate adhering elements disposed thereon." The Court further finds the term "an undersurface entirely suffuse upon the planar portion" should be construed as "an undersurface continuous on the planar portion, without other separate adhering elements disposed thereon."

IV.    Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the disputed claim terms in the '903 patent in this case are construed as follows:

| Claim Term | EZPZ's Construction | LNC's Construction | Court's Construction |
|---|---|---|---|
| "A surface contact self-sealing integrated tableware and dining mat comprising" (preamble) | The preambles of claims 1, 5, and 9 are limiting. | "[T]he preamble does not provide antecedents for ensuing claim terms and is therefore not limiting and does not require construction." | "A surface contact self-sealing integrated tableware and dining mat comprising" is limiting.  (preambles of claims 1, 5, and 9) |
| "planar portion" (claims 1, 2, 5, 9) | "a part that includes an area that relates to a plane" | "Planar portion" has its plain and ordinary meaning of a flat surface.  A flat surface is one that is not curved. | "a part an of an area relating to a plane" (claims 1, 2, 5, 9) |
| "an entirely suffuse undersurface" (claim 1) | "a continuous undersurface without other separate adhering elements disposed thereon" | Suffuse is used in the '903 patent claims, specification and prosecution history to mean a continuous, flat surface, as spread over as with a liquid.  The remaining terms in the phrase have their plain and ordinary meaning. The phrase "suffuse undersurface" is used in conjunction with the term "planar portion" to emphasize that the undersurface is flat and not curved. | "a continuous undersurface without other separate adhering elements disposed thereon" |
| "an undersurface entirely suffuse | "an undersurface that is continuous | Suffuse is used in the '903 patent | "an undersurface continuous on the |

| | | | |
|---|---|---|---|
| upon the planar portion" (Claims 5, 9) | on the planar portion, without other separate adhering elements disposed thereon" | claims, specification and prosecution history to mean a continuous, flat surface, as spread over as with a liquid. The remaining terms in the phrase have their plain and ordinary meaning. The phrase "undersurface entirely suffuse" is used in conjunction with the term "planar portion" to emphasize that the undersurface is flat and not curved. | planar portion, without other separate adhering elements disposed thereon" |

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __23rd__ day of April, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge