# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| LUV N' CARE, LTD. | * | CIVIL ACTION NO. 3:16-cv-00777 |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| LAURAIN, ET AL. | * | MAG. JUDGE JOSEPH H.L. PEREZ-MONTES |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CLAIM CONSTRUCTION RULING

Before the Court is the issue of claim construction. Plaintiff Luv N' Care, Ltd. ("LNC") appeals [Doc. No. 115] the Magistrate Judge's Claims Construction Memorandum Order [Doc. No. 110]. Defendant Eazy-PZ, LLC ("EZPZ") responded to the appeal, contending that the Magistrate Judge's Claims Construction Memorandum Order should be affirmed. The issue is fully briefed [Doc. Nos. 79, 83, 84, 115, 122, 128], and oral argument was held on June 28, 2018. The Court is now prepared to rule.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 3, 2016, LNC filed its Complaint for Unfair Competition and Declaratory Judgment [Doc. No. 1] against Defendants Lindsey Laurain[1] and Eazy-PZ, LLC ("EZPZ"). In its Complaint, LNC seeks an injunction and damages for alleged acts of unfair competition by

---

[1] Pursuant to the Stipulated Dismissal Without Prejudice [Doc. No. 31], a Judgment of Dismissal was entered as to Defendant Lindsey Laurain, dismissing Plaintiff's claims against said Defendant, without prejudice [Doc. No. 32], leaving Eazy-PZ, LLC as the sole Defendant.

EZPZ. LNC also seeks a declaratory judgment that LNC is not violating any valid existing intellectual property right of EZPZ.

The alleged intellectual property rights at issue are:

(1) On July 17, 2014, Laurain filed Unites States Patent Application No. 14/333,682 ("the'682 Utility Application") for *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat*. [Doc. Nos.21, 27].

(2) On December 3, 2014, Laurain filed a design patent application for *Dining Mat with Integrated Tablewear,* and on December 15, 2015, the United States Patent and Trademark Office ("USPTO") issued United States Patent No. D745,327 ("the '327 Design Patent"). [Doc. Nos. 21, 27].

(3) On March 17, 2016, the application for the '682 Utility Application published as United States Published Patent Application No. 2016/0073805, *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat* ("the '805 Publication"). [Doc. No. 27].

(4) On October 11, 2016, the USPTO issued United States Patent No. 9,462,903, *Surface Contact Self-Sealing Integrated Tablewear and Dining Mat* ("the '903 Utility Patent"). [Doc. Nos. 21, 27].

LNC seeks an injunction and damages for EZPZ's alleged acts of false advertising, false representation, and unfair competition allegedly based on false claims of infringement. [Doc. No. 21]. LNC alleges the product giving rise to this action is a feeding mat, which is an integrated self-sealing silicone place mat with a built-in bowl or plate that attaches to the table using suction. [Doc. No. 21]. LNC alleges EZPZ has no valid existing intellectual property right that covers any aspect of LNC's feeding mats. [Doc. No. 21]. LNC alleges EZPZ sells competing feeding mats. [Doc. No. 21].

EZPZ filed an Answer to Complaint, Answer to Amended Complaint, and Counterclaim against LNC alleging that LNC infringed the '903 Utility Patent and the '327 Design Patent, violated 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and unfairly competed with EZPZ in

2

violation of state and common law. [Doc. No. 27]. EZPZ seeks monetary damages and a permanent injunction against LNC. [Doc. No. 27].

LNC answered EZPZ's Counterclaim asserting various affirmative defenses. [Doc. No. 33]. EZPZ amended its Counterclaim asserting claims against third party Counter-Defendants Admar International, Inc. ("Admar") and Nouri E. Hakim ("Hakim"). [Doc. No. 40]. Defendants Admar, Hakim, and LNC answered, asserting various affirmative defenses. [Doc. No. 45].

After the parties filed their claim constructions briefs [Doc. Nos. 79, 83, and 84], the Magistrate Judge, on April 23, 2018, issued his Claim Construction Memorandum Order [Doc. No. 110]. The LNC Parties filed an Appeal of the Magistrate Judge's Claim Construction Memorandum Order on May 14, 2018. [Doc. No. 115]. EZPZ filed its Memorandum in Opposition to the Appeal on June 5, 2018. [Doc. No. 122]. The LNC Parties filed a Reply on June 19, 2018. [Doc. No. 128]

At the hearing on June 28, 2018, counsel presented argument, relying on record evidence and demonstrative aids. The Court took the matter under advisement.

## II. LAW AND ANALYSIS

### A. Claim Construction

A patent describes "the exact scope of an invention and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them.'" *Markman v. Westview, Inc.*, 517 U.S. 370, 373 (1996) (citation omitted). The patent application contains a specification describing the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112. The specification concludes with "one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." *Id.*

Claims may be written in independent or dependent form. *Id.* Dependent claims shall be construed to incorporate by reference all the limitations of the claim to which it refers. *Id.* "[I]t is only fair (and statutorily required) that competitors be able to ascertain to a reasonable degree the scope of the patentee's right to exclude." *Markman v. Westview Instruments, Inc.*, 52 F. 3d 967, 978 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

Patent claim construction is a question of law for the court, even if it involves some factfinding. *See Markman*, 517 U.S. at 372 ("We hold that the construction of a patent, including terms of art within its claim, is exclusively within the province of the court."); *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 838 (2015) ("While we held in *Markman* that the ultimate issue of the proper construction of a claim should be treated as a question of law, we also recognized that in patent construction, subsidiary factfinding is sometimes necessary. . . In other words, we recognized that courts may have to resolve subsidiary factual disputes.").[2]

A determination of infringement "requires a finding that the patent claim[s] 'cover[ ] the alleged infringer's product . . .' which in turn necessitates a determination of 'what the words in the claim[s] mean.'" *Markman*, 517 U.S. at 374 (citations omitted). "[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed.Cir.1999) (citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction is for "resolution of disputed meanings")). "It is a 'bedrock principle' of patent law that 'the **claims** of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v.*

---

[2]When the Court engages in fact finding at a claims construction hearing, its fact finding is subject to a clear error review; whereas, its claim construction is generally subject to *de novo* review. *Teva*, 135 S. Ct. at 836-38.

*AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc*., 381 F.3d 1111, 1115 (Fed. Cir. 2004) (emphasis added); *see also Markman*, 517 U.S. at 373-74. The goal of claim construction, then, is to give proper meaning and scope to claim language by giving claim terms their ordinary and customary meanings, according to the customary understanding of an artisan of ordinary skill at the time of the invention. Id. at 1312–13. "[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321. While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Id.* at 1314 (citations omitted). Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally **used consistently throughout the patent** . . ." *Id.* (emphasis added) (internal citation omitted).

To construe a claim, a court first looks to the intrinsic evidence of record, which is the "patent itself, including 'the claims, the specification [or written description,] and, if in evidence, the prosecution history.'" *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman*, 52 F.3d at 979). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.* (citing *Vitronics*, 90 F.3d at 1582).

The court starts with the actual language of the claim. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

5

Further, "[i]f the claim language is clear on its face, then [the court's] consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).

The specification always can and should be used as an important source support for claim interpretation. *Phillips*, 415 F.3d at 1315-17. However, the specification is used to "interpret what the patentee meant by a word or phrase in the claim[,]" not to add "an extraneous limitation appearing in the specification, which is improper." *Dupont v. Phillips Petroleum*, 849 F.3d 1430, 1433 (Fed. Cir. 1988). This follows because "[t]he written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims." *Markman*, 52 F.3d at 980.

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Id.* The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citations omitted).

Further, the well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). By distinguishing the claimed invention over the prior art, an applicant is indicating what the claims

6

do not cover. *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988). This promotes the public notice function of the intrinsic evidence and the public's reliance on definitive statements made during prosecution. *Omega Eng'g, Inc.*, 334 F.3d at 1324.

When construing claims, the intrinsic evidence of the meaning of the claims are the primary resources; while helpful, extrinsic sources like dictionaries and expert testimony cannot overcome more persuasive intrinsic evidence. *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008) (citing *Phillips*, 415 F.3d at 1318). "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (citing *Markman*, 52 F.3d at 980). "[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract." *Id.* at 1321. The Court should instead focus on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with a broad definition and whittling it down. *Id.* In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 837.

"The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

B.     **Standard of Review**

Under Local Rule 74.1, "A party may appeal from a magistrate judge's order. . . . The district judge shall consider the appeal and set aside any portion of the order found to be

7

clearly erroneous or contrary to law." Similarly, Fed. R. Civ. P. 72(a) dictates that a district judge must review decisions on nondispositive motions by the magistrate judge and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A finding may be said to be "clearly erroneous" when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *U.S. v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007).

## III. CONSTRUCTION OF DISPUTED CLAIM TERMS

The parties dispute claim terms in the '903 patent only. The '903 patent contains 9 claims, of which 3 are independent claims (claims 1, 5, and 9), and 6 of the claims are dependent on one of the independent claims. (Doc. Nos. 79-2, 83-1). The disputed claim terms appear in claims 1, 2, 5, and 9. (Doc. Nos. 79-2, 83-1).[3] The parties seek claim construction of the following disputed terms: (1) "planar portion" (claims 1, 2, 5, and 9); (2) "an entirely suffuse undersurface" (claim 1); and (3) "an undersurface entirely suffuse upon the planar portion" (claims 5, and 9). [Doc. Nos. 79, 83, 84].

Magistrate Judge Perez-Montes construed the disputed claim terms in this case as follows:

| Claim Term | LNC's Construction | EZPZ's Construction | Magistrate Judge's Construction |
|---|---|---|---|
| | | | |
| "planar portion" (claims 1, 2, 5, 9) | "Planar portion" has its plain and ordinary meaning of a flat surface. A flat surface is one that is not curved. | "a part that includes an area that relates to a plane" | "a part of an area relating to a plane" (claims 1, 2, 5, 9) |
| "an entirely suffuse undersurface" (claim 1) | Suffuse is used in the '903 patent claims, specification | "a continuous undersurface without other separate | "a continuous undersurface without other separate |

---
[3] The LNC Parties initially disputed whether the preambles of claims 1, 5, and 9 were limiting; however, in their Reply Memorandum, they conceded the preambles are limiting. [Doc. No. 128, p.13].

|  | and prosecution history to mean a continuous, flat surface, as spread over as with a liquid. The remaining terms in the phrase have their plain and ordinary meaning. The phrase "suffuse undersurface" is used in conjunction with the term "planar portion" to emphasize that the undersurface is flat and not curved. | adhering elements disposed thereon" | adhering elements disposed thereon" |
|---|---|---|---|
| "an undersurface entirely suffuse upon the planar portion" (Claims 5, 9) | Suffuse is used in the '903 patent claims, specification and prosecution history to mean a continuous, flat surface, as spread over as with a liquid. The remaining terms in the phrase have their plain and ordinary meaning. The phrase "undersurface entirely suffuse" is used in conjunction with the term "planar portion" to emphasize that the undersurface is flat and not curved. | "an undersurface that is continuous on the planar portion, without other separate adhering elements disposed thereon" | "an undersurface continuous on the planar portion, without other separate adhering elements disposed thereon" |

The LNC Parties contend that the Magistrate Judge's holdings are contrary to the law governing patent claim construction and are clearly erroneous. They complain that the Magistrate Judge arrived at his erroneous ruling in part by giving little weight to the cited references and the dictionary definitions submitted by the LNC Parties, on the basis that they

9

were extrinsic evidence. The LNC Parties assert that the cited references are part of the intrinsic record, and, along with dictionary definitions, should have been given due consideration. They conclude that the Court should vacate the Magistrate Judge's order and enter an order ruling that planar portion is construed as flat and not curved, and the suffuse terms are construed as flat and smooth.

EZPZ, on the other hand, contends that the Magistrate Judge's order got it right. EZPZ asserts that LNC's argument is a red herring since the LNC Parties never timely identified or produced any extrinsic evidence, and, furthermore, the Magistrate Judge found the purported extrinsic evidence to be inconsistent with the clear intrinsic record. EZPZ asserts further that the LNC Parties changed their proposed constructions multiple times and each time claimed they were the only reasonable constructions. EZPZ concludes that the objection of the LNC Parties to the Magistrate Judge's order should be denied in its entirety.

### A. The meaning of "planar portion"

First, the Court addresses the dispute as to the meaning of "planar portion".

### 1. The LNC Parties' Proposed Construction

The LNC Parties contend that the Magistrate Judge failed to give adequate weight to prior art cited in the '903 Patent application (specifically, the Bass and Lion publications and the Kerr and Stravitz patents) based upon an incorrect assumption that the cited prior art was "extrinsic evidence." They contend that the Magistrate Judge refused to consider dictionary definitions that are the best source for the ordinary and customary meaning of disputed claim terms when the specification does not define those disputed terms, which, they say, is the situation here.

In addition, the LNC Parties contend that the Magistrate Judge's construction of "planar portion" is confusing and unclear, inasmuch as a critical claim feature of the '903 Patent is that the undersurface of the mat or planar portion must make sealable contact with and adhere to an underlying surface without the use of an adhesion element such as a suction cup, and the flat and smooth nature of the mat was argued throughout the prosecution history to distinguish the claims of the '903 Patent from the prior art.  Instead of adopting constructions that describe these key features of the claims, the Magistrate Judge adopted constructions that are simply confusing and unclear, according to the LNC Parties.

The LNC Parties argue further that the fact the planar portion is described as rubberlike, polymeric, and silicone does not affect the shape of the mat intended by the use of the term planar.  Instead, those terms describe the material used to make the planar portion, and they do not obviate the need for the planar portion to be a flat, un-curved and smooth surface.  The fact that the planar portion is flexible does not alter its intended shape as flat and not curved, the LNC Parties argue, just as the fact that a piece of paper can be formed into a tube by connecting two of the edges does not obviate the fact the paper is flat and not curved.

Furthermore, the LNC Parties contend that all of the intrinsic evidence, including the claims, written specification and the drawings and the prosecution history of the '903 Patent which includes the cited prior art and the file history, compels a construction of flat, and not curved, for planar.  There is no suggestion of any other geometry or shape, but one that is flat and not curved.  The LNC parties argue that during the prosecution of the '903 Patent application the applicant conceded that planar portion meant flat in order to differentiate it from the prior art.

   2.     **EZPZ's Proposed Construction**

EZPZ contends that "planar portion" is not merely a surface; rather, it is a three-dimensional object. EZPZ argues the claim language defines and describes the planar portion as having three-dimensional properties, none of which fit onto a flat surface. The words "flat" and "curved" do not appear anywhere in the specification of the '903 patent, according to EZPZ, and in each instance where the term "planar portion" is introduced, the claims specifically refer to materials that are *flexible,* i.e. "*rubberlike,*" "*polymeric,*" or "*silicone.*" EZPZ says the claimed mat will self-seal against any number of different surfaces it is placed on, including an underlying surface that may be curved. The claimed properties (rubberlike, polymeric, or silicone) are expressly intended to be flexible, not just for purposes of self-sealing, but also to prevent injury.

EZPZ contends it is improper to rely on extrinsic evidence, such as dictionaries, where such extrinsic evidence would contradict the intrinsic evidence, in part because undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the indisputable public records consisting of the claims, the specification, and the prosecution history, thereby undermining the public notice function of patents. EZPZ says the prosecution history shows the invention functions on an uneven underlying surface, meaning the planar portion is uneven when on this underlying surface, and even the dictionary equates "even" with "flat", so a planar portion resting on an uneven surface cannot be flat. Finally, EZPZ states that the drawings in the patent depicting a flat object with no curvature merely depict one embodiment of it invention, which is insufficient to limit the claims.

3. **The Court's Construction**

The Court finds that the Magistrate Judge's findings are neither clearly erroneous nor

contrary to law. His construction is truer to the claim language and most naturally aligns with the patent's description of the claim. The LNC Parties' construction adds terms not included in the patent language (flat surface that is not curved) which limits the construction substantially. The prior art suggested that the undersurface of the patented item did not have separate adhering elements (suction cups), not that the undersurface was flat.

This Court relies on the intrinsic record to determine the construction, including the claims, the specification and prosecution history. This Court does not rely on the dictionary definitions submitted by the LNC Parties as they are extrinsic evidence, are overly broad, and are contradicted by the intrinsic record. The flexible material of the undersurface does not require that it adhere to a flat surface, and the claimed mat will self-seal against a number of different surfaces, including a curved surface. Therefore, the dictionary definitions of "planar" and "suffuse" are inconsistent with the patent's description of the invention.

The LNC Parties construction creates more confusion for the jury, as their purported construction is not clear.

### B. The meaning of "an entirely suffuse undersurface" and "an undersurface entirely suffuse upon the planar portion"

Next the Court addresses the meaning of "an entirely suffuse undersurface" and "an undersurface entirely suffuse upon the planar portion."

#### 1. The LNC Parties' proposed construction

The LNC Parties argue that the Magistrate Judge's construction of suffuse is confusing, unworkable, and permits inclusion of separate elements that are not adhering, such as an undersurface with protrusions or bumps. They say a bumpy undersurface was not part of the patentee's invention. They argue the Magistrate Judge's construction fails to include the important characteristic of the invention that the undersurface had to be both flat and smooth so

13

that the undersurface "effects sealable contact" with an underlying surface such as a table top to create partial vacuum. Flat and smooth is consistent with how the patentee used the term suffuse, according to the LNC Parties. They further argue that the intrinsic evidence, confirmed by an authoritative dictionary, unequivocally establishes that planar means flat and not curved and suffuse means flat and smooth.

The LNC Parties contend that "suffuse" adds the requirement that the surface is smooth. The importance of the suffuse undersurface was emphasized by arguing that it functioned to permit the mat to "self-seal" by use of the friction of the material, and thus the proper construction for suffuse is flat and suffuse, the LNC Parties conclude.

### 2. EZPZ's Proposed Construction

EZPZ contends that the prosecution history supports the conclusions of the Magistrate Judge. Adding the term "entirely" before the word "suffuse" in each of claims 1, 5, and 9, differentiated the claimed invention (products that self-seal so they do not have a separate adhering means disposed on the undersurface) from the prior art (which discloses separate adhering means, such as adhesive, suction cups, or other irregularities). During prosecution, EZPZ argued that *entirely* suffuse meant that the undersurface did not have other adhering elements, such as a plurality of suction cups. EZPZ argues that the Magistrate Judge's construction of an "entirely suffuse undersurface" as "a continuous undersurface without other separate adhering elements disposed thereon" is therefore consistent with the statements EZPZ made in the prosecution history. Additionally, in a similar vein, the Court properly construed "an undersurface entirely suffuse upon the planar portion" as "an undersurface continuous on the planar portion, without other separate adhering elements disposed thereon" as it is consistent

with the file history. Thus, the intrinsic evidence specifically provides the basis for the Court's constructions, according to EZPZ.

EZPZ argues that the LNC Parties' construction is incorrect for a number of reasons. First, LNC's proposed construction only creates more confusion as it is unclear what actual construction is proposed for the terms identified, inasmuch as its construction is used to emphasize that the undersurface is flat and not curved, the same construction proposed for "planar portion". Second, LNC's proposed construction is incorrect because it runs afoul of the intrinsic record, including the claims, the specification, and the prosecution history. LNC contends that the surface must be "flat", "as spread over as with a liquid", even though there is no reference to the word "flat" anywhere in the specification.

EZPZ contends that the LNC Parties attempt to rely on purported extrinsic evidence, such as the dictionary, to define "suffuse" is improper where it is inconsistent with the clear intrinsic record. EZPZ says it expressly defined "suffuse" during prosecution "to mean 'continuous' or 'spread out'" and the parties agree that the invention functions on an "uneven underlying surface". Thus, if the surface is uneven, not flat, then the invention resting suffuse upon the uneven surface must also be uneven, not flat. EZPZ further contends that the LNC proposed constructions would read "entirely" out of the claim.

### 3. The Court's construction

The Court finds that the Magistrate Judge's findings are neither clearly erroneous nor contrary to law. To construe "an entirely suffuse undersurface" and "an undersurface entirely suffuse upon the planar portion" as "flat or not curved", as is advocated by the LNC Parties, would ignore the context of the specification and prosecution history, and read a limitation in the claim that is not referenced in the claim.

15

The dictionary definition of "suffuse" used by the LNC Parties is inconsistent with the patent language. When the examiner found the Bass and the Kerr patents made EZPZ's invention obvious, EZPZ amended the claims to add the term "entirely" before the word "suffuse" in claims 1, 5 and 9. This differentiated the EZPZ invention from the prior art by claiming an invention that self-sealed and didn't have a separate adhering means, such as adhesive or suction cups. Therefore, the LNC Parties' construction of suffuse as being a "continuous, flat surface, as spread over as with a liquid" reads a limitation in the claim that is not referenced in the claim, as there is not a requirement that the surface be flat, only that the mat adhere with no separate adhering means.

The LNC Parties' construction creates more confusion for the jury, as their purported construction is not clear.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts the findings of the Magistrate Judge in full and construes the disputed claims, terms and wording as set forth in the Magistrate Judge's Claim Construction Memorandum Order. [Doc. No. 110].

MONROE, LOUISIANA, this 29th day of June, 2018.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**