# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **LUV N' CARE** | **CIVIL ACTION NO. 3:16-00777** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LINDSEY LAURAIN, ET AL.** | **MAG. JUDGE PEREZ-MONTES** |

## SEALED RULING

This is a patent infringement case in which Plaintiff Luv n' Care, Ltd. and Nouri E. Hakim (collectively, "LNC") seeks a declaratory judgment that it does not violate any existing intellectual property right of Defendant Eazy-PZ, LLC ("EZPZ"). The patent related to the following motions is U.S. Patent No. 9,462,903 (the "'903 Patent"). The '903 Patent is directed to a self-sealing integrated tableware and dining mat.

Pending before the Court is LNC's Sealed "Motion for Partial Summary Judgment of Unenforceability of the '903 Patent Due to Intentional Non-disclosure and Misleading Disclosure of Material Prior Art, and Dismissing Claims of Infringement" [Doc. No. 347]. EZPZ responded to the motion. [Doc. Nos. 383, 384, 390]. LNC filed a reply. [Doc. No. 408]. For the following reasons, the motion is DENIED.

Also pending before the Court is LNC's Sealed "Motion for Partial Summary Judgment of Unenforceability of the '903 Patent Due to Affirmative Egregious Misconduct Before the USPTO, and Dismissing Claims of Infringement" [Doc. No. 346]. EZPZ responded to the motion. [Doc. No. 430, 432, 437]. LNC filed a reply. [Doc. No. 450]. For the following reasons, the motion is DENIED.

## I. PROCEDURAL HISTORY

On January 2, 2020, the Court entered a Ruling and Order Denying EZPZ's Motion for

Judgment on the Pleadings to Dismiss LNC's Inequitable Conduct Claim. [Doc. Nos. 462 & 463]. The present motions were filed before the Court ruled on EZPZ's motion to dismiss LNC's inequitable conduct claim. Having denied EZPZ's motion to dismiss LNC's inequitable conduct claim, the Court turns to LNC's motions for partial summary judgment of unenforceability of the '903 Patent.

LNC first contends that it is entitled to partial summary judgment declaring the '903 Patent unenforceable due to inequitable conduct. [Doc. No. 347]. LNC argues that Lindsey Laurain ("Ms. Laurain"), and her patent agent, Benjamin Williams ("Mr. Williams") committed at least three specific acts of inequitable conduct with respect to the disclosure of material prior art, and they did so with the intent to deceive the United States Patent and Trademark Office ("USPTO"). Specifically, LNC contends that Ms. Laurain and Mr. Williams: (1) withheld disclosure of the Webb Patent; (2) withheld disclosure of the Tommee Tippee Easi-Mat; and (3) misrepresented the features of the Platinum Pets dog bowl and mat. [Doc. No. 347 at 1-2].

LNC further contends that it is entitled to partial summary judgment declaring the '903 Patent unenforceable due to the affirmative egregious misconduct of Ms. Laurain and Mr. Williams before the USPTO during the prosecution of U.S. Patent Application Serial No. 14/333,682 ("the '682 Application"), now the '903 Patent. [Doc. No. 346 at 1].[1] Specifically, LNC contends that Ms. Laurain and Mr. Williams: (1) submitted multiple declarations containing material omissions of fact; (2) submitted multiple declarations containing affirmative misrepresentations; and (3) submitted false survey results. [Doc. No. 346 at 1].

---

[1] Citations to the parties' filings are to the filing's number in the docket [Doc. No.] and pin cites are to the page numbers assigned through ECF.

2

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment when there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the movant bears the burden of proof at trial on the issues at hand, as is the case here, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th Cir. 2015); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).

"When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). In this case, LNC has the burden to prove the elements of an inequitable conduct defense by clear and convincing evidence. *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1299 (Fed. Cir. 2018). If an issue of credibility exists, a motion for summary judgment should be denied. *See Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1163 (Fed. Cir. 1985) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)). Stated differently, where there are specific facts that tend to discredit a key witness, this may create a genuine issue of material fact for trial. *See Typeright Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004).

### B. Legal Standards for Inequitable Conduct Defense.

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1272 (Fed. Cir. 2018) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011)

3

(en banc)). "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the [Patent and Trademark Office ("PTO")]." *Id.* (quoting *Therasense*, 649 F.3d at 1287). Generally, the "materiality" required for a successful inequitable conduct defense is "but-for" materiality. *See Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 122 (2018). A prior art reference is "but-for" material if the PTO "would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* However, when the patentee "has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material" and no further showing of materiality is required. *Therasense*, 649 F.3d at 1292.

The party asserting inequitable conduct must also prove "that the patentee acted with the specific intent to deceive the PTO." *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017) (quoting *Therasense*, 649 F.3d at 1290). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Id.* at 1351. The alleged infringer need not present direct evidence of intent, and a court may infer intent from circumstantial evidence. *Id.* "An inference of intent to deceive is appropriate where the applicant engages in 'a pattern of lack of candor,' including where the applicant repeatedly makes factual representations 'contrary to the true information he had in his possession.'" *Id.* (quoting *Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1362 (Fed. Cir. 2014)).

"When a party raises inequitable conduct as a defense to patent infringement, [t]he accused infringer must prove both elements – intent and materiality – by clear and convincing evidence." *Rembrandt Techs.,* 899 F.3d at 1272 (internal quotations and citation omitted). Ultimately,

inequitable conduct "is an equitable issue committed to the discretion of the trial court." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1333 (Fed. Cir. 2019).

    **C. LNC's Motion for Partial Summary Judgment of Unenforceability of the '903 Patent Due to Intentional Non-disclosure and Misleading Disclosure of Material Prior Art, and Dismissing Claims of Infringement.**

LNC argues that before filing the patent application, Ms. Laurain searched the internet for similar products and found a number of silicone products, including but not limited to (1) the Platinum Pets Mat and (2) the Tommee Tippee Mat. [Doc. No. 347-1 at 7-8]. LNC contends that Ms. Laurain obtained a physical sample of both products. *Id.* at 8. LNC represents that the Platinum Pets Mat is depicted as follows:



*Id*. LNC also represents that the Tommee Tippee Mat product consists of a kidney bean-shaped silicone mat base with a suction cup on top to which bowls and plates can be affixed, as depicted in the following image:

5



*Id.* LNC argues that the Tommee Tippee Mat had been advertised on at least one website with the following description: "Keep the food on the table, rather than the floor, with the Tommee Tippee Explora Easi-Mat. The rubbery mat sticks to any surface and has a suction cup to secure plates and bowls to the mat. Unlike most suctioned bottoms, this one is virtually impossible to move (until tots learn to pull the tab)!" *Id.* at 8-9. LNC further argues that to create a mock-up of her idea, Ms. Laurain took the bowl that was sold with the Tommee Tippee Mat and taped it to a piece of paper, thereby creating her "all-in-one" bowl and placemat, as depicted in the lower left-hand corner of the image below:



*Id.* at 9. LNC contends that after consulting more than ten attorneys who told her that her alleged invention was not patentable, Ms. Laurain found and hired Mr. Williams to prosecute an application for a utility patent on her alleged invention. *Id.* at 10. LNC argues that following their initial consultation on June 30, 2014, Ms. Laurain sent Mr. Williams a document containing a list and links to the prior art she had located and which she believed were "similar" to her claimed invention. *Id.*

LNC contends that Ms. Laurain's list identified two products, one of which was the Platinum Pets Mat. LNC further contends that Ms. Laurain's list included the "'most' similar Patents" she had found, with a published patent application US2008/0245947 ("Webb") included in the list. *Id.* LNC argues that Webb was published on October 9, 2008 and ultimately issued as U.S. Patent No. 8,251,340 on August 28, 2012. *Id.* LNC further argues that the Tommee Tippee Mat is the commercial embodiment of Webb. *Id.* LNC notes that Ms. Laurain's draft patent application included a section that disclosed several prior art references. *Id.* However, when Mr. Williams filed the '682 Application on Ms. Laurain's behalf on July 17, 2014, the first submission of the '682 Application did not disclose a single prior art reference. *Id.*

LNC then alleges a number of further facts that could indicate inequitable conduct. For example, LNC argues that Mr. Williams and Ms. Laurain both knew of the Webb reference as of June 30, 2014, before they filed the '682 Application, with Ms. Laurain listing it among the "most similar Patents" she had located. *Id.* at 24. LNC contends that a review of Webb confirms Ms. Laurain's belief as to its similarity to her own invention. *Id.* Specifically, Webb discloses the following:

7

> Referring now to FIG. 1, a mat generally designated **10** comprises a mat portion in the form of a thin layer of flexible material, for example plastics material such as a thermo plastic elastomer (TPE), silicone or rubber of low to medium-shore hardness (shore A28-30). As shown, the mat **10** is suitable for laying out flat on a support service **12** such as the table of an infant's highchair. … As mat **10** may be made at least in part from TPE, which is an inherently "sticky" material, it will stick or adhere to a substantially smooth surface such as the feeding table **12** or an infant's highchair without transverse sticking. With the inherent stickiness of the mat **10**, the plate **26**, through the suction cup **14** is held to the feeding table **12**. *By creating the small volume 38 which is a vacuum or at least a partial vacuum, this serves further to hold the mat 10 against the surface 12*, thereby increasing the efficiency of the holding action of the mat **10** upon the surface **12** and in particular, enhancing the suction effect of the concavity **31**.



FIG. 1

> Referring now to FIG. **4c**, … the suction cup **14** continues to hold on to the feeding plate **26** such that a larger area **37a** of deformation in the mat results. Also as shown, the feeding plate **26** is lifted clear of the resilient ridge **22**. The outcome of the pulling action **40** is that the pulling force is transferred from the feeding plate **26** through the suction cup **14** and the point of join **32** to the mat **10** such that the area **27a** of the mat is pulled away from the table **12** causing a larger volume **42** of vacuum between the mat **10** and the surface **12**. The resultant effect of this pulling force **40** is that the deformable properties of the mat **10** result in an increase holding action … . **The properties of the mat and suction cup are such that an infant will not have the required strength in order to dislodge the mat from the table in this way.**



FIG. 4C

*Id.* at 24-25. LNC argues that Webb describes the very features, properties, and characteristics that Mr. Williams and Ms. Laurain told the PTO were "not seen in the prior art" for "thermo plastic elastomer (TPE), silicone, or rubber." *Id.* at 25. Specifically, a planar portion that seals to an underlying surface without the use of suction cups or adhesives, and which resists removal from the surface by creating a vacuum or a partial vacuum when a user attempts to lift it by the attached plate or bowl. *Id.* LNC argues that Mr. Williams and Ms. Laurain have no credible explanation as

to why they failed to include Webb in their initial filing of the '682 Application. *Id.* LNC further argues that they cannot explain their continued silence concerning Webb's existence throughout the prosecution of the '682 Application. *Id.*

LNC next contends that even if Mr. Williams and Ms. Laurain failed to include Webb in their initial filing because they had mistakenly believed it was not material despite Ms. Laurain's identification of Webb at the top of her list of "most similar Patents," the but-for materiality of Webb was conclusively established by May 4, 2015. *Id.* at 26. LNC argues that on that date, Mr. Williams and Ms. Laurain received the ISA's search report identifying Webb as a material "Y" reference and the accompanying written opinion finding all claims asserted in the '955 PCT Application (which were identical to those in the '682 Application) to be unpatentable as obvious in light of Webb and other references. *Id.* LNC argues that Mr. Williams, as a registered patent agent, knew of his obligation to disclose the ISA report and written opinion including the cited prior art to the USPTO in the '682 Application. *Id.* According to LNC, Mr. Williams prosecuted the '682 Application for sixteen months after receiving the ISA report and written opinion, including two interviews with the Examiners and two written submissions in response to the Second and Third Office Actions – yet he and Ms. Laurain never disclosed Webb. *Id.*

LNC further contends that the but-for materiality of Webb and how it would have been viewed by Examiner Volz was subsequently established when the '955 PCT Application entered the national phase. *Id.* at 27. On March 1, 2017, the '955 PCT Application was filed in the USPTO and assigned US Patent Application No. 15/507,823 (the "'823 Application"). *Id.* The '823 Application was assigned to Examiner Volz – the same examiner assigned to the '682 Application that had issued as the '903 patent in October 2016. *Id.* LNC argues that on June 28, 2018, Examiner Volz rejected Ms. Laurain's entirely analogous method claims as being anticipated and/or obvious

9

in light of Webb. According to LNC, Mr. Williams and Ms. Laurain thereafter attempted to argue against Webb by misrepresenting its characteristics, claiming that Webb teaches formation and maintenance of a partial vacuum by action of a "suction cup … that secures the mat in position whether or not attempts to lift the mat are made." *Id.*

LNC argues that Mr. Williams and Ms. Laurain expressly abandoned the '823 Application before Examiner Volz took further action. *Id.* According to LNC, had Examiner Volz had the benefit of Webb during the '682 Application, it is more probable than not that she would have combined that reference with Bass to reject all claims of the '682 Application for obviousness. *Id.* at 28. LNC further contends that Mr. Williams and Ms. Laurain had motive to conceal. *Id.* at 39. LNC argues that Mr. Williams and Ms. Laurain were both under extraordinary pressure to obtain an issued patent so that Ms. Laurain could sell EZPZ for millions of dollars, and Mr. Williams could obtain the "incredible" bonus Ms. Laurain had promised to him. *Id.*

EZPZ responds that the Webb Patent is duplicative of the suction bowl of Stravitz, and that summary judgment is inappropriate. [Doc. No. 383-1 at 10]. According to EZPZ, Mr. Kennedy offers an alternate, reasonably plausible explanation that the most reasonable inference is that the patent agent was inexperienced with this being his first patent filing. *Id.* at 11.

Having considered the evidence, it is clear that there are a number of disputed factual matters related to the intent and credibility of Mr. Williams and Ms. Laurain. Accordingly, the Court finds that it would be improper to resolve this issue on summary judgment. *See, e.g., Albert v. Kevex Corp.*, 729 F.2d 757, 763 (Fed. Cir. 1984) ("Intent is a factual matter which is rarely free from dispute, and we do not see how it can be said that it is free from dispute in this case.")

D. **LNC's Motion for Partial Summary Judgment of Unenforceability of the '903 Patent Due to Intentional Non-disclosure and Misleading Disclosure of Material Prior Art, and Dismissing Claims of Infringement**

LNC argues that to overcome the Examiners' obviousness rejections, Mr. Williams

10

explained to both Ms. Laurain and her separate patent counsel, Jordan Bolton and Timothy McCarthy of Clark Hill PLC, that his strategy for overcoming the rejections was filing affidavits under 37 CFR 1.132 to demonstrate secondary considerations of non-obviousness. [Doc. No. 346-1 at 9]. LNC further argues that lacking a declaration from a material scientist or mechanical engineer, Mr. Williams, Ms. Laurain, and Tamara Falcone (EZPZ's Chief Operating Officer), worked together to obtain declarations from other "experts" to support secondary considerations of non-obviousness. *Id.* at 11.

LNC contends that documents recently produced by Mr. Williams IP pursuant to an order of the Colorado District Court establish that Ms. Laurain, Ms. Falcone, and Mr. Williams were substantially involved in drafting the declarations for most, if not all, of the declarants. *Id.* LNC further contends that Ms. Laurain emphasized in her communications to potential declarants that "securing a utility patent is a big deal for ezpz and all of our partners." *Id.* at 12. LNC argues that Ms. Laurain thus solicited and ultimately submitted to the USPTO declarations from ten EZPZ "partners" who, like EZPZ, stood to benefit from issuance of the '903 Patent: (1) Tamara Falcone, (2) Dawn Winkelmann, (3) Jamie Grayson, (4) Julie Clark, (5) Jeff Prager, (6) Dr. Ted Stathos, (7) Katie Neuman, (8) Melanie Potock, (9) Nimali Fernando, and (10) Joseph Chua. *Id.*

According to LNC, each of the declarants had a relationship – personal, professional or financial – with Ms. Laurain and/or EZPZ, and each of them were motivated to provide favorable testimony to Ms. Laurain. *Id.* LNC further contends that each and every one of the declarations Ms. Laurain and Mr. Williams submitted to the USPTO was false because it contained affirmative misstatements of fact and/or omissions of material fact. *Id.* LNC argues that Ms. Laurain knew the declarations were false and/or misleading at the time she submitted them to the USPTO. *Id.*

LNC further argues that several of the declarants admitted during deposition questioning

that they did not know the meaning of the words and concepts used in their declarations. *Id.* LNC then alleges a number of material facts that appear to indicate that the declarations were false. *Id.* at 15–24. LNC contends that Ms. Laurain and Mr. Williams' specific intent to deceive is not only apparent from the undisputed direct evidence, but it is also the only reasonable inference to be drawn from the evidence. *Id.* at 27-31.

EZPZ responds that it is well established that summary judgment is not appropriate for this issue. [Doc. No. 430-1 at 5]. According to EZPZ, determining intent is problematic on summary judgment. *Id.* EZPZ argues that a falsity or an omission in a declaration does not establish intent or render a patent unenforceable unless the falsity or omission was deliberately planned, unmistakably false, intentionally omitted, included manufactured evidence, or the like. *Id.* at 9. EZPZ contends that none of the declarations provided to the PTO meet this criterion. *Id.* EZPZ then addresses the declarations in the order presented by LNC. *Id.* at 14-30.

Having considered the evidence, it is clear that there are a number of disputed factual matters related to the intent and credibility of Mr. Williams and Ms. Laurain. Accordingly, the Court finds that it would be improper to resolve this issue on summary judgment. *See, e.g., Albert*, 729 F.2d at 763 ("Intent is a factual matter which is rarely free from dispute, and we do not see how it can be said that it is free from dispute in this case.").

### III.   CONCLUSION

LNC has presented evidence that could establish Ms. Laurain and Mr. Williams intentionally withheld relevant information in order to deceive the PTO, including the Webb Patent and the Tommee Tippee Easi-Mat. LNC has also presented evidence that Ms. Laurain and Mr. Williams potentially misrepresented the features of the Platinum Pets dog bowl and mat. LNC has also presented evidence that Ms. Laurain and Mr. Williams may have committed acts of

egregious misconduct, including submitting multiple declarations containing material omissions of facts and affirmative misrepresentations. LNC has also presented evidence that Ms. Laurain and Mr. Williams may have submitted false survey results.

Given the disputed facts before the Court, it is clear that the credibility of Ms. Laurain and Mr. Williams is of utmost importance in this case. As noted above, the Court cannot make credibility determinations on summary judgment. Therefore, the Court denies LNC's Motions for Summary Judgment and will hold a bench trial on the inequitable conduct defense. At trial, the Court will have the opportunity to see and hear the witnesses as they testify and make the necessary evaluation of their credibility.

Accordingly, LNC's "Motion for Partial Summary Judgment of Unenforceability of the '903 Patent Due to Intentional Non-disclosure and Misleading Disclosure of Material Prior Art, and Dismissing Claims of Infringement" [Doc. No. 347] is DENIED. Likewise, LNC's Sealed "Motion for Partial Summary Judgment of Unenforceability of the '903 Patent Due to Affirmative Egregious Misconduct Before the USPTO, and Dismissing Claims of Infringement" [Doc. No. 346] is DENIED. The Court previously entered an Amended Scheduling Order for the bench trial on inequitable conduct, which is set to begin on June 1, 2020. [Doc. No. 483].

Monroe, Louisiana, this 19th day of February, 2020.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**