UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LUV N' CARE | CIVIL ACTION NO. 3:16-00777 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LINDSEY LAURAIN, ET AL. | MAG. JUDGE PEREZ-MONTES |

### RULING

This is a patent infringement case in which Plaintiff Luv n' care, Ltd. and Nouri E. Hakim (collectively, "LNC") seeks a declaratory judgment that it does not violate any existing intellectual property right of Defendant Eazy-PZ, LLC ("EZPZ"). Pending before the Court is LNC's Sealed "Motion to Exclude Testimony of EZPZ's Expert John T. Kennedy by Nouri E Hakim, Luv N Care Ltd" [Doc. No. 355]. EZPZ responded to the motion. [Doc. No. 401]. LNC filed a reply. [Doc. No. 422]. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**

EZPZ asserts that LNC infringed U.S. Patent Nos. 9,462,903 (the "'903 Patent") and D745,327 (the "'327 Patent"). LNC denies that it has infringed either patent. LNC also contends that the '903 Patent is invalid and unenforceable for a number of reasons, including Lindsey Laurain ("Ms. Laurain"), and her patent agent, Benjamin Williams ("Mr. Williams") committed inequitable conduct before the USPTO. LNC contends that the '327 Patent is invalid for indefiniteness and lack of enablement.

EZPZ has retained John T. Kennedy as an expert in connection with this matter. Mr.

Kennedy is a full time intellectual property lawyer. [Doc. No. 355-1 at 7-12].[1] He has been licensed since May 1997 and has been registered to practice before the USPTO since February 1998. *Id.* He received a Bachelor of Science Degree in Electrical Engineering from Kansas State University in May 1988. *Id.* From June 1988 through February 1989 he worked as an electrical engineer. *Id.* He was in military service from 1989 to 1994 where he worked on the Defense Satellite Communication System, Phase 3. *Id.* He states that he is the named inventor on at least twenty United States patents and numerous foreign patents. *Id.*

LNC moves the Court to exclude Mr. Kennedy's testimony as to reasonable inferences that can be made about the actions of Ms. Laurain and Mr. Williams before the United States Patent and Trademark Office ("USPTO"), and as to other inferences that can be drawn from the evidence presented. [Doc. No. 355 at 1]. LNC also moves the Court to exclude Mr. Kennedy's testimony rebutting the expert opinions offered by: (1) LNC's marketing expert on the survey that EZPZ submitted to the USPTO; (2) LNC's design expert on invalidity of EZPZ's design patent and, (3) LNC's technical expert on invalidity of EZPZ's utility patent. *Id.* LNC further moves the Court to exclude Mr. Kennedy's testimony as to proceedings of foreign patent jurisdictions. *Id.* Finally, LNC moves the Court to exclude Mr. Kennedy's personal and legal conclusions and factual determinations. *Id.*

## II.    LAW AND ANALYSIS

Fed. R. Evid. 702 provides that a witness who is qualified "by knowledge, skill, experience, training, or education," may provide opinion testimony if that testimony will assist the trier of fact and "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

---

[1] Citations to the parties' filings are to the filing's number in the docket [Doc. No.] and pin cites are to the page numbers assigned through ECF.

2

facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The witness must possess "specialized knowledge, skill, experience, training, or education in the relevant field," in order to be qualified to express his expert opinion on the topic in issue. *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1110 (5th Cir. 1991).

The Supreme Court in *Daubert* charged trial courts with the task of determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).

> The *Daubert* opinion lists a number of factors that a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community . . . . These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered . . . . But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (internal citations omitted).

**A. Mr. Kennedy's Opinion on Williams' Intent or the Inferences to be Drawn from His Actions or Inactions.**

In inequitable conduct cases, qualified patent experts are allowed to testify as to "PTO policy, practice, and procedure." *Realtime Data LLC v. Packeteer, Inc.*, 6:08-cv-144 (Doc. No. 706 at 3) (E.D. Tex. Nov. 19, 2009). They cannot testify about the alleged intent of the patent attorney, patent agent, or inventor. *Id.* (precluding the expert from "opining as to the intent and credibility of…the prosecuting attorney"). Thus, Courts routinely exclude expert testimony on whether the patent prosecutor acted with intent to deceive. *Nisus Corp. v. Perma-Chink Sys.*, No. 3:03-CV-120, 2005 U.S. Dist. LEXIS 41068, at *15 (E.D. Tenn. May 27, 2005) (excluding the

expert's proposed testimony to the extent he sought "to opine as to . . . intent to deceive and good faith"); *Anagram Int'l, Inc. v. Mayflower Distrib. Co.*, No. 07-1142 (DWF/SRN), 2008 U.S. Dist. LEXIS 106638, at *3 (D. Minn. Aug. 21, 2008) ("[A]ny testimony from [the expert] regarding his opinions, legal or otherwise, regarding inequitable conduct, including his opinions regarding materiality or the intent to deceive, are presumptively inadmissible."); *Pharmacia Corp. v. Par Pharm., Inc.*, Civil Action No. 01-6011(SRC), 2004 U.S. Dist. LEXIS 30988, at *6 (D.N.J. Feb. 18, 2004) ("[T]he Court will not permit [the expert] to offer testimony regarding alleged inequitable conduct or materiality.").

Mr. Kennedy is a qualified patent attorney with experience in patent law, and may testify about USPTO policy, practice, and procedure. However, Mr. Kennedy cannot test about Mr. Williams' or Ms. Laurain's intent before the Patent Office.[2] Indeed, the only persons who can testify as to their intent are those whose state of mind and actions are called into question by an inequitable conduct claim. Here, Mr. Williams is the best and only person able to testify as to his intent and state of mind in prosecuting the patent application before the USPTO that led to issuance of the '903 Patent. Thus, Mr. Kennedy is precluded from offering testimony or opinions on Mr. Williams' intent, Ms. Laurain's intent, or the inferences to be drawn from their actions or inactions.

Turning to a related issue, the Court notes that there are two elements of a claim of inequitable conduct: first, the materiality of misrepresentations, misinformation, or withheld information; and second, the intent to deceive. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007); *see also* S*tar Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). *Meds. Co. v. Mylan Inc., N*o. 11-cv-1285, 2014 U.S.

---

[2] EZPZ does not dispute that Mr. Kennedy cannot test about Mr. Williams' or Ms. Laurain's intent before the Patent Office. [Doc. No. 401-1 at 8].

4

Dist. LEXIS 61084, at *15-16 (N.D. Ill. May 2, 2014). Mr. Kennedy is qualified to testify about the materiality of alleged omitted prior art. However, Mr. Kennedy is precluded from offering testimony on "plausible" or "alternative" explanations for Mr. Laurain's and Mr. Williams' submission of declarations and the withholding of prior art. Mr. Kennedy "is [] not a mind-reader" and "[h]e may not testify that he knows [the applicant's] intent." *Se-Kure Controls, Inc. v. Vanguard Prods. Grp.*, No. 02 C 3767, 2008 U.S. Dist. LEXIS 3993, at *11 (N.D. Ill. Jan. 17, 2008); *see also Bone Care Int'l LLC v. Pentech Pharm., Inc.*, No. 08-CV-1083, 2010 U.S. Dist. LEXIS 105118, at *32 (N.D. Ill. Oct. 1, 2010) (expert's "education, training, and experience…do not qualify him with the expertise to plumb the inventor's and attorneys' minds and discern whether they 'lacked candor' or had actual intent to deceive").

The parties also dispute whether Mr. Kennedy should be precluded from offering testimony regarding Mr. Williams' experience. The Court finds that Mr. Kennedy's testimony regarding Mr. Williams' inexperience and/or negligence is not directed to the materiality element, but instead is directed to the intent element. *See Bone Care Int'l*, 2010 U.S. Dist. LEXIS 105118, at *35 (excluding "testimony on the intent to deceive the PTO," but permitting testimony "on general practices and procedures" and "the materiality element of inequitable conduct."); *Se-Kure Controls*, 2008 U.S. Dist. LEXIS 3993, at *11 (permitting testimony "about general procedures involved in the patent application process and the operations and functions of the PTO" and "the materiality of the relevant prior art," but concluding that testimony regarding "whether [the patent] is enforceable, whether [the patentee] committed inequitable conduct, or as to the level of intent behind any alleged failures to disclose prior art, is all inadmissible testimony."). Accordingly, Mr. Kennedy is precluded from offering testimony on Mr. Williams' intent or the inferences to be drawn from his actions or inactions.

**B. Mr. Kennedy's Expert Testimony Rebutting LNC's Experts.**

    **1. Mr. Kennedy's Opinion on Survey Design or Implementations.**

Under Rule 702, the threshold inquiry is whether the expert possesses the requisite qualifications to render opinions on a particular subject matter. *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."). "[A]n expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate [his] opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness's expertise) rather than simply an opinion broached by a purported expert." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010).

In her report dated April 28, 2019, LNC's marketing expert, Nancy Albers, provides an analysis regarding the purported flaws in the design of the survey submitted to the USPTO. [Doc. No. 355-2]. Dr. Albers is a Professor of Marketing at Louisiana State University Shreveport, and has a Ph.D. in marketing. [*Id.* at 17].

Mr. Kennedy includes twenty paragraphs in his expert report rebutting Dr. Albers' expert report. [Doc. No. 355-1 at ¶¶ 289-308, 439 & 445]. Mr. Kennedy admits in his expert report that he "do[es] not profess to be an expert in survey design or implementation." [*Id.* at ¶ 290]. EZPZ provides no good faith basis for why Mr. Kennedy, an electrical engineer and patent attorney, should be permitted to provide testimony on survey analysis. The Court finds Mr. Kennedy does not have the proper qualifications to opine on survey design or implementations. Accordingly,

Mr. Kennedy's opinions on survey design and implementation, including the rebuttal to Dr. Albers' opinions, are excluded.

LNC does not contest that Mr. Kennedy may testify as to "how a survey is presented to the PTO, and what the process is." [Doc. No. 401-1 at 15]. Accordingly, Mr. Kennedy is not precluded from testifying how a survey is presented to the PTO, and what the process is, to the extent that it is included in his expert report.

### 2. Mr. Kennedy's Opinion Rebutting Mr. Anders' Expert Opinion Regarding Design Patent Infringement.

In his reported dated March 5, 2019, LNC's design expert, Robert J. Anders, opined that the '327 Patent is invalid under 35 U.S.C. § 112(a) for indefiniteness and under 35 U.S.C. § 112(b) for lack of enablement. [Doc. No. 355-4]. LNC contends that Mr. Kennedy is not qualified to rebut Mr. Anders' expert report, because he has no education or experience in industrial design. [Doc. No. 355-6 at 11].

The Court disagrees to the extent that Mr. Kennedy's opinion is offered for a specific limited purpose. As Mr. Kennedy states in his report, his opinion is responsive to Anders' opinion regarding compliance of the '775 Design Application with U.S. design patent laws and regulations. (Doc. No. 355-1 at ¶ 29). This is something within Mr. Kennedy's expertise as a patent attorney with 20 years of experience. Mr. Kennedy is well positioned to advise the jury how ornamentality of a patent drawing is evaluated at the USPTO, and how LNC's expert may have failed to do that proper analysis, as set forth in his rebuttal of Mr. Anders' opinions. Thus, Mr. Kennedy's opinions are both relevant and helpful to the jury. These opinions speak to what the patent agent and inventor had to present to the patent office, and how that presentation is evaluated once there. Accordingly, Mr. Kennedy is not precluded from testifying for this limited purpose.

However, Mr. Kennedy is precluded from providing an opinion on the ultimate conclusion of whether the patent was definite or enabled. EZPZ does not contend that Mr. Kennedy is a person of ordinary skill in the art or a designer of ordinary skill in the art ("POSITA-D"). Instead, EZPZ argues that Mr. Kennedy relies on Mr. Henley for this opinion. [Doc. No. 401-1 at 16]. As the Federal Circuit recently noted, "[e]xperts routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014). However, nowhere in Mr. Kennedy's analysis of Mr. Anders' report does he cite to an opinion of Mr. Henley as it relates to the '327 Patent. [Doc. No. 355-1, at ¶¶ 423-438.]. In fact, Mr. Kennedy explicitly stated that he was relying on Mr. Henley's opinions with respect to the '903 Utility Patent, not the '327 Patent. [*See* Doc. No. 355-1 at ¶ 441] ("Based upon Mr. Henley's opinions and Mr. Sisbarro's statements, the '903 Patent satisfies the requirements of 35 USC § 112."). Accordingly, Mr. Kennedy is precluded from providing an opinion on the ultimate conclusion of whether the '327 Patent was definite or enabled.

### 3. Mr. Kennedy's Opinion Rebutting Mr. Valderrama's Expert Opinion Regarding Utility Patent Infringement.

In an expert report dated May 10, 2019, LNC's technical expert, Vince Valderrama, opined that the '903 Patent is invalid for lack of an adequate written description, lack of enablement, indefiniteness, and for obviousness. [Doc. No. 355-5]. Mr. Kennedy offers an opinion rebutting Mr. Valderrama opinion. [Doc. No. 355-1 at ¶¶ 440-442, 444]. LNC contends that Mr. Kennedy is not qualified to give expert testimony rebutting Mr. Valderrama's opinions because he does not qualify as a POSITA. [Doc. No. 355-6 at 12].

As discussed above, the Federal Circuit has noted that "[e]xperts routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Apple*, 757 F.3d at 1321 (Fed. Cir. 2014). Here, Mr. Kennedy states that he is relying on Mr. Henley's opinions that

the '903 Patent satisfies the requirements of 35 USC § 112. Accordingly, LNC's motion to preclude Mr. Kennedy's Opinion rebutting Mr. Valderrama's expert opinion regarding utility patent infringement is denied.

### C. Mr. Kennedy's Opinion on the Proceedings of Foreign Patent Jurisdictions..

Mr. Kennedy reports on the results of EZPZ's '955 PCT Application in a number of foreign jurisdictions, including Australia, Brazil, Canada, China, Japan, Korea, Russia and Singapore. [Doc. No. 355-1 at ¶¶ 112-142, 191, 219]. He provides substantive opinions interpreting the actions of the patent authorities in Canada and Singapore. *Id.* at ¶¶ 119-130 (Canada), ¶¶ 141-142 (Singapore), ¶¶ 191, 219 and 408. He also opines that the actions of these jurisdictions support the proposition that the issuance of the '903 Patent by the USPTO would have happened even if it had been aware of the prior art that Ms. Laurain and Mr. Williams withheld. *Id.*

Mr. Kennedy admitted in his deposition that he is not authorized to practice before any of the intellectual property offices of Australia, Brazil, Canada, China, Japan, Korea, Russia and Singapore. [Doc. No. 355-3 at 261:21–263:14]. His testimony is clear that he has no substantive expertise regarding the examination proceedings of those offices. *Id.* Courts have routinely recognized that there are differences between United States patent law and patent law in foreign countries. *See, e.g.*, *Waddington N. Am., Inc. v. Sabert Corp.*, Civil Action No. 09-4883 (GEB), 2011 U.S. Dist. LEXIS 86632, at *22 (D.N.J. Aug. 5, 2011) ("U.S. patent law is distinct from foreign patent law"). For this reason, Mr. Kennedy is not in a position to opine as to the legal standards that were applied in these jurisdictions, the level of expertise of the examiners, the conclusions that were drawn from whatever information was before them, or any other relevant subjects. Accordingly, Mr. Kennedy's opinions and testimony related to foreign patent proceedings are excluded.

### D. Mr. Kennedy's Opinion on the Patent Examiner's Mental Processes.

"Statements regarding what a PTO examiner would have done under a different scenario and a PTO examiner's general thought process are not admissible." *Network-1 Techs. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 U.S. Dist. LEXIS 154434, at *17 (E.D. Tex. Sep. 21, 2017). Therefore, courts routinely exclude expert testimony regarding the thought process of a PTO examiner. *See Barry v. Medtronic, Inc.*, No. 1:14-cv-104, 2016 U.S. Dist. LEXIS 104118, at *6 (E.D. Tex. July 19, 2016) (excluding testimony "as to the thought processes of an examiner" because the expert's "resume fails to establish his education, training, or experience in the field of retroactive mind reading of the thoughts of patent examiners"); *Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*, Civil Action No. 09-40089-FDS, 2014 U.S. Dist. LEXIS 175470, at *24 (D. Mass. Dec. 19, 2014) (an expert "may not speculate as to what the examiner did or did not think, or how different information would have impacted the examiner's opinions or thoughts. ... Speculation about the thought processes or reasoning of the examiner is inadmissible."); *Meds. Co. v. Mylan Inc.*, No. 11-cv-1285, 2014 U.S. Dist. LEXIS 52952, at *14 (N.D. Ill. Apr. 17, 2014) (excluding statements of the expert that "go beyond permissible opinions and speculate as to what the Examiner would have done or thought had she been given different information"). Accordingly, Mr. Kennedy's opinions and testimony related to the thought process of the PTO examiner are excluded.

### E. Mr. Kennedy's Legal Opinions, Personal Opinions, and Findings of Fact.

LNC contends that Mr. Kennedy renders legal opinions, personal opinions, and findings of fact throughout his report. [Doc. No. 355-6 at 13]. LNC argues that Mr. Kennedy should not be permitted to offer personal opinions, findings of fact, or legal conclusions under the guise of expert testimony. The Court agrees. "[T]he Fifth Circuit has repeatedly held that Rule 704 does not authorize experts to render legal opinions or reach legal conclusions. Moreover, testimony that

10

tells the jury what conclusion to reach or merely states a legal conclusion is not helpful to the jury." *Howard v. Offshore Liftboats*, LLC, No. 13-4811, 2016 U.S. Dist. LEXIS 4708, at *14 (E.D. La. Jan. 13, 2016). However, without more than a general reference to Mr. Kennedy's report or deposition testimony, LNC has not placed the Court in a position to rule on a specific objection. Moreover, the Court does not intend or desire to rule on every item in Mr. Kennedy's report or deposition testimony. Accordingly, the Court declines LNC's blanket attempt to limit Mr. Kennedy's testimony to only "PTO policy, practice, and procedure."

### III. CONCLUSION

For the foregoing reasons, Sealed "Motion to Exclude Testimony of EZPZ's Expert John T. Kennedy by Nouri E Hakim, Luv N Care Ltd" [Doc. No. 355] is GRANTED IN PART and DENIED IN PART.

Monroe, Louisiana, this 19th day of February, 2020.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE