UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

LUV N' CARE                          CIVIL ACTION NO. 3:16-00777

VERSUS                               JUDGE TERRY A. DOUGHTY

LINDSEY LAURAIN, ET AL.              MAG. JUDGE PEREZ-MONTES

## RULING

This is a patent infringement case in which Plaintiff Luv n' care, Ltd. and Nouri E. Hakim (collectively, "LNC") seeks a declaratory judgment that it does not violate any existing intellectual property right of Defendant Eazy-PZ, LLC (collectively "EZPZ"). The patent related to the following motion is U.S. Patent No. 9,462,903 (the "'903 Patent"). The '903 Patent is directed to a self-sealing integrated tableware and dining mat.

Pending before the Court is LNC's Sealed "Motion for Partial Summary Judgment of Invalidity of the '903 Patent for Obviousness and Dismissal of Infringement Counterclaims (Counts I and XII)" [Doc. No. 348]. [1] EZPZ responded to the motion [Doc. No. 382]. LNC filed a reply [Doc. No. 412]. For the following reasons, the motion is GRANTED. Specifically, the Court holds that all of the claims in the '903 Patent are invalid as obvious based on prior art. Summary judgment will be entered in favor of LNC, and EZPZ's infringement counterclaims (Counts I and XII) will be dismissed with prejudice.

## I.    PROCEDURAL HISTORY

On June 3, 2016, LNC filed a complaint against EZPZ seeking a declaratory judgment that

_____

[1] Citations to the parties' filings are to the filing's number in the docket [Doc. No.] and pin cites are to the page numbers assigned through ECF.

U.S. Patent No. D745,327 (the "'327 Design Patent") is invalid and unenforceable. [Doc. No. 1 at 23]. The case was assigned to the Honorable Robert G. James. On October 11, 2016, the USPTO issued U.S. Patent No. 9,462,903 (the '903 Patent) titled "Surface Contact Self-Sealing Integrated Tablewear and Dining Mat" to Ms. Lindsey Laurain, which was later assigned to EZPZ. [Doc. No. 31]. On October 28, 2016, LNC filed a first amended complaint seeking a declaratory judgment that the '327 Design Patent and the '903 Patent are invalid and unenforceable. [Doc. No. 21 at 29]. EZPZ filed an answer and counter-complaint for damages and injunctive relief on November 14, 2016. In Count I of the counter-complaint, EZPZ alleged that LNC infringed the '903 Patent, and requested an entry of judgment and an award of damages. [Doc. No. 27 at 26-27, 30, 32].

On January 9, 2017, EZPZ filed an amended counter-complaint. In Counts I and XII of the amended counter-complaint, EZPZ alleged that LNC and Mr. Nuori Hakim infringed the '903 Patent, and requested an entry of judgment and an award of damages. [Doc. No. 40 at 27-29, 48-50, 52-54]. On February 1, 2017, LNC and Mr. Hakim filed an answer denying the allegations and asserted the affirmative defense that the '903 Patent is invalid and unenforceable [Doc. No. 45 at 13-14, 27-29, 32].

On March 12, 2018, the case was reassigned to the undersigned. On April 23, 2018, the Court entered a Claim Construction Order construing the disputed claim terms in the '903 Patent. [Doc. No. 110]. On September 26, 2019, LNC filed the present motion seeking partial summary judgment of invalidity of the '903 Patent for obviousness and dismissal of infringement counterclaims (Counts I and XII). [Doc. No. 348].

## II.    SUMMARY JUDGEMENT STANDARD

"Summary judgment is as available in patent cases as in other areas of litigation." *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991). A motion for summary

judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c)(2). The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("The court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Likewise, the Court may not make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 150.

 "Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1302 (Fed. Cir. 2010). "[A] dispute about a material fact is genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id.*

However, the existence of a factual dispute alone does not defeat a properly supported motion for summary judgment, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325

(5th Cir.1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III.    ANALYSIS

In its motion for summary judgment, LNC argues that all claims (*i.e.*, claims 1 through 9) of the '903 Patent are invalid based on U.S. Publication No. 2003/0152736 ("Bass")[2], in combination with the Webb Prior Art.[3]  Because a patent is presumed valid, invalidity must be proven by clear and convincing evidence by the party asserting an invalidity defense. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); 35 U.S.C. § 282.

A patent claim is invalid as "obvious" under 35 U.S.C. § 103 where "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."[4]  The obviousness determination must take place through the eyes of a person of ordinary skill in the art, *i.e.*, a hypothetical person presumed to be aware of all the prior art in the field of invention and all analogous fields. *In re Gorman*, 933 F.2d 982, 986 (Fed. Cir. 1991).

Obviousness is a question of law based on underlying facts. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 427 (2007).  The underlying facts or factors a court considers are as follows: (i) the

---

[2] Doc. No. 344-3

[3] For the purpose of this ruling, the "Webb Prior Art" consists of the following related prior art: (1) U.S. Publication No. 2008/0245947 (the "Webb Publication" or "Webb Publ."), published on October 9, 2008 (Doc. No. 344-4); and (2) U.S. Patent No. 8,251,340 ("Webb"), which issued on August 28, 2012 (Doc. No. 344-5).

[4] Because the application resulting in the '903 Patent was filed after September 16, 2012, the effective date of the America Invents Act ("AIA"), the Court refers to the AIA version of § 103.

scope and content of the prior art; (ii) the difference between the prior art and the claimed invention; (iii) the level of ordinary skill in the field of invention; and (iv) any relevant secondary consideration that evidence that the claimed invention is not obvious. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). "Where . . . the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 550 U.S. at 427.

The Court now considers each of the *Graham* factors below.

## A. Scope and Content of the Prior Art (*Graham* Factor 1)

The scope of prior art includes "references that are within the field of the inventor's endeavor," as well as "analogous art [that] a person of ordinary skill would reasonably have consulted…and applied…in seeking a solution to the problem that the inventor was attempting to solve." *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods.*, 21 F.3d 1068, 1071 (Fed. Cir. 1994). LNC argues that all claims (*i.e.*, claims 1 through 9) of the '903 Patent are invalid based on Bass in combination with the Webb Prior Art.

### 1. U.S. Publication No. 2003/0152736 ("Bass") [Doc. No. 344-3]

Bass was filed with the United States Patent and Trademark Office on February 13, 2003, and published on August 14, 2003. Bass is titled "Plate Mat," and teaches "[a] plate mat (10) for use in serving food to prevent spillage of the food includes a mat having a substantially flat underside (U) for the mat to lay flat when placed upon a generally flat surface (T)." Bass at Abstract. Bass provides a problem statement in the Background of the Invention section as follows:

> This invention relates to place mats, and more particularly, to a plate mat for use in homes and restaurants. When dining in restaurants, small children, whether seated in high chairs, or at the table, tend to play with food placed in front of them, often dispersing it all over the tray, part of the table immediately in front of them, knocking it on the floor, and generally making a mess. Not only is the result unsightly, but the server or bus person has to spend a considerable amount of time cleaning up both the table and the area on the floor around it. Conventional place

mats are of little help in alleviating the problem since they are not fixed in place and can be shoved or moved about, actually helping scatter the food placed on them. The same is true when feeding the child at home; except here it is the parent who must clean up the mess.

*Id.* at ¶ 3.  To address this problem, Bass discloses "a plate mat for use in restaurants and homes," which "has an adhesive backing so it can be securely affixed to a table top or tray." *Id.* at ¶ 4.  Bass further teaches that "[t]he upper surface of the mat has an enclosed space formed by a ridge extending about the top face of the mat and defining the perimeter of the enclosed space." *Id.*  Bass states that "[f]ood placed in the enclosed space cannot now be readily pushed, shoved, or knocked off the mat by a child." *Id.*  Bass also states that "[s]ince food particles are not now scattered about, little additional clean-up is required." *Id.*

In describing the embodiment illustrated in Figure 2, Bass teaches that the top surface of mat "is raised surface or ridge 20 which extends about the mat and encloses a food serving section 22 generally in the middle of the mat." *Id.* at ¶ 14.



*Id.* at Figure 2. Bass further states that "[f]ood for the child is placed in the area 22, which is a clean, sanitary surface. . . . The height of the ridge is such that food placed in section 22 cannot readily be scattered outside this area, even if the child is extremely active." *Id.* at ¶ 14.

Bass also discloses that "[t]he size and shape of section 22 can be any number of convenient shapes including generally rectangular or square as shown in FIGS. 3A and 3B, circular or oval, as shown in FIGS. 3C and 3D, or other polygonal shapes as shown in FIGS. 3E and 3F." *Id.* at ¶ 15.



*Id.* at Figures 3A-3G. Bass further discloses that "[a]lthough not shown in the drawings, the shapes could be other well recognizable shapes such as star shapes, crescents, etc., or the outlines of animals or cartoon and similar characters." *Id.* at ¶ 15. Likewise, Bass teaches that "ridge 20 may include a segment 24 which divides food section 22 into separate compartments 22A and 22B," as illustrated in Figure 3G. *Id.* at ¶ 16.

### 2.  U.S. Publication No. 2008/0245947 (the "Webb Publication" or "Webb Publ.") [Doc. No. 344-4] and U.S. Patent No. 8,251,340 (the "Webb Patent" [Doc. No. 344-5]

As indicated in the footnote above, the "Webb Prior Art" consists of U.S. Publication No. 2008/0245947 (the "Webb Publication") [Doc. No. 344-4], and U.S. Patent No. 8,251,340 (the "Webb Patent") [Doc. No. 344-5]. The Web Publication was filed on November 2, 2005, and was published on October 9, 2008. The Webb Patent issued on August 28, 2012, and bears an earliest priority date of November 2, 2004. The Webb Publication and Webb Patent are titled "Gripping Mat," and generally share the same specification.

The Webb Publication teaches "[a] mat having a resiliently deformable mat portion and a securing element provided thereon for securing an item attached thereto against movement and relative to the mat portion is provided." Webb Publication at Abstract. The Webb Publication further states that "[t]he mat is arranged to grip a support surface on which the mat portion is laid, in use, by formation of at least a partial vacuum between the mat portion and the support surface upon deformation of the mat portion." *Id.*

The Webb Publication also states that the disclosed mat overcomes the disadvantages of the prior art, because it not only allows securing of the utensil relative to the support surface, but is also "particularly well adapted to easy storage and carrying as it may be rolled up, at least partially by virtue of its resilient deformability." *Id.* at ¶ 5. The Webb Publication adds that

"embodiments of the invention facilitate cleaning of the mat, the mat being made of a material suitable for a 'wipe clean' and for cleaning in a dishwasher." *Id.* The Webb Publication also notes that "[t]he invention has particular application to infant feeding and to training infants to feed. For example, a secure feeding bowl on the table of an infant's highchair removes much of the stress of the feeding experience for both the parent and infant alike." *Id.*

Referring to Figure 1, the Webb Publication discloses the following:

[A] mat generally designated 10 comprises a mat portion in the form of a thin layer of flexible material, for example plastics material such as a thermo plastic elastomer (TPE), silicone or rubber of low to medium-shore hardness (shore A28-30). As shown, the mat 10 is suitable for laying out flat on a support service 12 such as the table of an infant's highchair. The mat 10 is in a generally elliptical shape in this embodiment but may of course be of any suitable shape.



FIG. 1

*Id.* at ¶ 17, Figure 1. The Webb Publication further discloses that "mat 10 may be made at least in part from TPE, which is an inherently 'sticky' material, it will stick or adhere to a substantially smooth surface such as the feeding table 12 of an infant's highchair without transverse sticking." *Id.* at ¶ 21. Specifically, the Webb Publication teaches that "[w]ith the inherent stickiness of the mat 10, the plate 26, through the suction cup 14 is held to the feeding table 12. By creating the

small volume 38 which is a vacuum or at least a partial vacuum, this serves further to hold the mat 10 against the surface 12, thereby increasing the efficiency of the holding action of the mat 10 upon the surface 12 and in particular, enhancing the suction effect of the concavity 31." *Id.* at ¶ 21. The Webb Publication further discloses a second embodiment where "a sticky or adhesive[] may be applied to the underside of the mat 10 in order to increase the efficiency of the adhesive action to the surface 12." *Id.*

The Webb Publication also explains what happens when a user (an infant) attempts to lift the device from the table:

> Referring now to FIG. 4c, . . . the suction cup 14 continues to hold on to the feeding plate 26 such that a larger area 37a of deformation in the mat 10 results. Also as shown, the feeding plate 26 is lifted clear of the resilient ridge 22. The outcome of the pulling action 40 is that the pulling force is transferred from the feeding plate 26 through the suction cup 14 and the point of join 32 to the mat 10 such that the area 37a of the mat is pulled away from the table 12 causing a larger volume 42 of vacuum between the mat 10 and the surface 12. The resultant effect of this pulling force 40 is that the deformable properties of the mat 10 result in an increased holding action denoted by the large arrow 34a downwards to the surface 12 thereby holding the plate 26 close to the table 12. The properties of the mat and suction cup are such that an infant will not have the required strength in order to dislodge the mat from the table in this way.



FIG. 4C

*Id.* at ¶ 22, Figure 4C. The Webb Publication then explains the process for removing the mat from the underlying surface (*i.e.*, the table):

> Referring again to FIG. 5a, in order to remove the mat, and to overcome the formation of a vacuum between the mat 10 and the surface 12, a parent simply has to peel the mat from the table by grasping the mat at a point 46, for example, on the

mat 10 and pulling in the direction indicated by the arrow 47. By pulling in the direction shown, there is no formation of a vacuum between localised area of the mat 10 and the surface 12 and the mat 10 peels away from the surface 12 with little or no effort.



FIG. 5A

*Id.* at ¶ 24, Figure 5A.

In summary, there is not a genuine issue of material fact regarding the scope and content of the asserted prior art references. The Court now turns to the second *Graham* factor.

### B.  The Person of Ordinary Skill in the Art (*Graham* Factor 2)

LNC and EZPZ agree that a person of ordinary skill in the art would "have at least a bachelor's degree in mechanical engineering or product design (or equivalent degree or experience) with at least two years of practical experience in houseware products." [Doc. No. 382-2 at ¶ 26]. The parties also agree that Ms. Laurain did not qualify as a person of ordinary skill in the art at the time she conceived the claimed invention of the '903 Patent. [Doc. No. 382-2 at ¶ 28]. Thus, there is no genuine dispute as to the level of ordinary skill in the field of invention.

### C.  Differences Between the Prior Art and the Claimed Invention (*Graham* Factor 3)

#### 1.  The Claimed Invention: Claims 1 -9 of the '903 Patent

The '903 Patent is titled "Surface Contact Self-Sealing Integrated Tablewear and Dining Mat."  The '903 Patent issued on October 11, 2016, from U.S Patent Application No. 14/333,682 (the "'682 Application"), which was filed on July 17, 2014.  The Abstract of the '903 Patent states the following:

> A self-sealing integrated tableware and dining mat including a rubberlike planar portion having a raised perimeter delimiting at least one concavity above an upper surface and a suffuse undersurface disposed for sealable contact with an underlying surface upon which said mat is disposed, said sealable contact preventative of lateral displacement of the planar portion across the underlying surface, wherein said sealable contact creates a partial vacuum when attempts to separate the undersurface from the underlying surface are made except at an outer edge of the planar portion, whereby removal of the planar portion from the underlying surface is effective only by peeling the undersurface from the underlying surface starting first at the outer edge.

'903 Patent at Abstract.  The '903 Patent is directed at the same problem discussed in Bass and the Webb Publication, which was that young children "can be quite messy, even dislodging and upturning their plates and bowls to spill foodstuffs and beverages everywhere." *Id.* at 1:55–58. The solution disclosed in the '903 Patent is a "self-sealing integrated tableware and dining mat, whereby tableware (including bowls, plates, and other such concavities and receptacles as are suited for delimiting foodstuffs therein) is not separable from an underlying planar portion or placemat, and lateral displacement and simple overturning of said mat is preventable." *Id.* at 1:58– 64.   Thus, the "surface contact self-sealing integrated tableware and dining mat resists displacement and overturning effected by a clumsy or deliberate child." *Id.* at 2:9–11.

The '903 Patent includes three independent claims (*i.e.*, claims 1, 5, and 9), and six dependent claims.  Independent claims 1 and 5 of the '903 Patent recite the following:

> 1. A surface contact self-sealing integrated tableware and dining mat comprising a rubberlike planar portion having a raised perimeter delimiting at least one concavity

surrounding at least one receptacle above an upper surface and an entirely suffuse undersurface disposed for sealable contact with an underlying surface upon which said mat is disposed, said sealable contact preventative of lateral displacement of the planar portion across the underlying surface, wherein said sealable contact creates a partial vacuum when attempts to separate the undersurface from the underlying surface are made except at an outer edge of the planar portion, whereby removal of the planar portion from the underlying surface is effective only by peeling the undersurface from the underlying surface starting first at the outer edge.

\* \* \* \* \*

5. A surface contact self-sealing integrated tableware and dining mat comprising:
   a nontoxic polymeric planar portion;
   an outer edge parametrically bounding said planar portion;
   an undersurface entirely suffuse upon the planar portion, said undersurface disposed to sealably contact an underlying surface upon which the planar portion is disposed;
   an upper surface; and
   a raised perimeter disposed within the upper surface, said raised perimeter defining a concavity wrought above the upper surface of the planar portion to delimit at least one receptacle upon the planar portion;
   wherein the undersurface sealably contacts an underlying surface upon which the planar portion is disposed, said undersurface thereby preventing lateral displacement of the planar portion upon said underlying surface by frictional engagement therewith and, further, creation of a partial vacuum between the undersurface and the underlying surface when attempt is made to remove said planar portion away from said underlying surface, whereby foodstuffs are positional interior to the at least one receptacle, said receptacle thence maintained in desired position by action of the planar portion contacting said underlying surface, and removal of said planar portion from said underlying surface is effective only when said planar portion is lifted from said underlying surface first at the outer edge of the planar portion.

Remaining independent claim 9 is identical to claim 5 except in two respects.  First, claim 9 recites "a *silicone* planar portion," instead of a "*nontoxic polymeric* planar portion." *Compare id.* at 6:29 *and* 5:44. (emphasis added).  Second, claim 9 recites "when said planar portion is *separated* from said underlying surface," instead of "when said planar portion is *lifted* from said underlying surface." *Compare id.* at 6:54–6:55 *and* 6:13–15. (emphasis added).

Dependent claim 2 discloses a planar portion extending laterally beyond the "at least one concavity." *Id.* at 5:31–34.  Dependent claim 3 discloses a divided receptacle. *Id.* at 5:35–38.

Dependent claim 6 discloses the "at least one receptacle" is a bowl. *Id.* at 6:16–18.  Dependent claim 7 discloses the "at least one receptacle" has an ovoid portion with at least a pair of receptacles therein. *Id.* at 6:19–23.  Dependent claims 4 and 8 disclose a planar portion made of nontoxic silicone. *Id.* at 5:39–41, 6:24–26.

In the Claim Construction Order, the Court concluded that the preambles of claims 1, 5, and 9 are limiting. [Doc. No. 110 at 27].  The Court also required the "entirely suffuse undersurface" and the "undersurface entirely suffuse" to not include "other separate adhering elements." *Id.*  Specifically, the Court found that "[t]he prosecution history reflects that EZPZ distinguished its product from prior art, specifically arguing that its self-sealing claims teach away from an adhesive or suction cups." *Id.* at 24 (citing Doc. No. 79-7, 83-13).

### 2.   The Differences Between Bass and the Claimed Invention

Bass sought to solve the very same problem identified in the '903 Patent, and is nearly identical to the claimed invention.  Specifically, Bass notes that small children "tend to play with food placed in front of them, often dispersing it all over the tray, part of the table immediately in front of them, knocking it on the floor, and generally making a mess." Bass at ¶ 3.  Below is a side-by-side comparison of Figure 3C of Bass to a Figure 2 of the '903 Patent.



As indicated in the figures, both Bass and the '903 Patent disclose an "integrated tableware and

dining mat comprising a . . . planar portion having a raised perimeter delimiting at least one concavity surrounding at least one receptacle above an upper surface and an entirely suffuse undersurface." *Compare* '903 Patent Claim 1 *and* Bass at ¶¶ 14-16, Figures 3A-3G. Likewise, both Bass and the '903 Patent disclose an "integrated tableware and dining mat comprising: a . . . planar portion; an outer edge parametrically bounding said planar portion; an undersurface entirely suffuse upon the planar portion, . . . an upper surface; and a raised perimeter disposed within the upper surface, said raised perimeter defining a concavity wrought above the upper surface of the planar portion to delimit at least one receptacle upon the planar portion; . . . whereby foodstuffs are positional interior to the at least one receptacle, said receptacle thence maintained in desired position by action of the planar portion contacting said underlying surface, and removal of said planar portion from said underlying surface is effective only when said planar portion is lifted [or separated] from said underlying surface first at the outer edge of the planar portion." *Compare* '903 Patent Claims 5, 9 *and* Bass at ¶¶ 14-16, Figures 3A-3G.

Turning to the dependent claims, both Bass and the '903 Patent disclose "the planar portion extends laterally beyond the raised perimeter whereby the planar portion extends surrounding the at least one concavity," and "the at least one receptacle is divided therein, said at least one receptacle appropriate for holding differentiated foodstuffs therein." *Compare* '903 Patent Claims 2, 3 *and* Bass at ¶¶ 14-16, Figures 3A-3G. Likewise, both Bass and the '903 Patent disclose that "the at least one receptacle is a bowl," or "the at least one receptacle includes an ovoid portion and at least a pair of receptacles disposed within the bounds of the ovoid portion for separate and selective positioning of foodstuffs." *Compare* '903 Patent Claims 6, 7 *and* Bass at ¶¶ 14-16, Figures 3A-3G.

The claims of the '903 Patent contain an additional limitation that specifies the material of

the "integrated tableware and dining mat," and further recites a "self-sealing" property of the material.  For example, claim 1 of the '903 Patent recites that the integrated tableware and dining mat is "self-sealing," and that the planar portion is "rubberlike."  Claim 1 further recites that the planar portion includes "an entirely suffuse undersurface disposed for sealable contact with an underlying surface upon which said mat is disposed, said sealable contact preventative of lateral displacement of the planar portion across the underlying surface, wherein said sealable contact creates a partial vacuum when attempts to separate the undersurface from the underlying surface are made except at an outer edge of the planar portion, whereby removal of the planar portion from the underlying surface is effective only by peeling the undersurface from the underlying surface starting first at the outer edge."  Similarly, independent claims 5 and 9 recite that the "self-sealing" integrated tableware and dining mat includes a "nontoxic polymeric planar portion" or a "silicone planar portion."  Dependent claims 4 and 9, further specify that "the rubberlike planar portion" or "the nontoxic polymeric planar portion" is silicone.

The Court notes that Bass does not disclose or specify a material for its integrated tableware and dining mat.  Also, Bass teaches that the underside of its integrated tableware and dining mat includes an adhesive material. [Bass at ¶ 13].  As discussed above, the Claim Construction Order construed the recited "entirely suffuse undersurface" and the "undersurface entirely suffuse" to not include "other separate adhering elements" (*e.g.*, an adhesive or suction cups). [Doc. No. 110 at 27].  Thus, Bass does not anticipate the claims of the '903 Patent, because a claim is anticipated only "if each and every limitation is found either expressly or inherently in a single prior art reference," *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 21 (Fed. Cir. 2012).  Therefore, whether the asserted claims are invalid must be analyzed for obviousness for purposes of this summary judgment motion.

### 3.   The Differences Between the Webb Prior Art and the Claimed Invention

A patent claim is invalid as "obvious" under 35 U.S.C. § 103 where "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  Obviousness is evaluated on a claim-by-claim basis. *See, e.g., Dystar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, 1372 (Fed. Cir. 2006) ("[W]e must evaluate obviousness on a claim-by-claim basis"), *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1359, 1370 (Fed. Cir. 2003) ("To be sure, it is permissible to group claims together for disposition where resolution involves the same issues of validity; however, the justification for such grouping is possible only where those issues are substantially materially identical. Where claims differ in scope in an aspect material to the analysis, those claims must be addressed individually.").

The Court concludes that there is no genuine issue of material fact regarding the differences between the prior art and the claimed invention.  Specifically, taking the evidence in the light most favorable to EZPZ as the non-movant, the asserted claim limitations would have been obvious to a person of ordinary skill in the art in the context of the Webb Prior Art.  In other words, knowing of the Webb Prior Art, a person of ordinary skill in the art would have known that the integrated tableware and dining mat disclosed in Bass could be made from a rubberlike, nontoxic material (*e.g.*, silicone) disclosed in the Webb Prior Art.  As discussed above, the Webb Prior Art is directed to solving the same problem disclosed in the '903 Patent.  Specifically, the Webb Publication states "[t]he invention has particular application to infant feeding and to training infants to feed. For example, a secure feeding bowl on the table of an infant's highchair removes much of the stress of the feeding experience for both the parent and infant alike." Webb Publication at ¶ 5.

Moreover, the Webb Publication specifically discloses the use of "plastics material such as

a thermo plastic elastomer (TPE), silicone or rubber of low to medium shore hardness (shore A28-30)" *Id.* at ¶ 17.  Thus, the Webb Publication explicitly teaches the material recited in claims 1, 4, 5, 8, and 9 of the '903 Patent.  Moreover, a person of ordinary skill in the art would have known that this material would be "self-sealing" and provide "sealable contact with an underlying surface upon which said mat is disposed" to prevent lateral displacement by forming a partial vacuum with the underlying surface, which can only be removed "by peeling the undersurface from the underlying surface starting first at the outer edge." '903 Patent at Claim 1.  Indeed, the Webb Publication teaches that this material is "an inherently 'sticky' material," which will allow the mat to "stick or adhere to a substantially smooth surface such as the feeding table 12 of an infant's highchair without transverse sticking." *Id.* at ¶ 21.

The Webb Publication further discloses that it is because of the "inherent stickiness of the mat" that enables "a vacuum or at least a partial vacuum, this serves further to hold the mat 10 against the surface 12, thereby increasing the efficiency of the holding action of the mat 10 upon the surface 12 and in particular, enhancing the suction effect of the concavity 31." *Id.*  Moreover, the Webb Publication presents the uses of an adhesive on the underside of the integrated tableware and dining mat as an *alternative* embodiment. *Id.* at ¶ 13.  In other words, the Webb Publication explicitly teaches that the "entirely suffuse undersurface" and the "undersurface entirely suffuse" does not need to include "other separate adhering elements," as required in the Claim Construction Order. [Doc. No. 110 at 27].

Finally, the Webb Publication discloses that "to remove the mat, and to overcome the formation of a vacuum between the mat 10 and the surface 12, a parent simply has to peel the mat from the table by grasping the mat at a point 46, for example, on the mat 10 and pulling in the direction indicated by the arrow 47. By pulling in the direction shown, there is no formation of a

vacuum between localised area of the mat 10 and the surface 12 and the mat 10 peels away from the surface 12 with little or no effort." [Webb Publication at para 24.  This is the final clause recited in independent claims 1, 5, and 9. '903 Patent at 5:27–30, 6:6:11–15, 6

In summary, the Court concludes that it would have been obvious to a person of ordinary skill in the art to make the "integrated tableware and dining mat" disclosed in Bass out of the rubberlike, nontoxic material disclosed in the Webb Publication.  Specifically, it would have been common sense to a person of ordinary skill in the art to make the integrated tableware and dining mat out of the disclosed material, because it "is an inherently 'sticky' material," which "will stick or adhere to a substantially smooth surface such as the feeding table 12 of an infant's highchair without transverse sticking." Webb Publication at ¶ 21.  In reaching this conclusion, the Court is mindful that it is not to analyze the obviousness of the patented invention with hindsight. *KSR*, 550 U.S. at 421 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning.").

### 4.  EZPZ's Arguments that the Claimed Invention is not Obvious

EZPZ's primary argument is that the "nonobvious and patented elements of the '903 Patent" are as follows:

1. An integrated tableware (such as a bowl) and a mat all made of a rubberlike material.
2. The bottom of the mat has a sealable contact that prevents side to side lateral displacement.
[3]. The bottom of the mat's sealable contact with an underlying surface is such that any upward force in any direction applied to the tableware (that is the only item that can be grabbed) is not effective; i.e., it cannot be moved in this manner.
[4]. The bottom cannot have an adhesive or a suction cup or other adhesive element forming the sealable contact.
[5]. The mat can be lifted by peeling from the outer edge.

[Doc. No. 382-1 at 12]. [5]  EZPZ argues that "[i]t is this combination of key elements 1, 3 and 4

--------

[5]  EZPZ's opposition identifies five "Elements" of the "'903 Claim 1." [Doc. No. 382-1 at 20].

that the USPTO held 'was not obvious to try' and so the '903 Patent is thus nonobvious." *Id.* at 20.  As discussed above, making the integrated tableware and dining mat disclosed in Bass out of the rubberlike, nontoxic material disclosed in the Webb Publication would have been obvious, because it would yield the predictable results of allowing the inherently "sticky" material "to stick or adhere to a substantially smooth surface such as the feeding table 12 of an infant's highchair without transverse sticking." Webb Publication at ¶ 21.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR*, 550 U.S. at 416.

EZPZ admits the predictability of these results when it argued the following in its opposition:

> The established principle of Boyle's law, which would be known to the hypothetical POSITA is taught in high school, that fifteen pounds per square inch of the weight of air (atmospheric pressure all around us) will exert a great force on a flat rubberlike mat when you pull it up from the middle, and no air can intrude from the outer edges into the center of the mat. When the center of the mat is lifted up a little bit, no air can travel from the outer edge of a silicone mat into the center. Thus, an expanded volume under the center of the mat forms a partial vacuum because the same number of air molecules now resides in a larger space.

(Doc. No. 382-1 at 14-15) (citations omitted).  Thus, it is undisputed that the hypothetical person of ordinary skill in the art would understand the principle of Boyle's law and its application to a silicone mat.  Indeed, this is exactly what the Webb Publications discloses. Webb Publication at ¶ 21 ("By creating the small volume 38 which is a vacuum or at least a partial vacuum, this serves further to hold the mat 10 against the surface 12, thereby increasing the efficiency of the holding action of the mat 10 upon the surface 12 and in particular, enhancing the suction effect of the

---

EZPZ did not provide a citation for the five "Elements."  The Court presumes that EZPZ is referring to the numbered paragraphs on page 12 of its brief, but those paragraphs are 1, 2, 2, 3, 4, 5.  The Court assumes that paragraph 5 was inadvertently numbered, and that 1, 2, 2, 3, and 4 are really 1, 2, 3, 4, and 5.  Thus, the Court renumbered these elements as indicated above.

concavity 31."). Therefore, it would have been common sense to the hypothetical person of ordinary skill in the art to make the integrated tableware and dining mat disclosed in Bass out of the rubberlike, nontoxic material disclosed in the Webb Publication.

EZPZ next argues that the patent examiner "got it right." [Doc. No. 382-1 at 10]. The Court notes that this is always the starting point because a patent is presumed valid. And the party challenging validity must provide clear and convincing evidence. *Microsoft*, 564 U.S. at 95; 35 U.S.C. § 282. However, while arguments of how the examiner got it right can be persuasive, the fact that the examiner allowed the patent is not dispositive as it relates to the defense of patent invalidity. Likewise, the experience of the patent examiner and/or the experience of Supervisory Patent Examiner does not dispose of the issue. [Doc. No. 382-1 at 16-18].

EZPZ also argues that "Independent Examiners in four countries, Canada, Singapore, Russia and America, reached the same non-obvious determinations . . ." *Id.* at 10. The court in *In re Larsen* summarized the issue as follows: "We have repeatedly held that, in view of the differences between foreign patent laws and those of the United States, the allowances of patent claims in foreign countries is not pertinent to the question whether similar claims should be allowed here."). *In re Larsen*, 292 F.2d 531, 533 (C.C.P.A. 1961). Thus, the fact that four other countries granted the same or similar patent rights to EZPZ is unpersuasive and does not create a triable issue of fact. *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 907-08 (Fed. Cir. 1986) (rejecting as "specious" the argument that the Court should "adopt the conclusion of a German tribunal" because "[t]he patent laws of the United States are the laws governing a determination of obviousness/nonobviousness of a United States patent in a federal court.");

EZPZ further argues that the Webb Publication was cumulative of the prior art before the examiner, and "disclosure of it would not have changed the outcome as proven by its [inclusion]

as part of the International Patent Court analysis." [Doc. No. 382-1 at 13, 14].  Again, the prosecution conducted in foreign countries is unpersuasive and does not create a triable issue of fact.  Moreover, the Court disagrees that the *Stravitz* Patent (U.S. Patent No. 8,864,218) was cumulative of the Webb Publication.  EZPZ admits that neither the patentee, Ms. Laurain, nor her patent agent, Benjamin Williams ("Mr. Williams") disclosed the Webb Publication to the USPTO. [Doc. No. #384-2 at ¶ 58].

It is also not disputed that the Webb Prior Art was not before the examiner during the prosecution of the application that lead to the '903 Patent.  In addition, it is not disputed that Laurain argued that the *Stravitz* Patent did not have a mat, and thus no planar portion with a suffuse undersurface as disclosed in the pending claims. *Id.* at ¶¶ 21-23.  In contrast, Webb fully discloses a mat portion with a suffuse undersurface and therefore is not "substantially similar" to the *Stravitz* Patent. [Webb Publication at ¶ 17].  Simply stated, the Webb Prior Art was not cumulative because the examiner had no patent reference before her that included a silicone mat.

In fact, during prosecution of the '682 Application, Williams and Laurain criticized the examiner for assuming that making Bass out of silicone would result in tableware that functions the same way as the claimed invention. [Dkt. #344-1 at 317].  They even insisted that the examiner provide a "teaching" that supported the examiner's assumption. [Dkt. #344-1 at 317; Dkt. No. 382-2 at ¶ 18].  Had either Ms. Laurain or Mr. Williams disclosed the Webb Prior Art to the USPTO at that time, then EZPZ would have a more plausible argument now. [Dkt. #382-2 at ¶¶ 23-24]. To be sure, when the examiner was made aware of the Webb Prior Art in a subsequent application for parallel method claims, the examiner rejected the claims based on the Webb Prior Art. *Id.* at ¶¶ 32-34, 68-72.  Accordingly, the Webb Prior Art was not cumulative of the prior art before the examiner during prosecution of the application that lead to the '903 Patent.

EZPZ next argues that examiners would be and were clearly aware of the basic physics properties of atmospheric pressure creating a self-sealing property of a flat silicone mat on a surface. [Doc. No. 382-1 at 15].  As discussed above, the Court agrees that "[t]he established principle of Boyle's law, which would be known to the hypothetical POSITA is taught in high school, that fifteen pounds per square inch of the weight of air (atmospheric pressure all around us) will exert a great force on a flat rubberlike mat when you pull it up from the middle, and no air can intrude from the outer edges into the center of the mat." *Id.* at 14-15.  In fact, this confirms that making the integrated tableware and dining mat disclosed in Bass out of the rubberlike, nontoxic material disclosed in the Webb Publication would have been obvious to a person of ordinary skill in the art.  It would yield the predictable results of allowing the inherently "sticky" material "to stick or adhere to a substantially smooth surface such as the feeding table 12 of an infant's highchair without transverse sticking" based on the established principle of Boyle's law. Webb Publication at ¶ 21.

Notwithstanding, taking the facts in the light most favorable to EZPZ, and assuming that the references are cumulative, this alone is not dispositive to the obviousness inquiry.  While prior art considered by the Patent Office may be afforded less weight, patents may still be invalidated by prior art considered by the Patent Office. For example, in *PharmaStem Therapeutics*, PharmaStem argued that the jury's verdict of nonobviousness was supported by the decision of the Patent Office to issue the patents-in-suit over the same references that defendants cited at trial. *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1366 (Fed. Cir. 2007).  The Federal Circuit analyzed these references, found that there was "clear and convincing evidence that the asserted claims of the [patents-in-suit] would have been obvious and that it was unreasonable for the jury to reach the opposite conclusion," and reversed the district court's denial of judgment as

a matter of law. *Id.*  Here, the Court has carefully considered Bass and the Webb Prior Art and concludes that they present a prima facie case of obvious.

EZPZ stipulates that the Webb Publication discloses silicone, but argues that "being silicone does not automatically mean that the prior art self-seals." [Doc. No 382-1 at 22]. According to EZPZ, "many silicones fail to self-seal as noted in the '903 file history such as mouse pads, familiar to most computer users." *Id.* at 23.  The problem with EZPZ's argument is that the Webb Publication explicitly teaches that the disclosed material self-seals.  Specifically, the Webb Publication states that the material is inherently "sticky" and enables the mat "to stick or adhere to a substantially smooth surface such as the feeding table 12 of an infant's highchair without transverse sticking." Webb Publication at ¶ 21.  Webb teaches that "[b]y creating the small volume 38 which is a vacuum or at least a partial vacuum, this serves further to hold the mat 10 against the surface 12, thereby increasing the efficiency of the holding action of the mat 10 upon the surface 12 and in particular, enhancing the suction effect of the concavity 31." *Id.*  Therefore, making the integrated tableware and dining mat disclosed in Bass out of the rubberlike, nontoxic material disclosed in the Webb Publication would have been obvious, because it would yield the predictable results of allowing the inherently "sticky" material to self-seal to a smooth surface.

Finally, there is also no evidence that the prior art teaches away from making the integrated tableware and dining mat disclosed in Bass out of the rubberlike, nontoxic material disclosed in the Webb Publication.  Instead, the Webb Publication explicitly teaches using an adhesive on the underside of the integrated tableware and dining mat as an *alternative* embodiment. Webb Publication at ¶ 13. In other words, the Webb Publication explicitly teaches that the "entirely suffuse undersurface" and the "undersurface entirely suffuse" does not need to include "other separate adhering elements," pursuant to the Court's Claim Construction Order. [Doc. No. 110 at

27]. Therefore, the Court concludes that a person of ordinary of skill in the art with knowledge of the prior art discussed above, would find that making the making the integrated tableware and dining mat out of silicone would have been obvious. *KSR Int'l*, 550 U.S. at 420. ("Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.").

### D.  Secondary Considerations of Non-Obviousness (*Graham* Factor 4)

If a prima facie case of obviousness has been established, the burden then shifts to the patent holder to present evidence of secondary considerations of non-obviousness to overcome this prima facie showing. *See, e.g., In re Huang*, 100 F.3d 135, 139 (Fed.Cir. 1996). Secondary considerations can include, among other things, evidence of commercial success, long-felt but unsolved needs, and/or the failure of others. *See Graham*, 383 U.S. at 17-18. Secondary considerations serve "to guard against slipping into use of hindsight and to resist the temptation to read into the prior art the teachings of the invention in issue." *Id.* at 36 (citations omitted).

EZPZ argues that "[t]he amount of secondary considerations has increased tenfold." [Doc. No. 382-1 at 25]. LNC responds that EZPZ "offers only attorney argument and fails to cite any record evidence in support of these considerations" [Doc. No. 412 at 13]. The Court agrees with LNC. Regarding the cumulative sales, EZPZ does not provide any record evidence to support the numbers stated in its brief. Instead, EZPZ references Exhibits B and C that are different from the actual exhibits B and C filed, and references an Exhibit H that does not appear to be filed into the record. [Doc. No. 382-1 at 25, 26].

Notwithstanding, taking the sales number in the light most favorable to EZPZ, the numbers alone fail to reveal EZPZ's marketing and expenses or its profits. Indeed, Ms. Laurain filed a declaration that details significant marketing and advertising activities for the EZPZ Happy Mat

occurring between July 2014 to January 2016. [Dkt. #392-4 at ¶¶ 4-18].  As a result, EZPZ's stated sales figures have no evidentiary nexus to the '903 Patent. *See, e.g. MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1336 (Fed. Cir. 2014) ("Merely stating—with no supporting figures or data—that the V3 was more successful than the V2 is insufficient on its own to establish that the V3 has been a 'commercial success' and that its success was attributable to the claimed design features.").

EZPZ also argues that Exhibit C shows over thirty copyist.  As discussed above, EZPZ's reference to Exhibit C is different from the actual exhibit C filed. [Doc. No. 382-1 at 25].  Notwithstanding, taking the copyist statement in the light most favorable to EZPZ, it is still insufficient to rebut the prior art references showing the invention would have been obvious to one skilled in the art. *See Cable Elec. Products, Inc. v. Genmark, Inc,.* 770 F.2d 1015, 1028 (Fed. Cir. 1985) ("It is simplistic to assert that copying per se should bolster the validity of a patent.").

Finally, EZPZ argues that "[s]econdary considerations must be considered *first*." [Doc. No. 382-1 at 26] (emphasis added).  This is an incorrect statement of the law.  Evidence of secondary considerations is always relevant, but it does not suffice to overcome a strong showing of obviousness in a case in which obviousness is clear from a comparison of the prior art references and the patent in suit. *See Western Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1373 (Fed. Cir. 2010); *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007).  The Federal Circuit consistently holds that while they must be considered, "secondary considerations of nonobviousness … simply cannot overcome a strong prima facie case of obviousness." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (citing authorities).  This is such a case,

as the Court concludes that the showing of obviousness in this case is compelling and is not called into doubt by the evidence of secondary considerations.

**E.  The Claims of the '903 Patent are Invalid**

LNC has established a prima facie case of obviousness as to all claims of the '903 Patent, and EZPZ has not submitted sufficient evidence to support triable issues of fact to rebut that case through secondary considerations of non-obviousness.  Accordingly, in considering the *Graham* factors, the Court concludes that there is clear and convincing evidence that the claims of the '903 Patent are invalid as being obvious in light of Bass in combination with the Webb Publication.

**IV.     CONCLUSION**

For the reasons stated above, LNC's Sealed "Motion for Partial Summary Judgment of Invalidity of the '903 Patent for Obviousness and Dismissal of Infringement Counterclaims (Counts I and XII)" [Doc. No. 348] is GRANTED.  Specifically, the Court holds that all claims of the '903 Patent are invalid.  The Court will enter a separate judgment dismissing with prejudice EZPZ's infringement Counterclaims (Counts I and XII).

LNC indicated that a number of other motions filed by LNC would be rendered moot if the Court granted the present motion.  [Doc. No. 412 at 5 n.2].  Therefore, LNC's "Motion for Partial Summary Judgement of No Literal or Induced Infringement of the '903 Patent (Counts 1 and XII)" [Doc. No. 332]; LNC's Sealed "Motion for Partial Summary Judgment of No Infringement of the '903 Patent by the LNC Re-designed Products" [Doc. No. 351]; LNC's Sealed "Motion to Exclude Testimony of EZPZ's Expert Michal Henley" [Doc. No. 354]; LNC's Sealed "Motion for Partial Summary Judgment of No Infringement of the '903 Patent" [Doc. No. 356]; LNC's Sealed "Motion for Partial Summary Judgment Dismissing EZPZ's Claims for Willful Infringement" [Doc. No. 361]; LNC's Sealed "Motion for Partial Summary Judgment that Literal

Infringement of the '903 Patent by the Re-designed Products Invalidates Certain Claims of the '903 Patent for Anticipation" [Doc. No. 362]; and LNC's Sealed "Motion for Partial Summary Judgment of Ensnarement" [Doc. No. 364] are DENIED AS MOOT. The Court further finds that EZPZ's Sealed "Motion to Exclude Plaintiff's Expert Vincent Valderrama" [Doc. No. #365] is also rendered moot. Therefore, EZPZ's Sealed "Motion to Exclude Plaintiff's Expert Vincent Valderrama" [Doc. No. #365] is DENIED AS MOOT.

Monroe, Louisiana, this 18th day of May, 2020.

_____

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE