UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LUV N' CARE | CIVIL ACTION NO. 3:16-00777 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LINDSEY LAURAIN, ET AL. | MAG. JUDGE PEREZ-MONTES |

**RULING**

This is a patent infringement case in which Plaintiff Luv n' care, Ltd. and Nouri E. Hakim (collectively, "LNC") seeks a declaratory judgment that it does not violate any existing intellectual property right of Defendant Eazy-PZ, LLC ("EZPZ"). Pending before the Court is EZPZ's Sealed "Motion to Strike Certain Expert Opinions of LNC's Damages Expert, Joshua Lynn" [Doc. No. 360]. LNC responded to the motion. [Doc. No. 395]. EZPZ filed a reply. [Doc. No. 424]. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

EZPZ asserts that LNC infringed U.S. Patent No. 9,462,903 (the "'903 Patent"). EZPZ moves the Court to exclude certain opinions of LNC's damages expert Mr. Joshua Lynn. EZPZ contends that Mr. Lynn introduces new facts into the record that were not disclosed during discovery. [Doc. No. 360-1 at 5]. Specifically, EZPZ argues that LNC failed to timely disclose the following alleged non-infringing alternatives included in Mr. Lynn's rebuttal report:

(1) Mat Design Group IV (hereinafter "Alleged Design Around");

(2) the Gerber Graduates Silicone MealMat (hereinafter "Gerber Product");

(3) the Tommee Tippee Explora Easi-Mat Placemat (hereinafter "Tommee Tippee Product");

(4) The First Years Disney Mickey Mouse/Minnie Mouse Silicone Placemat (hereinafter

"Disney Mat");

(5) Bumpkins;

(6) Bella Tunno;

(7) Re-Play;

(8) Beaba; and

(9) Oxo (No. 4 – No. 9 hereinafter "Competitor References")

*Id.* (collectively "Disputed Alternatives"). EZPZ contends that Mr. Lynn improperly relies on these alleged acceptable non-infringing alternatives in coming to his conclusions. *Id.* at 5-6. EZPZ also argues that Mr. Lynn offered no rational or support of how he came to the conclusion that the products listed above actually were acceptable, non-infringing alternatives. *Id.* at 6.

LNC responds that both it and EZPZ contemplated that damages evidence would be supplied by the experts. [Doc. No. 395 at 10]. LNC contends that the opening report of EZPZ's damages expert, Mr. Mark Pedigo ("Pedigo Report"), finally revealed his opinion and basis supporting his calculation of alleged damages. *Id.* LNC contends that it responded with Mr. Lynn's rebuttal report, which includes his opinion regarding acceptable non-infringing alternatives and the available means by which LNC could have designed around the '903 Patent. *Id.* LNC argues that these non-infringing alternatives and design-arounds rebut both lost profits and reasonable royalty damages. *Id.*

LNC further contends that EZPZ's initial disclosures combined with its discovery responses led LNC to understand that EZPZ would be addressing the issue of damages only during expert discovery. *Id.* at 12. LNC argues that it "was well justified in timely disclosing the availability of acceptable non-infringing alternatives and non-infringing design-arounds during expert discovery commencing with the Lynn Rebuttal Report." *Id.* According to LNC, EZPZ

brought the current situation upon itself, and "has no legitimate . . . argument for how LNC should have been required to rebut damages theories during fact discovery when EZPZ contemplated that it would not reveal its damages theories, calculations and underlying basis until expert discovery." *Id.* at 13. Finally, LNC argues that it did disclose the availability of acceptable non-infringing alternatives and non-infringing design-arounds prior to Mr. Lynn's rebuttal report. *Id.*

EZPZ replies that LNC cites no authority in support of its position that it did not need to disclose non-infringing alternatives until it was time to issue LNC's rebuttal expert report. [Doc. No. 424 at 2]. EZPZ also argues that including three of the nine Disputed Alternatives in the thousands of documents produced in this case is not a legally sufficient disclosure. *Id.* EZPZ further contends that LNC's opposition fails to show that Mr. Lynn's opinion amounts to more than conclusory statements and speculation. *Id.* Therefore, EZPZ moves the Court to strike Mr. Lynn's opinions regarding non-infringing alternatives. *Id.*

## II. ANALYSIS

The goal of lost profit damages is to place the patentee in the same position it would have occupied "but for" the infringement. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017). One "useful, but non-exclusive" method to establish the patentee's entitlement to lost profits is the *Panduit* test first articulated by the Sixth Circuit. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). Under the *Panduit* test, a patentee is entitled to lost profit damages if it can establish four things: (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). "Lost profits ordinarily cannot be recovered if acceptable non-infringing alternatives were available during the period of infringement." *Meridian Mfg. v. C&B Mfg.*, 340 F. Supp. 3d 808, 846 (N.D. Iowa 2018).

"Acceptable alternatives can also affect the reasonable royalty rate because it would influence the market and the amount a 'rational would-be infringer' would be willing to pay." *Id.* (quoting *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999)).

### 1. Insufficient Disclosure of Seven of the Nine Disputed Alternatives

EZPZ contends that it "sought to have LNC identify any allegedly acceptable non-infringing alternatives to the invention of the '903 Patent, as well as LNC's complete factual basis for contending that the alternative was acceptable and available." [Doc. No. 360-1 at 9]. In support of this contention, EZPZ states that it served the following request for interrogatory:

> <u>Interrogatory No. 18</u>: If LNC contends that it is aware of any available and acceptable non-infringing alternatives to the products claimed in the Patents-in-Suit, identify and describe in detail those alternatives, including, but not limited to, the basis for LNC's assertion that each such alternative is allegedly non-infringing, LNC's best alternative, when LNC first became aware if each such alternative, all associated costs that were or would be incurred by LNC in implementing each such alternative, and the acceptability and availability of each such alternative to LNC, LNC's customers, LNC's business partners (e.g., suppliers, vendors, etc.), and/or any purchaser/user of any such product.

*Id.* at 9 (citing Doc. No. 360-3 at 3-4). EZPZ contends that the substantive part of LNC's response to the interrogatory only identified the accused products in this case, and not any of the Disputed Alternative, as non-infringing alternatives. *Id.* at 10. EZPZ argues that no additional non-infringing alternatives were identified, and that the interrogatory response was not supplemented or amended. *Id.* EZPZ also argues that LNC has not provided any factual basis to support any allegedly acceptable non-infringing alternatives at any point during fact discovery. *Id.*

To further support its motion, EZPZ argues that the existence of non-infringing alternatives was a specified 30(b)(6) deposition topic identified, and that LNC did not identify any non-infringing alternatives when asked in its 30(b)(6) deposition. *Id.* (citing Doc. No. 360-4). According to LNC, the 30(b)(6) deponent specifically answered that it "can't speak to the

infringing or non-infringing of similar products offered by other companies." *Id.* (citing Doc. No. 30-5 at 70:23-71:16). With the exception of the Tommee Tippee mat, EZPZ argues that none of the prior art references mentioned in the 30(b)(6) deposition is relied upon in Mr. Lynn's report, and none of the alleged non-infringing alternations referenced in Mr. Lynn's report are identified by LNC in its 30(b)(6) testimony. *Id.* at 11. EZPZ contends that LNC had an obligation to disclose the allegedly non-infringing products and they failed to do so until its expert's report. *Id.* at 12.

With this background, EZPZ argues that Mr. Lynn's opinions as to *Panduit* Factor No. 2 must be stricken due to the untimely disclosure. *Id.* at 8. Regarding reasonable royalty, EZPZ argues that the most common approach for determining a reasonable royalty is called the hypothetical negotiation or the "willing licensor-willing licensee" approach. *Id.* (citing *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). The *Georgia-Pacific* test attempts to ascertain the royalty the parties would have agreed upon had they successfully negotiated an agreement before. According to EZPZ, Mr. Lynn's report relies on the alleged availability of non-infringing alternatives in support of several *Georgia-Pacific* factors. *Id.* at 8-9. Specifically, EZPZ contends that Mr. Lynn reiterates his analysis of *Panduit* Factor 2 as a basis for his opinion regarding *Georgia-Pacific* Factors 9, 10, 12, and 15. *Id.* at 9. EZPZ argues that these opinions should be stricken. *Id.*

In response, LNC does not dispute that EZPZ sought to have LNC identify allegedly acceptable non-infringing alternatives during discovery in Interrogatory 18. Furthermore, LNC does not dispute that it did not identify any of the Disputed Alternatives in its response to EZPZ's interrogatory. Instead, LNC contends that the burden to produce any evidence of acceptable non-infringing alternatives did not shift to LNC until after EZPZ put forward its opening expert's report on damages. [Doc. No. 395 at 11]. According to LNC, until Mr. Pedigo opined that there are no

acceptable non-infringing alternative or design-arounds in his opening expert report, LNC had no basis to believe that EZPZ was going to actually seek lost profit damages. *Id.* at 11-12. The Court disagrees with LNC's position, and finds it not only unpersuasive, but also contrary to the letter and spirit of the discovery process.

That said, the record indicates that LNC did identify one of the Disputed Alternative during its 30(b)(6) deposition. Specifically, Deposition Topic No. 64 sought information on: Any non-infringing alternatives. [Doc. No. 360-4 at 17]. In response to questions on this topic, LNC provided the following answer:

> Q   Okay. Are you aware of any non-infringing alternatives on the market? Let's set aside the accused products and Eazy-PZ's product.
>
> A   Okay. I think prior art that includes silicon placemats. It would include silicon--a general silicon placemat like Brinware, Momo Baby, and there's some others, all of which are made of either silicon or a thermal plastic rubber. I believe any of our silicon suction bowl products are non-infringing substitutes. I believe that there are other mats out there that incorporate a means by which it's a silicon mat with an attachment means for attaching a mating bowl to it. I'm thinking of a *Tommee Tippee* Magic something mat. There are other mats out there that are silicon and flat with suction cups or other adhering means attached to them. Specific products, I know I've seen them, but I cannot recall them. So, the prior art products, that includes that. Non-infringing alternatives, I can't speak to the infringing or non-infringing of similar products offered by other companies.

[Doc. No. 360-5 at 70:23-71:16] (emphasis added). Similarly, EZPZ's Pedigo Report recognized that "LNC identified mats that were generally offered on Amazon and mats supplied by: *Nuk* [Gerber Graduates MealMat][1], Summer, Brinware, Momo Baby, *Tommee Tippee* as well as silicone suction bowls as non-infringing alternatives." [Doc. No. 395-2 at 10] (emphasis added). Thus, as it relates to the Gerber Product and the Tommee Tippee Product identified, LNC was not required to further supplement its response to Interrogatory No. 18. Fed. R. Civ. P. 26(e)(1)(A)

---

[1] Mr. Michael Henley's report on validity ("Henley Rebuttal Report") refers to the Gerber Mat as the NUK Gerber Graduates MealMat. (Doc. No. 395-5 at 3).

(noting that a party need only amend an interrogatory response where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

Regarding the remaining previously undisclosed Disputed Alternatives, Rule 26 requires a party who has responded to an interrogatory to supplement its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). A party that fails to do so "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). LNC's response to Interrogatory No. 18 did not identify the remaining seven Disputed Alternatives included in Mr. Lynn's report. Consequently, a discovery violation occurred as it related to these Disputed Alternatives.

Therefore, the only remaining question is whether the violation was substantially justified or harmless. In evaluating whether a violation of Rule 26 is harmless, the Fifth Circuit considers four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A & M Research Found. v. Magna Transp.*, 338 F.3d 394, 402 (5th Cir. 2003). These factors support excluding the remaining seven Disputed Alternatives.

Starting with the first factor, the remaining seven Disputed Alternatives are important, but only to the extent the alternatives relate to damages or the value of the patented features. The remaining seven Disputed Alternatives are not, however, as important as a defense that would result in a finding of no liability. *See Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 1512334, at *5 (E.D. Tex. Apr. 27, 2017) (Bryson, J., sitting by designation)

(importance of the evidence factor requires "a pragmatic judgment as to the likelihood" that the evidence will support a successful defense).  The important of the evidence, in other words, weighs in favor of excusing the violation, but the factor is not as overwhelming as it would be for a case-dispositive defense.

Regarding the second factor, the prejudice to EZPZ is substantial.  LNC has served: Final Invalidity Contentions, Amended Final Invalidity & Unenforceability Contentions, Second Amended Final Invalidity & Unenforceability Contentions, and First Amendment & Supplement to LNC's Second Amended Final Invalidity & Unenforceability Contentions, which EZPZ contends contains prior art references in over 5,000 pages of material. [Doc. No. 360-1 at 13].  It would be an undue burden and cost to EZPZ to try to anticipate which of these references cited in this context may also be argued to be an acceptable non-infringing alternative.

LNC's strategy to wait until the last minute to disclose information requested in May 2018, further prejudices EZPZ because it was deprived of the opportunity to have its technical expert opine on the reasons that the remaining seven Disputed Alternatives are not non-infringing alternatives.  LNC does not contend that it was not aware of the undisclosed Disputed Alternatives.  LNC also does not argue that it was not in a position to respond to the question posed to it.  Instead, LNC's argument is that it choose not to sufficiently respond because the burden to produce any evidence of acceptable non-infringing alternatives did not shift to LNC until after EZPZ put forward its opening expert's report on damages.  As discussed above, the Court disagrees.  LNC's disclosure of the remaining seven Disputed Alternatives in its rebuttal expert reports is too late to cure the prejudice.

As one example, LNC claims that the Alleged Design Around was mentioned in LNC's Second Amended and Supplemental Responses to EZPZ's Interrogatory No. 1. [Doc. No. 395 at

19]. The Alleged Design Around, however, was not identified as a non-infringing alternative in any of these documents or discovery responses. Instead, as conceded by LNC in its opposition, it was only mentioned as a fact supporting LNC's defense of non-infringement of the '903 Patent. [Doc. No. 395 at 19; Doc. No. 395-9 at 51-52].

Pursuant to *Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999), there is a presumption that when an alleged alternative is not on the market during the relevant period, it was not available as a non-infringing alternative during the critical time. The accused infringer bears the burden of showing the availability and acceptability of that alleged alternative during the relevant time. Because the Alleged Design Around was never disclosed as non-infringing alternatives that were "available" and "acceptable" during the relevant time, EZPZ was deprived of the opportunity to conduct discovery on this important area. LNC's disclosure of the Disputed Alternatives in its rebuttal report, after the close of fact and expert discovery, is too late to cure the prejudice.

The remaining factors do not weigh in favor of excusing the late disclosure. As for the third factor, any continuance would delay trial in a case pending that has been pending for close to four years. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 537 (5th Cir. 2003) (affirming district court's refusal to grant continuance when it would "unnecessarily delay the trial"). Similarly, LNC's explanation for its failure to disclose the remaining seven Disputed Alternatives weighs in favor of excluding these alternatives. LNC does not argue that it was not aware of the remaining seven Disputed Alternatives, but instead argues that it had no obligation to disclose them until after the close of discovery. This is incorrect and violates the letter and spirit of the discovery process.

The purpose of interrogatories is not only to ascertain facts but also to "determine what the

adverse party contends they are, and what purpose they will serve, so that the issues may be narrowed, the trial simplified, and time and expense conserved." *Baim & Blank, Inc v. Philco Distributors, Inc.*, 25 F.R.D. 86, 87 (E.D.N.Y. 1957). Discovery and pretrial procedures "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 986 (1958). The deliberate actions of LNC justifies excluding the remaining seven of the nine Disputed Alternatives.

Accordingly, the portions of Mr. Joshua Lynn's damages report related to the following Disputed Alternatives are stricken:

(1) Mat Design Group IV ("Alleged Design Around");

(2) The First Years Disney Mickey Mouse/Minnie Mouse Silicone Placemat ("Disney Mat");

(3) Bumpkins;

(4) Bella Tunno;

(5) Re-Play;

(6) Beaba; and

(7) Oxo (No. 4 – No. 9 "Competitor References")

The motion is otherwise denied as it relates to the following Disputed Alternatives:

(1) the Gerber Graduates Silicone MealMat ("Gerber Product"); and

(2) the Tommee Tippee Explora Easi-Mat Placemat ("Tommee Tippee Product").

### 2. Mr. Lynn's Opinions are Based on Sufficient Facts and Data

EZPZ does not challenge Mr. Lynn's qualifications and application of methodologies.

Instead, EZPZ complains about the facts and data Mr. Lynn relied on in forming his opinions. "[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its *admissibility* and should be left for the jury's consideration." *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (emphasis in original) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)). "Courts break from this rule in exceptional circumstances, such as when an expert's testimony relies on 'completely unsubstantiated factual assertions.'" *McCrary v. John W. Stone Oil Distrib., L.L.C.,* No. 14-880, 2016 U.S. Dist. LEXIS 23753, at *6 (E.D. La. Feb. 26, 2016) (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 n.4 (5th Cir. 2007)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Rideau v. Lafayette Health Ventures, Inc.*, No. 6:18-CV-00473, 2019 U.S. Dist. LEXIS 71101, at *13 (W.D. La. Apr. 26, 2019) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798 (1993)).

The Court finds that EZPZ's critiques of the allowed testimony regarding non-infringing alternatives go to the weight rather than admissibility of that testimony. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility."). As explained by the Supreme Court, "[u]nder settled evidence law an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert." *Williams v. Illinois*, 567 U.S. 50, 57, 132 S. Ct. 2221, 2228 (2012) (noting

that an expert may "explain the facts on which his or her opinion is based without testifying to the truth of those facts"). This is because when "experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed. Cir. 2003).

First, EZPZ contends that Mr. Lynn based his opinion on what products constitute non-infringing alternatives on Mr. Valderrama's expertise and qualifications. [Doc. No. 360-1 at 18-19]. "Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014). EZPZ provides no basis for why it would be improper for Mr. Lynn to rely upon the expertise and qualifications of Mr. Valderrama regarding non-infringing alternatives.

Moreover, the alleged deficiencies in Mr. Lynn's report for relying on Mr. Valderrama's analysis of the non-infringing alternatives does not affect admissibility. *SSL Servs., lLC v. Citrix Sys.*, No. 2:08-cv-158-JRG, 2012 U.S. Dist. LEXIS 76965, at *9 (E.D. Tex. June 4, 2012) (noting that deficiencies in an expert opinion "regarding non-infringing alternatives" are "a matter of weight, not admissibility" and declining to strike the expert report). Similarly, "even if there were a question of the competency of those transmitting the information to [the expert], it would be a matter affecting the weight, not the admissibility" of the expert's testimony. *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005) (noting that the "practice of employing experience to analyze data assembled by others is neither illicit nor unusual" for an expert).

LNC argues that Mr. Lynn based his opinion on information provided by Mr. Hakim, underlying conversations with a manufacturer regarding the cost of implementing the Alleged Design Around, and website descriptions of the non-infringing alternatives. [Doc. No. 395 at 25]

(citing Doc. No. 360-2 at ¶¶ 33-40). Accordingly, Mr. Lynn's report is more than conclusory and relies on sufficient facts and data in reaching the opinion. However, as indicated above, the Alleged Design Around is excluded because of LNC's failure to timely disclose it as a non-infringing alternative.

Second, EZPZ complains that Mr. Lynn has no evidence that the non-infringing alternatives were available during the time of infringement or that they are classified as acceptable alternatives to the '903 Patent. [Dkt. No. 360-1 at 18-19]. EZPZ's contention appears to be contradicted by the record before the Court. It appears that Mr. Lynn relies on retail websites indicating that the Gerber Mat has been available on Amazon.com since at least April 2015, and that the Tommee Tippee Mat has been available on Amazon.com since at least September 28, 2015. [Doc. No. 360-2 at ¶ 36]. As discussed above, EZPZ was aware of these Disputed Alternatives before they were further disclosed in Mr. Lynn's report. Thus, as it relates to the Gerber Product and the Tommee Tippee Product, EZPZ's argument is unpersuasive, and frankly appears to be a misrepresentation to the Court.

In summary, "[t]he Court's role as a gatekeeper does not replace either the traditional adversary system, or the jury's place within the system." *United States v. St. Bernard Par.*, No. 12-321, 2013 U.S. Dist. LEXIS 52989, at *10 (E.D. La. Apr. 12, 2013). When the parties' experts "rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one's expert testimony." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003).

In summary, Mr. Lynn based his opinion on the various documents provided to him as well as discussions with LNC's technical expert. EZPZ will have an opportunity through cross examination to attempt to convince the factfinder that the allowed Disputed Alternatives are

inadequate and/or not feasible during the critical time period. Accordingly, EZPZ's challenges to Mr. Lynn's conclusions are more appropriate for "vigorous cross-examination."

### III.  CONCLUSION

For the foregoing reasons, EZPZ's Sealed "Motion to Strike Certain Expert Opinions of LNC's Damages Expert, Joshua Lynn" [Doc. No. 360] is GRANTED IN PART and DENIED IN PART.

Monroe, Louisiana, this 26th day of May, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE