UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LUV N' CARE | CIVIL ACTION NO. 3:16-00777 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LINDSEY LAURAIN, ET AL. | MAG. JUDGE PEREZ-MONTES |

**RULING**

This is a patent infringement case in which Plaintiff Luv n' care, Ltd. and Nouri E. Hakim (collectively, "LNC") seeks a declaratory judgment that it does not violate any existing intellectual property right of Defendant Eazy-PZ, LLC ("EZPZ"). LNC offers the expert report of Mr. Robert John Anders in support of its claims. Pending before the Court is EZPZ's Sealed "Motion to Exclude the Testimony of Plaintiff's Expert John Anders." [Doc. No. 359]. LNC responded to the motion. [Doc. No. 397]. EZPZ filed a reply. [Doc. No. 427]. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**I.     BACKGROUND**

EZPZ asserts that LNC infringes EZPZ's U.S. Patent No. D745,327 (the "D327 Patent"), titled "Dining Mat With Integrated Tableware." LNC denies that it has infringed the D327 Patent, and offers the expert report of Mr. Robert John Anders in support of its claims. Mr. Anders opines that EZPZ's D327 Patent is invalid due to indefiniteness because its drawings are indefinite and it is not enabled. [Doc. No. 359-3, the "First Report"]. Mr. Anders also offers a rebuttal report to refute EZPZ's claims that LNC's accused products infringe the design patent. [Doc. No. 359-4, the "Second Report"].

EZPZ does not dispute Mr. Anders' qualifications as an industrial design engineer. [Doc. No. 359-1 at 6]. Instead, EZPZ contends that Mr. Anders does not apply the correct standard in

evaluating indefiniteness and enablement, and argues that his opinions are irrelevant and should be excluded from trial. *Id.* at 6. EZPZ further argues that Mr. Anders deliberately excluded a key element of the ornamental design of the D327 Patent identified by Mr. Anders as the elliptical and ovoid shapes in the center of the mat. *Id.* at 6-7.

## II. LAW AND ANALYSIS

Fed. R. Evid. 702 provides that a witness who is qualified "by knowledge, skill, experience, training, or education," may provide opinion testimony if that testimony will assist the trier of fact and "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The witness must possess "specialized knowledge, skill, experience, training, or education in the relevant field," in order to be qualified to express his expert opinion on the topic in issue. *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1110 (5th Cir. 1991).

The Supreme Court in *Daubert* charged trial courts with the task of determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).

> The *Daubert* opinion lists a number of factors that a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, any known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community . . . . These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered . . . . But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (internal citations omitted). In other words, "[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury," is not relevant to the case, and should be excluded. *Guile v. United States,* 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

### A. Mr. Anders' Non-infringement Opinion

#### 1. Parties' Positions

EZPZ moves the Court to exclude Mr. Anders' opinion regarding non-infringement of the accused product. [Doc. No. 427 at 2].[1] EZPZ contends that Mr. Anders' proposed claim construction invades the province of the Court. *Id.* at 6. EZPZ further contends that Mr. Anders improperly opines on the ultimate determination of non-infringement. *Id.* at 8. EZPZ also argues that Mr. Anders' opinions are "wholly conclusory" and improperly grounded in "unsupported speculation or subjective belief." *Id.* at 8-9.

LNC responds that Mr. Anders excluded the functional parts of the D327 design based on the disclosure of U.S. Patent No. 9,462,903 (the "'903 Patent"). [Doc. No. 397 at 19-20]. LNC contends that "Mr. Anders' claim construction was proposed to assist the court, and, for that reason, does not impinge on the court's prerogative." *Id.* at 21. LNC further argues that "Mr. Anders properly performed a visual comparison between the views of the claimed ornamental design of the D327 patent and the related views of the two accused LNC products, concluding that an ordinary observer with knowledge of the prior art would not be deceived in purchasing the LNC product believing it to be the patented design." *Id.* at 21-24. According to LNC, Mr. Anders' Second Report fully satisfies *Daubert* reliability and relevance standards. *Id.* at 24.

---

[1] EZPZ's Reply Brief presents the issues in a more concise and coherent manner than in its Opening Brief. Accordingly, the Court cites to EZPZ's Reply Brief to summarize the Parties' Positions.

### 2. Properly Construing the Claim of the D327 Patent

Determining whether a design patent claim has been infringed first requires properly construing the claim to determine its meaning and scope. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). "[A] design patent, unlike a utility patent, limits protection to the ornamental design of the article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). "If the patented design is primarily functional rather than ornamental, the patent is invalid." *Id.* at 1293-94. Functionality is defined as a design element that "is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Amini Innovation Grp. v. Anthony Cal. Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982)).

In *Egyptian Goddess, Inc. v. Swisa, Inc.*, the Federal Circuit clarified the appropriate form of claim construction in the context of design patents. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). The *Egyptian Goddess* Court explained that design patents "'typically are claimed as shown in drawings,' and that claim construction 'is adapted accordingly.'" *Id.* (quoting *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007)). This means that trial courts are not required "to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents." *Id.* Indeed, "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.*

Nonetheless, it may be helpful to point out "various features of the claimed design as they relate to the accused design and the prior art." *Id.* at 680. In addition, it may be helpful to address other issues that bear on the scope of the claim, such as "distinguishing between those features of the claimed design that are ornamental and those that are purely functional." *Id.* However, unlike in a utility patent case, courts are cautioned to avoid "excessive reliance on a detailed verbal

description in a design infringement case." *Crocs, Inc. v. ITC,* 598 F.3d 1294, 1302 (Fed. Cir. 2010).

### 3. The Court's Claim Construction

"In construing a design patent claim, the scope of the claimed design encompasses, 'its visual appearance as a whole,' and in particular 'the visual impression it creates.'" *Contessa Food Prods. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104-05 (Fed. Cir. 1996)). Here, the Court construes the design patent claim of the D327 Patent as follows:

> The design claimed in the D327 Patent is an ornamental design for a dining mat with integrated tableware in the shape of a smiling face, as shown and described in two figures. [Doc. No. 359-2 at 1-3].

> The two figures from the D327 Patent are reproduced below:





Fig. 2

[Doc. No. 359-2 at 2-3].

**4. Mr. Anders' Proposed Construction Incorrectly Excludes Ornamental Features**

The Court next considers the alleged functional features of the design. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."). Mr. Anders opines that the patented design is for a dining mat, which includes "raised three dimensional elliptical and ovoid partitions whose function is to keep separate and retain three different types of solid or semi solid food to be consumed by infants and/or children." [Doc. No. 359-4 at ¶ 39]. The Court agrees that a dining mat will inherently include functional aspects that serve the purpose of retaining food. However, while "[t]he elements of the design may indeed serve a utilitarian purpose . . . it is the ornamental aspect that is the basis of the design patent." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). Thus, for purposes of claim construction, the Court must

distinguish the purely functional elements of the design, which are not protected, from the particular ornamental features of those elements that are protected.

Mr. Anders opines that "the raised three dimensional elliptical and ovoid partitions … **must be considered to be functional, and not part of the ornamental design claimed in the D327 patent.**" [Doc. No. 359-4 at ¶ 39] (emphasis in original). The Court disagrees that these features are purely functional, and finds that these features are part of the ornamental design. Mr. Anders' Second Report provides two tables that illustrate what he contends is relevant prior art.



Case 3:16-cv-00777-TAD-JPM   Document 640   Filed 08/24/20   Page 8 of 18 PageID #: 24676

| | |
|---|---|
| <br>D226,830 Fig. 1<br>For an enlargement of this image, see Exhibit F 3. | <br>D623,902 Fig. 1<br>For an enlargement of this image, see Exhibit F 4. |
| <br>D573,940 Fig. 1<br>For an enlargement of this image, see Exhibit F 5. | <br>D399,095 Fig. 1<br>For an enlargement of this image, see Exhibit F 6. |
| <br>D426,110 Fig. 1<br>For an enlargement of this image, see Exhibit F 7. | <br>D271,932 Fig. 1<br>For an enlargement of this image, see Exhibit F 8. |

## TABLE 6
### ANALYSIS OF THE D327 PATENT WITH RELEVANT PRIOR ART

| | |
|---|---|
| <br>D368,409 Figs. 4 and 5<br>For an enlargement of this image, see Exhibit G 1. | <br>D373,933 Figs. 2 and 4<br>For an enlargement of this image, see Exhibit G 2. |



D164,669 Figs. 1 and 2

For an enlargement of this image, see Exhibit G 3.



D291,042 Figs. 2 and 3

For an enlargement of this image, see Exhibit G 4.



D188,502 Figs. 1 and 2

For an enlargement of this image, see Exhibit G 5.



1,848,066 Figs. 1 and 2

For an enlargement of this image, see Exhibit G 6.



D568,110 Fig. 1

For an enlargement of this image, see Exhibit G 7.



D376,295 Fig. 1

For an enlargement of this image, see Exhibit G 8.



D547,127 Fig. 2

For an enlargement of this image, see Exhibit G 9.



D152,312 Fig. 2 (Image Rotated)

For an enlargement of this image, see Exhibit G 10.

*Id.* at ¶¶ 48, 50.

When considered in light of the identified prior art, it is apparent that the configuration of the raised three dimensional elliptical and ovoid partitions is not dictated by the design's functional purpose as a dining mat with integrated tableware. Indeed, the identified prior art does not indicate or suggest that the same configuration of these elements is required or even desired. *See Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1049 (D. Ariz. 2009) ("If, on the other hand, 'there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.'") *aff'd* 597 F.3d 1288 (Fed. Cir. 2010) (quoting *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993)).

For example, the prior art illustrates that the relative location, size, and shape of the raised partitions can vary widely and is independent of the function of retaining food. One specific example of this is comparing D409 to D312, as illustrated below:



As shown, the number of partitions, the relative location of the partitions, and the size and shape of the raised partitions are very different. Moreover, these differences are independent of the function of retaining food. Accordingly, the prior art indicates that there are alternative designs that do not adversely affect the utility of the specified article, and that the arrangement of these elements in the design are not dictated by function. *Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997).

In sum, the ornamental design of these elements is not "essential to the use or purpose of the article or … affects the cost or quality of the article." *Amini Innovation Grp. v. Anthony Cal. Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, 102 S. Ct. 2182, 72 L. Ed. 2d 606 (1982)). Accordingly, Mr. Anders' exclusion of these elements from his proposed claim construction was incorrect. Thus, the opinions of Mr. Anders that are based on his proposed construction are unreliable and contrary to the law in this case, and are thereby excluded. However, Mr. Anders is not precluded from testifying as to his factual analysis of the D327 Patent and the accused products, to the extent that it was properly disclosed and is not based on or in any way relies on his proposed claim construction.

That said, no expert is allowed to testify on the ultimate conclusion of infringement or non-infringement of the D327 Patent. A jury is "a panel of ordinary observers capable of making a factual determination as to whether they would be deceived by an accused device's design." *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 821 (Fed. Cir. 1992) (citing *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 530 (1871)). Accordingly, an expert opinions on ordinary observers' thoughts or perceptions will not assist "the trier of fact to understand the evidence or to determine a fact in issue," and is excluded. Fed. R. Evid. 702.

Finally, EZPZ contends that Mr. Anders' opinion should be excluded because he applied the point of novelty test. [Doc. No. 359-1 at 27]. In *Egyptian Goddess*, the Federal Circuit held that "the 'point of novelty' test should no longer be used in the analysis of a claim of design patent infringement. … [U]unlike the point of novelty test, the ordinary observer test does not present the risk of assigning exaggerated importance to small differences between the claimed and accused designs relating to an insignificant feature simply because that feature can be characterized as a point of novelty." *Egyptian Goddess*, 543 F.3d at 677. LNC argues that Mr. Anders specifically stated that he "is not defining or delineating any points of novelty." [Doc. No. 397 at 25] (citing Doc. No. 359-4 at ¶ 45.2). EZPZ does not provide any analysis or a citation to the record where it contends that Mr. Anders applied the point of novelty test. Accordingly, this aspect of EZPZ's motion is denied.

## B. Mr. Anders' Invalidity Opinion

### 1. Parties' Positions

EZPZ argues that Mr. Anders does not apply the correct standard in evaluation of indefiniteness and enablement of the D327 Patent, and moves the Court to exclude his opinions

regarding invalidity. [Doc. No. 427 at 2].[2] According to EZPZ, Mr. Anders focuses on the "height of the central design element and its' relationship to the base element." *Id.* at 2, 4. EZPZ argues that the testimony is not relevant and will not assist the trier of fact to understand the evidence or to determine a fact at issue. *Id.* at 5. EZPZ further argues that Mr. Anders' opinions are based on not being able to manufacturer or replicate, which it contends is not proper analysis of the law. *Id.* Finally, EZPZ contends that the Federal Circuit has rejected Mr. Anders' opinions that the D327 Patent has an insufficient number of drawings. *Id.* at 5-6 (citing *In re Maatita*, 900 F.3d 1369, 1378-79 (Fed. Cir. 2018)).

LNC responds that Mr. Anders applies the appropriate methodology to opine that the D327 Patent is indefinite and non-enabling under 35 U.S.C. ¶ 112. [Doc. No. 397 at 5]. LNC argues that Mr. Anders analyzed the patent drawings to determine whether there are a sufficient number of views to constitute an adequate disclosure of the appearance of the design. *Id.* at 6. LNC contends that Mr. Anders concluded that the D327 Patent is indefinite and non-enabling because the height of the central raised structure cannot be determined from the information in the patent. *Id.* LNC argues that Mr. Anders' opinions are based on sufficient facts and a reliable methodology. *Id.* at 10. LNC further argues that Mr. Anders' opinions are not contrary to Federal Circuit case law. *Id.* at 14-17. Finally, LNC contends that EZPZ's allegations go directly to the merits of LNC's defense, not Mr. Anders' methodology. *Id.* at 17.

### 2. Mr. Anders' Opinions are not Contrary to Federal Circuit Case Law

EZPZ argues that the definiteness and enablement requirements come from 35 U.S.C. § 112, pursuant to 35 U.S.C. § 171. [Doc. No. 359-1 at 8]. EZPZ states that 35 U.S.C. §112(a)

---

[2] EZPZ's Reply Brief presents the issues in a more concise and coherent manner than in its Opening Brief. Accordingly, the Court cites to EZPZ's Reply Brief to summarize the Parties' Positions.

provides the enablement requirement, and that 35 U.S.C. §112(b) sets forth the definiteness requirement. *Id.* A review of Mr. Anders' First Report indicates that this is the standard he applied. [Doc. No. 359-3 at 10] (quoting 35 U.S.C. §112(a) and §112(b)).

EZPZ further argues that "a design patent is indefinite under § 112 if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable." [Doc. No. 427 at 4] (citing *In re Maatita*, 900 F.3d at 1377). According to EZPZ, Mr. Anders "utterly disregard[ed] the Court of Appeals of the Federal Circuit and a progeny of established patent law." [Doc. No. 359-1 at 11]. Specifically, EZPZ argues that Mr. Anders admitted that he disagrees with the *Maatita* decision. *Id.*

Contrary to EZPZ's contention, there is nothing in the record before the Court that indicates that Mr. Anders "utterly disregarded" any binding precedent. Instead, the Court finds that Mr. Anders' First Report is consistent with *Maatita*. Indeed, the design patent at issue in *Maatita* only included a single figure. As the panel in *Maatita* stated, "[a] visual disclosure may be inadequate— and its associated claim indefinite—if it includes multiple, internally inconsistent drawings." *In re Maatita*, 900 F.3d at 1375. The panel further noted that it was "not dealing with inconsistencies in the drawings, or inconsistencies between the drawings and the verbal description, but rather with a single representation of a design that is alleged to be of uncertain scope." *Id.* at 1376.

In contrast to the design patent in *Maatita*, the D327 Patent includes two figures. Mr. Anders opines that the D327 Patent is indefinite and non-enabling because the height of the central raised structure cannot be determined from these figures. [Doc. No. 359-3 at ¶¶ 75-76]. Thus, Mr. Anders' opinion goes to the magnitude of the error and inconsistencies in these two figures. *See, e.g., Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 589 (W.D. Pa. 2013) ("For a design patent to be invalid for indefiniteness, errors and inconsistencies in the patent drawings

must be material and of such magnitude that the overall appearance of the design is unclear.") (internal citations, quotations, and emphasis omitted).

This was not the issue in *Maatita* because there was only a single figure. The panel in *Maatita* concluded that the shoe bottom design disclosed in the single figure was "capable of being disclosed and judged from a two-dimensional, plan- or planar-view perspective." *In re Maatita*, 900 F.3d at 1378. The panel contrasted this design to a design for an entire shoe or teapot, which are "inherently three-dimensional and could not be adequately disclosed with a single, plan- or planar-view drawing." *Id.* Thus, the facts in *Maatita* are distinguishable from the facts in this case, and Mr. Anders' opinions do not disregard this binding precedent.

The Court agrees that errors and inconsistencies between drawings does not merit a § 112 rejection if they "do not preclude the overall understanding of the drawing as a whole." *Ex Parte Asano,* 201 U.S.P.Q. 315, 317 (Bd. Pat. App. & Inter. 1978). However, the understanding of the drawing as a whole is exactly where the parties disagree. EZPZ asserts that the D327 Patent is not indefinite "even though the exact height of the raised center of the design patent is not given," because "a simple examination of the product which embodies the D327 Patent drawing, and is identical to the drawings, informs one that the D327 patent was enabled without undue experimentation." [Doc. No. 359-1 at 24, 26]. EZPZ's arguments go directly to the merits of LNC's defense, not Mr. Anders' methodology.

The Court is cognizant that Mr. Anders publicly criticized the *Maatita* decision. [Doc. No. 359-7 at 1]. But EZPZ has failed to point to anything in Mr. Anders' reports or testimony indicating that he has applied the wrong test under *Maatita*. Specifically, *Maatita* held that "a design patent is indefinite under § 112 if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based

on the claim and visual disclosure." *In re Maatita*, 900 F.3d at 1377. Mr. Anders confirmed at his deposition that this is the standard he applied:

> Q. Okay. So then just to sew up the issue of indefiniteness, I have a question. You are saying that one skilled in the art viewing the design as an ordinary observer would not understand the scope of the design with reasonable certainty?
>
> A. Correct.

[Doc. No. 397-2 at 131:9-17]

To be sure, EZPZ does not dispute Mr. Anders' qualifications as an industrial design engineer. [Doc. No. 359-1 at 6].[3] Thus, for the reasons discussed above, EZPZ's complaints properly go to the weight the jury will give Mr. Anders' opinions and not to the admissibility of his testimony as an expert witness. Any disagreements EZPZ has with Mr. Anders' expert report and opinion testimony are more appropriate for cross-examination. *See, e.g., Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)). ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Borill v. Centennial Wireless, Inc.*, No. 6:11CV1492, 2013 U.S. Dist. LEXIS 82956, at *11 (W.D. La. June 12, 2013) ("[Q]uestions relating to the bases and sources of an expert's opinion affect the *weight* to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.") (emphasis in original) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)); *Dewitt v. Fla. Marine Transporters, Inc.*, No. 12-415, 2012 U.S. Dist. LEXIS 178036, at *11 (E.D. La. Dec. 17, 2012) (noting that the argument "concerning the basis for [the] opinion goes to the weight to be given [the] testimony and not its admissibility");

---

[3] Mr. Anders' First Report indicates that he has been an Industrial Designer for more than 50 years, and has experience in both the practical and academic areas of the industrial design field. [Doc. No. 359-3 at ¶¶ 5-28].

In summary, the Court finds that Mr. Anders' opinions and testimony related to indefiniteness are based on sufficient facts and a reliable methodology. The record before the Court indicates that Mr. Anders based his opinions on the correct federal statutes and regulations, explained the basis for his opinions and explained his methodology and conclusions. He has, therefore, satisfied the *Daubert* standards. EZPZ's complaints are properly addressed through cross-examination.

### C. LNC Raised the Affirmative Defense of Indefiniteness Prior to Mr. Anders' First Report

EZPZ contends that LNC did not assert indefiniteness as an affirmative defense prior to Mr. Anders' First Report. [Doc. No. 359-1 at 19]. LNC responds that its Ninth Affirmative Defense unequivocally asserted that the D327 Patent is invalid and unenforceable for failure to comply with 35 U.S.C. § 112. [Doc. No. 397 at 12] (citing Doc. No. 45). LNC further contends that it provided a more detailed analysis in LNC's Amended Final Invalidity and Unenforceability Contentions, served on October 5, 2018. *Id.* at 13 (citing Doc. No. 397-1 at 5-6). EZPZ did not refute or even bother to address LNC's response in its Reply Brief.

Mr. Anders' First Report is dated March 5, 2019. [Doc. No. 359-3 at 36]. LNC's Answer to EZPZ's first amended counterclaim was filed on February 1, 2017. [Doc. No. 45], and LNC's Amended Final Invalidity and Unenforceability Contentions were served on October 5, 2018 [Doc. No. 397-1 at 8]. Given these dates, EZPZ's argument that LNC did not raise indefiniteness as an affirmative defense prior to Mr. Anders' First Report is simply not true. Moreover, the Court in this ruling provides a claim construction for the D327 Patent. To the extent that EZPZ claims that it has suffered prejudice, the Court finds that EZPZ is at fault because it had notice that LNC was asserting the affirmative defense of indefiniteness well before Mr. Anders' First Report.

### III. CONCLUSION

For the foregoing reasons, EZPZ's Sealed "Motion to Exclude the Testimony of Plaintiff's Expert John Anders." [Doc. No. 359] is GRANTED IN PART and DENIED IN PART.

Monroe, Louisiana, this 24th day of August, 2020.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**