# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| LUV N' CARE | CIVIL ACTION NO. 3:16-00777 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LINDSEY LAURAIN, ET AL. | MAG. JUDGE PEREZ-MONTES |

## RULING

This is a patent infringement case in which Plaintiff Luv n' care, Ltd. and Nouri E. Hakim (collectively, "LNC") seeks a declaratory judgment that it does not violate any existing intellectual property right of Defendant Eazy-PZ, LLC ("EZPZ"). Pending before the Court is LNC's Sealed "Motion for Partial Summary Judgment Dismissing EZPZ's Trade Dress Infringement Claim." [Doc. No. 350]. EZPZ responded to the motion. [Doc. No. 392]. LNC filed a reply. [Doc. No. 413]. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**I.     BACKGROUND**

EZPZ contends that it is the owner and creator of the product trade dress for its products, including the Happy Mat and Mini Mat. [Doc. No. 392-8 at 5]. EZPZ asserts that its distinctive trade includes the following features: (1) the overall size and shape of the products; (2) the blue, red, green, and grey color scheme; (3) the use of non-toxic, silicone material; (4) the integrated placemat and plate/bowl tableware; (5) the raised perimeter at the edge of the placemat; (6) the ovoid shape with receptacles located in the center of the mat; and (7) sales techniques such as highlighting the reduced mess at meal times. *Id.*

LNC argues that EZPZ does not own a protectable trade dress because (i) the features of its asserted trade dress are functional; and (ii) the trade dress did not achieve secondary meaning before the alleged infringement by LNC began. [Doc. No. 350-1 at 6]. LNC further contends that

EZPZ has no evidence to prove infringement. *Id.*  LNC moves the Court to dismiss EZPZ's trade dress infringement claim with prejudice. *Id.*

EZPZ responds that EZPZ's claimed trade dress is not for features that are functional. [Doc. No. 392-8 at 5].  EZPZ further argues that it is also entitled to proceed to trial on the merits because there is a triable question of fact regarding whether secondary meaning has been acquired. *Id.* Finally, EZPZ contends that the question of infringement is a factual determination that should not be decided on summary judgment. *Id.*

## II.  LAW AND ANALYSIS

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c)(2).  The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) ("The court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'").  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Likewise, the Court may not make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 150.

"Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1302 (Fed. Cir. 2010).  "[A] dispute about a material fact is genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson*, 477 U.S. at 248. A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id*.

However, the existence of a factual dispute alone does not defeat a properly supported motion for summary judgment, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id*. Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Finally, courts have granted summary judgment dismissing claims of trade dress infringement under the Lanham Act. *See, e.g., Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 26, 121 S. Ct. 1255, 1258 (2001) (upholding district court's grant of summary judgment where trade dress was functional and thus not protectable)

### A. Functional and Non-functional Features of EZPZ's Asserted Trade Dress

The Lanham Act provides a cause of action to one who is injured when a person uses "any word, term name, symbol, or device, or any combination thereof . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a)(1)(A); *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1350 (5th Cir. 1994) ("The Lanham Act prohibits passing off goods or services as those of a competitor by employing substantially similar trade dress which is likely to confuse consumers as to the sources of the product.").

Although "trade dress" is not defined in the Lanham Act, the Fifth Circuit has explained that the term refers to "the total image and overall appearance of a product and may include

features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citations omitted). Trade dress "refers to the design or packaging of a product which serves to identify the product's source." *Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 595 (W.D. Pa. 2013).

To prevail in an action for infringement of an unregistered trade dress, EZPZ must first establish ownership in a protectable trade dress. A "product design" trade dress is protectable if it is nonfunctional and has achieved secondary meaning in the public's eye. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 216, 120 S. Ct. 1339, 1346 (2000) ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning."). A product feature is functional if it is essential to the use or purpose of the product or if it affects the cost or quality of the product. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 115 S. Ct. 1300, 1304 (1995).

### 1. Parties' Positions

EZPZ asserts the following products of trade dress infringement: 7083 (old smile rectangle) and 7075, as shown on the following page:



[Doc. No. 392-8 at 8]. EZPZ contends that EZPZ's distinctive trade includes the following features: (1) the overall size and shape of the products; (2) the blue, red, green, and grey color scheme; (3) the use of non-toxic, silicone material; (4) the integrated placemat and plate/bowl tableware; (5) the raised perimeter at the edge of the placemat; (6) the ovoid shape with receptacles located in the center of the mat; and (7) sales techniques such as highlighting the reduced mess at meal times. *Id.* at 9. EZPZ argues that there is presumptive proof in this case of non-functionality of the trade dress claimed, because it has been granted a design patent. *Id.* at 9-10.

### 2. The Functional Features of EZPZ's Asserted Trade Dress That are Not Protectable

A trade dress is not protectable if its features are functional. *TrafFix*, 532 U.S. at 29; *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995) ("[T]rade dress law may not be used to secure patent-like protection in useful product features."). In *TrafFix*, which involved an expired utility patent, the Supreme Court explained that "[a] utility patent is *strong evidence* that the features therein claimed are functional. If trade dress protection is sought for those features[,] the *strong evidence* of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix*, 532 U.S. at 29-30 (emphasis added).

There are a number of functional features of the alleged trade dress that are the touchstone of the utility patent application that Ms. Laurain filed in the United States Patent and Trade Office ("USPTO"). [Doc. No. 344-1, "the '682 Application"). The '682 Application identified nine claims and other features of this device, including a number of features that EZPZ now asserts comprise its trade dress. However, in December 2015 all claims pending in the '682 Application were rejected by the Patent Examiner as unpatentable. *Id.* at 157-164. In response, Ms. Laurain submitted nine declarations attesting to the usefulness and functionality of the Happy Mat. *Id.* at 173-229. The '682 Application was granted as U.S. Patent No. 9,462,903 ("the '903 Patent), which issued on October 11, 2016.

The '903 Patent affirmatively claims "[t]he use of non-toxic silicone material" in claims 4, 8, and 9 of the '903 Patent. The '903 Patent explains the functional benefits of silicone as having "a high coefficient of friction and effective of sealable, airtight contact with an underlying surface." '903 Patent at 2:28–30. Additionally, although not claimed by the '903 Patent, the functionality of "sales techniques such as highlighting reduced mess at meal times" are also described in the

'903 Patent. Specifically, the '903 Patent states that "[m]any a parent knows the inconvenience of having to clean up after their children's mealtimes. Young children especially can be quite messy, even dislodging and upturning their plates and bowls to spill foodstuffs and beverages everywhere. . . . [T]he present surface contact self-sealing integrated tableware and dining mat resists displacement and overturning . . . and spilled foodstuffs are catchable . . . for ready and expedient cleanup." *Id.* at 1:54–2:15.

Similarly, the '903 Patent describes the functional aspects of "the raised perimeter at the edge of the placemat." The '903 Patent generally identifies "the raised perimeter" as the "outer edge," which is item 22 in Figure 2. *Id.* at 3:60–62. The "outer edge" is "the outermost extremity of the planar portion." *Id.* at 2:19–20. The Summary of the Invention describes the functionality of the outer edge by explaining that "[l]ifting the planar portion anywhere except at the outer edge [] creates a partial vacuum" and, therefore, "[r]emoval of the planar portion from an underlying surface is [] best effected at the outer edge, whereat sealable contact is breakable and creation of the partial vacuum is avoidable." *Id.* at 2:32–40. In other words, to break the seal created by the partial vacuum and remove the mat from the surface to which it has become stuck, one must lift it at its outer edge.

EZPZ argues that the "raised perimeter" is not the "outer edge," but instead is an ornamental feature that sits on the upper side of the planar portion of the mat. [Doc. No. 92-8 at 11]. The Court disagrees that the "raised perimeter" is not functional. Indeed, the "raised perimeter" located at the "outer edge" allows a person to grip the area of the dining mat that "breaks" the partial vacuum.

In summary, the functional advantages of these identified features promoted by EZPZ to the USPTO are "strong evidence" of functionality. *TrafFix*, 532 U.S. at 29-30. Accordingly, EZPZ does not own a protectable trade dress on the following features:

- the use of non-toxic, silicone material;
- the raised perimeter at the edge of the placemat; and
- sales techniques such as highlighting the reduced mess at meal times.

### 3. The Remaining Features of EZPZ's Asserted Trade Dress are Not Functional when the Trade Dress is Considered as a Whole

The remaining features of EZPZ's asserted trade dress include the following:

- the overall size and shape of the products;
- the blue, red, green, and grey color scheme;
- the integrated placemat and plate/bowl tableware; and
- the ovoid shape with receptacles located in the center of the mat.

The Court finds that these features are not functional when EZPZ's trade dress is consider as a whole.

First, other courts have stated that "[t]he existence of a design patent is presumptive proof of nonfunctionality." *Am. Bev. Corp. v. Diageo N. Am., Inc.*, 936 F. Supp. 2d 555, 597 (W.D. Pa. 2013) (analyzing a design patent and trade dress claim). The Court does not necessarily find that the existence of a design patent is presumptive proof, but does find that at this stage of the case, a design patent is highly persuasive evidence in favor of the non-movant. EZPZ is the owner of U.S. Patent No. D745,327 (the D327 Patent), entitled "Dining Mat With Integrated Tableware," which issued on December 12, 2015. The design claimed in the D327 Patent is an ornamental design for a dining mat with integrated tableware in the shape of a smiling face, as shown and

described in two figures. [Doc. No. 359-2 at 1-3]. The two figures from the D327 Patent are reproduced below:





*Id.* at 2-3. As illustrated above, the D327 Patent claims the integrated placemat and plate/bowl tableware having an overall size and shape, including an ovoid shape with receptacles located in the center of the mat.

Additionally, EZPZ obtained a registered trade dress on July 12, 2019, which is a "mark [that] consists of a three-dimensional configuration of a dining mat with a bowl in the center containing compartments which are in the shape of smiling fact. The edges of the mat are in dotted lines and are not a feature of the mark."



[Doc. No. 392-2 at 2]. Again, the registered trade dress includes an integrated placemat and plate/bowl tableware having an overall size and shape, including an ovoid shape with receptacles located in the center of the mat. Both the design patent and the registered trade dress indicate that these are non-functional features when the trade dress is considered as a whole.

Finally, the blue, red, green, and grey color scheme is not a functional aspect. LNC argues that "[t]he evidence demonstrates that the 'blue, red, green, and grey color scheme' was carefully chosen." [Doc. No. 350-1 at 16]. Color is not functional when it has no effect on cost, quality, purpose or use of the product. *See, e.g.*, *Kerr Corp. v. Freeman Mfg. & Supply Co.*, No. 08-3330,

2009 U.S. App. LEXIS 6342, at *15 (6th Cir. Mar. 23, 2009). The blue, red, green, and grey color scheme are not functional when the trade dress is consider as a whole.

### B. There are Genuine Issues of Material Fact Related to Secondary Meaning

As discussed above, a "product design" trade dress is protectable if it is nonfunctional and has achieved secondary meaning in the public's eye. Having determined the nonfunctional features of the asserted trade dress (*i.e.*, the protectable features), the Court turns to the evidence related to an acquired secondary meaning. Courts in the Fifth Circuit consider the following factors when determining whether a trade dress has acquired secondary meaning:

> (i) length and manner of the use of the trade dress; (ii) volumes of sales; (iii) amount and manner of advertising; (iv) nature of the use of the trade dress in newspapers and magazines; (v) consumer-survey evidence; (vi) direct consumer testimony; and (vii) the defendant's intent in copying the trade dress.

*Amazing Spaces*, 608 F.3d at 248 (citations omitted). In addition to these factors, EZPZ must demonstrate that secondary meaning was achieved "before the infringement began." *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826 (Fed. Cir. 1992) (citation omitted). The Court will now address each of these factors as they relate to the evidence before the Court.

#### 1. Consumer Survey Evidence

The Fifth Circuit has "consistently expressed a preference for an objective survey of the public's perception of the [dress] at issue." *Amazing Spaces*, 608 F.3d at 248 (internal quotation omitted) (citing *Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.*, 791 F.2d 423, 427 (5th Cir. 1986) ("The authorities are in agreement that survey evidence is the most direct and persuasive way of establishing secondary meaning."). This is because "[t]he secondary meaning analysis primarily seeks to determine what is in the minds of consumers as of the relevant date," *Converse, Inc. v. ITC*, 909 F.3d 1110, 1120 (Fed. Cir. 2018), and surveys and other empirical studies are probative of consumer behavior in the marketplace. *Braun*, 975 F.2d at 828.

It is not disputed that EZPZ has no survey evidence. (Doc. No. 392-1 at ¶ 5). EZPZ's only response to this lack of evidence is that LNC "relies too heavily on EZPZ's lack of a consumer survey." [Doc. No. 392-8 at 17]. The complete lack of evidence before the Court related to this factor weighs in favor of granting LNC's motion.

### 2. Intent in Copying the Trade Dress

"Courts have recognized that evidence of intentional copying shows the strong secondary meaning of a product because there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence." *Berg v. Symons*, 393 F. Supp. 2d 525, 554 (S.D. Tex. 2005) (citation omitted); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) (holding that proof of copying strongly supports an inference of secondary meaning); *Audio Fid., Inc. v. High Fid. Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960) ("There is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence").

EZPZ has presented evidence indicating that LNC's affiliate asked its manufacturer in April 2015 to copy the EZPZ product by attaching a picture and inquiring whether a physical sample could be sent. [Doc. No. 392-5 at 8-11]. EZPZ has also presented evidence that LNC copied EZPZ's colors. [Doc. No, 392-6 at 3]. EZPZ has further presented evidence that the packaging was designed like EZPZ's. [Doc. No. 392-7 at 2]. Accordingly, the evidence before the Court weighs in favor of denying LNC's motion, because it indicates that there are genuine issues of material fact as to whether LNC had an intent to copy.

### 3. Amount and Manner of Advertising

EZPZ contends that its products received substantial press coverage in the short time that the products were in existence. [Doc. No. 392-8 at 14-16]. The Federal Circuit has noted that the

fact that a party has "spent an arguably large sum of money on advertising is of limited probative value." *Braun*, 975 F.2d at 826. This is because EZPZ must proffer evidence establishing that the advertising effectively created secondary meaning as to product design. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) ("[A] large expenditure of money does not in itself create legally protectable rights. The test of secondary meaning is the effectiveness of the efforts to create it") (citation omitted).

EZPZ contends that the advertising emphasized the design of the mat. [Doc. No. 392-8 at 16]. LNC argues that EZPZ has produced no quantitative evidence that any of its promotional endeavors altered the meaning of its trade dress in the minds of the consuming public. [Doc. No. 350-1 at 22]. The evidence before the Court weighs in favor of denying LNC's motion, because it indicates that there are genuine issues of material fact as to the amount and manner of advertising.

### 4. Length and Manner of Use of the Trade Dress

"There is no talismanic number of months or years that establishes when an unregistered trademark or trade dress can obtain secondary meaning." *Cont'l Lab. Prods. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1004 (S.D. Cal. 2000). "Length of time is merely one additional piece of evidence to be weighed with all others in determining the existence of secondary meaning." *Id.* (citation omitted). The Federal Circuit has indicated that, "while not impossible, it is difficult for a product to acquire secondary meaning during an 18-month period," *Braun*, 975 F.2d at 826 (citation omitted).

Here, the length of time between the launch of the Happy Mat in September 2014 and LNC's announcement in March 2016 of the Sure Grip Miracle Mat Section Plate was 18 months. EZPZ argues that the length of time "must be viewed in conjunction with the viral nature of the products, and the considerable press that was generated in this timeframe." [Doc. No. 392-8 at 13].

EZPZ further argues that a mark or design can obtain secondary meaning in a short period when there is widespread promotional activities. *Id.* at 14 (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1130 (Fed. Cir. 1993)). EZPZ contends that its products received substantial press coverage in the short time that the products were in existence. *Id.* at 14-16.

LNC argues that "it is almost impossible to establish secondary meaning during such a short time period." [Doc. No. 350-1 at 20]. LNC contends that even evidence of long-term use is insufficient to prove secondary meaning without empirical proof that the design "has come through use to be uniquely associated with a specific source." *Id.* at 21 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992)). The evidence before the Court weighs in favor of denying LNC's motion, because it indicates that there are genuine issues of material fact as to length and manner of use of the trade dress.

### 5. Volume of Sales

EZPZ contends that it had gross domestic sales of $168,705 in 2014, $1.7M in 2015, and $7.3M in 2016. [Doc. No. 392-8 at 16]. LNC responds that the gross domestic sales for the eighteen months in question total approximately $3 million. [Doc. No. 350-1 at 21]. According to LNC, sales of this amount are "extremely modest" for a nationwide product. *Id.* at 21. Although success alone cannot show secondary meaning, this is just an additional factor to consider together with the other factors. The evidence before the Court weighs in favor of denying LNC's motion, because it indicates that there are genuine issues of material fact related to the volume of sales.

### 6. Conclusion

In summary, proof of secondary meaning generally "entails vigorous evidentiary requirements." *Schieffelin & Co. v. Jack Co.*, 89 Civ. 2941 (PKL), 1992 U.S. Dist. LEXIS 9279, at *42 (S.D.N.Y. June 23, 1992) (citations omitted). In determining whether the movant is entitled

to summary judgment, the court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F. 3d 528, 533 (5th Cir. 1997). Here, taking the facts in the light most favorable to EZPZ, the Court finds there are genuine issues of material fact as to whether the asserted trade dress has acquired secondary meaning. Indeed, "[t]he careful weighing of evidence necessary to determining secondary meaning renders it an unlikely candidate for summary judgment." *Schieffelin,* 1992 U.S. Dist. LEXIS 9279 at *42 (citation omitted).

### C. There are Genuine Issues of Material Fact Related to Likelihood of Confusion

Having determined that there are genuine issues of material fact related to secondary meaning, the Court need not address the likelihood of confusion. Notwithstanding, the Court will briefly address the issue of likelihood of confusion considering the evidence before the Court. "Likelihood of confusion is a question of fact." *Racetrac Petroleum v. J.J.'s Fast Stop,* No. 3:01-CV-1397-P, 2003 U.S. Dist. LEXIS 1569, at *14 (N.D. Tex. Feb. 3, 2003). "The likelihood-of-confusion analysis for determining infringement turns in part on the similarity of the accused products to the asserted mark." *Converse*, 909 F.3d at 1124. "We have applied an analogous requirement in the design-patent context, where infringement cannot be found unless an ordinary observer would perceive that the 'two designs are substantially the same.'" *Id.* at 1124 (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc)).

LNC argues that the United States District Court for the Eastern District of Michigan (the "Michigan District Court"), in a sealed action styled *Eazy-PZ, LLC v. Luv n' care, Ltd.*, et al., Case No. 16-cv-13688 (the "Michigan Action"), considered the factors for likelihood of confusion and found that EZPZ had failed to establish a reasonable likelihood of success on the merits. [Doc. No. 350-1 at 27]. LNC contends that the Michigan District Court found that "an ordinary observer

could distinguish the accused products from the patented design without confusion or deception." *Id.*

As previously stated, the Court "does not consider the Michigan District Court opinion denying a TRO to be either persuasive authority entitled to due deference, or preclusive authority." [Doc. No. 260 at 7]. Moreover, taking the facts in the light most favorable to EZPZ, the Court finds there are genuine issues of material fact as to whether the alleged infringement creates a likelihood of confusion.

### D. LNC's Products No Longer Asserted by EZPZ as Infringing

LNC argues that in response to its Third Requests for Admissions, EZPZ stated that a number of LNC products infringed its trade dress, which included LNC Items Nos. 7083, 7075, 7076, 7094, 7084, 7097, 7073, and 7091. [Doc. No. 413 at 9]. However, in its opposition, EZPZ only asserts trade dress infringement for Item Nos. 7083 and 7075 from this list. Specifically, EZPZ argues that it "asserts the following products of trade dress infringement: 7083 (old smile rectangle) and 7075, as shown on the following page:" [Doc. No. 392-8 at 7] (footnote omitted). The Court understands EZPZ's statement to mean that it does not oppose summary judgment at to LNC Item Nos. 7076, 7094, 7084, 7097, 7073, and 7091. Accordingly, LNC's motion is granted as to LNC Item Nos. 7076, 7094, 7084, 7097, 7073, and 7091, and EZPZ's trade dress infringement claim as to these items is dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, LNC's Sealed "Motion for Partial Summary Judgment Dismissing EZPZ's Trade Dress Infringement Claim" [Doc. No. 350] is GRANTED IN PART and DENIED IN PART.

Monroe, Louisiana, this 25th day of August, 2020.

                                        **TERRY A. DOUGHTY**
                                        **UNITED STATES DISTRICT JUDGE**