UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **LUV N' CARE** | **CIVIL ACTION NO. 3:16-00777** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LINDSEY LAURAIN, ET AL.** | **MAG. JUDGE PEREZ-MONTES** |

## RULING

Pending before the Court is Omnibus Motion in Limine [Doc. No. 594] filed by Plaintiff Luv n' care, Ltd. and Nouri E. Hakim (collectively, "LNC"). Defendant Eazy-PZ, LLC ("EZPZ") filed an opposition [Doc. No. 638]. Also pending before the Court is Omnibus Motion in Limine [Doc. No. 596] filed by EZPZ. LNC filed an opposition [Doc. No. 633].

## I.    BACKGROUND

This is a patent infringement case in which LNC seeks a declaratory judgment that it does not violate any existing intellectual property right of EZPZ. LNC presents twenty-one (21) subparts in their motion in limine for the Court's consideration. EZPZ presents eight (8) subparts in their motion in limine for the Court's consideration. The Court will consider each in turn.

## II.    LEGAL STANDARD

"A motion in limine is used to preclude prejudicial or objectionable evidence before it is presented to the jury." Stephanie Hoit Lee & David N. Finley, Federal Motions in Limine § 1:1 (2018). The decision on a motion in limine is consigned to the district court's discretion—including the decision of whether to rule before trial at all. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should

not be excluded prior to trial unless the "evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004); *see also See LSQ Funding Grp. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012). Even then, rulings on these motions are not binding on the court, and the court may change such rulings in response to developments at trial. *See Luce v. United States*, 469 U.S. 38, 41, 105 S. Ct. 460 (1984).

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 U.S. Dist. LEXIS 124798, at *274 (M.D. Fla. Jan. 30, 2009). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." *Id.* at *276 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." *Id.* "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." *Id.*

Generally, all relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The determination of whether evidence is relevant to an action or issue is expansive and inclusive. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87, 128 S. Ct. 1140 (2008). However, the court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of" unfair prejudice. Fed. R. Evid. 403. Further, evidence may be excluded when there is a significant danger that the jury might base its decision on emotion, or when non-party events would distract reasonable jurors from the real issues in a case. *See Tennison v. Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *United States v.*

*Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

## III.    LNC's Motion in Limine

The Court will address LNC's Motion in Limine Nos. 1 – 21 in this section.

### 1.    Motion in Limine No. 1: Exclude EZPZ from Introducing Evidence as to Williams' and Laurain's Intent or State of Mind in Their Dealings With the USPTO.

Motion in Limine No. 1 has been resolved by the Court and the Parties. *See* Doc. Nos. 462, 467.

### 2.    Motion in Limine No. 2: References to LNC as a "Copy Shop," "Knock-Off Shop," "Copycat," "Counterfeiter," and References to Third-Party Products Not at Issue in this Litigation, Including the Third-Party Products Identified in the First Amended Counter-Complaint (Dkt. #40) and "The Real Nuby" Video.

LNC contends that EZPZ has referred generally to LNC has a "copy shop," "knock-off shop," or "copycat," and has repeatedly referred to LNC's Accused Products as "counterfeits," and asserted that LNC has a "history of counterfeiting." [Doc. No. 594-1 at 8].[1]  LNC argues that attorney argument and testimony of this nature must be precluded under Rules 401 and 403 as irrelevant, unfairly prejudicial, and misleading to the jury. *Id.*  LNC contends that EZPZ, its witnesses, and its attorneys should be precluded from asserting that LNC has allegedly copied any products not at issue in this litigation. *Id.*  LNC further argues that this would require a mini trial and a detailed analysis of intellectual property rights not at issue in this litigation. *Id.* at 9.

LNC also contends that EZPZ should be precluded from asserting that LNC has copied any product not at issue in this litigation because it has no relevance to the accused products or the asserted patents (U.S. Patent No. 9,462,903 (the "'903 Patent") or U.S. Patent No. D745,327 (the "D327 Patent")). *Id.*  LNC further argues that EZPZ should be precluded from the use of pejorative

---

[1] Citations to the parties' filings are to the filing's number in the docket [Doc. No.] and pin cites are to the page numbers assigned through ECF.

terms such as "knock-off shop," "counterfeiter," and "copy shop." *Id.*

EZPZ responds that the basis of its design patent and trade dress infringement claims is that LNC's accused products copy EZPZ's design patent and trade dress. [Doc No. 638 at 7]. EZPZ contends that exclusion of all evidence relating to copying would be inappropriate to any issue directly relevant to EZPZ's design patent and trade dress infringement claims. *Id.* EZPZ argues that its evidence of copying by LNC and Hakim is directly relevant. *Id.* EZPZ further argues that references to copying by Mr. Hakim and LNC are directly relevant for impeachment purposes if LNC opens the door with contradictable testimony or evidence. *Id.* EZPZ agrees that it will not refer to LNC as a counterfeiter or a knock-off shop, or that its products are counterfeits. *Id.* at 8.

The use of pejorative terms such as "knock-off shop," "counterfeiter," and "copy shop" are "unduly prejudicial under FRE 403." *See Universal Elecs., Inc. v. Universal Remote Control, Inc.,* No. SACV 12-00329 AG (JPRx), 2014 U.S. Dist. LEXIS 182755, at *20 (C.D. Cal. Apr. 21, 2014) (granting motion in limine to preclude use of "knock off" and other "pejorative terms"). Accordingly, EZPZ is precluded from referring to LNC as a "copy shop," "knock-off shop," or "copycat," or referring to LNC's accused products as "counterfeits," or asserting that LNC has a "history of counterfeiting."

EZPZ is also precluded from describing LNC's accused products as counterfeits, because EZPZ has never asserted a counterfeit claim against LNC. EZPZ is further precluded from asserting that LNC has copied any product not at issue in this litigation, because it has no relevance to the accused products or U.S. Patent No. D745,327 (the "D327 Patent"). Indeed, EZPZ was barred from conducting discovery regarding non-party copying by LNC. *See* Doc. No. 216.

However, EZPZ may argue that it is alleging that LNC has ***infringed*** one or more of its

intellectual property rights that are properly before the Court.  The basis of EZPZ's design patent and trade dress infringement claims is that LNC's accused products infringe EZPZ's design patent and trade dress.  Therefore, exclusion of all evidence relating to infringement would be inappropriate to issues directly relevant to EZPZ's design patent and trade dress infringement claims.

In addition, if LNC provides testimony that could be impeached by evidence of non-party copying, such as statement that LNC has never been accused of copying before, or that LNC or Mr. Hakim was unaware LNC's products are seen by others as copying other products, then LNC *may* have opened the door to this precluded testimony and evidence.  If this should occur, EZPZ should seek a ruling from the Court before attempting to offer this precluded testimony and evidence.

Regarding the "The Real Nuby" video, the Court does not have enough information at this time to rule on the entire video, but to the extent that it alleges that LNC has also copied products not at issue in this litigation and/or includes the use of pejorative terms to describe LNC, the motion in limine is granted.  Otherwise, LNC's motion in limine is denied as it relates to this video.

Finally, LNC's summarily requests the admittance of evidence and testimony related to third-party products and competitors that EZPZ threatened and accused of copying, and the knowledge EZPZ and its agents obtained from various other competitors. [Doc. No. 594-1 at 11]. The list presented includes a broad class of evidence.  The Court finds that it would be imprudent to rule on this evidence without more context.  Accordingly, the Court defers ruling on this evidence and testimony until it offered in its proper context. *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. 07-572, 2010 U.S. Dist. LEXIS 132686, at *7-8 (W.D. La. Dec. 15, 2010) ("Evidentiary rulings, especially those addressing broad classes of evidence, should often be

deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.") (citing *Starling v. Union Pac. R.R.* 203 F.R.D. 468, 482 (D. Kan. 2001) ("[I]t is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there")). For the reasons stated above, LNC's Motion in Limine No. 2 is **GRANTED IN PART** and **DENIED IN PART**.

### 3.   Motion in Limine No. 3: LNC's Knowledge and Intent.

LNC argues that EZPZ, its witnesses, and its experts should be precluded from opining on LNC's knowledge or intent regarding the D327 Patent to establish willful infringement. [Doc. No. 594-1 at 11]. LNC contends that no testimony or attorney argument should be permitted on LNC's knowledge or intent. *Id.*

EZPZ responds that it is free to introduce evidence that demonstrates LNC's intent was willful and deliberate as a matter of law. [Doc. No. 638 at 9]. EZPZ argues that it would not be improper in opening statements to state that EZPZ will be asking to the jury to find that LNC's infringement was willful, or that EZPZ's evidence will show LNC had the intent to infringe from the beginning as will be shown by certain evidence. *Id.* at 9-10.

To the extent that EZPZ intends to offer expert opinion on LNC's knowledge or intent, this testimony is excluded. Indeed, the Court granted LNC's Sealed "Motion to Exclude Testimony of EZPZ's Expert Michael Henley" [Doc. No. 553] as it relates to testimony or opinions on LNC's state of mind regarding willful infringement. *See* Doc. No. 662. Similarly, the Court granted LNC's Sealed "Motion to Exclude Testimony of EZPZ's Expert John T. Kennedy by Nouri E Hakim, Luv N Care Ltd" [Doc. No. 355] as it relates to testimony or opinions on Mr. Williams' intent, Ms. Laurain's intent, or the inferences to be drawn from their actions or inactions. *See* Doc. No. 491.

To the extent that LNC's motion in limine seeks to preclude EZPZ from introducing evidence seeking to show that LNC's intent was willful and deliberate as a matter of law, the motion in limine is denied. EZPZ is not precluded from alleging willful infringement, and is not precluded from offering testimony and evidence to support its allegation. This assumes that the testimony or evidence was not previously excluded by the Court. For the reasons stated above, LNC's Motion in Limine No. 3 is **GRANTED IN PART** and **DENIED IN PART**.

### 4. Motion in Limine No. 4: Testimony or Evidence Suggesting that LNC is Liable for the Conduct of Nuby-UK.

LNC contends that any arguments, insinuations, or implications that LNC is liable for the conduct of Nuby-UK is irrelevant until EZPZ establishes that they operate as a single business enterprise. [Doc. No. 594-1 at 13]. LNC argues that any attorney argument or testimony that LNC and Nuby-UK are one and the same will only serve to confuse the issues before the jury and will suggest to the jury that the conduct of Nuby-UK is attributable to LNC. *Id.* LNC moves the Court to exclude any testimony or attorney argument that LNC is responsible for the conduct of Nuby-UK. *Id.*

EZPZ responds that it is not seeking to hold LNC liable for any conduct of Nuby-UK. [Doc. No. 638 at 10]. EZPZ further contends that the evidence of Nuby-UK is offered to show that it was acting as agent for LNC in designing some of the accused products at issue. *Id.* EZPZ argues that it is undisputed that LNC and Nuby-UK are affiliates. *Id.* (citing Doc. No. 254-4, Doc. No. 254-5 at 14). According to EZPZ, it is virtually impossible to distinguish between the two companies. *Id.* at 11 (citing Doc Nos. 607-9, 607-5, 607-7, 607-17).

EZPZ further argues that the packing of one of Nuby-UK's products states that it is both a NUBY-UK product and a NUBY product, and that it is "designed by Luv N' Care Ltd." and "Designed by Luv n' Care in the U.S.A." *Id.* at 12 (citing Doc. No. 607-23). EZPZ contends that

the record contains undisputed evidence that shows that the two companies are under the same control and for all practical purposes the same operation. *Id.* at 13. EZPZ also argues that it is not required to pierce the corporate veil here in order to introduce evidence of NUBY-UK's actions. *Id.* EZPZ contends that it only has to demonstrate that the evidence is relevant and that it is not "inadmissible on all potential grounds." *Id.*

The evidence before the Court appears to indicate that LNC and Nuby-UK are under common control, and that the companies have an affiliation. [Doc. No. 254-5 at 14]. For example, the packing of one of Nuby-UK's products states that it is both a NUBY-UK product and a NUBY product, and that it is "designed by Luv N' Care Ltd." and "Designed by Luv n' Care in the U.S.A." [Doc. No. 607-23]. The Court will not preclude this type of evidence and testimony in this preliminary context. *Starling v. Union Pac. R.R.* 203 F.R.D. 468, 482 (D. Kan. 2001) ("[I]t is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there"). Accordingly, LNC's Motion in Limine No. 4 is **DENIED.**

### 5.  Motion in Limine No. 5: EZPZ's Good Faith in Connection with its Handling of this Litigation.

LNC argues that EZPZ is continuing to violate the Louisiana Unfair Trade Practices Act and Consumer Protection Law ("LUTPA") based on EZPZ's bad faith refusal to acknowledge the invalidity of its utility patent. [Doc. No. 594-1 at 13]. LNC further argues that EZPZ and its former patent agents and attorneys repeatedly invoked litigation privilege during post-waiver discovery and refused to answer questions concerning their intent and actions in connection with their defense of LNC's declaratory judgment and LUTPA action, and EZPZ's own filing of and continued prosecution of its infringement claims. *Id.* at 14. LNC contends that EZPZ and its litigation counsel have repeatedly asserted privilege with respect to their handling of litigation

matters involving LNC that are relevant to LNC's LUTPA claim. *Id.* at 15.  LNC moves the Court to preclude EZPZ from introducing evidence of its good faith intent in connection with the continued defense of LNC's LUTPA claim or the filing of and continued prosecution of its own infringement claims. *Id.*

EZPZ responds that LNC is alleging that EZPZ's attempt to enforce the '903 Patent against LNC in this lawsuit constitutes an unfair trade practice. [Doc. No. 638 at 14].  EZPZ argues that if the Court permits LNC to make such an argument at trial, EZPZ should be allowed to defend itself to show that it had a good faith belief its patent was enforceable. *Id.*  EZPZ further argues that it is disingenuous to argue that EZPZ is acting in bad faith by hiding behind the litigation privilege which LNC conceded this privilege remained in place. *Id.*  Finally, EZPZ argues that the issue of treble damages under LUTPA is an equitable issue solely for the Court to resolve. *Id.* at 14-15.

The Court agrees with EZPZ that LNC's motion in limine to preclude EZPZ from presenting evidence at trial of EZPZ's good faith in connection with the defense of LUTPA would improperly prevent EZPZ from pursuing this defense at trial.  LNC is correct that EZPZ voluntarily waived privilege as to prosecution matters.  However, EZPZ did not waive privilege as to litigation matters.  LNC is treating EZPZ's patent infringement accusations as if it were identical to its accusation under LUTPA.  The accusations are not the same, and must be considered in their proper legal context.

For example, a patent is presumed valid and a challenger must prove by clear and convincing evidence that the patent it is accused of infringing is invalid. 35 U.S.C. § 282. *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 (Fed.Cir.2003) ("This court gives due weight to a patent's presumed validity under 35 U.S.C. § 282 (2000), and an accused infringer must show by clear and convincing evidence that a patent is invalid").  LNC has not

pointed to a similar presumption established under LUTPA as it relates to EZPZ's accusation of patent infringement.  Instead, LNC is attempting to improperly preclude EZPZ from defending itself against the LUTPA claim.  For the reasons stated above, LNC's Motion in Limine No. 5 is **DENIED**.

### 6.  Motion in Limine No. 6: Mr. Hakim's Boycott of the NFL.

LNC argues that any reference to Mr. Hakim's boycott of the NFL, and his Facebook posts evidencing the same, are not relevant to this litigation, and are outweighed by unfair prejudice and the potential to confuse or mislead. [Doc. No. 594-1 at 15].  LNC contends that any assertion that the postings on Mr. Hakim's personal social media account of his views years ago regarding boycotting of the NFL if players were going to kneel during the National Anthem is nothing more than a pretext for introducing controversial and highly prejudicial issues to the jury that are irrelevant. *Id.* at 16.  LNC further contends that EZPZ has not established a threshold showing that, in the mind of the public, Mr. Hakim is associated as a spokesperson for LNC or with the Nuby brand. *Id.*  LNC argues that the sole reason to introduce such information is to raise controversial issues before the Court and to sway the jury to view Mr. Hakim and LNC in a negative light. *Id.*

LNC also argues that even if Mr. Hakim's boycott of the NFL is relevant for some limited purpose, it is inadmissible under Rule 403 because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice to LNC. *Id.*  LNC contends that Mr. Hakim's personal beliefs regarding this issue are unrelated to any claim or defense in this litigation, will unduly inflame the jury, and create an emotional bias against Mr. Hakim and LNC. *Id.* at 17. LNC moves the Court to preclude any reference to postings on Mr. Hakim's personal Facebook page or on any other social media outlet on any matter. *Id.*  LNC contends that this evidence is to be contrasted with Mrs. Laurain's personal (and EZPZ) social media postings related to

LNC/Nuby, which it contends were unfair and false and violate LUTPA as an unfair business tactic. *Id.*

EZPZ responds that LNC is seeking to recover for alleged damage to its reputation with its retailers and consumers as a result of EZPZ's alleged social media campaign. [Doc. No. 638 at 15]. EZPZ argues that in order to establish damage to a party's reputation, evidence concerning the party's reputation before or after the alleged damaging event is relevant. *Id.* EZPZ contends that at the same time the social media messages were posted which LNC ascribes to EZPZ, Mr. Hakim publicly posted on Facebook his personal beliefs regarding the American flag and certain NFL players who chose to kneel during the national anthem and his subsequent decision to boycott the NFL as a result. *Id.* EZPZ further argues that Mr. Hakim is a spokesperson for LNC or associated with the Nuby Brand, and that LNC touts Mr. Hakim's fame in founding LNC and in designing baby products. *Id.* (citing Doc. No. 21 ¶¶ 9, 38). EZPZ contends that it intends to challenge the cause of any alleged damage to LNC's reputation by introducing evidence of other reputational harms, which occurred at the same time, such as the NFL boycott. *Id.* at 16.

The Court agrees that if LNC seeks to recover for alleged damage to its reputation as a result of EZPZ's alleged social media campaign, then EZPZ should not be precluded from introducing evidence and testimony that Mr. Hakim's public post could have contributed to the alleged damage. This assumes that the public posts are related in time to the alleged damage, which is not clear to the Court at this stage. Accordingly, to the extent that LNC pursues a claim for damage to its reputation, LNC's motion in limine would be denied.

To the extent that LNC does not pursue a claim for damage to its reputation, LNC's motion in limine would be granted. In this scenario, the Court agrees with LNC that the public post would not be relevant to an issue in the case, and would also be inadmissible under Rule 403 because any

probative value would be marginal and substantially outweighed by the danger of unfair prejudice. Thus, LNC can decide whether to potentially open the door and allow EZPZ to introduce Mr. Hakim's decision to post in a public forum his boycott of the NFL. Accordingly, the Court defers ruling on LNC's Motion in Limine No. 6 at this time.

### 7. Motion in Limine No. 7: LNC's Size and Wealth Compared to EZPZ.

LNC argues that testimony, attorney argument, or evidence regarding LNC's size, wealth, overall revenues, or profits as compared to EZPZ should be precluded under Rule 401 and 403, because it is irrelevant, unfairly prejudicial and may suggest to the jury that it should award EZPZ damages based upon LNC's overall business. [Doc. No. 594-1 at 17]. LNC contends that any probative value gained by mentioning the size, value, or assets of LNC is substantially outweighed by the danger of unfair prejudice and will likely create an unfair and inaccurate characterization of LNC as a "Goliath" against EZPZ as "David." *Id.* at 18. LNC moves the Court to exclude any testimony or attorney argument related to LNC's size and/or wealth compared to EZPZ. *Id.*

EZPZ responds that references to wealth and/or size are only prejudicial error where these subjects are not at issue in the trial. [Doc. No. 638 at 16]. According to EZPZ, evidence regarding the size of LNC's business is directly relevant to LNC's claims and EZPZ's defenses. *Id.* EZPZ contends that LNC's continued size and wealth in the industry refutes its claims of damages. *Id.* at 17. EZPZ also contends that it should be able to argue that any alleged social media campaign or other alleged unfair trade practices would have no impact on LNC's business. *Id.*

EZPZ further argues that there is direct evidence in this case that LNC and Mr. Hakim sought to bury Ms. Laurain in expensive litigation that it believed she and her small company could not withstand. *Id.* (citing Doc. Nos. 604, Ex. XXXXXX, 607-14). EZPZ contends that any alleged prejudicial effect the information may have is not undue, and it does not outweigh the probative

value of showing Plaintiffs' motivations in filing their unfair competition claims. For example, EZPZ argues that LNC's request that China "copy this," and its discussion about using "EZPZ's colors" are relevant to design patent and trade dress infringement. *Id.* at 18 (citing Doc. No. 607-3). Finally, EZPZ argues that information regarding the size and wealth of LNC is public, and that LNC itself has put this information at issue alleging that it does not need to copy EZPZ's products, because LNC is known as "one of the leading baby product companies in the world." *Id.*

LNC's motion in limine is very broad from the aspect that it could be interpreted, as EZPZ interprets it, to preclude evidence directly related to a defense of a claim. As it relates to this type of evidence, this broad request is best evaluated in view of specific evidence at trial. *Looney Ricks Kiss Architects, Inc. v. Bryan*, No. 07-572, 2010 U.S. Dist. LEXIS 132686, at *7-8 (W.D. La. Dec. 15, 2010) ("Evidentiary rulings, especially those addressing broad classes of evidence, should often be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.").

Accordingly, LNC motion is granted in part and denied in part. Specifically, EZPZ is precluded from making a "David and Goliath" argument to the jury by introducing evidence regarding the size, value, or assets of LNC in the abstract. EZPZ is also precluded from offering evidence comparing the size of LNC's business to EZPZ's business. This evidence would create an unfair characterization of LNC as a "Goliath" against EZPZ as "David."

To the extent that evidence is relevant to an element of an asserted claim or defense, LNC's motion in limine is denied. For example, EZPZ is not precluded from presenting evidence of LNC's size before and after any alleged damages that LNC contends are related to a social media campaign or other alleged unfair trade practices. For the reasons stated above, LNC's Motion in Limine No. 7 is **GRANTED IN PART** and **DENIED IN PART**.

**8.  Motion in Limine No. 8: KNOE 8 News' March 26, 2018 Story Regarding Mr. Hakim, and the Statements Reported Therein.**

LNC states that a March 26, 2018 KNOE 8 News story purports that Mr. Hakim referred to Jamie Mayo, the mayor of Monroe, as an "animal," and another man as a "monkey" on Facebook. [Doc. No. 594-1 at 18].  LNC argues that references to KNOE 8 News story or Eddie Hakim's alleged statements on Facebook have no relevance to any claim or defense in this action. *Id.*  LNC contends that EZPZ's assertion that the report and its contents concerning Mr. Hakim could have affected the reputation of LNC is a pretext for introducing a negative and inflammatory news report that is entirely irrelevant. *Id.* at 18-19.  LNC argues that EZPZ has failed to cite any authority supporting its position that Mr. Hakim's reputation impacts that of LNC. *Id.* at 19.  LNC contends that the true and sole reason that EZPZ seeks to introduce the video and its contents is to sway the jury to view Mr. Hakim and LNC in a negative light. *Id.*  LNC further contends that Mr. Hakim's opinions and views remain precisely his own and are not attributable to LNC or the Nuby brand. *Id.*

LNC also argues that the video and its contents are inadmissible under Rule 403 because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice to LNC. *Id.*  LNC contends that there is no question that remarks that elicit a discussion about race provoke a strong emotional response. *Id.*  LNC moves the Court to preclude any reference to the KNOE 8 News story or Mr. Hakim's alleged statements on social media. *Id.* at 20.

EZPZ responds that LNC has made this negative publicity relevant by placing its reputation at issue in this case. *Id.* at 18.  EZPZ argues that it is not a stretch to argue that racists comments had a far worse impact than social media comments about LNC lacking innovation or being anti-small business. *Id.*  EZPZ also argues that negative publicity is relevant to EZPZ's defense that LNC's reputational harm was caused by its own doing, and that LNC cannot link the damage to

the alleged social media campaign. *Id.* at 19.

The Court agrees that if LNC seeks to recover for alleged damage to its reputation with its retailers and consumers as a result of EZPZ's alleged social media campaign, then EZPZ should probably not be precluded from introducing evidence the KNOE 8 News story.  However, this assumes that the news story is related in time to the alleged damage, which is not clear the Court at this stage.  More importantly, given the nature of the KNOE 8 News story, the Court cannot affirmatively rule on this motion in limine until it has reviewed the proffered evidence and considered it in its proper context at trial.  Accordingly, to the extent that LNC pursues a claim for damage to its reputation, EZPZ must seek a ruling from the Court before attempting to present this evidence to the fact finder.

To the extent that LNC does not pursue a claim for damage to its reputation, LNC's motion in limine would be granted.  In this scenario, the Court agrees with LNC that the KNOE 8 News story would not be relevant to an issue in the case, and would also be inadmissible under Rule 403 because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice.  Thus, LNC can decide whether to potentially open the door and allow EZPZ to introduce the KNOE 8 News story.  For the reasons stated above, the Court defers ruling on LNC's Motion in Limine No. 8 at this time.

### 9.   Motion in Limine No. 9: Other LNC Lawsuits and Being "Litigious."

LNC seeks to exclude any references, evidence, testimony, arguments regarding, or inquiries attempting to elicit testimony pertaining to LNC's prior, unrelated lawsuits or settlements emanating therefrom, or references to LNC as "litigious" under Rules 401 and 403. [Doc. No. 594-1 at 20].  LNC contends that other LNC litigation is irrelevant to any issue in this case, and the probative value, if any, is substantially outweighed by the danger of unfair prejudice and jury

confusion. *Id.*  LNC further argues that evidence of other litigation involving LNC is not admissible because it does not met the requirements for admissibility as character evidence or routine practice under Rules 404-406. *Id.*

LNC also contends that this evidence should be excluded in its entirety given that it is not relevant to this litigation and has no probative value. *Id.* at 21.  According to LNC, any evidence regarding LNC's prior, unrelated litigations is irrelevant to any issue for trial because this case involves a different patent and different technology than any other litigation. *Id.* LNC argues that LNC's prior, unrelated lawsuits have no connection to this case. *Id.*

EZPZ agrees that it will not refer to LNC as "litigious" at trial. [Doc. No. 638 at 19]. However, EZPZ argues that references, evidence, or testimony regarding LNC's prior unrelated lawsuits or settlements are relevant to defending against LNC's claim that its reputation was damaged by EZPZ's alleged social media campaign. *Id.*  The Court disagrees.  EZPZ has not argued that any of LNC's prior lawsuits have a connection to this case, and thus there is no evidence before the Court that they are relevant.  Moreover, any probative value is substantially outweighed by the danger of unfair prejudice and jury confusion. Accordingly, LNC's Motion in Limine No. 9 is **GRANTED**.

### 10. Motion in Limine No. 10: LNC's Purported Litigation Strategies.

LNC seeks to exclude any references, evidence, testimony, arguments regarding, or inquiries attempting to elicit testimony pertaining to LNC's litigation strategies under Federal Rules of Evidence 401 and 403. [Doc. No. 594-1 at 21-22].  LNC argues that statements concerning LNC's litigation strategy/tactics, and the burdensome nature of this litigation should likewise be excluded because it is not relevant and is highly prejudicial. *Id.* at 22.  LNC contends that EZPZ should be precluded from making any argument or eliciting any testimony regarding LNC's

purported litigation strategies. *Id.*

EZPZ responds that it does not intend to mention or belabor the goings-on of litigation, and that it plans to stick to the issues in the case. [Doc. No. 638 at 19]. EZPZ further argues that litigation strategy is also relevant to LNC's LUTPA claim if it is allowed to proceed. *Id.* at 20. EZPZ contends that it should be allowed to defend against the LUTPA claim by introducing evidence that it was LNC, not EZPZ that initiated this action and drove up the costs. *Id.* EZPZ argues that LNC should not be allowed to argue at trial that EZPZ's defense of LNC's litigation is an unfair trade practice without allowing the jury to hear the whole story that demonstrates that LNC has been mindful of driving up costs to make defending the lawsuit prohibitive for EZPZ. *Id.*

The Court finds that any allegations of increased cost of litigating this case should be shared by both parties. The Court further agrees that if LNC alleges that EZPZ's attempt to enforce the '903 Patent against LNC in this lawsuit constitutes an unfair trade practice under LUTPA, then EZPZ should be allowed to defend it, by introducing evidence of alleged actions by LNC that were taken to allegedly drive up the costs of litigation. Accordingly, to the extent that LNC claims that enforcement of the '903 Patent in this lawsuit constitutes an unfair trade practice under LUTPA, LNC's motion in limine would be denied.

To the extent that LNC does not claim that EZPZ's attempt to enforce the '903 Patent against LNC in this lawsuit constitutes an unfair trade practice under LUTPA, LNC's motion in limine would be GRANTED. In this scenario, the Court agrees with LNC that its litigation strategy would not be relevant to an issue in the case, and would also be inadmissible under Rule 403 because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice. Thus, LNC can decide whether to potentially open the door and allow EZPZ to introduce evidence of LNC's litigation strategy. For the reasons stated above, the Court defers

ruling on LNC's Motion in Limine No. 10 at this time.

### 11. Motion in Limine No. 11: Willful Infringement Prior to LNC's Knowledge of the Claims of the D327 Patent.

LNC requests that EZPZ be precluded from referencing or introducing evidence or arguments related to alleged willful infringement of the D327 Patent prior to February 10, 2016. [Doc. No. 594-1 at 23-24].  LNC contends that this is the date when EZPZ first sent a cease and desist letter to Nuby-UK regarding a silicone feeding mat that it was selling in England in connection with an international utility patent application. *Id.* at 24.  LNC argues that it appears EZPZ intends to try to prove willful infringement through emails that were generated before LNC had knowledge of the D327 Patent, which it argues was no earlier than February 10, 2016. *Id.*

According to LNC, it had no knowledge of the D327 Patent prior to February 10, 2016, and it was discovered only through LNC's own investigation. *Id.* at 25.  LNC further argues that EZPZ's alleged willful infringement claim relating to the D327 Patent must be based on LNC's conduct after February 10, 2016. *Id.*  LNC moves the Court to preclude EZPZ from referencing or introducing evidence or arguments related to alleged willful infringement prior to February 10, 2016. *Id.* at 26.

EZPZ responds that LNC is asking the Court to rule on a disputed issue of fact that relates only to post-trial matters. [Doc. No. 638 at 21].  EZPZ further disputes LNC claims that it did not know about the existence of the D327 Patent until EZPZ sent a cease and desist letter to LNC on February 10, 2016. *Id.*  EZPZ contends that this is a misuse of a motion in limine. *Id.*

The Court agrees with EZPZ. A motion in limine is not proper to resolve a factual dispute. *Stehn v. Cody*, 74 F. Supp. 3d 140, 144 (D.D.C. 2014) ("In light of the limited purpose of motions in limine, they should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards.")

(citation and internal quotation marks omitted).  LNC's motion in limine raises questions of fact to be decided by the fact finder at trial.  Accordingly, LNC Motion in Limine No. 11 is **DENIED.**

### 12. Motion in Limine No. 12: All Evidence, Proceedings, and Rulings in Germany Regarding Item Nos. 7083 and 7075.

LNC seeks to exclude any references, evidence, testimony, arguments regarding, or inquiries attempting to elicit testimony pertaining to any evidence, proceedings, or rulings in Germany relating to LNC Product Item Nos. 7083 and 7075 under Federal Rules of Evidence 401 and 403. [Doc. No. 594-1 at 26].  LNC contends that such evidence, proceedings, and rulings are irrelevant to the United States laws applied in this Court. *Id.*  LNC argues that EZPZ's reliance on a foreign proceedings, and the evidence before a German tribunal is improper. *Id.*  LNC further argues that EZPZ's reference to Mrs. Laurain's confrontation with Joseph Hakim during the service of the German Complaint at the 2016, Kind + Judgend Trade show has no place in this litigation. *Id.* (citing Doc. No. 337 at p. 11).

EZPZ responds that LNC is vague as to what proceedings or rulings it is referring to, and provides no context of the evidence it seeks to preclude. [Doc. No. 683 at 22].  EZPZ argues that there is insufficient information for the Court to make a determination regarding admissibility or relevance at this time. *Id.*  EZPZ states that it has no present intention to raise the rulings from Germany. *Id.*

The Court finds LNC's request is overly broad and devoid of any specific context.  The Court further finds that there is insufficient information for the Court to make a determination regarding admissibility or relevance at this time.  Accordingly, LNC's Motion in Limine No. 12 is **DENIED**.  That said, the Court is cognizant that "the proceedings of a foreign jurisdiction have limited relevance to the adjudication of patent rights in the United States courts." *Bayer AG v. Sony Elecs.*, Inc., 229 F. Supp. 2d 332, 369 (D. Del. 2002) (citations omitted).  The Court will

consider objections to this type of evidence in its proper context at trial.

### 13. Motion in Limine No. 13: Encounters Between LNC and EZPZ at the Cologne Trade Show.

LNC moves the Court to exclude any reference to encounters between EZPZ and LNC at any of the Cologne Trade Shows, including any photographs or videos of the Nuby Booth, LNC, or the Hakims. [Doc. No. 594-1 at 27]. LNC argues that EZPZ has falsely accused Mr. Hakim of screaming at Ms. Laurain during the most recent September 2019 Kind + Jugend Trade Show in Cologne, Germany. *Id.* LNC further argues that the encounter is inadmissible under Rule 403, because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice to LNC. *Id.* at 28.

EZPZ argues that LNC's request is overbroad in the context of the standard for issuance of an order in limine. [Doc. No. 638 at 23]. EZPZ also argues that LNC sets forth no authority for precluding the evidence of the encounters between EZPZ and LNC at the Cologne Trade Shows. *Id.* EZPZ contends that this evidence is directly relevant to EZPZ's defense that LNC filed this lawsuit not to protect its reputation, but to bury the small company in extensive litigation to try to break EZPZ to Hakim's will. *Id.* EZPZ concedes that if the LUTPA claim of litigation misconduct is not allowed, this issue may not be relevant. *Id.*

The Court agrees that if LNC alleges that EZPZ's attempt to enforce the '903 Patent against LNC in this lawsuit constitutes an unfair trade practice under LUTPA, then EZPZ should be allowed to defend it by introducing evidence of alleged actions by LNC that were taken to allegedly drive up the costs of litigation. Accordingly, to the extent that LNC claims that enforcement of the '903 Patent in this lawsuit constitutes an unfair trade practice under LUTPA, LNC's motion in limine would be denied.

To the extent that LNC does not claim that EZPZ's attempt to enforce the '903 Patent

against LNC in this lawsuit constitutes an unfair trade practice under LUTPA, LNC's motion in limine would be granted.  In this scenario, the Court agrees with LNC that the encounter is inadmissible under Rule 403 because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice.  Thus, LNC can decide whether to potentially open the door and allow EZPZ to introduce evidence of encounters between EZPZ and LNC at any of the Cologne Trade Shows, including any photographs or videos of the Nuby Booth, LNC, or the Hakims.  For the reasons stated above, the Court defers ruling on LNC's Motion in Limine No. 13 at this time.

### 14. Motion in Limine No. 14: Testimony and Attorney Argument Regarding Joseph Chua's Unrelated Medical Condition.

LNC argues that during the prosecution of the '903 Patent, Mrs. Laurain and Mr. Williams submitted the declaration of Joseph Chua, the founder of Hip Mommies, Inc., EZPZ's Canadian distributor. [Doc. No. 594-1 at 28].  LNC states that on November 2, 2018, Zac Garthe, former in-house counsel for EZPZ and former counsel for the Chuas, disclosed that Mr. Chua had suffered a stroke while driving his car on October 29, 2018. *Id.*  LNC argues that Mr. Chua's stroke and/or ongoing medical condition has no relevance to his declaration dated February 17, 2016, more than two years prior to his accident. *Id.*  LNC moves the Court to exclude all evidence, testimony, attorney argument regarding Mr. Chua's October 29, 2018 accident and his subsequent medical condition. *Id.*

EZPZ responds that it cannot concede this issue because Mr. Chua's delayed processing abilities is directly relevant to Mr. Chua's credibility. [Doc. No. 638 at 23-24].  EZPZ argues that in order to feel comfortable, Mr. Chua needs to explain to the jury why his answers may be delayed. *Id.*  EZPZ further argues that LNC may confirm with Mr. Chua that he did not have the stroke until after LNC noticed his deposition. *Id.* at 24.  EZPZ contends that LNC should not be able to ask

him if LNC accommodated his illness, because Mr. Chua disagrees with that premise. *Id.*

The Court will allow Mr. Chua to briefly explain to the jury why he may take longer to answer questions. Accordingly, LNC's motion in limine number 14 is denied as it relates to this testimony. LNC's motion in limine is granted as it relates to testimony or mention of the need for the Motion for Protective Order and the dispute regarding Mr. Chua's disability. On the opposite side of this issue, LNC is precluded from asking Mr. Chua if LNC accommodated his illness. For the reasons stated above, LNC's Motion in Limine No. 14 is **GRANTED IN PART** and **DENIED IN PART**.

### 15. Motion in Limine No. 15: Failure of LNC to Obtain Advice of Counsel.

LNC moves the Court to preclude EZPZ from providing attorney argument or introducing testimony or evidence that LNC's failure to obtain advice of counsel or failure to rely on advice of counsel is evidence of willful infringement of the D327 Patent. [Doc. No. 594-1 at 28]. EZPZ responds that it does not object to this motion in principle. [Doc. No. 638 at 24]. EZPZ argues that if LNC opens the door by attempting to refute a claim of willful infringement by implying that LNC relied on the advice of counsel, EZPZ should be able to introduce evidence or argument of LNC's lack of an advice of counsel opinion. *Id.*

The Court agrees with EZPZ that if LNC attempts to refute a claim of willful infringement by implying that LNC relied on the advice of counsel, EZPZ should be able to introduce evidence or argument of LNC's lack of an advice of counsel opinion. Accordingly, to the extent that attempts to refute a claim of willful infringement by implying that LNC relied on the advice of counsel, LNC's motion in limine would be denied.

To the extent that LNC does not claim attempts to refute a claim of willful infringement by implying that LNC relied on the advice of counsel, LNC's motion in limine would be granted. In

this scenario, the Court agrees with LNC that "[a]ny such arguments, inferences, insinuations, or implications would be irrelevant and would put 'inappropriate burdens on the attorney-client relationship.'" *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-cv-366-JDL, 2014 U.S. Dist. LEXIS 160995, at *6 (E.D. Tex. Nov. 17, 2014) (precluding party from "indcat[ing] [alleged infringer] had an affirmative duty to seek an opinion of counsel" or "that any adverse inference should be drawn as to what the content of an opinion of counsel would have been") (citation omitted). Thus, LNC can decide whether to potentially open the door and allow EZPZ to introduce evidence of LNC's lack of an advice of counsel opinion. For the reasons stated above, the Court defers ruling on LNC's Motion in Limine No. 16 at this time.

### 16. Motion in Limine No. 16: Werner Hellmann Report on Mr. Hakim.

LNC's moves the Court to preclude EZPZ from introducing evidence or eliciting testimony about the February 7, 2017 Werner Hellmann Report on Mr. Hakim (the "Hellmann Report"). [Doc. No. 594-1 at 29]. EZPZ responds that it does not plan to introduce the report regarding Mr. Hakim. [Doc. No. 638 at 25]. Accordingly, LNC's Motion in Limine No. 16 is **GRANTED.** If EZPZ believes that LNC opens the door to the introduction of the Hellman Report, EZPZ must approach the bench and get approval before introducing evidence or eliciting testimony about the Hellman Report.

### 17. Motion in Limine No. 17: References to the *United States v. Luv n' care, Ltd.* 1994 Lawsuit.

LNC's moves the Court to preclude EZPZ from referencing *United States v. Luv n' care, Ltd.*, No. 94-30023 (W.D. La. 1994) (the "1994 Lawsuit"), wherein Mr. Hakim and LNC were charged with misdemeanors. [Doc. No. 594-1 at 31]. EZPZ responds that it does not plan to introduce the 1994 Lawsuit. [Doc. No. 638 at 25]. Accordingly, LNC's Motion in Limine No. 17 is **GRANTED.** If EZPZ believes that LNC opens the door to the introduction of the 1994 Lawsuit,

EZPZ must approach the bench and get approval before referencing the 1994 Lawsuit.

### 18. Motion in Limine No. 18: References Mr. Hakim Acting as a Government Witness in *United States v. Stevens*, No. 10-200-01/02, 2011 WL 4344016 (W.D. La. Sept. 14, 2011).

LNC's moves the Court to preclude EZPZ from any reference to Mr. Hakim acting as a government witness to assist in the indictment and conviction of certain individuals. [Doc. No. 594-1 at 32]. EZPZ responds that it does not plan to introduce or reference these facts. [Doc. No. 638 at 25]. Accordingly, LNC's Motion in Limine No. 18 is **GRANTED**. If EZPZ believes that LNC opens the door to the introduction of these facts, EZPZ must approach the bench and get approval before referencing these facts.

### 19. Motion in Limine No. 19: Postings on Mr. Hakim's Facebook Page.

LNC moves the Court to preclude any reference to postings on Mr. Hakim's Facebook page or the contents therein. [Doc. No. 594-1 at 32]. LNC argues that any assertion that the postings on Mr. Hakim's personal Facebook page could have affected the reputation of LNC or the Nuby brand is a pretext for introducing negative and inflammatory postings that are irrelevant. *Id.* at 32. LNC argues that EZPZ has not made any threshold showing that the general public at large associates Mr. Hakim with LNC or the Nuby brand. *Id.* at 33. LNC further argues that the posting are inadmissible under Rule 403, because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice to LNC. *Id.*

EZPZ responds that LNC is not specific as to which postings it is referring to in its motion. [Doc. No. 638 at 25]. EZPZ argues that any Facebook postings that occurred during the time of the alleged social media campaign or after, could be considered as damaging to LNC's reputation, and are relevant. *Id.* EZPZ argues that LNC has placed its reputation at issue in this case by alleging that EZPZ damaged its reputation through a social media campaign. *Id.* at 26.

The Court agrees that if LNC seeks to recover for alleged damage to its reputation with its retailers and consumers as a result of EZPZ's alleged social media campaign, then EZPZ should not be precluded from referencing postings on Mr. Hakim's Facebook page or the contents therein. This assumes that the Facebook posts are related in time to the alleged damage, which is not clear the Court at this stage. Accordingly, to the extent that LNC pursues a claim for damage to its reputation, LNC's motion in limine would be denied.

To the extent that LNC does not pursue a claim for damage to its reputation, LNC's motion in limine would be granted. In this scenario, the Court agrees with LNC that the public post would not be relevant to an issue in the case, and would also be inadmissible under Rule 403 because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice. Thus, LNC can decide whether to potentially open the door and allow EZPZ to reference to postings on Mr. Hakim's Facebook page or the contents therein. For the reasons stated above, the Court defers ruling on LNC's Motion in Limine No. 19 at this time.

### 20. Motion in Limine No. 20: Evidence Regarding the Issuance of Trademark Registration No. 5,516,755 Issued July 7, 2018.

LNC moves the Court to exclude any reference to Trademark Registration No. 5,516,755, issued on July 7, 2018, covering the trade dress of the Happy Mat. [Doc. No. 594-1 at 33]. LNC argues that it anticipates EZPZ will rely on the issuance of Trademark Registration No. 5,516,755 to establish an alleged lack of functionality of EZPZ's trade dress. *Id.* LNC contends that EZPZ has never asserted this Trademark Registration against LNC and the case has proceeded on the basis of an unregistered trade dress. *Id.* at 33-34. LNC argues that permitting EZPZ to assert this belated claim against several LNC products will unduly prejudice LNC, by not having a fair opportunity to refute the evidence offered by EZPZ. *Id.* at 34.

EZPZ responds that it is not attempting to assert a claim based on a registered trade dress.

[Doc. No. 638 at 26]. EZPZ further argues that it is instead will use this evidence to establish a lack of functionality of EZPZ's unregistered trade dress. *Id.* EZPZ contends that the registration is evidence in support of EZPZ's claim that the trade dress is not functional. *Id.*

The Court finds that the unasserted Trademark Registration would confuse the jury, and is inadmissible under Rule 403 because any probative value would be marginal and substantially outweighed by the danger of unfair prejudice to LNC. EZPZ concedes that it is not attempting to assert a claim based on a registered trade dress. [Doc. No. 638 at 26]. However, given the apparent similar nature of the unregistered trade dress to the registered trade dress, as indicated by EZPZ's reason for introducing the registered trade dress, the jury could confuse the issue regarding the burden of proof related to nonfunctionality of an unregistered trade dress.

Specifically, a "certificate of registration of a mark upon the principal register" is prima facie evidence of the mark's validity. 15 U.S.C. § 1057(b) (2006); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 545 (10th Cir. 2000). The presumption of validity extends to the distinctiveness of the registered mark and also its nonfunctionality. *Publications Int'l v. Landoll*, 164 F.3d 337, 340 (7th Cir. 1998); *Sally Beauty Comp. v. Beautyco, Inc.*, 304 F.3d 964, 976 (10th Cir. 2002). In contrast, to prevail on a claim for infringement of an unregistered trade dress, the plaintiff bears the burden to proving that the trade dress is nonfunctional. 15 U.S.C. § 1125(a)(3) (2000); *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1279 n.8 (Fed. Cir. 2002).

If the registered mark is allowed, the jury could mistakenly believe that EZPZ is not required to prove nonfunctionality given the presumption of validity for the registered mark that is not at issue in this case. Accordingly, the Court finds that any probative value would be marginal and substantially outweighed by the danger of unfair prejudice to LNC. For the reasons states above, LNC's Motion in Limine No. 20 is **GRANTED**.

### 21. Motion in Limine No. 21: Opinions Not Included in Expert Reports.

LNC moves the Court to preclude any expert testimony or opinions beyond the scope of the expert reports. [Doc. No. 594-1 at 34]. LNC argues that there is no excuse for EZPZ to rely on expert opinions not included in expert reports. *Id.* at 35. LNC contends that if EZPZ attempts to rely on expert opinions not included in expert reports, it will significantly prejudice LNC's ability to adequately examine the expert and summarily deny LNC the ability to introduce competing evidence in the form of a rebuttal expert report on the topic. *Id.* at 36.

EZPZ responds that LNC is vague as to what exactly it is seeking to exclude. [Doc. No. 638 at 28]. The Court agrees. Accordingly, this request for exclusion is denied without prejudice. A party may object at trial to any expert testimony or opinions it deems is beyond the scope of the expert's report. However, the parties must be judicious in making these types of objections, and the objections must be well founded. A party that is aware that an expert's testimony or opinion is beyond the scope of the expert's report should not needlessly oppose the objection. The parties are forewarned that the Court will subtract any time spent resolving unfounded objections from the trial time allocated to the party that presents or prolongs an unfounded objection.

## IV.    EZPZ's Motion in Limine

The Court will address EZPZ's Motion in Limine Nos. 1 – 8 in this section.

### 1. Motion in Limine No. 1: Evidence or Argument Regarding the Michigan Action.

EZPZ states that it filed a complaint under seal against LNC and several other defendants in the United States District Court for the Eastern District of Michigan in an action styled *Eazy-PZ, LLC v.Luv n' care, Ltd., et al.*, Case No 16-cv-13688 ("Michigan Action"). [Doc. No. 596-1 at 2]. EZPZ notes that it concurrently moved for a temporary restraining order and preliminary injunction on an *ex parte* basis. *Id.* The court in that case denied the motion for temporary

restraining order, and EZPZ argues that the Michigan Action was voluntarily dismissed. *Id.* According to EZPZ, the Michigan Action is irrelevant under Fed. R. Evid. 401 to either the D327 Patent or the LUTPA claims. *Id.* at 2-3. EZPZ further contends that permitting LNC to argue that it bears on EZPZ's knowledge regarding validity or infringement of the D327 Patent would be inaccurate and prejudicial and should be excluded under Fed. R. Evid. 403. *Id.* at 3.

LNC responds that EZPZ's verified allegations in the Michigan Action directly contradicted statements Mrs. Laurain made to the United States Patent and Trademark Office ("USPTO") during the prosecution of U.S. Patent No. 9,462,903 (the "'903 Patent") concerning the existence of secondary considerations of commercial success absent advertising and promotion of the EZPZ Happy Mat. [Doc. No. 633 at 6-7]. According to LNC, Mrs. Laurain said one thing to the USPTO in seeking to overcome the Examiner's obviousness objection during the prosecution of the '903 Patent, and said the complete opposite in seeking temporary and preliminary injunctive relief against LNC in the Michigan Action. *Id.* at 7.

LNC also argues that the Michigan Action is directly relevant to LNC's LUTPA theory that EZPZ subsequently filed a bad faith utility patent infringement claim when it had knowledge of facts that objectively would serve to invalidate the '903 Patent and/or render it unenforceable. *Id.* LNC contends that it was this very knowledge EZPZ gained from its unsuccessful attempt to obtain injunctive relief in the Michigan Action that should have caused EZPZ to conduct a required additional investigation to support a good faith belief that it could immediately file a counterclaim against LNC and Mr. Nouri E. Hakim for infringement and inducement to infringe the '903 Patent in this action. *Id.* at 8. Finally, LNC argues that the ruling in the Michigan Action is evidence relevant to LNC's claim that any alleged infringement of the D327 Patent was not willful. *Id.*

The Court finds that the Michigan Action is relevant to claims in this case and should not

be excluded if presented in the proper context.  Regarding the LUTPA, the Michigan Action is relevant because "what constitutes bad faith remains to be determined on a case by case basis. Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999).  In addition, patent litigants are also required to "continually assess the soundness of pending infringement claims." *Taurus IP, LLC v. Daimler Chrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013).  Thus, the Michigan Action is relevant to LNC's LUTPA claims.

EZPZ also seeks to exclude evidence because it is prejudicial.  As explained by the Fifth Circuit, "all probative evidence is by its very nature prejudicial." *U.S. v. Power*s, 168 F.3d 741, 749 (5th Cir. 1999) (citing *United States v. Bermea*, 30 F.3d 1539, 1562 (5th Cir. 1994)).  Thus, prejudice alone is an insufficient reason to exclude the Michigan Action in this instance. Accordingly, EZPZ's Motion in Limine No. 1 is **DENIED**.

### 2.  Motion in Limine No. 2: Evidence or Argument Regarding the Contempt Order Against Brad Laurian in Nevada.

EZPZ states that LNC served Mr. Brad Laurain (Ms. Laurain's husband) personally with a subpoena to produce documents on August 29, 2018. [Doc. No. 596-1 at 3].  EZPZ further states that LNC later moved for and received an Order for Contempt from a Nevada Court, which carried an attorneys' fee award of approximately $30,000. *Id.* at 4.  EZPZ argues that there were no documents, and this Nevada case is irrelevant to any issue in this case. *Id.*

LNC concedes that the Contempt Order against Brad Laurain in Nevada and the subsequent Judgment awarding attorneys' fees in LNC's favor is irrelevant to the current remaining issues to be tried before the jury. [Doc. No. 633 at 9].  Accordingly, EZPZ's Motion in Limine No. 2 is **GRANTED.**

### 3.  Motion in Limine No. 3: Evidence or Argument Regarding the Motion to Compel and For Contempt Filed Against Joey Chua in Canada.

EZPZ states that LNC served a subpoena to appear and produce on Joseph Chua in Canada pursuant to letters rogatory. [Doc. No. 596-1 at 4].  EZPZ further states that Joseph Chua had a stroke and was in a car accident just weeks before his deposition. *Id.*  EZPZ argues that LNC refused to cancel the deposition forcing EZPZ to have an attorney appear in Canada to put on the record why the witness was not there and forcing EZPZ to file a motion for protective order. *Id.* EZPZ contends that LNC ultimately withdrew the contempt motion against Hip Mommies or Joey Chua after conference with the Canadian Court. *Id.*  EZPZ also argues that LNC should not be permitted to suggest or introduce at trial that Mr. Chua refused to produce documents or was in contempt. *Id.*

LNC responds that it does not contest that the Motion to Compel and for Contempt filed against Joseph Chua in Canada is irrelevant to the current remaining issues to be tried before the jury. [Doc. No. 633 at 9].  Accordingly, EZPZ's Motion in Limine No. 3 is **GRANTED**.

### 4.  Motion in Limine No. 4: Evidence or Argument Regarding Non-Final Office Actions in Continuing Patent Applications.

EZPZ moves the Court to exclude non-final office actions in continuing patent applications of the '903 Patent or '955 PCT. [Doc. No. 596-1 at 5].  EZPZ contends that the Federal Circuit has noted that initial rejections by the PTO are generally entitled to minimal weight. *Id.* (citing *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 127973, at *134 n.3). According to EZPZ, the fact that initial claims in continuing applications were rejected is highly confusing and prejudicial to a jury and should not be permitted. *Id.* at 6.

LNC responds that it does not seek to introduce evidence of office actions in related patent applications for purposes of defending against EZPZ's willful infringement claim. [Doc. No. 633 at 11].  LNC contends that it seeks to introduce these office actions for purposes of establishing

the materiality of prior art references allegedly known to both Mrs. Laurain and Mr. Williams, but not cited during prosecution of the '903 Patent. *Id.* at 11. According to LNC, this evidence is relevant to LNC's LUTPA claim. *Id.* at 12.

LNC further argues that the rejections of related applications are also relevant as establishing EZPZ's collective actual or constructive knowledge that the '903 Patent was invalid or not infringed by the LNC products accused of infringement. *Id.* Finally, LNC contends that it is also further evidence of EZPZ's bad faith pursuit of the '903 Patent infringement claim given that the '903 Patent was likely invalid based upon prior art uncovered by the USPTO used in rejecting the patentability of the pending claims. *Id.*

The Court agrees with LNC that the non-final office actions in continuing patent applications of the '903 Patent or '955 PCT is relevant. Specifically, office actions in related patent applications are relevant for establishing the materiality of prior art references. *Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 560 (S.D.N.Y. 2015) ("Rejections over withheld prior art in other patent applications with similar claims is evidence of materiality."). Likewise, this evidence is relevant to LNC's LUTPA claim because it relates to EZPZ's collective actual or constructive knowledge of the validity of the '903 Patent, and EZPZ's infringement claim against LNC products. Accordingly, EZPZ's Motion in Limine No. 4 is **DENIED**.

### 5. Motion in Limine No. 5: Evidence or Argument Regarding EZPZ's Litigation Conduct (or Alleged Misconduct).

EZPZ argues that its conduct during litigation is not actionable under LUTPA. [Doc. No. 596-1 at 6]. According to LNC, Louisiana courts have routinely rejected the idea that alleged misconduct during the course of litigation is redressable under LUTPA. *Id.* (citing *Quality Envtl. Processes, Inc. v. I.P. Petro. Co*, 144 So. 3d 1011, 1026; *GR Restaurants, LLC v. Suzanne Savoy Santillo, LLC*, 275 So.3d 50, 61 (3rd Cir. 2019)).

LNC concedes that litigation misconduct by EZPZ's counsel of record is irrelevant to the current remaining issues to be tried before the jury. [Doc. No. 633 at 12]. However, LNC argues that Mrs. Laurain and EZPZ's bad faith filing of and continued prosecution of infringement actions based upon the invalid '903 Patent is relevant to LNC's LUTPA claim and should not be excluded. *Id.* LNC further argues that there is evidence that Mrs. Laurain and EZPZ had subjective knowledge that the '903 Patent was invalid, unenforceable or not infringed by LNC, but chose to ignore this evidence in favor of the commencement and prosecution of this litigation against LNC. *Id.* at 13.

LNC also argues that EZPZ's contention that a party's conduct in connection with litigation can never serve as the basis for a LUTPA claim is wrong and unsupported under the law *Id.* LNC contends that the facts and circumstances of this case mandate that EZPZ's continued prosecution of its infringement action, despite its alleged knowledge that its infringement claims were objectively baseless, amounts to a violation of the LUTPA. *Id.*

The Court agrees with LNC that its LUTPA claim should not be excluded. The definition of what constitutes unfair trade practices is left to the courts. *Dufau v. Creole Engineering, Inc.*, 465 So.2d 752 (La. App 5th Cir.1985). The jurisprudence holds that to recover under the Louisiana Unfair Trade Practices Act, plaintiff must prove some element of fraud, misrepresentation, deception or other unethical conduct on defendant's part. *Dufau v. Creole Engineering, Inc., supra; Unique Const. Co., Inc. v. S.S. Mini Storage, Inc.*, 570 So.2d 161 (La. App. 5th Cir.1990). That conduct includes acts which offend established public policy and/or acts which are immoral, unethical, oppressive, unscrupulous or that are substantially injurious to the consumer. *Gautreau v. Southern Milk Sales, Inc.*, 509 509 So.2d 495 (La. App. 3rd Cir.1987); *Crown Buick, Inc. v. Bercier*, 483 So.2d 1310 (La. App. 4th Cir.1986). In *Marshall v. Citicorp Mortg., Inc.* 601 So. 2d

669, 671 (La. Ct. App. 1992), the court stated that "a legal practice may be an unfair trade practice, depending on the facts and circumstances of the particular case."

For example, in *Bank of New Orleans & Tr. Co. v. Phillips*, 415 So. 2d 973, 975 (La. Ct. App. 1982), the Louisiana Fourth Circuit upheld a trial court's determination that it was an unfair trade practice for a bank to intentionally file suit against a credit card customer in an improper venue. The court found this act to be "tantamount to an abuse of process," an act of "harassment to the defendant" and an attempt to "hinder him in his access to the courts." *Id.*

As explained by one Louisiana federal district court:

> *Bank of New Orleans* highlights an important feature of unfair trade practices suits. While merely filing in the wrong venue is not usually considered tortious, doing so with the intent to harass the defendant made the conduct actionable. *Id.* In Louisiana, conduct that is otherwise not illegal, may constitute an unfair trade practice if is undertaken with the unscrupulous purpose of harming competition, rather than helping oneself. *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 622 So. 2d 760, 766 (La. Ct. App.1993), *writ denied*, 629 So. 2d 1135 (La. 1993).

*Bros. Petroleum, LLC v. Wagners Chef, LLC*, 2018 U.S. Dist. LEXIS 127787, *15-16 (E.D. La. July 31, 2018).

The facts and circumstances of this case indicate that LNC may pursue a claim for a violation of the LUTPA. Specifically, the parties dispute whether EZPZ's infringement claims are objectively baseless as a result of EZPZ own actions and knowledge. There is also disputed facts as to whether EZPZ repeatedly discussed the litigation with third parties. Thus, LNC is not precluded from attempting to prove that Mrs. Laurain's and EZPZ's decision to pursue this infringement action was a bad faith effort to interfere directly with business relationships between LNC and others in the marketplace. In other words, LNC's LUPTA claim are not founded on issues that might violate the discovery statutes or the ethics rules governing attorneys, but instead are based on facts aimed at the alleged unfair business practices of EZPZ, based in part on its alleged deception before the USTPO.

EZPZ relies on the Louisiana Supreme Court's decision in *Quality Envtl. Processes* to support its argument that misconduct during litigation can never amount to an unfair trade practice. 144 So.3d at 1026. The Court disagrees that *Quality Envtl. Processes* stands for this broad proposition. As stated by the *Quality Envtl. Processes* court, "LUTPA is an act of the legislature and cannot be applied to regulate or define the practice of law, including the conduct of attorneys." *Id.* at 1026. Based on that holding, the Court ruled that a discovery dispute, even one that might violate the discovery statutes or the ethics rules governing attorneys, cannot violate LUTPA. The present LUTPA claim is not a discovery dispute.

EZPZ similarly relies on *GR Restaurants, LLC v. Suzanne Savoy Santillo, LLC*, 2018-637 (La. App. 3 Cir. 6/12/19), 275 So.3d 50, 61, wherein the Court noted that there was no merit to the argument that "LUTPA applies to an attorney who files a petition for damages on behalf of his client." In summary, the facts of *Quality Entl. Process* and *GR Restaurants, LLC* are inapposite. Here, a discovery dispute and attorney misconduct does not form the basis of LNC's LUTPA claims. Instead, LNC's claims arise as result of Mrs. Laurain's and EZPZ's decision to threaten competitors in allegedly bad faith in order to avoid fair competition. For the reasons stated above, EZPZ Motion in Limine No. 5 is **DENIED**.

### 6. Motion in Limine No. 6: Evidence or Argument Regarding Trebling of Damages For Any Action Undertaken by EZPZ Prior to June 3, 2020.

EZPZ argues that evidence or argument regarding trebling of any damages pursuant to LUTPA for any action of EZPZ taken prior to June 3, 2020 is properly excludable. [Doc. No. 596-1 at 10]. EZPZ contends that June 3, 2020, is the date that the Louisiana Attorney General placed EZPZ on notice of the LUTPA clam of LNC. *Id.* at 6. EZPZ further argues that Louisiana Revised Statute 51:1409 specifically states that a plaintiff is only entitled to treble damages "If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice

by the attorney general." *Id.* at 7 (citing Louisiana Revised Statutes 51:1409(A)). EZPZ contends that "the [alleged wrongful acts] complained of occurred long before the attorney general was notified of the defendants' actions and certainly before any notice was given to the defendants by the attorney general that they were committing unfair trade practices." *Id.* at 6-7 (citing *Marks v. Motor City*, 265 So. 3d 86, 90 (3rd Cir. 2019)).

LNC argues that evidence or argument regarding the trebling of damages pursuant to LUTPA for EZPZ's conduct prior to June 3, 2020 is both relevant and admissible. [Doc. No. 633 at 17]. LNC contends that courts in the Western District of Louisiana have found "treble damages" are recoverable under LUTPA after receiving notification from the Louisiana Attorney General's Office. *Id.* (citing *AIM Bus. Capital, L.L.C. v. Reach Out Disposal*, No. 13-241, 2014 WL 1401526, at *3 (W.D. La. Apr. 9, 2014)). LNC further argues that once EZPZ received notice from the Attorney General's Office, the failure to cease the offending action results in trebling of all damages, not just attorneys' fees incurred after June 3, 2020.

The Court agrees with LNC that evidence or argument regarding the trebling of damages pursuant to LUTPA for EZPZ's conduct prior to June 3, 2020 is both relevant and admissible. Indeed, federal courts in this district have found that treble damages may be awarded for ongoing violations of LUTPA that persisted past the date when the attorney general gave notice to the defendants. *AIM Bus. Capital, L.L.C. v. Reach Out Disposal*, 2014 U.S. Dist. LEXIS 50000, *7 (W.D. La. April 8, 2014) (finding that treble damages appropriate because "[a]fter notification for the Louisiana Attorney General's Office, [defendant] failed to pay AIM on outstanding invoices it verified"); *Hadassa Inv. Sec. Nig., Ltd. v. Swiftships Shipbuilders, LLC,* No. 13-2795, 2016 U.S. Dist. LEXIS 3919, at *22 (W.D. La. Jan. 11, 2016) (finding treble damages appropriate when the attorney general had given defendants notice, and defendants continued to withhold a deposit for

a ship).  Indeed, Louisiana Revised Statutes 51:1409(A) explicitly states that "after being put on notice by the attorney general, the court shall award three times the *actual damages sustained*."

This assumes that EZPZ's alleged violations continued after receiving notice from the attorney general. *See, e.g., Chillco, Inc. v. GGT Energy Sols., Inc.*, No. 20-1395, 2020 U.S. Dist. LEXIS 158779, at *10-11 (E.D. La. Aug. 31, 2020) ("Louisiana courts have reasoned that notice from the attorney general serves as a 'cease and desist' notice, after which continued LUTPA violations trigger treble damages. . . . Thus, because [plaintiff's] claim for treble damages only relates to conduct that occurred before this suit was filed, the Defendants' alleged violations are not ongoing and do not satisfy the requirements for treble damages under La. Rev. Stat. § 51:1409").  To the extent that EZPZ's discontinued any alleged violations after receiving notice from the attorney general, then LNC would not be entitled to treble damages.  In either scenario, evidence or argument regarding EZPZ's conduct prior to June 3, 2020 is both relevant and admissible in determining whether the alleged violation could result in treble damages.  For the reasons stated above, EZPZ Motion in Limine No. 6 is **DENIED**.

### 7. Motion in Limine No. 7: Evidence or Argument Regarding Settlement Negotiations between LNC and EZPZ or Attorney/Client Communications Regarding Same.

EZPZ argues that evidence or argument regarding settlement negotiations between LNC and EZPZ or any attorney/client communications regarding same are properly excludable. [Doc. No. 596-1 at 7].  EZPZ further argues that emails between Jordan Bolton and his client inventor purporting to show that EZPZ was stringing LNC in settlement for an improper purposes are barred by Fed. R. Evid. 408(a). *Id.*

LNC contends that communications between Jordan Bolton and Mrs. Laurain is evidence that EZPZ never wanted to settle with LNC and merely intended to "string" LNC along until the

'903 Patent issued and to file a separate sealed action in the Michigan District Court are appropriately admissible for purposes other than those prohibited by the Federal Rules of Evidence. [Doc. No. 633 at 19]. LNC argues that the Court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.* (citing Fed. R. Evid. 408(b). LNC also argues that in order to be excluded under Rule 408 the communications must "truly" be settlement communications. *Id.* LNC contends that none of the communications LNC intends to rely on are "truly" settlement communications and were not intended to be part of any negotiations with LNC. *Id.* at 20.

LNC also argues that Rule 408 "does not bar introduction of settlement evidence when 'the claim is based upon a wrong that is committed during the course of settlement negotiations.'" *Id.* (citing *Martin v. Finley*, 349 F. Supp. 3d 391, 422 n. 13 (M.D. Pa. 2018) (citing Fed. R. Evid. 408 advisory committee's note to 2006 amendment)). LNC contends that the communications between Jordan Bolton and Mrs. Laurain are evidence that EZPZ intended to "string" LNC along, and are properly admissible to establish that EZPZ engaged in bad faith settlement negotiations. *Id.* at 21. LNC further contends that it is not offering these email communications to establish liability, but rather "for another purpose" under Fed. R. Evid. 408(b). *Id.* at 22.

There is no bright-line rule governing whether evidence constitutes settlement material for purposes of FRE 408. Indeed, "it is often difficult to determine whether an offer is made 'in compromising or attempting to compromise a claim.' Both the timing of the offer and the existence of a disputed claim are relevant to the determination." *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) (citation omitted). Assuming that the communications do constitute settlement material, Rule 408 does not exclude all settlement evidence from trial: "Evidence of an offer to

compromise, though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose', i.e., for a purpose other than to prove or disprove the validity of the claim the offers were meant to settle." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989).

In determining the admissibility of settlement materials under Rule 408, the trial court "has broad discretion as to whether to admit evidence of settlement . . . offered for 'another purpose.'" *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999) (*quoting Trebor*, 865 F.2d at 511). "In applying the 'another purpose' exception to Rule 408, the trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations." *Id.* "Courts regularly find Rule 408 inapplicable…where the compromise negotiations, in and of themselves, give rise to a cause of action." *Marine Power Holding, L.L.C. v. Malibu Boats, LLC*, No. 14-912, 2016 U.S. Dist. LEXIS 104006, at *14 (E.D. La. Aug. 8, 2016) (citation omitted). "Rule 408 is meant to promote settlement negotiations by removing the fear that any communications made in furtherance of the negotiation will later be used against one of the parties." *Id.* (citation omitted).  Thus, when a party is "not offering the emails for a purpose prohibited by Rule 408, their admission into evidence does not undermine this policy objective." *Id.*

The Court finds that the communications between Jordan Bolton and Mrs. Laurain are properly admissible because they may indicate that EZPZ engaged in bad faith settlement negotiations. *Elia v. Roberts*, No. 1:16-cv-0557 AWI EPG, 2017 U.S. Dist. LEXIS 177116, at *27 (E.D. Cal. Oct. 25, 2017) (courts may "allow[] evidence of settlement negotiations to be used to show bad faith in the negotiation process itself" because it is separable "from the underlying liability issue").  These communications may also establish the credibility of the people involved

in the communications.  Accordingly, to the extent that LNC is not offering these communications to establish liability, but rather "for another purpose" under Fed. R. Evid. 408(b), these communications are properly admissible.  For the reasons stated above, EZPZ Motion in Limine No. 7 is **DENIED**.

### 8.  Motion in Limine No. 8: Evidence or Argument Regarding Counsel's Statements in Motions Practice.

EZPZ argues that LNC should be precluded from introducing at trial any statements, averments, allegations, positions, or arguments of counsel set forth from any motions practice. [Doc. No. 596-1 at 8].  EZPZ contends that motion practice is irrelevant; are not admissible evidence at trial; and should be excluded pursuant to Fed. R. Evid. 401. *Id.*

LNC responds that EZPZ's blanket assertion that "[m]otions practice" is "irrelevant" and "not admissible evidence at trial" under Fed. R. Evid. 401 is unsupported by any case law or directed to any particular "statements, averments, allegations, positions, or arguments of counsel set forth from any motions practice" about which EZPZ has a particular concern. [Doc. No. 633 at 22].  LNC argues that the Court is given no context to assess EZPZ's objection. *Id.* at 23. According to LNC, the Court "can appropriately treat statements in briefs as binding judicial admissions." *Id.* (citing *Averette v. Transocean Enterprises, Inc.*, No. 07-1557, 2010 WL 2814702, at *3 (W.D. La. July 16, 2010)).

Without reaching the issue of judicial admission, the Court finds that EZPZ's motion in limine is overly broad and vague.  "The purpose of motions in limine is…to identify specific issues which are likely to arise at trial…" *Ogden v. Cozumel, Inc.*, No. A-18-CV-00358-DAE-SH, 2019 U.S. Dist. LEXIS 180504, at *2 (W.D. Tex. Oct. 18, 2019). "Evidentiary rulings, especially those addressing broad classes of evidence, should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Id.*  EZPZ has

not identified any specific statements, averments, allegations, positions, or arguments of counsel set forth from any motions practice, but instead offers a broad category of items that might be presented by LNC. "[M]otions in limine should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial." *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, No. CV 07-8108 FMO (SHx), 2014 U.S. Dist. LEXIS 197541, at *33 (C.D. Cal. Jan. 3, 2014)(internal citation and quotation omitted). For the reasons stated above, EZPZ's Motion in Limine No. 8 is **DENIED**. If specific statements, averments, allegations, positions, or arguments of counsel set forth from any motions practice is presented at trial that EZPZ believes is not relevant, then EZPZ can object at that time.

## V.    CONCLUSION

Accordingly, for these foregoing reasons, LNC's Omnibus Motion in Limine [Doc. No. 594] **GRANTED IN PART** and **DENIED IN PART**. Likewise, for these foregoing reasons, EZPZ's Omnibus Motion in Limine [Doc. No. 596] is **GRANTED IN PART** and **DENIED IN PART**.

Monroe, Louisiana, this 29th day of March, 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE