UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| LUV N' CARE | CIVIL ACTION NO. 3:16-00777 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| LINDSEY LAURAIN, ET AL. | MAG. JUDGE PEREZ-MONTES |

**MEMORNDUM ORDER**

The Court entered an Order addressing the issues presented by the parties in the Pretrial Order and the Pretrial Memoranda. [Doc. No. 761]. In the Order, the Court allowed the parties to brief and/or clarify certain issues. The parties submitted additional briefing. [Doc. Nos. 769, 771, 778, 779]. The Court issues the following rulings:

**I.     Issues Identified by the Court that the Parties were Allowed to Submit Further Briefing.**

**ISSUE NO. 1:**

Whether EZPZ's knowledge for purpose of LNC's LUTPA claims is "collective" on the part of EZPZ, as alleged by LNC.

**Additional Ruling on Issue No. 1:**

As evidenced by the parties' additional briefing, this is not a contested issue of law. The parties agree that an agent's knowledge may be imputed to the principal whether the agent conveys the information to the principal or not in certain instances. [Doc. No. 779 at 7].[1] The Court agrees with EZPZ that in the absence of identification of the information and circumstances, a party cannot reasonably respond to what knowledge may be imputed. Finally, the Court notes that this

---

[1] Citations to the parties' filings are to the filing's number in the docket [Doc. No.] and pin cites are to the page numbers assigned through ECF.

principal applies equally to both parties. In other words, it is not limited to the knowledge of EZPZ's agents to EZPZ, but also to the knowledge of LNC's agents to LNC.

**ISSUE NO. 2:**

Whether the alleged verbal assignment of rights in the '903 Patent and D327 Patent by Lindsey Laurain to EZPZ (prior to the October 9, 2016 written assignment) is null and void, as claimed by LNC.

**Additional Ruling on Issue No. 2:**

EZPZ argues that this is an improper attempt by LNC to expand the scope of the litigation. [Doc. No. 779 at 8]. The Court agrees. The written assignment related to this issue was recorded with the USPTO on October 10, 2016. [Doc. No. 646-1]. The assignment document itself references that it was relying on an "oral assignment" dating back to April 10, 2014. [*Id.*]. LNC's First Amended Complaint [Doc. No. 21], which is the operative document, was filed on October 28, 2016. Thus, LNC had constructive notice of the oral assignment issue before it filed its First Amended Complaint. Accordingly, the Court finds that LNC waived any argument related to the assignment by not amending its complaint. To be clear, the Court appreciates that "*nunc pro tunc* assignments are not sufficient to confer retroactive standing.*" Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). However, any issues related to the oral assignment should have been addressed well before the eve of trial.

**ISSUE NO. 5:**

Whether LNC can pursue a claim for damages under the Lanham Act and/or LUTPA violations due to alleged failure to timely disclose said damages.

**Additional Ruling on Issue No. 5:**

LNC argues that no precise measurement of numerical value for LNC's lost sales is necessary under the Lanham Act or LUTPA. [Doc. No. 769 at 15]. According to LNC, LUTPA

only requires proof of an ascertainable loss, and "does not require a precise measurement of the damage…" [*Id.*] (citing *Oliveira v. Martins*, No. 14-482, 2014 WL 4186675, at *4 (E.D. La. Aug. 21, 2014)). Similarly, LNC argues that "'Injury' for purposes of the Lanham Act is not synonymous with proof of actual damages." [*Id.* at 16] (citing *S. Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437, 445 n.10 (E.D. La. 2011). According to LNC, it only needs to provide sufficient evidence of injury and damages to prove EZPZ breached the Lanham Act, and not a precise dollar amount. [*Id.*] (citing *Dynamatize Enters., Inc. v. Maximum Human Performance, Inc.*, Nos. 09-0046, 09-1719, 2010 WL 6111631, at *6 (N.D. Tex. June 24, 2010)). LNC contends that it has lost customers as a direct result of EZPZ's smear campaign and call for a boycott of all LNC products. [*Id.* at 17]. LNC argues that how much harm and to what extent LNC has been damaged should be left to the trier of fact. [*Id.*]

EZPZ responds that LNC concedes that it has never disclosed the numerical amount of damages that it has allegedly suffered in lost sales, and that it cannot prove any actual damages due to the alleged boycott. [Doc. No. 779 at 11]. EZPZ argues that LNC cannot prove an ascertainable loss under LUTPA, because the evidence LNC relies on is inadmissible as hearsay. [*Id.* at 11-12]. EZPZ contends that the claims cannot go forward when there is no evidence of an ascertainable loss. [*Id*. at 12]. EZPZ also cites deposition testimony of LNC's corporate representative and Mr. Nouri Hakim in support of its arguments. [*Id.* at 12-14]. EZPZ concludes that LNC cannot prove "injury" under the Lanham Act, and cannot prove an ascertainable loss under LUTPA. [*Id.* at 14].

EZPZ does not disagree that neither LUTPA nor the Lanham Act require LNC to plead a precise numerical value for LNC's lost sales. Instead, EZPZ argues that LNC cannot prove

"injury" under the Lanham Act, and cannot prove an ascertainable loss under LUTPA due to a lack of admissible evidence.

The Court finds LNC never disclosed a numerical amount of damages that it allegedly suffered in lost sales.  LUTPA requires an "ascertainable loss."  La. R.S. 51:1409.  LNC admittedly has no evidence to prove that the customers who posted on LNC's website actually stopped buying LNC products. [Doc. No. 338-6 Depo. Tr. 63:5 to 64:8].  LUTPA claims cannot go forward where there is no evidence of "ascertainable loss."  *Newsouth Communications Corp. v. Universal Telephone Co.*, No. 02-2722, 2002 WL 31246558 (E.D. La. Oct. 4, 2002); *Vickers v. Interstate Dodge*, 882 So.2d 1236, 1244 (La. App. 3 Cir. 2004).

This Court is unclear whether LNC is making an injunctive relief claim, but injunctions are not allowed for private litigants under LUTPA.  *Camowraps, LLC v. Quantum Dig. Ventures LLC*, No. 13-6808, 2015 U.S. Dist. LEXIS 61944, at *4-7 (E.D. La. May 12, 2015).  It is clear that LNC is making an injunctive relief claim under the Lanham Act.

EZPZ also argues that LNC is not entitled to nominal damages. [Doc. No. 779 at 14] (citing Doc. No. 773 at 42; *see also* Doc. No. 769 at 17 n. 31]. The Court agrees with EZPZ. LNC "has not cited any cases addressing the availability of nominal damages. The Court's research suggests that LUTPA does not permit an award of nominal damages in the absence of actual evidence of damages." *Camowraps, LLC v. Quantum Dig. Ventures LLC*, No. 13-6808, 2015 U.S. Dist. LEXIS 61944, at *9 n.17 (E.D. La. May 12, 2015).

Under the Lanham Act, LNC must prove "injury" and cannot do so for the same reasons as discussed for the LUTPA claim.  Therefore, LNC cannot pursue a claim for damages under the Lanham Act or LUTPA.

**ISSUE NO. 10:**

Whether LNC's alleged claims of conspiracy under the LUTPA against EZPZ can be heard when the alleged third parties, including Lindsey Laurain, who allegedly conspired with EZPZ, are not defendants in this suit.

**Additional Ruling on Issue No. 10:**

LNC notes preliminarily that its allegations of a conspiracy between Mrs. Laurain (acting for EZPZ) and certain of EZPZ's followers is an alternative allegation and is not essential to LNC's LUTPA claim. [Doc. No. 769 at 17]. Specifically, LNC argues that "[n]o conspiracy among participants is needed to support LNC's LUTPA claim." [*Id.* at 20]. Notwithstanding, LNC contends that there was a tacit conspiracy among Mrs. Laurain and the ezpzfun Facebook Group followers who participated in the EZPZ Facebook group chats related to the NUBY launches of its integrated silicone mat. [*Id.* at 20].

EZPZ argues that this allegation was withdrawn by LNC as it relates to LNC's customers/retailers. [Doc. No. 771 at 7]. EZPZ contends that this subpart of the LUTPA claim should not be entitled to be pursued by LNC. [*Id.*]

The Court previously noted that LNC's Amended Complaint [Doc. No. 21] alleged that EZPZ undertook a social media campaign posting comments that LNC's feeding mat infringes on EZPZ's utility patent. [Doc. No. 761 at 3] (citing Doc. No. 21 at ¶ 52). Indeed, EZPZ states that it "does not contest that LNC's claim regarding EZPZ's alleged smear campaign and call for boycott of products were pleaded." [Doc. No. 779 at 6]. Likewise, EZPZ did not object or argue that this was a new theory not previously raised by LNC in its opposition to LNC's cross-motion for partial summary judgment under LUTPA. [See, e.g., Doc. No. 621 at 11]. Accordingly, LNC can purse this conspiracy theory under LUTPA.

**ISSUE NO. 11:**

Whether the '903 Patent is invalidated until all appeals are exhausted, and whether EZPZ is allowed to contradict the Court's invalidity ruling [Doc. No. 526] to counter LNC's claim that EZPZ acted in bad faith by asserting the 903 Patent.

**Additional Ruling on Issue No. 11:**

EZPZ argues that the Court's ruling on the '903 Patent regarding a finding of obviousness does not *ipso facto* lead to a finding on the element that EZPZ acted in "bad faith" in asserting its patent for the reasons further described below. [Doc. No. 771 at 8]. EZPZ contends that to the extent the Court were to find that claims still exist that hinge on whether EZPZ acted in "bad faith" in asserting the '903 'Patent, EZPZ would necessarily have to be permitted to offer its rationale for why it believed at the time that it was asserting any patent infringement of the '903 Patent it believed that patent to be valid. [*Id.* at 9]. According to EZPZ, the finding of the Court on a question of obviousness cannot substitute for the showing that LNC must make to prevail on its claim. [*Id.* at 10].

LNC responds that the Court's Invalidity Ruling is the "law of the case." [Doc. No. 778 at 10] (citing Dkt. Nos. 522 and 523). According to LNC, the Court's Invalidity Ruling is dispositive of the but-for materiality of the Webb Prior Art and the invalidity of the '903 Patent. [*Id.* at 11] (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011)).

The Court finds that this issue is **MOOT.** The Court will conduct a bench trial on inequitable conduct prior to the jury trial. At the bench trial, LNC has the burden of proving that the patentee committed inequitable conduct in obtaining the '903 Patent. *See, e.g.*, *Therasense*, 649 F.3d at 1290 ("[T]he accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it.").

If LNC is successful in proving inequitable conduct, then EZPZ will be precluding from arguing that it acted in good faith in asserting the '903 Patent during the jury trial.

If LNC is unsuccessful in proving inequitable conduct, then LNC's claim that EZPZ acted in bad faith by asserting the '903 Patent will be preempted under Federal patent law. Specifically, "Federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)).

**ISSUE NO. 13:**

Whether EZPZ is entitled to the same damages for trade dress infringement as it is entitled to for infringement of the design patent.

**Additional Ruling on Issue No. 13:**

EZPZ argues that from the beginning of this case, it has stated that trade dress damages were to be calculated from LNC's lost profits. [Doc. No. 771 at 11] (citing Doc. No. 40 at ¶122). According to EZPZ, its expert, Mark Pedigo, identified the sales and calculated the profits of LNC in selling the accused products. [*Id.* at 12]. EZPZ concedes that Mr. Pedigo's report identifies lost profits for purposes of determining design patent infringement damages, and not for trade dress infringement, but contends those damages are the same for the trade dress infringement claim because the accused products are the same. [*Id.*]. According to EZPZ, Mr. Pedigo timely disclosed his opinions and was questioned extensively throughout his deposition on July 26, 2019 about his lost profits analysis and how he derived it. [*Id.*]. EZPZ argues that it has consistently and timely disclosed the lost profit damages it seeks for trade dress infringement as set forth in the controlling statute. [*Id.*].

LNC responds that EZPZ never disclosed the basis for and the amount of alleged trade dress damages during fact or expert discovery. [Doc. No. 778 at 14]. LNC argues that Mr. Pedigo's analysis of LNC's total profits from alleged design patent infringement cannot be substituted to support EZPZ's claim for disgorgement of LNC's profits for alleged trade dress infringement. [*Id.*] According to LNC, EZPZ never tendered any expert report or testimony on alleged damages specifically associated with its trade dress infringement claim. [*Id.* at 15]. LNC contends that EZPZ's assertion that Mr. Pedigo's calculation of EZPZ's alleged lost profits for design patent infringement are identical to EZPZ's alleged lost profits for trade dress infringement is an untimely disclosure. [*Id.* at 16].

The Court finds that EZPZ never disclosed the basis for and the amount of alleged trade dress damages during fact or expert discovery. EZPZ is attempting to bootstrap damages for the trade dress infringement with expert Mark Pedigo's analysis of LNC's total profits from alleged design patent infringement. EZPZ has never supplemented its answer to LNC's Interrogatory No. 19 [Doc. No. 350-10]. Mark Pedigo makes no mention in either his Expert Report or Supplemental Expert Report about damages and/or lost profits related to trade dress infringement. Therefore, EZPZ is not entitled to claim damages for alleged trade dress infringement.

**ISSUE NO. 15:**

Whether EZPZ's D327 has been and will remain a valid patent.

**Additional Ruling on Issue No. 15:**

Due to the Inequitable Conduct trial, this issue is MOOT.

**ISSUE NO. 25:**

Whether "The Patent Process: An Overview for Jurors" can be shown to the jury venire prior to selection.

**Additional Ruling on Issue No. 25:**

There were no objections, so the above video will be shown to the jury venire.

**ISSUES NO. 27/28:**

Whether emails on EZPZ's Exhibit List related to an unaccused product, developed many months earlier by Nuby-UK, are admissible.

Whether emails related to the conduct of Nuby-UK and emails discussing other products not accused of infringement are admissible against LNC at trial.

**Additional Ruling on Issues No. 27/28:**

LNC argues that it is seeking to exclude emails among and between Nuby-UK and/or its Chinese manufacturer that do not involve Mr. Hakim or anyone at LNC. [Doc. No. 778 at 22]. LNC contends that there is no witness at trial who can authenticate or lay a foundation for these emails. [*Id.*]. LNC further contends that the Court made clear on December 4, 2018, that LNC's alleged copying of products not accused of infringement are not relevant. [*Id.* at 23] (citing Doc. No. 216).

The Court generally agrees that non-accused products are not relevant to EZPZ's willful infringement or trade dress infringement claim. This evidence is potentially too attenuated to be relevant, maybe confusing, and could be unduly prejudicial. *See, e.g.*, *Racing Optics, Inc. v. Aevoe Corp.*, No. 2:15-cv-1774-RCJ-VCF, 2016 U.S. Dist. LEXIS 52886, at *11 (D. Nev. Apr. 19, 2016) ("Documents related to the non-Accused Products are irrelevant to any claim or defense in this lawsuit."). Thus, in the abstract, the Court views this type of evidence as inadmissible.

However, EZPZ argues that the Court has already decided in the Motion in Limine Ruling that these documents are admissible. [Doc. No. 771 at 13] (citing Doc No. 715). As indicated in that Order, the Court refused to preclude this type of evidence and testimony in this preliminary context. [Doc. No. 715 at 8]. Indeed, "it is the better practice to wait until trial to rule on objections

when admissibility substantially depends upon what facts may be developed there." *Starling v. Union Pac. R.R.*, 203 F.R.D. 468, 482 (D. Kan. 2001). To be clear, the Motion in Limine Ruling only indicates that Court is not precluding that evidence at this preliminary stage. It is not a finding that the evidence is admissible per se. Accordingly, as with all Motion in Limine Rulings, a party may object to evidence it deems inadmissible.

The Court does note that LNC's argument that EZPZ will not be able to authenticate emails among and between Nuby-UK and its Chinese manufacturer that do not involve Hakim or anyone at LNC is very compelling since EZPZ has not listed any witnesses that are parties to these emails. Any email that is not authenticated will not be admitted into evidence.

However, any of the emails which allegedly seek to prove the "modus operandi" of LNC copying EZPZ or other products, are EXCLUDED. This Court made clear on December 4, 2018, that evidence of LNC copying products not accused of infringement are irrelevant. [Doc. No. 662].

**ISSUE NO. 31**

Whether EZPZ witness, Megan Rushing, shall be excluded from testifying as not previously identified.

**Additional Ruling on Issue No. 31:**

It is the Court's understanding that LNC has agreed to withdraw Megan Rushing as a potential witness. [Doc. No. 769 at 21]. Accordingly, this issue is **MOOT**.

**II.     Issues that the Parties Requested Further Clarification.**

<u>**ISSUE NO. 4:**</u>

Whether LNC properly plead, and should be allowed to try against EZPZ, the following claims under LUTPA:

(1) a LUTPA violation for alleged cease and desist letter;

(2) a LUTPA violation for alleged wrongful litigation conduct;

(3) a LUTPA violation for EZPZ's alleged attempts to have advertisers and sales platforms such as Amazon remove LNC's advertisements and product listings based on alleged infringement;

(4) allegations of improper patent marking under 35 U.S.C. § 292;

(5) Ms. Lindsey Laurain's personal liability;

(6) infectious enforceability; and

(7) conspiracy.

**Additional Ruling on Issue No. 4:**

LNC asks the Court to revisit its ruling on Issue No. 4 insofar as it relates to what the Court lists as claim (1) – a violation under the Louisiana Unfair Trade Practices and Consumer Protection Law Act ("LUTPA") for the alleged cease and desist letter. [Doc. No. 769 at 5]. LNC argues that it is apparent the Court either overlooked Paragraph 65 of the First Amended Complaint or did not appreciate that the threatening April 27, 2016 letter referenced in Paragraph 65 was the cease and desist letter. [*Id.* at 7]. According to LNC, its LUTPA claim expressly included the allegation in Paragraph 65 that the April 27, 2016 letter (i.e., the "cease and desist all sales activity" letter) threatened LNC. [*Id.*]

EZPZ replies that the alleged unlawful cease and desist letter is first mentioned in the Amended Complaint, at paragraph 65, under a section entitled "Defendants Have Threatened Plaintiff and Its Customers." [Doc. No. 779 at 5]. EZPZ argues that this section, which is marked

as paragraphs 65-69, specifically requests declaratory judgment for this action (¶69)—not damages under LUTPA. [*Id.*]. According to EZPZ, LNC attempted to shift its position in April 2020 approximately 15 months after discovery cutoff, and nearly four years after the filing of the Complaint in this matter. [*Id.*]. EZPZ argues that LNC cannot have it both ways, it cannot contend that it knew of the cease and desist letter and timely pleaded it while at the same time contend that its discovery responses in April 2020 were timely because of alleged new information it just discovered. [*Id.*]. EZPZ further argues that an amendment of LNC's discovery responses would not equate to an amendment of the operating complaint. [*Id.* at 5-6]. The Court agrees with EZPZ, and will not revisit its previous ruling.

LNC further seeks clarification regarding the Court's statement that LNC never amended its Complaint to add claims regarding EZPZ's smear campaign and call for a boycott of LNC's products. [Doc. No. 769 at 8] (citing Doc. No. 761 at 3). LNC states that it assumes that the Court's language in the second paragraph of that section stating LNC never amended its Complaint to add these claims was not intended to refer to the claims regarding EZPZ's smear campaign and call for a boycott of LNC's products. LNC's assumption is correct. Indeed, "EZPZ does not contest that LNC's claim regarding EZPZ's alleged smear campaign and call for boycott of products were pleaded." [Doc. No. 779 at 6].

**ISSUE NO. 6**

Whether the April 2016 letter sent by EZPZ to LNC is a "cease and desist" letter.

**Additional Ruling on Issue No 6:**

LNC respectfully requests that it be permitted to refer to the letter as a "cease and desist" letter. [Doc. No. 769 at 8-9]. As discussed above with regards to Issue No. 4, LNC did not plead the "cease and desist" as part of its LUTPA claims. Instead, the letter was plead as part of its

declaratory judgment claim. Accordingly, as previously determined, "this issue cannot be brought by LNC as part of its LUTPA claim." [Doc. No. 761 at 4].

**ISSUE NO. 7**

Whether LNC is entitled to treble damages for any LUTPA violation, prior to the Attorney General's June 3, 2020 letter.

**Additional Ruling on Issue No 7:**

LNC seeks clarification from the Court that evidence of conduct at any time is admissible to prove a LUTPA violation, and that treble damages may only be awarded if EZPZ's unfair or deceptive conduct continued after June 3, 2020. [Doc. No. 769 at 9]. EZPZ argues that "[t]his matter was already addressed by the Court and does not need to be re-addressed." [Doc. No. 779 at 6].

LNC is correct that the Court only intended to indicate that treble damages may only be awarded if EZPZ's unfair or deceptive conduct continued after June 3, 2020.


**III. Issue Raised During Telephone Pretrial Conference.**

**ISSUE NO. 35**

Whether EZPZ should be required to declare a date the Happy Mat and the Mini Mat allegedly acquired secondary meaning.

**Ruling on Issue No 35:**

LNC argues that EZPZ should be required to declare a date the Happy Mat and the Mini Matt allegedly acquired secondary meaning. [Doc. No. 778 at 5]. LNC contends that EZPZ should not be permitted to rely on evidence prior to the date it claims to have acquired secondary meaning to also establish likelihood of confusion. [*Id.*] According to LNC, the only relevant evidence EZPZ

may rely on to establish secondary meaning must predate the date it identifies as having established secondary meaning. [*Id.* at 6].

In a trade dress, EZPZ "must make the additional showing that its design has acquired secondary meaning in the marketplace by which it is identified with its producer or source." *Blumenthal Distrib. v. Exec. Chair, Inc.*, No. CV-10-1280 (CBA), 2010 U.S. Dist. LEXIS 142193, at *19 (E.D.N.Y. Nov. 9, 2010) (internal quotation marks and citation omitted). "Whether a trade dress has acquired secondary meaning is a question of fact." *Nutraceutical Corp. v. NutraChamps, Inc.*, No. 2:18-cv-00400-DB-DAO, 2020 U.S. Dist. LEXIS 203190, at *17 (D. Utah Oct. 30, 2020) (citation omitted). "Secondary meaning can be established through direct evidence, such as consumer surveys, or through circumstantial evidence, such as the length and manner of the trade dress's use, the nature and extent of advertising and promotion of the trade dress, the efforts made in promoting a connection in the public's mind between the trade dress and a particular product or venture, proof of intentional copying, or evidence of sales volume." *Nutraceutical Corp. v. NutraChamps, Inc.*, No. 2:18-cv-00400-DB-DAO, 2020 U.S. Dist. LEXIS 203190, at *15 (D. Utah Oct. 30, 2020). "Proof of secondary meaning entails vigorous evidentiary requirements." *Schieffelin & Co. v. Jack Co.*, 89 Civ. 2941 (PKL), 1992 U.S. Dist. LEXIS 9279, at *42 (S.D.N.Y. June 23, 1992) (citation omitted). Accordingly, EZPZ "must establish that its mark had acquired secondary meaning *before* the first infringing use by each alleged infringer." *Converse, Inc. v. ITC*, 909 F.3d 1110, 1116 (Fed. Cir. 2018) (emphasis added). However, EZPZ does not have to declare a specific date.

EZPZ contends that its trade dress acquired secondary meaning no later than July 17, 2018, the date of its Trademark Registration for its trade dress. [Doc. No. 779 at 17]. The Court finds that this is an improper attempt by EZPZ to introduce the registration of the trade dress at this very

late stage in the case. The Court is cognizant that there is only a single trade dress, and that this trade dress went from unregistered (common law) to registered on July 17, 2018. However, the issue here is the presumptions that federal registration provides. *See, e.g., Converse,* 909 F.3d at 1117 ("[T]he Lanham Act entitles the owner of the registered mark to a presumption that the mark is valid, see 15 U.S.C. §§ 1057(b), 1115(a), including that it has acquired secondary meaning …").

EZPZ does not contend that it previously asserted that LNC infringed its registered trade dress. Accordingly, EZPZ will not be allowed to claim the benefit of these presumptions on the eve of trial. To be clear, EZPZ "must establish that its mark had acquired secondary meaning *before* the first infringing use by each alleged infringer." *Id.* at 1116. The parties can present the factual issues related to this issue to the jury, but EZPZ cannot rely on the registration of its trade dress.

Monroe, Louisiana, this 4th day of August, 2021.

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**