**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **LUV N' CARE, LTD.,** | Civil Action No.: 3:16-cv-00777 |
| *Plaintiff,* | |
| *v.* | Honorable Judge Terry A. Doughty |
| **EAZY-PZ, LLC,** | Magistrate Judge Joseph H. L. Perez-Montes |
| *Defendant.* | |

**<u>DEFENDANT EAZY-PZ, LLC'S MEMORANDUM IN SUPPORT OF ITS
MOTION PURSUANT TO FED. R. CIV. P. 59 AND/OR FED. R. CIV. P. 60 TO ALTER
AND AMEND JUDGMENT AND RULINGS IN LIGHT OF THE USPTO
REEXAMINATION CERTIFICATE OF THE '903 PATENT AND FINDINGS OF FACT
BY THE COURT</u>**

This Memorandum is offered in support of Defendant Eazy-PZ, LLC ("EZPZ")'s Motion

Pursuant to Fed R. Civ. P. 59 and/or Fed. R. Civ. P. 60 to Alter and Amend Judgment and

Rulings in light of the USPTO Reexamination Certificate of the '903 Patent and Findings of Fact

by the Court.

# I.   <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS........................................................................................... ii

TABLE OF CASES AND AUTHORITIES .................................................................. iv

II.  INTRODUCTION ............................................................................................1

III.  PROCEDURAL HISTORY AND BACKGROUND............................................2

IV.  LEGAL STANDARD FOR MOTIONS FOR RECONSIDERATION .................3

V.  ARGUMENT....................................................................................................4

    A.  It was Manifest Error to Disregard the PTO's Reexamination Findings.....4

        1.  The Court Must Consider Evidence that the PTO Upheld The Validity of the '903 Patent.............................................................4

        2.  All Claims of the '903 Patent were Confirmed by the PTO in Reexamination in Light of a Hypothetical Combination of Bass and Webb Which Creates a Material Issue of Fact and Compels Altering the Judgment and its Ruling on Reconsideration .............6

        3.  The PTO Examined the Pink Easi Tommee Tippee Mat................8

    B.  The Necessity to Receive Evidence and Make Factual Findings to Resolve the Motion for Reconsideration Compels Altering the Judgment and Rulings ...............................................................................9

        1.  The Court is Not Permitted to Make Factual Findings of Fact In Connection with a Motion for Summary Judgement. .........................9

        2.  The Court's Receiving of Testimony In Connection with the Motion for Summary Judgment Compels Denial of the Motion for Summary Judgment and Altering the Judgment That Dismissed EZPZ's '903 Patent Infringement Claims..............................................................10

    C.  The Court Made Impermissible Factual Findings Of Fact In Its Ruling On Summary Judgment Regarding The Prior Art That Are Erroneous Or Unsupported.........................................................................................12

1.  The Factual Finding that the Pink Tommee Tippee is a Commercial Embodiment Practicing the Webb Prior Art is a Disputed Question of Material Fact.....................................................................................12

2.  The Factual Finding that the Pink Easi Tommee Tippee Mat Is Prior Art is Unsupported by the Evidence....................................................14

3.  The Factual Finding that the Pink Easi Tommee Tippee Mat is Not Cumulative is Erroneous ..................................................................16

4.  The Factual Determination of Whether the Webb Prior Art "Self-Seals" is a Disputed Question of Material Fact ........................17

D.  The Court Made Impermissible Factual Findings Of Fact In Its Ruling on Summary Judgment Regarding Secondary Considerations ............................................................................................ 18

1.  The Factual Finding that Secondary Considerations are Not Sufficient To Create a Genuine Issue of Material Fact is Erroneous.................19

VI.  CONCLUSION.......................................................................................25

# VII.    TABLE OF CASES AND AUTHORITIES

*1989 AMC 783*, 828 F.2d 291 (5th Cir. La. September 29, 1987). .................................. 19

*Animal Legal Def. Fund v. United States FDA,* 836 F.3d 987 (9th Cir. 2016) ............... 10

*Broad. Innovation, L.L.C. v. Charter Communs., Inc.,* Civil Action No.
03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623,
(D. Colo. July 11, 2006) ...................................................................................... 4, 5,

*Broussard v. Go-Devil Mfg. Co. of La.,* No. 3:08-cv-00124-BAJ-SCR,
2014 U.S. Dist. LEXIS 1101 (M.D. La. Jan. 6, 2014) ................................. 8, 9, 18, 24,

*Chemours Co. FC, LLC v. Daikin Indus.,* Nos. 2020-1289, 2020-1290,
 2021 U.S. App. LEXIS 21690 (Fed. Cir. July 22, 2021). .............................................. 22

*Custom Accessories, Inc. v. Jeffrey-Allan Indus.,* Inc., 807 F.2d 955
(Fed. Cir. 1986) .................................................................................................... 4, 17

*Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.,*
 851 F.2d 1387 (Fed. Cir. 1988) ............................................................... 22, 23, 24

*Fox Factory, Inc. v. SRAM, LLC,* 944 F.3d 1366 (Fed. Cir. 2019) ................................ 22

*HBM Interests, LLC v. Chesapeake La.,LP,* No. 12-1048, 2013
 U.S. Dist. LEXIS 10539 (W.D. La. July 26, 2013). ....................................................... 3

*In re Etter,* 756 F.2d 852 (Fed. Cir. 1985)........................................................................5

*In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800 (Fed. Cir. 2000)..............................3

*Ingersoll-Rand Co. v. Brunner & Lay, Inc.*, 474 F.2d 491 (5th Cir. 1973). ......................6

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.,* 106 F.3d 1563 (Fed. Cir. 1997). ................23, 24

*Lone Star Silicon Innovations LLC v. Iancu,*
2020 U.S. App. LEXIS 9342 (Fed. Cir. Mar. 25, 2020)....................................................12

*MiMedx Grp., Inc. v. Tissue Transplant Tech., Ltd.,*
354 F. Supp. 3d 742 (W.D. Tex. 2018)..............................................................................3, 4

*Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.*,
533 F. Supp. 3d 170 (D.N.J. 2021). ................................................................................. 4

*MRC Innovations, Inc. v. Hunter Mfg., LLP,* 747 F.3d 1326 (Fed. Cir. 2014) ............... 22

*Nelson/Weather-Rite Inc. v. Leatherman Tool Grp., Inc.*,
 No. 93 C 2274, 1995 U.S. Dist. LEXIS 165756 (N.D. Ill. Nov. 6, 1995). .................... 10

*Pentech Int'l, Inc. v. Hayduchok*, 1990 U.S. Dist. LEXIS 15391
(S.D.N.Y. Nov. 12, 1990). ................................................................................... 24

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299 (Fed. Cir. 2008). .................... 9

*Smith v. Enochs,* 233 F. Supp. 925 (S.D. Miss. 1964), aff'd, 359 F. 2d 924
(5th Cir. 1966) superseded by statute on other grounds as stated in
United States v Hunter (In re Walter), 45 F.3d 1023 (6th Cir. 1995) ................................ 11

*Sorrell Holdings v. Infinity Headwear & Apparel*,
No. 4:16-cv-04019, 2020 U.S. Dist. LEXIS 171128 (W.D. Ark. Sep. 18, 2020) ............. 8

*Tokai Corp. v. Easton Enters.,* 632 F.3d 1358 (Fed. Cir. 2011) ...................................... 21

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016). ........................................... 24

## I.   INTRODUCTION

The Court held that the claims of the U.S. Patent No. 9,462,903 ('903 Patent) are obvious under 35 U.S.C. §103 and entered judgment dismissing Eazy-PZ, LLC ("EZPZ") infringement claims based on the '903 Patent asserted against Luv n' Care, Ltd. ("LNC"). [Doc. No. 522, 523, 661, 849, 850, 852]. EZPZ files requesting that the Court alter and amend its findings, orders, and judgment.

The Patent and Trademark Office's reexamination of the '903 Patent and issuance of a Certificate of Reexamination, confirmed in all respects, after consideration of the prior art relied upon by the Court, requires the findings, orders, and judgment to be altered and amended to allow EZPZ to move forward on the merits of its claims. [Doc. No. 860-1]. The PTO's findings stand in direct opposition to the Court's determination. It is a manifest error of law to refuse to consider evidence of the reexamination and it is new evidence that was not before the Court.

The Ruling on Reconsideration [Doc. No. 849] must also be altered and amended due to the impermissible findings of fact by the Court. The fact that disputed questions of fact were resolved by the Court, *ipso facto*, identifies that summary judgment was improper. The bench trial held on inequitable conduct, affirmative egregious misconduct and unclean hands cannot substitute for the trial to which EZPZ is entitled on infringement and invalidity questions. In addition, the factual findings made by the Court are not supported by the record or contradicted by the record.

EZPZ was not provided notice that the Court would use the bench trial held on inequitable conduct, affirmative egregious misconduct and unclean hands for resolution of a motion regarding reconsideration of the determination of invalidity of the '903 Patent. The

record reflected that the Court had already resolved the reconsideration of summary judgment motion by Order entered October 2020, 10 months before trial in this matter. [Doc. No. 661].

## II.    PROCEDURAL HISTORY AND BACKGROUND

LNC previously filed a Motion for Summary Judgment [Doc. No. 348], Defendant EZPZ filed a Response [Doc. No. 382], and LNC filed its Reply [Doc. No. 407]. The Court issued an Order and Ruling regarding obviousness [Doc. Nos. 522 and 523] (collectively, the "Obviousness Ruling"). Thereafter, EZPZ filed its Motion for Reconsideration [Doc. No. 546]. LNC filed its Response. [Doc. No. 567]. EZPZ filed its Reply. [Doc. No. 585]. In October 2020, the Court entered an Order, without Ruling, denying the Motion. [Doc. No. 661].

EZPZ requested reexamination of the '903 Patent before the United States Patent and Trademark Office ("PTO"). [**Exhibit 1** at 1800 (File Wrapper for Reexamination of the '903 Patent)]. The Notice of Intent to Issue Ex Parte Reexamination Certificate issued August 5, 2021. [Doc. No. 788-1]. Upon receipt of the Notice of Intent to Issue Ex Parte Reexamination Certificate, EZPZ gave notice to the Court that it intended to seek a second Motion to Reconsider the finding of obviousness. [Doc. No. 796]. The Certificate of Reexamination issued August 23, 2021. [Doc. No. 860-1].

An eight day trial was held on LNC's allegations of inequitable conduct, affirmative egregious misconduct, and unclean hands commencing August 25, 2021. [Doc. No. 782, 817-819 and 821-825]. EZPZ was precluded from introducing the reexamination proceeding at trial. [Doc. 800 at 3].

In December 2021, the Ruling was entered on the Motion for Reconsideration. [Doc. No. 849]("Reconsideration Ruling"). Judgment followed, holding that the claims of the '903 Patent

are invalid as being obvious under 35 U.S.C. §103. [Doc. No. 850]. Final judgment was entered

by the Court [Doc. No. 852]. This motion follows.

### III.   LEGAL STANDARD FOR MOTIONS FOR RECONSIDERATION

The Federal Circuit applies the law of the circuit in which a district court sits with respect

to "nonpatent issues" and applies the law of the Federal Circuit to "issues of substantive patent

law." *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 803 (Fed. Cir. 2000). A motion

challenging a judgment or order may be filed under Rule 59, or 60. *Fed R. Civ. P. 59, 60.*

In determining whether to grant a Rule 59 motion, the Court evaluates whether there are

manifest errors of law or fact upon which judgment is based, whether new evidence is available,

whether there is a need to prevent manifest injustice, or whether there has been an intervening

change in controlling law. *See, HBM Interests, LLC v. Chesapeake La.,LP,* No. 12-1048, 2013

U.S. Dist. LEXIS 10539, *3 (W.D. La. July 26, 2013).

In the alternative, this Motion may be decided pursuant to C.R.C.P. 60(b)(6). *See,*

*MiMedx Grp., Inc. v. Tissue Transplant Tech., Ltd.*, 354 F. Supp. 3d 742, 747 (W.D. Tex. 2018).

*MiMedx* has a similar procedural history to this matter, with a reexamination proceeding

concluding after entry of an order on obviousness by the Court.[1] It found that Rule 60 was

appropriate because "[w]hile this Court's current review is not *limited to* plaintiff's second

motion for reconsideration, it is *prompted by* it [and filed outside the time limits of Rule 59 for

the original order]." *Id*. at 747. "Rule 60(b) provides that a court may relieve a party or its legal

---

[1] In *MiMedx* the Court granted summary judgment in favor of the defendant finding that the patent in suit was obvious. *Id*. at 744. Plaintiff then filed a Motion to Reconsider. *Id*. Plaintiff then filed a Second Motion to Reconsider after decision by the PTO [on reexamination], "averring that the determination by the Patent Office stands in direct opposition to this Court's previous Opinion and Order and demonstrates error by th[e] Court." *Id*. The Court denied the first Motion to Reconsider without prejudice and stated it would consider the parties' positions in the First and Second Motions to Reconsider. *Id*. After review, the Court revisited its Order on summary judgment reversing its position on a question concerning invalidity. *Id*.

3

representative from a final judgment, order, or proceeding for 'any other reason' not set forth in 60(b)(1)-(5) that justifies relief." *Id*.

**IV.    ARGUMENT:**

    **A.  It was Manifest Error to Disregard the PTO's Reexamination Findings**

        1.  The Court Must Consider Evidence that the PTO Upheld The Validity of the '903 Patent

The Court must consider evidence that the PTO upheld the validity of the '903 Patent on reexamination. It was not considered during this Court's Obviousness Ruling [Doc. No. 522, 523], nor was it considered by the Court in its Reconsideration Ruling [Doc. 849 at 3]. Evidence of reexamination was excluded at trial by the Court. [Doc. No. 800 at 3]. The Judgment must be altered or amended to correct this manifest of error of law. [Doc. No. 850, 852]. Further, it is new evidence that the Court did not have before it prior to the Obviousness Ruling or in briefing on reconsideration.

"[A] decision by the PTO upholding the validity of reexamined patent claims is strong evidence that a district court ***must*** consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence." *Broad. Innovation, L.L.C. v. Charter Communs., Inc.,* Civil Action No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *7 (D. Colo. July 11, 2006)(emphasis added)(relying on *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F. 2d. 955, 961 (Fed. Cir. 1986). "After a decision [by the PTO] sustaining the validity of the claims [on reexamination], this burden becomes more difficult to satisfy." It has been described as a "particularly heavy" burden. *Mitsubishi Tanabe Pharma Corp. v. Sandoz, Inc.*, 533 F. Supp. 3d 170, 190 (D.N.J. 2021).

The Federal Circuit has explained that a major "purpose of the reexamination procedure

4

is to . . . facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceedings)." *Broad Innovation, L.L.C.*, 2006 U.S. Dist. LEXIS 46623, at *17.

"The innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of patents thought 'doubtful.'" *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985)(citing House Report at 3).[2] "Congress established a patent reexamination procedure that allows the Patent and Trademark Office, instead of a district court, to consider validity issues that the PTO overlooked during the initial examination." *Id.* (citing 66 GEO. WASH.L.REV. 172, 172 (1997)).

Because the Court must consider the reexamination and has not done so, the Court must alter or amend the Judgment, the Obviousness Ruling, and the Reconsideration Ruling. In the absence of these actions, LNC's argument that the patent is obvious cannot be analyzed and weighed with its added burden to overcome the art that the PTO reviewed in connection with the reexamination and confirmation of the '903 Patent. Nor will the Court have the opportunity to review the prior art with the expertise of the PTO to guide it.[3] Where "it is shown that the patent

---

[2] "Reexamination is a procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent." *Broad. Innovation, L.L.C.*, 2006 U.S. Dist. LEXIS 46623, at *4-5 (citing 35 U.S.C. § 302). "A request for patent reexamination must be based upon prior art patents or publications which raise 'a substantial new question of patentability.'" *Id.* (citing 35 U.S.C. 303(a)). "Typically, the cited prior art patents or printed publications upon which such a request is based were not considered by the patent examiner during the processing of the patent application that resulted in the patent-in-suit. Once a reexamination request is granted, a patent examiner who is familiar with the technology involved with the patent conducts the reexamination." *Id.*

[3] The Court's decision to refuse consideration of the reexamination of the '903 Patent and to reduce it to a footnote [Doc. No. 849 at 33] is difficult to understand given that the Court continues to seemingly seek guidance from the PTO by reference to a non-final office action of a related patent application (the national stage entry, application no. 15/507,823) for different method claims. The '823 Application is relied upon in the Reconsideration Ruling [Doc. No. 849] and its Findings of Fact and Conclusions of Law. [Doc. No. 849 at 3](supplementing not amending or altering the argument from [Doc. No. 522, 523], [Doc. No. 851 at 40]. The reexamination of the '903 Patent is more pertinent and persuasive evidence.

office considered prior art as close to the patented invention as any suggested to the court, the court should be extremely reluctant to substitute its opinion for the expertise of the patent office." *Ingersoll-Rand Co. v. Brunner & Lay, Inc.*, 474 F.2d 491, 496 (5th Cir. 1973). Here, a three examiner panel at the PTO was directed to the *specific* prior art at issue in the summary judgment motion. [**Exhibit 1** at 1590, 1807].

The PTO's Certificate of Reexamination of the '903 Patent requires consideration by this Court before entering any ruling regarding obviousness and compels alteration of the rulings and judgment.

    2.  **<ins>All Claims of the '903 Patent were Confirmed by the PTO in Reexamination in Light of a Hypothetical Combination of Bass and Webb Which Creates a Material Issue of Fact and Compels Altering the Judgment and its Ruling on Reconsideration</ins>**

The PTO conducted a substantive analysis of the Webb Prior Art[4] in light of U.S. Patent Publication No. 2003/0152736 ("Bass"), review of secondary considerations, and review of other prior art references raised by LNC in this litigation (including the Pink[5] Tommee Tippee Easi Mat [Trial Exhibit 446]). The PTO found the '903 Patentable in light of the hypothetical combination of the Webb Prior Art and Bass. A Certificate of Reexamination of the '903 Patent issued, confirming all 9 claims without any amendments. [Doc. No. 860-1].

The combination of Webb Prior Art and Bass was submitted to the PTO, including

---

[4] The "Webb Prior Art" consists of the following related prior art: (1) U.S. Publication No. 2008/0245947 (the "Webb Publication" or "Webb Publ."), published on October 9, 2008 [Doc. No. 344-4]; and (2) U.S. Patent No. 8,251,340 ("Webb"), which issued on August 28, 2012 [Doc. No. 344-5].

[5] The products are identified by color (pink or blue) and by product name (Easi or. Magic) as the "Pink Tommee Tippee Easi Mat" and the "Blue Tommee Tippee Magic Mat." The inclusion of color in to help identify and recall the mat specimens that were presented to the Court at the inequitable conduct trial. It is not meant to imply that the color of the mat affects the functionality or properties of the mats.

6

LNC's arguments[6] and the Court's findings, including the specific determination that the Webb Prior Art had an additional teaching of a thermoplastic elastomer (TPE)—which Webb states, "is an inherently 'sticky' material." [**Exhibit 1** at 1823-1826]. EZPZ also submitted information and argument about its secondary considerations. [**Exhibit 1** at e.g. 1569-1588 (including exhibits and argument incorporated therein)]. After review, the PTO with its expertise in the art found that this hypothetical combination did not render the '903 Patent obvious. All 9 claims of the '903 Patent survived and were confirmed without amendment.

In the reexamination process of the '903 Patent, the PTO reviewed—and contradicts—the Court's Ruling on Obviousness [Doc. No. 522, 523]. The Notice of Intent to Issue Reexam Certificate [Doc. No. 788-1 at 4-5] finds:

1. [T]he examiner concurs that the mat of the prior art [Webb Prior Art] does not self-seal, that only with pressure on the center portion will the vacuum form. Therefore, the suffuse under surface and the additional limitations regarding the vacuum/peeling, as clearly limited and defined by the Patent Owner's argument on the record and by the disclosure, overcome the prior art.

2. The secondary considerations, when looked at as a whole, provide sufficient evidence to support non-obviousness. It is clear that the invention has been copied by many entities and that the invention itself has led to it commercial success.

3. [T]he prior art cited in the last IDS appears to be cumulative to the prior art of record.[7]

---

[6] LNC's argument on this point together with arguments it made on other points were included in EZPZ's submission to the PTO. [**Exhibit 1** at e.g. 376-390]. In addition, a litigation search report was performed by the PTO. [**Exhibit 1** at 1659-1665].

[7] This prior art includes 1,881,416 ("Uhalt"), 545,733 ("Hatfield"), 2,813,509 ("Bruno"), 8,251,340 ("Webb Patent"), D344,436 ("Walls"), 5,180,132 ("Pearson"), 5121896 ("Frye"), US 2003/0152736 A1 ("Bass"), Yanko prior art reference, Hot Iron Holster, the Atmospheric Mat YouTube video, Tommee Tippee Easi Mat, Tommee Tippee Magic Mat, Office Actions from U.S. Application No. 15/700,403 ('403 Patent Application), the Kidkusion Gummi Mat, Brinware prior art reference, MomoBaby prior art reference, Gerber MealMat prior art reference, pleadings from this case including LNC's expert reports and invalidity and unenforceability contentions, certain emails between Ben Williams, patent agent, and Lindsey Laurain, inventor, related to Platinum Pets video, social media posts. The complete IDS is attached as [**Exhibit 1** at 26-48]. .

The Notice of Intent to Issue Reexam Certificate and Certificate of Reexamination, issued after review by the PTO with its depth of technical expertise, compels reversal of the finding on summary judgment of obviousness of the '903 Patent in light of the Webb Prior Art and Bass.

"At a minimum, the findings of the PTO [on re-exam] will create a genuine issue of material fact [as to an invalidity challenge for obviousness]." *Sorrell Holdings v. Infinity Headwear & Apparel*, No. 4:16-cv-04019, 2020 U.S. Dist. LEXIS 171128, at *5 (W.D. Ark. Sep. 18, 2020); *see also, Broussard v. Go-Devil Mfg. Co. of La.*, No. 3:08-cv-00124-BAJ-SCR, 2014 U.S. Dist. LEXIS 1101, at *8 (M.D. La. Jan. 6, 2014)("This Court is not persuaded by the defendants' insistence that it disregard the USPTO's findings upon reexamination; indeed, this Court determines that the USPTO's findings are, of themselves, sufficient to create a material issue of fact as to the [] patents' validity").

Further, LNC impliedly conceded that a favorable outcome of the reexamination of the '903 Patent, as we have here, would entitle EZPZ to reversal of the finding of obviousness on summary judgment. [Doc. No. 765 at 7-8].[8]

### 3.  The PTO Examined the Pink Tommee Tippee Easi Mat

Subsequent to the reexamination proceeding, this Court entered its Reconsideration Ruling [Doc. No. 661, 849] making an additional basis for its ruling from the inequitable conduct

---

[8] LNC argued to this Court that it would be more "judicially efficient" to hold the trial on inequitable conduct because if the Court so found "the potential outcome of the pending reexamination proceeding will be rendered a non-issue, as the '903 Patent will be unenforceable on grounds other than those being considered by the USPTO in the reexamination proceeding." [Doc. No. 765 at 7]. It argued in the alternative "[i]f the Court were to find inequitable conduct did not occur . . . if a reexamination certificate for the '903 Patent has issued at that time, then the Court could determine whether any of LNC's numerous non-infringement arguments could be resolved as a matter of law . . . [or] the Court could then proceed with a single jury trial as to all of the remaining issues (both those presently set for hearing before a jury on August 23rd and any future utility patent infringement claims, should they survive the bench trial and the non-infringement motions that were previously rendered moot." [Doc. No. 765 at 7-8].

trial evidence that the Pink Tommee Tippee Easi Mat in combination with Bass renders the claims of the '903 Patent obvious. [Doc. No. 849 at 33].

The PTO was provided a disclosure of the Pink Tommee Tippee Mat as part of the reexamination proceeding including information and pictures about the product, screenshots of Ms. Laurain's June 2019 deposition as to the Pink Tommee Tippee Easi Mat (similar to as reproduced in the Reconsideration Ruling [Doc. 849 at 25]) and the Blue Tommee Tippee Magic Mat, and screenshots of the video admitted (for a limited purpose) at trial [Trial Exhibit 969]. [**Exhibit 1** at 26-48, 49-56, 272-296].

Thus, the PTO had this reference in determining the validity of the '903 Patent. The PTO is "presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008).

The Notice of Intent to Issue Reexam Certificate and Certificate of Reexamination, issued after review by the PTO with its technical expertise, compels reversal of the finding of obviousness on summary judgment of the '903 Patent in light of the Pink Tommee Tippee Easi Mat and Bass. *See*, *Broussard*, 2014 U.S. Dist. LEXIS 1101, at *8 ("[T]his Court determines that the USPTO's findings [on reexamination] are, of themselves, sufficient to create a material issue of fact as to the [] patents' validity").

      **B.**  <u>The Necessity to Receive Evidence and Make Factual Findings to Resolve the Motion for Reconsideration Compels Altering the Judgment and Rulings</u>

        **1.**  <u>The Court is Not Permitted to Make Factual Findings of Fact In Connection with a Motion for Summary Judgment</u>

Fed. R. Civ. P. 56 states, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"By definition, summary judgment may be granted only when there are no disputed issues of material fact, and thus no fact finding by the district court." *Animal Legal Def. Fund v. United States FDA*, 836 F.3d 987, 989-90 (9th Cir. 2016). "Courts are not empowered to make factual findings on motions for summary judgment." *Nelson/Weather-Rite Inc. v. Leatherman Tool Grp., Inc.*, No. 93 C 2274, 1995 U.S. Dist. LEXIS 16575, at *26 (N.D. Ill. Nov. 6, 1995). "Thus, where the district court has made a factual determination, summary judgment cannot be appropriate." *Animal Legal Def. Fund*, 836 F.3d at 990.

> ### 2. The Court's Receiving of Testimony In Connection with the Motion for Summary Judgment Compels Denial of the Motion for Summary Judgment and Altering the Judgment That Dismissed EZPZ's '903 Patent Infringement Claims

The Court cannot make factual findings upon summary judgment. In contravention of this black letter law, the Court received and made factual findings to resolve EZPZ's Motion to Reconsider [Doc. No. 546]. The Court stated that "[g]iven the issues presented at the bench trial required a full understanding of the prior art and related evidence, the Court was provided with the opportunity to gain a better understanding of the prior art and related evidence as it relates to EZPZ's motion for reconsideration." [Doc. No. 849 at 2-3].

The Court's reliance on the evidence at trial necessarily means that there were disputed questions of material fact raised in connection the Motion for Summary Judgment which this evidence influenced. [Doc. No. 348]. EZPZ was accordingly entitled to a trial on the invalidity inquiry because material issues were in dispute; and, EZPZ was deprived of it. Because the Court

needed testimony and received testimony to resolve LNC's motion for summary judgment, the Motion for Summary Judgment should be denied and the Judgment and Rulings altered to permit EZPZ's '903 infringement claims to go forward on their merits. It is a manifest error of law to hold otherwise in light of long-standing summary judgment principles.[9]

The trial that was held on LNC's allegations of inequitable conduct, affirmative egregious misconduct, and unclean hands cannot be used to substitute for EZPZ's right to a trial on its claim of infringement and defense of invalidity on obviousness. First, EZPZ was wholly without notice that the testimony at trial would be used in connection that the Court's resolution of the Motion to Reconsider. [Doc. No. 546]. This is especially true because the Court had already entered an order 10 months earlier denying the Motion to Reconsider [Doc. No. 661]; presumably already making a determination on the arguments set forth in the motion.

Although the issues at trial and the issues presented on summary judgment are closely related in many respects they differ in material ways. In one pertinent way, if this had been a trial specifically encompassing the invalidity defense of obviousness, EZPZ would have put on evidence of secondary considerations. In the trial that was held, it did not. Although EZPZ put on evidence that the declarations submitted to the PTO were accurate, which overlaps with secondary considerations, EZPZ did not gear its examinations or cross-examinations to fully address its secondary considerations.

---

[9] "The sweep of a Rule 56 motion is very limited and is not a facility intended to be employed as calendar-cleaning device at the expense of the possibility of not doing full and complete justice to any litigant by trial of case involving a complicated question." *Smith v. Enochs*, 233 F. Supp. 925, 927 (S.D. Miss. 1964), *aff'd*, 359 F. 2d 924 (5th Cir. 1966) *superseded by statute on other grounds* as stated in *United States v Hunter (In re Walter)*, 45 F.3d 1023 (6th Cir. 1995).

Second, a trial specifically encompassing the invalidity defense of obviousness would have been tried to the jury and not to the Court. The Court is not the factfinder for the underlying determinations of obviousness, but stepped into the jury's exclusive province.[10]

**C.  The Court Made Impermissible Factual Findings Of Fact In Its Ruling On Summary Judgment Regarding The Prior Art That Are Erroneous Or Unsupported**

In addition to making factual findings to resolve LNC's summary judgment motion in contravention to black letter law, the factual findings by the Court in support of its Ruling on Reconsideration as to prior art are erroneous or not supported by the evidence.

**1.  The Factual Determination of Whether the Pink Tommee Tippee is a Commercial Embodiment Practicing the Webb Prior Art is a Disputed Question of Material Fact**

The Court makes a finding that the Pink Tommee Tippee mat is a commercial embodiment of Webb. [Doc. No. 849 at 12]. And then the Court makes a factual finding that the Pink Tommee Tippee Mat is practicing the claims in the Webb Prior Art. That is, that the Pink Tommee Tippee Mat and the Webb Prior Art operate the same way. [Doc. 849 at 30]. It is a disputed question of material fact whether the Webb Prior Art and Tommee Tippee operate the same or not; there has been no evidence offered that the two operate in the same way.[11] The Court impliedly recognized this in its Obviousness Ruling defining "Webb Prior Art" as the

---

[10] "Obviousness is a question of law based on underlying facts, including the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill, and relevant evidence of secondary considerations." *Lone Star Silicon Innovations LLC v. Iancu*, 2020 U.S. App. LEXIS 9342, at *15 (Fed. Cir. Mar. 25, 2020).

[11] Although LNC, in its Motion for Summary Judgment [Doc. 348-1, fn 1 (pages are unnumbered)], includes a Tommee Tippee [Easi] Mat [Doc. 344-14] in its definition of "Webb Prior Art" and argues "The [Blue] Tommee Tippee [Magic] Mat was in Laurain's possession and exhibited all of the features disclosed by the Webb Publication and the Webb Patent" [Doc. No. 348-1 at 24] it offers no factual support that the Webb Prior Art and the Blue Tommee Tippee Magic Mat, or Pink Tommee Tippee Easi Mat, operate the same way. Notably, LNC does not offer this as an undisputed fact. [Doc. No. 348-2].

Webb publication and patent. [Doc. No. 522, 523]. EZPZ sought reconsideration from the Obviousness Ruling based on the Court's definition of Webb Prior Art. The distinction is material because the Court held that the '903 Patent is invalid as being obvious "in light of Bass in combination with the Webb Prior Art, *or* in light of Bass in combination with the Tommee Tippee Mat." [Doc. No. 849].

LNC's own expert, Vincent Valderrama, does not believe that the Pink Tommee Tippee mat is practicing the Webb Prior Art disclosure. Mr. Valderrama states "[i]n contrast to some of the figures in both the Webb Pub. and Webb patent, there is *no small concavity or dimple whatsoever* on the undersurface of the Tommee Tippee planar portion." [**Exhibit 2** at 25 (page number on report)]. Mr. Valderrama confirmed this in his deposition. He stated that he remembered looking at the Tommee Tippee prior art [**Exhibit 3**, Dep. Tr. 159:16-18]; the version he looked at was not packaged like the Blue Tommee Tippee Magic Mat [**Exhibit 3**, Depo. Tr. 159:20-25, Depo Exhibit 467/Trial Exhibit 1017)]. The Tommee Tippee Mat he looked at came in "different packaging," specifically a "blister pack" whether it is "plastic and it held the whole things straight" like the Pink Tommee Tippee Easi Mat. [**Exhibit 3,** Depo. Tr. 159:25 to 160:5)]. He did not look at the Blue Tommee Tippee Magic Mat other than seeing it in a video. [**Exhibit 3**, Depo. Tr. 160:7-10].

Mr. Valderrama testified that the vacuum area represented as 31 in the Webb Prior Art is not "included" in the "eventual commercial embodiment of th[e] Webb patent," the Tommee Tippee Mat. [**Exhibit 3**, Depo. Tr. 184:18 to 185:16], and as shown in the figure below. Mr. Valderrama was specifically talking about the Pink Tommee Tippee Easi Mat, and not the Blue Tommee Tippee Magic Mat. Mr. Valderrama testifies that "the one I have works, because it is

not all folded." [**Exhibit 3**, Depo. Tr. 187:2-11].



EZPZ's expert Michael Henley similarly testified that "there is [a difference]" between what was disclosed in "the Webb patent" and "the Tommee Tippee embodiment." [Doc. No. 836, 1444:4-7 and 1424:20-23]. Mr. Henley reviewed the Blue Tommee Tippee Magic Mat and the Pink Tommee Tippee Easi Mat. [Doc. No. 841, 1434:22-25]. Mr. Kennedy testified that he examined only the Blue Tommee Tippee Magic Mat. [Doc. No. 835, 1010:11-12].

Tommee Tippee itself treats the Pink Tommee Tippee Easi Mat differently than the Blue Tommee Tippee Magic Mat. LNC elicited testimony from Mr. Kennedy about the characteristics of the Blue Tommee Tippee Magic Mat, specifically that it was "a Magic Mat in blue." [Doc. No. 835, 1012:25 to 1013:1]. LNC further elicited testimony from Mr. Hubbard the mat it offered to Ms. Laurain at the deposition (and upon which the Court relief) is a "Tommee Tippee Easi-Mat." [Doc. No. 832, 236:22 to 237:2]. The product reflects that it is an Easi-Mat on its packaging. [Doc. 446]. The different product names ("Easi" and "Magic") are informative regarding the properties of the product. Tommee Tippee's website shows that the Magic Mat is covered by the Webb Patent (U.S. Pat. No. 8,251,340), whereas no patent protection is shown for the Easi Mat. [**Exhibit 4** at 5].

## 2. The Factual Finding that the Pink Tommee Tippee Easi Mat Is Prior Art is Unsupported by the Evidence

The Court made the factual finding that the Pink Tommee Tippee Easi Mat is prior art. [Doc. No. 12]. EZPZ was not on notice that the Court intended to resolve this issue at trial nor is resolution of the factual issue proper in connection with a motion for summary judgment. Further, there is no support in the record for a finding that the Pink Tommee Tippee Easi Mat is prior art. To be prior art the reference needed to be patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention prior to July 17, 2014, the effective filing date of the '903 Patent. *See, 35 U.S.C. §102(a)(1), 35 U.S.C. §103.*

First, the Court relies on the fact that Ms. Laurain purchased the Blue Tommee Tippee Magic Mat as part of her market research to find that the Pink Tommee Tippee Easi Mat was available to the public. [Doc. No. 849 at p. 12]. The Blue Tommee Tippee Magic Mat and the Pink Tommee Tippee Easi Mat, however, are not the same as stated above. This finding does not support a finding that the Pink Tommee Tippee Easi Mat, a different product, was available to the public at the critical time.

Two, the Court relies on the fact that visible markings on the mat itself show that the Tommee Tippee mat was manufactured in 2010.[12] There was no proper foundation regarding the meaning of the marking[13] and the marking itself is not self-authenticating and is hearsay. The testimony was offered by LNC's expert Marc Hubbard on redirect examination to which EZPZ objected. Mr. Hubbard did not know the authenticating information when asked on cross examination [Doc. No. 832, 286:24 to 287:2] nor was it an opinion disclosed in his expert

---

[12] Mr. Hubbard's exact testimony was that it the numbers 1011 appeared—he did not know whether that means November 2010 or the reverse, i.e. October 2011. [Doc. No. 832, 337:16 to 338:14]. Presumably because it was outside his expertise.
[13] Mr. Hubbard admits his knowledge came from "the website that it's supposed to be the date – of the year and month of manufacturer. And I think it's  -- supposed to have that information on it." [Doc. No. 832, 338:10-14].

reports. He was not even certain of the information on redirect examination. He testified the number was "what batch *or* kind of when it was made." LNC elicited testimony outside his expertise.[14] Notwithstanding, the manufacture date of the Pink Easi Mat is not evidence of the relevant inquiry—when it was in public use, on sale, or otherwise available to the public. We know only that LNC represented at a 2019 deposition that "we" ordered it [Trial Exhibit 446]. [Doc. No. 826-6, 72:5-6]. Presumably the reference was to LNC's counsel.[15] Again, this lacks no foundation.

Last, the Court references a YouTube video. [Trial Exhibit 969]. This exhibit was not authenticated or received as substantive evidence; it was admitted only for the limited purpose of being "pertinent for the state of mind and the knowledge." [Doc. No. 835, 1160:22-25].

### 3. <u>The Factual Finding that the Pink Tommee Tippee Easi Mat is Not Cumulative is Erroneous</u>

The finding that the Pink Tommee Tippee Easi Mat is not cumulative of the prior art before the examiner [Doc. No. 849 at 32] is contradicted by this Court's Findings of Fact and Conclusions of Law [Doc. No. 851]. The Court holds that at least Claim 1 of the '903 Patent would be invalid for obviousness . . . because the Tommee Tippee Mat filled in the following elements found to be missing from Bass: (1) the use of silicone; (2) preventative of lateral displacement; and (3) the surface contact self-sealing characteristic. [Doc. No. 851 at 48]. The Court then states that Brinware, Momo Baby Skid-proof Silicone Placement, Hot Iron Holster, and CIBO Stick Anywhere Placement "filled in" these same three "elements missing from Bass."

---

[14] Mr. Hubbard was tendered and accepted as an expert in patent office policy, practice, and procedures, as well as on the materiality of prior art references." [Doc. No. 832, 206:22 to 207:5]

[15] There are a series of things we do not know: Did they order the product 9 years before? Did LNC have it in its warehouse? Did LNC order the product near the time of the deposition? If so, did they just happen to get a product that had been sitting on the shelves 9 years after its manufacture? If so, it certainly did not enjoy the commercial success of EZPZ.

[Doc. No. 851 at 69-70]. And, the Court finds that these references were cumulative of the Platinum Pets Mat. [Doc. No. 851 at 71]. There is no reason to treat the Pink Tommee Tippee Easi Mat different than the other mats with regard to its cumulative nature.

Regardless, *all* of these references were before the PTO in the reexamination of the '903 Patent without having any effect on the validity of the patent.

    **4.  The Factual Determination of Whether the Webb Prior Art "Self-Seals" is a Disputed Question of Material Fact**

The Court finds that the Webb Prior Art is not a suction cup and discloses a "surface contact self-sealing property" [Doc. No. 849 at 30]. The Court also finds that it disagrees that the Stravitz Patent (U.S. Patent No. 8,864,218) was cumulative of the Webb Publication [Doc. No. 849 at 31].[16] In so finding, it disagrees with EZPZ and rejects the findings of the PTO who reviewed the art with its technical expertise and found that the Webb Prior Art "does not self seal and that only with pressure on the center portion will the vacuum form." [Doc. No. 788-1 at 4]. There is a disputed question of fact about the content of the prior art which compels the Judgment, the Obviousness Ruling and the Reconsideration Ruling to be altered or amended.

The Court pays only lip service to the validity of the '903 Patent by not recognizing the presumption of validity and improperly shifting the burden to EZPZ to establish the differences in the teaching of the prior art, i.e. "EZPZ fails to explain how Webb's [teaching] is materially different from the '903 Patent's disclosure." [Doc. No. 849 at 30]. *See, Custom Accessories, Inc.,* 807 F.2d at 961 (criticizing the district court for only "paying lip service to the presumption of validity" by improperly shifting the burden to patentee to establish validity in violation of the

---

[16] LNC's own expert does not support this finding. When asked in deposition how the suction in Webb differs from the Stravitz patent, he answered "it is different in the way it is executed" he did *not* respond that it was different than the disclosure of the Webb Prior Art. [**Exhibit 3**, Depo. Tr. 184:18 to 185:16].

challenger's clear and convincing evidentiary standard and not giving credence to the reexamination).

The finding that the Webb Prior Art self-seals and is not a suction cup is erroneous; at minimum, it is a question of fact precluding summary judgment. EZPZ's arguments in this regard have been presented to this Court. [Doc. No. 382, 546, 548].[17]

> D.   **The Court Made Impermissible Factual Findings Of Fact In Its Ruling On Summary Judgment Regarding Secondary Considerations That Are Erroneous Or Unsupported**

The PTO in its reexamination specifically found that "[t]he secondary considerations, when looked at as a whole, provide sufficient evidence to support non-obviousness. It is clear that the invention has been copied by many entities and that the invention itself has led to it commercial success." [Doc. No. 788-1 at 4]. This alone creates a genuine issue of disputed material fact. *See*, *Broussard.*, 2014 U.S. Dist. LEXIS 1101, at *8 ([T]he USPTO's findings are, of themselves, sufficient to create a material issue of fact as to the [] patents' validity).

The Court in its Ruling on Reconsideration focuses on making factual findings that EZPZ cannot show unexpected results, commercial success, or copying. The Court's findings are addressed below. In addition, EZPZ continues to maintain that there are additional indicia of secondary considerations, including long-felt but unresolved need and industry praise, as previously set forth. [Doc. No. 546-1].

---

[17] As to one specific finding the in the Reconsideration Ruling, EZPZ has made the argument that the Court's argument that the use of the word "further" means that the vacuum further enhances the self-sealing property is not supported by the language cited by the Court. [Doc. No. 849]. Parsing the language cited by the Court from the Webb Prior Art shows that "[b]y creating the **small volume 38** which is a vacuum or at least a partial vacuum, this serves **further** to hold the mat 10 against the surface 12, thereby increasing the efficiency of the holding of the mat 10 upon the surface 12 and in particular, enhancing the **suction effect of the concavity 31**." That is, the language relied on by the Court does not support a disclosure in Webb of self-sealing—rather, it supports the disclosure of suction. The concavity of 31 is illustrated in [Doc. No. 344-5] and above.

1. **The Factual Finding that Secondary Considerations are Not Sufficient to Create a Genuine Issue of Material Fact is Erroneous**

"The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed; it is for the jury at trial, not for the judge on a pretrial motion, to decide whose evidence is more credible. A judge assessing the 'persuasiveness' of evidence presented on a motion for summary judgment may discount such evidence as unspecific or immaterial, but not as unbelievable." *1989 AMC 783*, 828 F.2d 291 (5th Cir. La. September 29, 1987).

The court makes several erroneous or unsupported findings of fact as to secondary considerations. The Court's findings are improperly made in contravention of black letter law that the Court should not make factual findings, and they were made without notice to EZPZ.

First, the Court finds that "Mr. Williams's arguments regarding the Happy Mat's alleged commercial success and unexpected results to be unsupported and merely 'ballyhoo.' [Doc. No. 849 at 35]. This is not supported by the record. The paragraph the Court states in support of its finding explicitly shows that Mr. Kennedy's comments were in relation to just one paragraph in Mr. Hubbard's report, i.e. para. 151. [Doc. 849 at 36]. Had EZPZ been on notice that the Court was going to try to use this testimony in connection with findings of secondary considerations it could have put on evidence of Mr. Hubbard's para. 51[18]and the *three* specific comments that Mr. Kennedy conceded were conjecture (from one paragraph out of a 130 page report). Mr.

---

[18] Para. 151 of Mr. Hubbard's report reads, "[t]he 'product' or 'device' sells itself by simple demonstration of its remarkable self-sealing property,' according to the response. Without specifically citing any particular declaration or other evidence, the response argues that the 'self-sealing property' created surprise and delight in consumers, that national retailers 'immediately picked up the device' after trade show demonstrations, and that sales were generated by 'word of mouth' and online videos from customers using the product."

Kennedy's comments and testimony were not an opinion on the whole of EZPZ's assertions of commercial success or unexpected results.

Second, the Court makes a finding that an email chain between attorneys Mr. Timothy McCarthy and Mr. Jordan Bolton confirms the so-called conclusion that Mr. Kennedy came to about secondary considerations. [Doc. No. 849 at 36]. The Court relies on statements about Mr. McCarthy and Mr. Bolton being "unimpressed" with the draft affidavits. [Doc. No. 849 at 36]. In improperly weighing this evidence, the Court relies on a February 1, 2016 email, while ignoring that after the declarations were worked on for five weeks, Mr. McCarthy stated in an email dated March 7, 2016 that "I think the secondary considerations are handled very well. I only have a few questions [about the declarations]." [Trial Exhibit 696].

Third, the Court makes a finding that Mr. McCarthy did not agree with the "patentable distinction" Mr. Williams maintained. [Doc. No. 849 at 36]. The email cited does not contain that phrase. In addition, the Court weighs the evidence but gives no weight to the fact that Mr. McCarthy had not read the patent in detail at that time. [Trial Exhibit 92]. This email states, "I would have to read the stuff in more detail to give a reasoned opinion." [Trial Exhibit 92]. Mr. McCarthy also acknowledges that secondary considerations could solve the potential problem he identified. [Trial Exhibit 92].

Fourth, the Court's focus on EZPZ not finding a material scientist as evidence that EZPZ could not prove unexpected results is inapposite and erroneous. [Doc. No. 849 at 37]. Although EZPZ explored whether an argument about the material could be set forth necessitating a material scientist [Trial Exhibit 118, 121], EZPZ at no time argued to the PTO that there were

unexpected results due to the properties of the silicone. [Trial Exhibit 245].[19] Therefore, there was no need to present any evidence of materials, let alone an expert on materials to support a contention that was not made.

The law requires, "[t]o be particularly probative, evidence of unexpected results must establish that there is a ***difference between the results obtained and those of the closest prior art***, and that the difference would not have been expected by one of ordinary skill in the art at the time of the invention." *Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014). EZPZ's references to "unexpected results" in two declarations (and in argument about those declarations)[20] is used in precisely this way. The commercial success of the embodiment of the '903 Patent, the Happy Mat, was unexpected from other products and art, such as Platinum Pets—the closest prior art.

Fifth, the Court does not find there is a triable question of fact regarding the commercial success of EZPZ. The Court finds that "EZPZ's stated sales figures have no evidentiary nexus to the '903 Patent." [Doc. No. 849 at 39]. This is incorrect as a matter of law.[21] EZPZ has a presumption of nexus because its product embodies the '903 Patent and it can show significant sales in the relevant market. [e.g., Doc. No. 394-5 at 21]. LNC has never disputed EZPZ's evidence that its sales generated from the product that is the invention—they have relied only on

---

[19] This was further confirmed by Mr. Hubbard. When asked if EZPZ said "this is an unexpected result[] due to material?: He said,"[n]o." [Doc. No.832 at 313:12-17].
[20] [Trial Exhibit 245 at LNC395445, LNC395452, LNC395321 and LNC395319]
[21] *See, e.g., Tokai Corp. v. Easton Enters.,* 632 F.3d 1358, 1379 (Fed. Cir. 2011) ("Although the district court recognized the commercial success of the [product], the court declined to give it any weight, finding, on summary judgment, that there was no 'nexus' between the Saito invention and its commercial success . . .The court erred in law, for a prima facie case of nexus is generally made out when the patentee shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent. It was improper for the district court to . . . resolve this material factual aspect against [party] on summary judgment.").

the argument that the commercial success was derived from advertising and marketing. [Doc. No. 567].

The Federal Court has held that gross sales figures are adequate to establish commercial success. *Chemours Co. FC, LLC v. Daikin Indus.*, Nos. 2020-1289, 2020-1290, 2021 U.S. App. LEXIS 21690, at *15 (Fed. Cir. July 22, 2021). "When a patentee can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention." *Id*. "[M]arket share data, though potentially useful, is not required to show commercial success." *Id*. In addition, EZPZ conducted a survey to support the nexus that the sales were from the "suction function" which was submitted to the PTO in the original examination and reexamination. [Trial Exhibit 245, **Exhibit 1** at 1572-1575].

"As first recognized in *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, a patentee is entitled to a rebuttable presumption of nexus between the asserted evidence of secondary considerations and a patent claim if the patentee shows that the asserted evidence is tied to a specific product and that the product '*is* the invention disclosed and claimed.'" *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019)(*Demaco Corp.*, 851 F.2d 1387 (emphasis in original).

This is not comparable to *MRC Innovations, Inc. v. Hunter Mfg., LLP,* 747 F.3d 1326, 1336 (Fed. Cir. 2014) in which the inventor's testimony was the only evidence and it was offered "with no supporting figures of data" that his product was a commercial success. EZPZ has presented evidence of the sales figures by a damages expert to show that EZPZ sold 2,150,854

'903 Patented Products during the period from 2016 through 2018 for total sales of $20,931,901. [Doc. No. 394-5].[22]

The PTO found commercial success of EZPZ's products in the initial examination and in the reexamination. The PTO in its reexamination specifically found that "[t]he secondary considerations, when looked at as a whole, provide sufficient evidence to support non-obviousness. ***It is clear*** . . . ***that the invention itself has led to it commercial success***." [Doc. No. 788-1 at 4](emphasis added). Further, LNC concedes that EZPZ "made a successful product with sales." [Doc. No. 837, 1728:19]. *See, Demaco Corp.*, 851 F.2d at 1392 (including in its consideration that opposing party admitted success by the patentee).

The Court seemingly adopts LNC's incorrect statement of law, in which LNC argues EZPZ "ha[s] the burden of proof that [commercial success] is not related to promotion or marketing" [Doc. No. 837, 1728:23-25]. The Court then makes findings that EZPZ's commercial success is due to advertising or marketing. [Doc. No. 849 at 39-40]. This is a manifest error of law. "A patentee is not required to prove as part of its prima facie case that the commercial success of the patented invention is *not* due to factors other than the patented invention." *Id.* at 1394 (emphasis in original).

The law is clear. "When [EZPZ] can demonstrate commercial success, usually shown by significant sales in a relevant market, and that the successful product is the invention disclosed and claimed in the patent, it is presumed that the commercial success is due to the patented invention." *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997). "If

---

[22] Even though not necessary, EZPZ has shown market data, offering the data of EZPZ and LNC as the only suppliers in the market of integrated self-sealing tableware. [Doc. No. 394-5 at 21]("ezpz has sold 2,150,854 '903 Patented Products during the period from 2016 through 2018 for total sales of $20,931,901. LNC has sold 674,081 Accused Products during the period from April 2016 through 2018 for total sales of $3,686,876.76").

[EZPZ] makes the requisite showing of nexus between commercial success and the patented invention, the burden shifts to [LNC] to prove that the commercial success is instead due to other factors extraneous to the patented invention, such as advertising." *Id.*; *see also*, *Demaco Corp.*, 851 F. 2d. at 1393 (Fed. Cir. 1988)("It is thus the task of the challenger to adduce evidence to show that the commercial success was due to extraneous factors other than the patented invention, such as advertising . . . 'argument' and 'conjecture' are insufficient").

Sixth, as to copying, the PTO found that "[t]he secondary considerations, when looked at as a whole, provide sufficient evidence to support non-obviousness. ***It is clear that the invention has been copied by many entities*** . . ." [Doc No. 788-1 at 4](emphasis added). This is a finding that the Court *must* consider. *See, Broussard*, 2014 U.S. Dist. LEXIS 1101, at *8 ("[T]his Court determines that the USPTO's findings [on reexamination] are, of themselves, sufficient to create a material issue of fact as to the [] patents' validity"). In the Reconsideration Ruling, the Court discounts over thirty copyists and disregards LNC's copying. However, "[t]he fact that a competitor copied technology suggests it would not have been obvious." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1336 (Fed. Cir. 2016).

"If such a desirable product was obvious from prior art, as [LNC] contends, it would likely have been manufactured previously by others (such as [LNC]) who were knowledgeable about the [] industry." *Pentech Int'l, Inc. v. Hayduchok*, 1990 U.S. Dist. LEXIS 15391, at *30 (S.D.N.Y. Nov. 12, 1990). Not only did LNC, a company founded in 1991, not create such a product in the nearly 25 years prior to the EZPZ mats coming to market, it used the EZPZ mat as

a blueprint for its copying.[23] There is no dispute that LNC's related company Nuby-UK sent an EZPZ mat to China, and asked them to "produce something similar" attaching a picture of a Happy Mat® and sending a physical sample. [Doc. No. 392-3].

Further, there is no evidence that Tommee Tippee manufactured and sold a product contemplated by the '903 Patent or attempted to bring an integrated tableware to the market by modification to the Pink Tommee Tippee Easi Mat or the Webb Prior Art. Moreover, not only failed to threaten to sue or sue EZPZ for infringement of Web based on its '903 Patent but rather attempted to acquire EZPZ. [Doc. No. 834 714:18 to 715:20]. Actions in the market place by LNC and Tommee Tippee demonstrate that competitors in the industry saw the EZPZ product as innovative and different from anything available prior to the invention of the Happy Mat.

## V.    CONCLUSION

For the foregoing reasons, EZPZ respectfully requests that the Court grant its Motion altering the Judgment, the Obviousness Ruling, and the Reconsideration Ruling [Doc. No. 522, 523, 661, 849, 850, 852] such that there is no finding of invalidity of the '903 Patent for obviousness permitting the claim of infringement and the defense of the claim of invalidity to proceed to trial.[24]

Respectfully submitted this 18th day of January, 2022.

Jennifer K. Fischer (CO Reg. No. 36590)
(Admitted *Pro Hac Vice*)

---

[23]"Evidence of copying includes internal company documents, evidence of disassembling and photographing a prototypes features, using photographs as blueprints or access to patented product combined with substantial similarity." *Meridian Mfg. v. C&B Mfg.*, 340 F. Supp. 3d 808, 838 (N.D. Iowa 2018)(citing *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).

[24] EZPZ separately addresses a motion to alter and amend findings and judgment of unclean hands.

E-Mail: Jennifer@fischeresq.com
Lisa C. Secor (CO Reg. No. 25394)
(Admitted *Pro Hac Vice*)
E-Mail: Lisa@fischeresq.com
Ronnie Fischer (CO Reg. No. 35260)
(Admitted *Pro Hac Vice*)
E-Mail: Ronnie@fischeresq.com
Fischer & Fischer, P.C.
1777 South Harrison Street, Suite 1500
Denver, Colorado 80210
Telephone: (303) 756-2500
Facsimile: (303) 756-2506

*/s/ J.P. Christiansen*
J.P. Christiansen
Hudson, Potts & Bernstein, LLP
1800 Hudson Lane, Suite 300
Monroe, Louisiana 71210
E-Mail: jpchris@hpblaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, a copy of the foregoing was filed via the CM/ECF Court E-filing which will serve the following:

Melanie Derefinko
Carol W. Reisman
George Denegre, Jr.
Carey L. Menasco
LISKOW & LEWIS, APLC
701 Poydras Street, Suite 5000
New Orleans, LA 70139
> *mderefinko@liskow.com*
> *cwreisman@liskow.com*
> *gdenegre@liskow.com*
> *clmenasco@liskow.com*

Hartwell P. Morse, III
Luv N' Care, Ltd.
3030 Aurora Street, 2nd Floor
Monroe, LA 71201
> *hartm@nuby.com*

Jennifer K. Fischer

_____
Jennifer K. Fischer (CO Reg. No. 36590)