**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

| | | |
|---|---|---|
| **LUV N' CARE, LTD.** | * | **CIVIL ACTION NO. 3:16-cv-00777** |
| **Plaintiff,** | * | |
| | * | **JUDGE TERRY A. DOUGHTY** |
| **v.** | * | |
| | * | **MAGISTRATE JUDGE JOSEPH H.** |
| **LINDSEY LAURAIN, EAZY-PZ, LLC** | * | **L. PEREZ-MONTES** |
| **Defendants** | * | |
| | * | **(JURY TRIAL DEMANDED)** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
<u>APPLICATION TO TAX COSTS</u>**

Carol W. Reisman (La. Bar No. 20410)
George Denegre, Jr. (La. Bar No. 08387)
Carey L. Menasco (La. Bar No. 28131)
Melanie N. Derefinko (La. Bar No. 37658)
**LISKOW & LEWIS, APLC**
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Facsimile: (504) 556-4108
Emails:      cwreisman@liskow.com
                    gdenegre@liskow.com
                    clmenasco@liskow.com
                    mderefinko@liskow.com

Hartwell P. Morse, III (La. Bar No. 38626)
Robert M. Chiaviello, Jr. (La. Bar No. 37370)
**Luv n' care, Ltd.**
3030 Aurora Street, 2nd Floor
Monroe, LA 71201
Telephone: (318) 338-3108
Facsimile: (318) 388-5892
Emails:      hartm@nuby.com
                    bobc@nuby.com

**Attorneys for Luv n' care, Ltd., and Nouri E. Hakim**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iv

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENT .........................................................................................................2

        A.      LNC is the Prevailing Party ......................................................................2

        B.      LNC is Entitled to an Award in Full of all of its Allowable Costs
                Under 28 U.S.C. § 1920 .............................................................................7

                1.      LNC is Entitled to Recover Fees Charged by the Clerk –
                        28 U.S.C. § 1920(1) ......................................................................8

                2.      LNC is Entitled to Recover Fees Paid for Printed and
                        Electronically Recorded Deposition Transcripts – 28 U.S.C.
                        § 1920(2) .......................................................................................9

                        a.      Depositions Used at Trial..................................................12

                        b.      Depositions of Witnesses Aligned with EZPZ .................13

                        c.      Depositions of EZPZ's Expert Witnesses.........................14

                        d.      Obtaining a Copy of Depositions Taken by EZPZ ............15

                3.      LNC is Entitled to Recover Fees and Disbursements for
                        Witnesses – 28 U.S.C. §§ 1821 and 1920(3) .................................17

                4.      LNC is Entitled to Recover the Costs of Exemplification and
                        Making Copies – 28 U.S.C. § 1920(4)...........................................18

                        a.      Cost of Making Copies of Trial Exhibits...........................19

                        b.      Cost of LNC's Copy of the Trial Transcript......................19

                        c.      Exemplification of USPTO Documents Listed
                                on LNC's Trial Exhibit List...............................................20

                        d.      Cost of Trial Graphics........................................................20

e.      Cost of LNC's Courtroom Technician.............................21

5.      LNC is Entitled to Recover its Portion of the Fees of the
        Court Appointed Technical Expert – 28 U.S.C. § 1920(6)...........24

III.    CONCLUSION...............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                          **<u>Page</u>**

*Abbott v. U.S.*,
  17-1604, 2018 WL 3495857 (E.D. La. July 20, 2018) ............................................................ 13

*Allstate Ins. Co. v. Plambeck*,
  66 F. Supp.3d 782 (N.D, Tex. 2014) ...................................................................................... 10

*B.E. Tech., L.L.C. v. Facebook, Inc.*,
  940 F.3d 675 (Fed. Cir. 2019) .................................................................................................. 3

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015) ................................................................................................................. 6

*Core Wireless Licensing S.a.r.l. v. LG Elecs.; Inc.*,
  2:14-cv-912, 2020 WL 1557492 (E.D. Tex. Apr. 1, 2020) ............................................... 21, 23

*Contogouris v. WestPac Res., LLC*,
  CV-10-4609, 2012 WL 13001308 (E.D. La. Oct. 15, 2012) .................................................... 22

*CRST Van Expedited, Inc. v. E.E.O.C.*,
  578 U.S. 419 (2016) .................................................................................................................. 3

*DirecTV, LLC v. Ertem*,
  CIV.A. 13-487, 2015 WL 459398 (E.D. La. Feb. 3, 2015) ....................................................... 8

*Eolas Techs. Inc. v. Adobe Sys., Inc.*,
  891 F. Supp.2d 803 (E.D. Tex. 2012) ................................................................................ 10, 20

*Finisar Corp. v. DirecTV Group, Inc.*,
  1:05-cv-264, 2006 WL 2699732 (E.D. Tex. Aug. 4, 2006) ................................................ 21, 22

*Fogelman v. ARAMCO*,
  920 F.2d 278 (5th Cir. 1991) .................................................................................................. 10

*Holmes v. Cessna Aircraft Co.*,
  11 F.3d 63 (5th Cir. 1994) ...................................................................................................... 17

*In Re Ridgeway*,
  16-10643, 2018 WL 3630156 (E.D. La. July 27, 2018) ........................................................... 23

*Innovation Sciences, LLC v. Amazon.com, Inc.*,
  4:18-CV-474, 2021 WL 2075676 (E.D. Tex. May 24, 2021) ............................................... 19, 20

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
No. 13-0740, 2015 WL 7283108 (E.D. Va. Nov. 17, 2015) ........................................ 5

*J.T. Gibbons, Inc. v. Crawford Fitting Co.*,
760 F.2d 613 (5th Cir. 1985) ...................................................................................... 22

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*,
464 F.3d 1339 (Fed. Cir. 2006) .................................................................................... 4

*Lighting Ballast Control, LLC v. Philips Elec. North America Corp.*,
7:09-CV-29, 2011 WL 13128127 (N.D. Tex. Nov. 15, 2011) ...................................... 7

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*,
76 F.3d 1178 (Fed. Cir. 1996) ...................................................................................... 4

*Manton v. Strain,*
No. 09-339, 2011 WL 1000964 (E.D. La. Feb. 28, 2011) ............................................ 7

*Marmillion v. American Intern. Ins. Co.*,
381 Fed. App'x 421 (5th Cir. 2010) ....................................................................... 9, 11

*McGinley v. Luv n' care, Ltd.*,
3:17-CV-00821, 2019 WL 3282926 (W.D. La. July 19, 2019),
*rev'd and remanded on other grounds*, 819 Fed. App'x 913 (Fed. Cir. 2020) ............... 2, 3, 6

*Miller v. Braud,*
CIV.A. 12-21, 2013 WL 6666832 (E.D. La. Dec. 17, 2013) ........................................ 8

*Morales v. Safeway Inc.*,
No. 4:17-CV-825, 2020 WL 1190126 (E.D. Tex. Mar. 12, 2020) ............................ 10, 18, 20

*Motio, Inc. v. BSP Software LLC,*
4:12-CV-647, 2016 WL 4430452 (E.D. Tex. Aug. 22, 2016) ................................. 10, 11

*O.F. Mossberg & Sons, Inc. v. Timney Triggers,* LLC,
955 F.3d 990 (Fed. Cir. 2020) ...................................................................................... 5

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
No. 05-2482, 2009 WL 10670874 (N.D. Ga. Aug. 3, 2009) ......................................... 5

*Pacheco v. Mineta,*
448 F.3d 783 (5th Cir. 2006) ........................................................................................ 7

*Pioneer Natural Res. USA, Inc. v. Diamond Offshore Drilling, Inc.,*
No. CIV.A. 05-0224, 2009 WL 4020563 (E.D. La. Nov. 17, 2009) ........................... 22

*Power Mosfet Tech., L.L.C. v. Siemens AG*,
    378 F.3d 1396, 1407 (5th Cir. 2004) ...................................................................... 2, 7

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018) ................................................................................. 3

*Rundus v. City of Dallas, Tex.*,
    634 F.3d 309 (5th Cir. 2011) ............................................................................. 10, 11

*Schwarz v. Folloder*,
    767 F.2d 124 (5th Cir. 1985) ..................................................................................... 7

*Shum v. Intel Corp.*,
    629 F.3d 1360 (Fed. Cir. 2010) .............................................................................. 4, 6

*SSL Serv., LLC v. Citrix Sys., Inc.*,
    769 F.3d 1072 (Fed. Cir. 2014) .......................................................................... 2, 3, 6

*Stearns Airport Equip. Co., Inc. v. FMC Corp.*,
    170 F.3d 518 (5th Cir. 1999) .................................................................................... 10

*Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*,
    713 F.2d 128, 134 (5th Cir. 1983) ........................................................................... 25

*SynQor, Inc. v. Artesyn Tech. Inc.*,
    07-497, 2011 WL 4591893 (E.D. Tex. Sept. 30, 2011) ............................................ 22

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
    566 U.S. 560 (2012) ................................................................................................... 7

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.*,
    No. 217CV00042, 2020 WL 11884713 (E.D. Tex. Mar. 10, 2020) .......................... 10

*Two Appeals (San Juan Dupont Plaza Hotel Fire Litig.*,
    994 F.2d 956 (1st Cir. 1995) .................................................................................... 24

*Two-Way Media, LLC v. AT&T Serv., Inc.*,
    SA-09-CA-00476, 2013 WL 12090356 (W.D. Tex. Nov. 22, 2013) ............. 17, 19, 23

*U.S. Bank N.A. v. Verizon Commc'n Inc.*,
    3:10-CV-1842, 2014 WL 12577383 (N.D. Tex. March 18, 2014) ............................ 10

*Versata Software, Inc. v. SAP Am., Inc.*,
    2:07-CV-153, 2011 WL 4436283 (E.D. Tax. Sept. 23, 2011) ............................. 20, 22

*Walters v. Roadway Express, Inc.*,
  557 F.2d 521 (5th Cir. 1977) ................................................................................. 7

**Statutes**

28 U.S.C. § 1744 ....................................................................................................... 20

28 U.S.C. § 1821 ......................................................................................................... 1

28 U.S.C. § 1821(b) .................................................................................................. 17

28 U.S.C. § 1821(c)(4) .............................................................................................. 17

28 U.S.C. § 1821(d)(2) .............................................................................................. 17

28 U.S.C. § 1920 ..................................................................................................... 1, 8

28 U.S.C. § 1920(1) ................................................................................................. 1, 8

28 U.S.C. § 1920(2) ............................................................................................ 1, 9, 10

28 U.S.C. § 1920(3) .............................................................................................. 1, 17

28 U.S.C. § 1920(4) ......................................................... 1, 10, 18, 19, 20, 22, 24

28 U.S.C. § 1920(6) ............................................................................................ 1, 24

28 U.S.C. § 1924 ................................................................................................... 1, 8

35 U.S.C. § 103 ......................................................................................................... 4

35 U.S.C. § 285 ...................................................................................................... 3, 7

**Federal Rules of Civil Procedure**

Rule 41 ...................................................................................................................... 6

Rule 41(a)(1)(A)(ii) ................................................................................................... 6

Rule 41(a)(2) .............................................................................................................. 6

Rule 54(d) .............................................................................................................. 3, 4

Rule 54(d)(1) .............................................................................................. 1, 2, 7, 8, 25

**Local Rules**

LR54.3 .................................................................................................................... 1, 8

**MAY IT PLEASE THE COURT:**

**I.    INTRODUCTION**

As the prevailing party, Plaintiff Luv n' care, Ltd., together with Counterclaim-Defendant Nouri E. Hakim (collectively "LNC") have filed and served Plaintiff's Notice of Application to Tax Costs ("Application") pursuant to Fed. R. Civ. P. 54(d)(1) and LR54.3.  As addressed in more detail below, LNC's Bill of Costs,[1] seeks the taxation of costs, allowable under 28 U.S.C. §§ 1821 and 1920 as these statutes have been interpreted by the Fifth Circuit, in the total amount of $399,712.28.  LNC's allowable costs sought to be taxed are summarized as follows:

1.    "Fees of the Clerk," in the amount of $809.00, under § 1920(1);

2.    "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case," in the amount of $103,014.31, under § 1920(2);

3.    "Fees and disbursements for printing and witnesses," in the amount of $986.28, under § 1920(3) (as calculated in conjunction with 28 U.S.C. § 1821);

4.    "Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," in the amount of $181,068.19, under § 1920(4); and

5.    "Compensation of court appointed experts," in the amount of $113,834.50, under § 1920(6).

As set forth in the accompanying Morse Aff., all of the allowable costs sought to be taxed by LNC are correct, have been necessarily incurred, and are for services that were actually and necessarily performed in this case.  28 U.S.C. § 1924.  Further, the costs taxed under §§ 1920(2) and (4) were necessarily obtained for use in the case.

LNC requests that the entire amount of allowable costs necessarily incurred in this action,

---

[1]    LNC's Bill of Costs is provided as Exhibit ("Ex.") A to the Affidavit of Hartwell P. Morse, III, Pursuant to 28 U.S.C. § 1924, in Support of Plaintiff's Notice of Application to Tax Costs ("Morse Aff.") filed concurrently with LNC's Application.

in the total amount of $399,712.28, be taxed against EZPZ and in favor of LNC.

## II.    ARGUMENT

Rule 54(d)(1) of the Federal Rules of Civil Procedure, governing the taxation of costs, provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  An award of costs under Rule 54(d)(1) presents two separate inquiries.  *Power Mosfet Tech., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1407 (5th Cir. 2004).  "First, determining who is the 'prevailing party' within the meaning of Rule 54(d)(1).  Second, how much (if any) costs should be awarded to the prevailing party."  *McGinley v. Luv n' care, Ltd.*, 3:17-CV-00821, 2019 WL 3282926, at *4 (W.D. La. July 19, 2019), *rev'd and remanded on other grounds*, 819 Fed. App'x 913 (Fed. Cir. 2020).  Federal Circuit law governs the "prevailing party" determination.  *SSL Serv., LLC v. Citrix Sys., Inc.*, 769 F.3d 1072, 1086 (Fed. Cir. 2014).  Fifth Circuit law governs the award of costs.  *Power Mosfet*, *supra* 378 F.3d at 1407.

### A.    LNC is the Prevailing Party

When considering the outcomes LNC achieved on its claims together with the resolution of all thirteen of EZPZ's counterclaim counts in LNC's favor, the prevailing party issue should be indisputable.[2]  LNC is the overall winner in terms of materially altering the legal relationship between LNC and EZPZ by successfully modifying EZPZ's behavior in such a way as to directly benefit LNC.  In stark contrast, EZPZ was uniformly unsuccessful on all of its counterclaim counts seeking to modify LNC's behavior in a way that benefits EZPZ.  LNC successfully rebuffed all of

---

[2]    Counts I thru VIII in EZPZ's Amended Counterclaim, (Dkt. No. 40), were asserted against LNC. Counts IX, X, and XI were asserted against Admar International, Inc. ("Admar").  Counts XII and XIII asserted individual liability against Mr. Hakim for infringement of U.S. Patent No. 9,462,903 (the "'903 Patent") and U.S. Design Patent No. D745,327 (the "D327 Patent").

EZPZ's claims seeking the award of damages and injunctive relief involving LNC's sale, offer for sale, and importation into the United States of its line of integrated tableware and dining mat products. *See McGinley v. Luv n' care, Ltd.*, *supra* 2019 WL 3282926, at *5 (LNC is the prevailing party because they did not infringe the patent-in-suit and "could continue to make, use, sell, offer for sale and import into the United States the *Nuby Tear Free Pail*.")

Nevertheless, EZPZ obtained an extension of time for filing "a motion for attorney's fees pursuant to Fed. R. Civ. P. 54, with respect to LNC's LUTPA and Lanham Act claims." Dkt. Nos. 857 and 858. EZPZ seemingly intends to claim prevailing party status with respect to at least these two LNC claims notwithstanding well-established Federal Circuit law that there can be only one overall prevailing party under Rule 54(d). Because the prevailing party analysis is equally applicable to both the award of costs under Rule 54(d) and attorneys' fees under 35 U.S.C. § 285, LNC will address its prevailing party status in greater detail.[3]

"Federal Circuit law governs the determination of which party has prevailed in patent cases." *McGinley*, *supra*, 2019 WL 3282926, at *4 (W.D. La. July 19, 2019). In *SSL Services*, *supra* 769 F.3d at 1367, the Federal Circuit set out the standards for making that determination: "To be the prevailing party, we require: (1) that the party received at least some relief on the merits, and (2) that relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." Controlling Federal Circuit precedent, moreover, establishes that "there can only be one prevailing party in a patent case."

---

[3]     "We interpret the term [prevailing party] consistently between the different fee-shifting statutes, and between Rule 54(d) and 35 U.S.C. § 285." *B.E. Tech., L.L.C. v. Facebook, Inc.,* 940 F.3d 675, 677 (Fed. Cir. 2019). *See also Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1306 (Fed. Cir. 2018) (Acknowledging "the Supreme Court's clear command to construe the term 'prevailing party' consistently across fee-shifting regimes.") (referencing *CRST Van Expedited, Inc. v. E.E.O.C.,* 578 U.S. 419, 422 (2016) ("Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner.")

*Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010).  Thus, under Rule 54(d), the Federal Circuit has held that "for purposes of costs and fees, there can be only one winner" and, therefore, has instructed that "[a] court must choose one, and only one, 'prevailing party' to receive any costs award."  *Id.*

On December 21, 2021, the Court entered a Judgment denying EZPZ's Motion for Reconsideration of Obviousness Ruling, declaring the '903 Patent invalid and unenforceable as being obvious under 35 U.S.C. § 103, and dismissing EZPZ's infringement claims (Counts I and XII), with prejudice.[4]  Dkt. No. 850.  *See also Manildra Milling Corp. v. Ogilvie Mills, Inc*., 76 F.3d 1178, 1183 (Fed. Cir. 1996) ("as a matter of law, a party who has a competitor's patent declared invalid meets the definition of 'prevailing party.'").  On that same day, the Court entered a Final Judgment in favor of LNC and against EZPZ, dismissing the entirety of EZPZ's remaining counterclaims (Counts I, II, VI, XII, XIII) with prejudice under the doctrine of unclean hands.[5]  Dkt. No. 852.[6]

A party is "not required…to prevail on all claims in order to qualify as a prevailing party." *Shum*, *supra* 629 F.3d at 1367 (citing *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.,* 464 F.3d 1339, 1347-48 (Fed. Cir. 2006)).  Although the Court ultimately precluded LNC from pursuing damages and injunctive relief for its LUTPA claim at trial[7] and dismissed LNC's

---

[4]   The Court had previously entered Judgment, Dkt. No. 523, finding all claims of the '903 Patent invalid and unenforceable for obviousness under 35 U.S.C. § 103 and dismissing EZPZ's infringement counterclaims (Counts I and XII) with prejudice.

[5]   The Court has dismissed EZPZ's counterclaims asserting infringement of the '903 Patent (Counts I and XII) with prejudice for two separate and independent reasons: (1) Invalidity (Dkt. Nos. 523 and 850) and (2) Unclean Hands (Dkt. No. 852).

[6]   The Court, however, has yet to declare the prevailing party in this action.

[7]   No final judgment has been entered on LNC's LUTPA claim.  Therefore, any consideration of this claim in the prevailing party analysis is premature.  "Neither *CRST,* nor *Raniere*, nor *B.E. Technology* went so far as to hold that one could become a prevailing party without a final court

Lanham Act claims[8] without prejudice, Dkt. No. 852, the central issue in this case has always related to EZPZ's various attempts to stop LNC's continued sale of its line of integrated tableware and dining mat products though malicious social media attacks, a boycott campaign and allegations of violation of EZPZ's alleged intellectual property rights. But EZPZ's utility and design patent infringement claims, other related federal intellectual property claims, and state law claims have now all been dismissed. LNC has successfully removed all of EZPZ's asserted legal roadblocks to its continued sale of its integrated tableware and dining mat products. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. 13-0740, 2015 WL 7283108, at *3 (E.D. Va. Nov. 17, 2015) (finding Defendant to be the prevailing party when it "defeated [Plaintiff]'s entire litigation objective," Plaintiff's "success neither surpassed [Defendant's] nor aligned itself with the central issue in th[e] case, the validity and enforceability of its five patents," and Defendant "lost some battles but won the war"); *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, No. 05-2482, 2009 WL 10670874, at *9 (N.D. Ga. Aug. 3, 2009) (finding Plaintiff to be the prevailing party although it "did not succeed in bringing all of its claims" because "it ultimately achieved its objective in bringing this litigation by obtaining a judgment that [the] patents are unenforceable and invalid"). Indeed, the validity and noninfringement of EZPZ's '903 Patent and the D327 Patent were at the heart of LNC's Declaratory Judgment Count in the First Amended Complaint.

---

decision." *O.F. Mossberg & Sons, Inc. v. Timney Triggers,* LLC, 955 F.3d 990, 993 (Fed. Cir. 2020).

[8]    In dismissing LNC's Lanham Act claims without prejudice, the Court ruled that "[t]here is no evidence before the Court that EZPZ has continued or that it will in the future organize, engage in, facilitate, orchestrate or conspire with others in any future social media attacks and boycotts against LNC." Dkt. No. 852. The implication, of course, is that LNC may reassert these Lanham Act claims should EZPZ and Laurain resume these false and malicious activities in the future. In this sense, LNC achieved the goal of ceasing EZPZ's ongoing false and malicious social media attacks and boycott campaign against LNC before the Court had to issue injunctive relief.

Dkt. No. 21.[9]

LNC, as a counterclaim-defendant, also succeeded in defending against the thirteen separate counterclaim counts asserted by EZPZ in the Amended Answer and Counterclaim, (Dkt. No. 40).   During this case, all thirteen counterclaims were either voluntarily dismissed without prejudice by EZPZ under Rule 41,[10] dismissed with prejudice on the merits under Rule 56 prior to the bench trial,[11] or dismissed with prejudice by the Final Judgment.   In other words, LNC successfully rebuffed each and every one of EZPZ's attempts to effect a "material alteration in the legal relationship between the parties" and "did not modify" LNC's behavior "in a way that 'directly benefits'" EZPZ.  *SSL Services*, *supra* 769 F.3d at 1086 (citing *Shum*, *supra* 629 F.3d at 1367).   For EZPZ to have prevailed in this case, it "would have had to obtain a finding of infringement, a money judgment or an injunction against" LNC.  *McGinley*, *supra* at 2019 WL 3282926, at *5.   EZPZ failed to achieve any of these results under any of its myriad patent, trademark, copyright, unjust enrichment and unfair competition counterclaim counts.

---

[9]     An invalid patent cannot be infringed.  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) ("To say that an invalid patent cannot be infringed…is in one sense a simple truth, both as a matter of logic and semantics.")  Said another way, "only valid patents can be infringed."  *Id.* at 648 (Scalia, J., dissenting).

[10]     EZPZ and LNC stipulated to the dismissal of Count III (Copyright Infringement) without prejudice under Rule 41(a)(1)(A)(ii).  Dkt. No. 192.   In response to LNC's Rule 56 dispositive motion practice, EZPZ requested and the Court granted voluntary dismissals without prejudice under Rule 41 of Count IV (Trademark Infringement), Count V (False Designation of Origin), and Count VIII (Unjust Enrichment).  Dkt. Nos. 183, 184, 210, and 211.  EZPZ's voluntary dismissal of Count VIII for unjust enrichment against LNC rendered moot LNC's pending summary judgment motion seeking dismissal of Count XI for unjust enrichment against Admar.  Dkt. No. 184.  Although the specific subsection of Rule 41 is not identified in the respective Judgments, Counts IV, V, and VIII were likely dismissed without prejudice at EZPZ's request under Rule 41(a)(2).

[11]     In response to LNC's Rule 56 motion practice, the Court dismissed with prejudice the following EZPZ counterclaims on the merits: (1) Count VII (LUTPA), Dkt. No. 184; and (2) Counts IX (Patent Infringement) and X (Design Patent Infringement) asserted against Admar, Dkt. No. 186.

LNC is the prevailing party in this case for purposes of both the award of costs under Rule 54(d)(1) and for an award of attorneys' fees under 35 U.S.C. § 285.

**B.     LNC is Entitled to an Award in Full of all of its Allowable Costs Under 28 U.S.C. § 1920**

For an award of costs, the Fifth Circuit holds that "the prevailing party is prima facie entitled to costs," and a denial of costs is "in the nature of a penalty." *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006) (quoting *Schwarz v. Folloder*, 767 F.2d 124, 131 (5th Cir. 1985)).  The award of costs under Rule 54(d) falls within the district court's discretion. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012).  In the Fifth Circuit, however, the district court's exercise of discretion under Rule 54(d)(1) is subject to "the judicially-created condition that a court 'may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'"  *Pacheco, supra* at 794 (quoting *Swartz v. Folloder*, *supra* at 131).  *See Power Mosfet Tech., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1407 (Fed. Cir. 2004) (The Fifth Circuit "applies a strong presumption that a prevailing party will be awarded costs and that any district court denying costs will provide an explanation for its decision.")  *See Manton v. Strain,* No. 09-339, 2011 WL 1000964, at *8 (E.D. La. Feb. 28, 2011) ("A district court should grant an award for costs to the prevailing party under Rule 54(d)(1) as long as the listed expense is reasonably necessary to the litigation and authorized by statute.") and *Walters v. Roadway Express, Inc.*, 557 F.2d 521, 526 (5th Cir. 1977) (noting that, under Rule 54(d), it is incumbent upon the losing party to overcome the presumption of awarding costs to the prevailing party).  In the absence of a specific objection by the party being taxed, "the presumption is that the costs being sought were necessarily incurred for use in the case and will be taxed." *Lighting Ballast Control, LLC v. Philips Elec. North America Corp.*, 7:09-CV-29, 2011 WL 13128127, at *1 (N.D. Tex. Nov. 15, 2011).

The six categories of allowable costs that may be taxed under Rule 54(d)(1) are identified in 28 U.S.C. § 1920.  LNC has tendered the Morse Aff. setting forth, for each category of allowable costs under § 1920, the specific items sought to be taxed thereunder by LNC that are true and correct according to the invoices and statements received and paid by LNC.  The Morse Aff. verifies that each item of cost was "necessarily incurred in this case" and "the services for which fees have been charged were actually and necessarily performed" in this case.  28 U.S.C. § 1924. *See also* LR54.3 and Morse Aff., ¶ 5.

### 1.   LNC' is Entitled to Recover Fees Charged by the Clerk - 28 U.S.C. § 1920(1)

The allowable fees charged by a Clerk of Court sought to be taxed by LNC total $809.00.  Morse Aff., ¶ 6  *See* 28 U.S.C. § 1920(1).  These fees are correct, were necessarily incurred in this case and were for services that were actually and necessarily performed in this case.  *Id.*, ¶ 7.

In this case, LNC is entitled to recover the $400.00 filing fee paid to the Clerk of Court upon filing of the Complaint in this action on June 3, 2016.  *See Miller v. Braud,* CIV.A. 12-21, 2013 WL 6666832, at *7 (E.D. La. Dec. 17, 2013)(awarding cost of filing fee).  The Court's docket reflects LNC's payment of the $400.00 filing fee as evidenced by receipt number 0536-3089146.  Morse Aff., ¶ 6, Ex. B (Dkt. No. 1).  LNC also incurred additional fees charged by the Clerk for the admission *pro hac vice* of LNC's counsel of record Hartwell P. Morse, III (Receipt No. 0536-3089171), Robert M. Chiaviello, Jr. (Receipt No. 0536-3089163), and Holly C. White (Receipt No. ALAWDC-4206131) in the amount of $105.00 each for a total of $315.00.  *Id.*, Dkt. Nos. 3, 4, 7, 503 and 511.  *See DirecTV, LLC v. Ertem*, CIV.A. 13-487, 2015 WL 459398, *4 (E.D. La. Feb. 3, 2015)(Awarding cost of filing and *pro hac vice* admission fees).

LNC incurred a filing fee of $47.00 charged by the Clerk of the Court for the U.S. District Court for the District of Colorado in a miscellaneous action styled *Luv n' care, Ltd. v. Eazy-PZ,*

*LLC*, Civil Action No. 1:18-mc-00212 (the "Colorado Action").  LNC filed the Colorado Action to enforce a subpoena for the production of documents issued to Williams Intellectual Property. The $47.00 filing fee is reflected in the docket sheet for the Colorado Action as evidenced by receipt number COX087614.[12]  *See* Morse Aff., ¶ 6 and Ex. B-1 (Dkt. No. 1).

LNC also incurred a filing fee of $47.00 charged by the Clerk of the Court for the District Court for the District of Nevada in a miscellaneous action styled *Luv n' care, Ltd. v. Eazy-PZ, LLC,* Civil Action No. 2:18-cv-02224 (the "Nevada Action").  LNC filed the Nevada Action to enforce a subpoena for the production of documents issued to Blue Basin Medical, LLC relevant to this case.  The $47.00 filing fee is reflected in the docket sheet for the Nevada Action as evidenced by receipt number NVLAS060491.[13]  *See* Morse Aff., ¶ 6 and Ex. B-2 (Dkt. No. 6).

### 2.  LNC is Entitled to Recover Fees Paid for Printed And Electronically Recorded Deposition Transcripts – 28 U.S.C. § 1920(2)

Allowable costs to be taxed include "(f)ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  LNC's costs associated with the taking of depositions in this case totals $103,014.31.  The specific depositions and the allowable costs to be taxed are summarized in Ex. C to the Morse Aff.  The specific invoices and proof of payment for each deposition taken is also provided.  *See* Morse Aff., Ex. C-1 to C-51.

"Costs related to the taking of depositions are allowed under § 1920(2) and (4) 'if the materials were necessarily obtained for use in the case.'"  *Marmillion v. American Intern. Ins. Co.*,

---

[12]  LNC successfully secured a Court Order overruling many of the privilege objections asserted on EZPZ's behalf and requiring Williams Intellectual Property to produce documents responsive to LNC's subpoena.  *See* Morse Aff., ¶ 6, Ex. B-1 (Dkt. No. 24).

[13]  LNC was successful in securing a Court Order requiring Blue Basin Medical to produce documents including a Judgment awarding LNC's attorneys' fees and costs in the amount of $29,892.97 associated with the filing of a motion to compel.  *See* Morse Aff., ¶ , Ex. B-2 (Dkt. Nos. 1, 37, 48, 49 and 50).

381 Fed. App'x 421, 429 (5th Cir. 2010) (quoting *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999)).[14]  A deposition is necessarily obtained "[i]f, at the time the deposition was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery."  *Fogelman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). "Such [deposition] costs are recoverable if the party making the copies has a reasonable belief that the documents will be used 'during trial or for trial preparation.'"  *Rundus v. City of Dallas, Tex.*, 634 F.3d 309, 316 (5th Cir. 2011) (quoting *Fogelman*, *supra* at 285) (Interpreting "necessarily obtained for use in the case" appearing in § 1920(2) and § 1920(4)).  Video depositions, moreover, are not duplicative of deposition transcripts particularly in large cases and where the "witnesses' ability to appear at trial is uncertain and their credibility is sharply disputed."  *U.S. Bank N.A. v. Verizon Commc'n Inc.*, 3:10-CV-1842, 2014 WL 12577383, at *2 (N.D. Tex. March 18, 2014) (taxing the costs of both print and video depositions).  *See e.g. Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp.2d 803, 805 (E.D. Tex. 2012) ("Thus, § 1920(2) permits cost to be taxed for both printed and electronically recorded transcripts") and *Allstate Ins. Co. v. Plambeck*, 66 F. Supp.3d 782, 789 (N.D, Tex. 2014) (construing language of §1920(2) as authorizing "recovery of costs for the printed transcript or the video deposition or both.")

The Fifth Circuit has "consistently held that a deposition need not be introduced into evidence at trial in order to be 'necessarily obtained for use in the case.'"  *Fogelman, supra* at 285 (quoting § 1920(2)).  *See Motio, Inc. v. BSP Software LLC,* 4:12-CV-647, 2016 WL 4430452, at *11 (E.D. Tex. Aug. 22, 2016) ("Actual use at trial may provide clear evidence that the items were

---

[14]     For example, allowable deposition costs include administrative fees, exhibits, exhibit tabs, binders, shipping and handling charges, non-expedited shipping charges, certified copies, appearance fees, video set-up fees, hourly fees and cost of video fees.  *See e.g. Morales v. Safeway Inc.*, No. 4:17-CV-825, 2020 WL 1190126, at *4 (E.D. Tex. Mar. 12, 2020) and *Traxcell Techs., LLC v. Huawei Techs. USA Inc.,* No. 217CV00042, 2020 WL 11884713, at *2 (E.D. Tex. Mar. 10, 2020).

necessarily obtained, but it makes little sense to disallow costs when, at trial, a party finds that a video no longer appears necessary."). LNC is not required at the outset "to demonstrate that a particular deposition was reasonably necessary at the time it was taken for a party to recover the costs of the deposition transcripts" since "the pertinent question is whether the transcript was necessarily obtained for use in the case." *Marmillion*, *supra*, 381 Fed. Appx. at 430. The Court "should consider whether the videos were 'necessarily obtained for use in the case,' considering the circumstances at the time the videos were obtained." *Motio, supra,* 2016 WL 4430452, at *11. The Court is accorded "great latitude" in making the factual determination of whether the deposition was necessarily obtained for use in the case. *Rundus*, *supra*, 634 F.3d at 316. The deposition of a witness that is identified on a witness list, is designated for use at trial, is noticed by the opponent, is actually used during trial or is used to support pretrial motions are all relevant evidence that the deposition was necessarily obtained for use in the case. *See Marmillion, supra,* 381 Fed. Appx. at 430 (Abuse of discretion by the district court to deny costs for depositions noticed by the opponent, designated for use during trial, actually used during trial or used to support pretrial motions.)

All of the depositions taken by LNC for which allowable costs are sought were necessarily obtained for use in this action and with the reasonable belief and expectation at the time that they would be used for trial preparation and at trial. Morse Aff., ¶¶ 8 and 10. Indeed, the standard Scheduling Orders issued by the Court in this case all included a provision, entitled "Trial Depositions," requiring that "trial depositions in **jury** cases shall be videotaped" and "[a]ny depositions that are intended to be used in evidence (other than for impeachment only) must be taken by video." Dkt. No. 270, ¶ I (emphasis original). *See also* Dkt. Nos. 531, ¶ H and 705, ¶ H and Morse Aff., ¶ 9. Throughout discovery in this case, all of the claims and counterclaims were

destined to be tried to a jury requiring that the depositions be videotaped if they were to be used at trial before a jury in compliance with the Court's Scheduling Orders. Morse Aff., ¶¶ 9-10. All of the deponents whose depositions were taken by LNC resided outside the subpoena power of the Court. *Id.* At the time each deposition was taken by LNC, this case was destined for a jury trial. LNC, thus, at the time of taking the depositions knew that it could not compel the deponents to appear at trial and could not anticipate that they would voluntarily appear at trial. To secure the testimony of these witnesses for trial preparation and potential use at trial, LNC was required to videotape the depositions. *Id.*, ¶ 10.

### a. Depositions Used at Trial

During the Bench Trial, LNC introduced into evidence videotaped deposition excerpts from the following deponents in its case-in-chief:

(1) Lindsey Laurain (May 4, 2018), (Dkt. No. 830);

(2) Jordan Bolton (March 5, 2020), (Dkt. No. 830);

(3) Timothy McCarthy (March 10, 2020), (Dkt. No. 830);

(4) Tamara Falcone (March 13, 2020), (Dkt. No. 831);

(5) Lindsey Laurain (June 28, 2019 and June 10, 2020 (Rule 30(b)(6)), (Dkt. No. 831);

(6) Zachary Garthe (January 31, 2019 (Rule 30(b)(6)), (Dkt. No. 832);

(7) Benjamin Williams (June 17, 2020), (Dkt. No. 833);

(8) Theodore Olds (June 15, 2020), (Dkt. No. 833); and

(9) Julie Clark (November 29, 2018), (Dkt. No.833).

Morse Aff., ¶ 11. In addition, EZPZ introduced excerpts of LNC's videotaped depositions of Jamie Grayson (November 27, 2018) and Joseph Chua (June 11, 2020) as evidence in their case-

in-chief.  (Dkt. No. 836, pp. 1522-25).[15]  *Id*.  All of these identified videotaped depositions were noticed by LNC.  EZPZ also identified these same witnesses for trial.[16]  *Id.*, ¶ 12.  "Depositions of witnesses intended to be called at trial are necessarily obtained for use in the case, and thus the prevailing party is entitled to recover the cost of those depositions as a matter of law."  *Abbott v. U.S.*, 17-1604, 2018 WL 3495857, at *2 (E.D. La. July 20, 2018) (Inclusion of individuals on witness list indicates that depositions were necessarily obtained for trial preparation).

The fact that some of the witnesses deposed by LNC attended the Bench Trial and testified as witnesses for EZPZ does not detract from the necessity for LNC to take these depositions for potential use at trial.  At the time that the depositions were taken, LNC was preparing for a jury trial and taking evidence from potential witnesses who resided outside the subpoena power of the Court and in accordance with the Court's Scheduling Orders.  Morse Aff., ¶¶ 9-12.

### b.      Depositions of Witnesses Aligned With EZPZ

LNC also seeks the costs of taking a number of depositions of witnesses who were aligned with EZPZ, resided outside the subpoena power of the Court, and whose testimony was necessarily obtained for use in the case with the reasonable expectation that, at the time they were taken, they would be used in connection with LNC's motion practice, trial preparation and at trial.  Those depositions include: Bradley Laurain (May 3, 2018), Michael Sisbarro (November 28, 2018), Paul Joyner (December 6, 2018), Jennifer Chua (January 17, 2019), and Brian Tobin (June 15, 2020).

---

[15]    All of these deponents were identified as "will call" witnesses on LNC's Witness List, (Dkt. No. 807), and are identified, in accordance with Rule 32, in both the Joint Proposed Pretrial Order, (Dkt. No. 748, at 56), and the Pretrial Order (Dkt. No. 773, at 56).  LNC also designated deposition testimony for these deponents to which EZPZ provided counter-designations and objections.  The Court resolved the objections to deposition-designated testimony in a Memorandum Order dated August 19, 2021.  Dkt. No. 812.  Morse Aff., ¶ 12.

[16]    With the exception of Timothy McCarthy, Joseph Chua and Jamie Grayson, EZPZ identified these deponents as "will call" witnesses on EZPZ's Trial Witness List (Dkt. No. 808).

Morse Aff., ¶ 13.  In addition to the deposition of Julie Clark (November 29, 2018), they also include the depositions of the following additional witnesses who submitted declarations during the prosecution of the '903 Patent in the USPTO: Dawn Winkelman (September 25, 2018); (2) Nimali Fernando (December 13, 2018); (3) Melanie Potock (December 17, 2018); (4) Jeff Prager (December 18, 2018); (5) Theodore H. Stathos, M.D. (December 18, 2018); and (6) Katie Neuman (January 11, 2019).[17]  Morse Aff., ¶ 14.

Some of the deposition included the authentication of documents anticipated for use by LNC as trial exhibits.  Those depositions include Eric Ludlum (October 27, 2017) and Takashi Yamada (December 11, 2017).[18]  Morse Aff., ¶15.

### c. Depositions of EZPZ's Expert Witnesses

LNC also seeks the cost of taking the depositions of the following EZPZ expert witnesses: (1) Michael E. Henley (July 23, 2019), (2) John T. Kenney (July 25, 2019), and (3) Mark Pedigo (July 26, 2019.  Both Michael Henley and John T. Kennedy testified at the Bench Trial for EZPZ. *See* Dkt. Nos. 835 (Kennedy) and 836 (Henley).  LNC's taking of these depositions were instrumental in successfully foreclosing some of the opinions expressed by these experts on motion practice under *Daubert* or a motion to strike.  *See* Dkt. Nos. 490 and 491 (Kennedy) and 677, 786 and 787 (Henley).  In addition, these depositions of EZPZ's expert witnesses were necessarily

---

[17]    Brian Tobin and Jennifer Chua are listed as "will call" witnesses on LNC's Witness List (Dkt. No. 807).  Both are identified, in accordance with Rule 32, in the Joint Proposed Pretrial Order, (Dkt. No. 748, at 56), and the Pretrial Order (Dkt. No. 773, at p. 56).  LNC also designated deposition testimony for Mr. Tobin, Ms. Chua, Mr. Prager, and Ms. Winkelmann to which EZPZ provided counter-designations and objections.  EZPZ also designated deposition testimony for Ms. Fernando to which LNC provided counter-designations and objections.  Morse Aff., ¶ 14.

[18]    Mr. Ludlum is listed on LNC's Witness List, (Dkt. No. 807), and is identified, in accordance with Rule 32, in both the Joint Proposed Pretrial Order, (Dkt. No. 748, at 56), and the Pretrial Order (Dkt. No. 773, at p. 56).  LNC also designated deposition testimony for Mr. Ludlum to which EZPZ provided counter-designations.  Morse Aff., ¶ 15.

obtained at the time for use in this case including the preparation for and use at trial including the cross-examination of Messrs. Kennedy and Henley.  *See* Dkt. No. 835 (cross-examination of Mr. Kennedy) and 836 (cross-examination of Mr. Henley).  Morse Aff., ¶ 16.

### d.      Obtaining a Copy of Depositions Taken by EZPZ

LNC also seeks to recover the costs of obtaining a copy of deposition transcripts of LNC's fact and expert witnesses which transcripts were necessarily obtained for use in this case and instrumental in responding to EZPZ's motion practice as well as evaluating EZPZ's trial strategy and preparing for the defense of these witnesses if called at trial.  Morse Aff., ¶¶ 17-18.  Notably, EZPZ never took a videotaped deposition of any witness it noticed for deposition.  *Id.*, ¶ 9.  Specifically, for its expert witnesses, LNC seeks the cost of obtaining a copy of the following deposition transcripts:  (1) Ellie Rand (July 19, 2019), (2) Robert J. Anders (July 16, 2019), (3) Vincent J. Valderrama (July 16, 2019), (4) Marc Hubbard (August 13, 2019), (5) Joshua Lynn (August 15, 2019), and (6) Nancy Albers (August 19, 2019).  With the exclusion of Nancy Albers, EZPZ challenged all five of the remaining LNC expert witnesses under *Daubert*.[19]  Ms. Albers and Mr. Hubbard both testified at the Bench Trial.  *See* Dkt. No. 831 (Albers) and 832 (Hubbard).  Morse Aff., ¶ 18.

LNC is further entitled to recover the cost of obtaining a copy of the following depositions taken of its fact witnesses by EZPZ: (1) N. Hakim (May 8, 2018 and June 27, 2019), (2) Scott Carlson (May 15, 2018), (3) Nathan Shamosh (May 16, 2018), (4) Joseph Hakim (August 9, 2018), (5) Allison Jemes (December 7, 2018), (6) Robert M. Chiaviello, Jr. (December 8, 2018), (7) Michael Ariel (December 11, 2018), (8) Steve Ariel (December 12, 2018), (9) Rick Oslovic (January 29, 2019), (10) Steve Pickering (January 23, 2019), and (11) Hartwell P. Morse, III (Rule

---

[19]      *See* Dkt. Nos. 338 (Rand), 359 (Anders), 360 (Lynn), 365 (Valderrama), and 711 (Hubbard).

30(b)(6)(January 23, 2019).  EZPZ noticed the depositions of all eleven of these witnesses.  Rick Oslovic, Michael Ariel and Steve Ariel reside outside the subpoena power of the Court and their respective depositions were taken pursuant to subpoena.  With the exception of Steve Pickering and Robert M. Chiviello, Jr., all of these witnesses were identified by EZPZ in the Pretrial Order, (Dkt. No. 773, at 57) or had their deposition testimony designated for trial.[20]  At the time, a copy of the deposition transcripts taken by EZPZ were necessarily obtained for use in this case and with the reasonable expectations that they would be used in pretrial motions and preparation of LNC's witnesses for trial.  Morse Aff., ¶ 17.

Many of the depositions taken in this case were submitted as evidence in connection with the extensive dispositive and pretrial motion practice reflected in the Court's docket.  An electronic search of the Court's docket reveals all the instances where a particular deposition transcript was submitted as evidence in motion practice.  Morse Aff., ¶ 19.  Such use is further evidence that a deposition, at the time, was necessarily obtained for use in this case.

All of the items of cost incurred by LNC for the fifty-one (51) depositions taken in this case as summarized in Ex. C are correct and were necessarily incurred in the case for the various reasons addressed above.  The services for which LNC was charged for the depositions were actually and necessarily performed in this case.  Morse Aff., ¶¶ 8 and 10.

---

[20]    Rick Oslovic is listed as a "will call" witness on EZPZ's Trial Witness List, (Dkt. No. 808).  All of LNC-related witnesses, with the exception of Steve Pickering and Hartwell P. Morse, III, are identified, in accordance with Rule 32, in the Joint Proposed Pretrial Order, (Dkt. No. 748, at p. 57), and in the Pretrial Order, (Dkt. No. 773, at p. 57).  EZPZ also provided deposition designations for Rick Oslovic to which LNC provided counter-designations and objections.  Mr. Morse was identified as a "will call" witness on LNC's Trial Exhibit List (Dkt. No. 807) and testified at trial. *See* Dkt. 832.  Morse Aff., ¶ 17.

**3.** **LNC is Entitled to Recover Fees and Disbursements for Witnesses – 28 U.S.C. §§ 1821 and 1920(3)**

LNC is entitled to $986.28 representing witness attendance fees, per diem costs and travel expenses for two of its trial witnesses:  (1) Dr. Nancy Albers, LNC's survey expert; and (2) Mr. Marc Hubbard, LNC's patent law expert.  Morse Aff., ¶ 21.  "Necessary expenses for witnesses who appear at trial, including fees and travel expenses, are permissible."  *Two-Way Media, LLC v. AT&T Serv., Inc.*, SA-09-CA-00476, 2013 WL 12090356, at *3 (W.D. Tex. Nov. 22, 2013).  This element of costs, under § 1920(3), relating to witnesses is calculated as provided in 28 U.S.C. § 1821.  *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

"A witness shall be paid an attendance fee of $40.00 per day for each day's attendance."  28 U.S.C. § 1821(b).  "A subsistence allowance for a witness shall be paid" of $96.00 per day for lodging and $41.25 per day for meals and incidental expenses for a witness's first and last days of travel, consummate with the per diem allowance for federal government employees for Monroe, Louisiana.  28 U.S.C. § 1821(d)(2).  Further, "[a]ll normal travel expenses within and outside the judicial district shall be taxable as costs," including mileage reimbursement of  $0.560 per mile at the time of the trial of the case.  28 U.S.C. § 1821(c)(4).  Morse Aff., ¶ 21.

Dr. Albers resides in Shreveport, Louisiana where she is currently a professor of marketing at LSU Shreveport.  Dkt. No. 831, at 110, ll. 18-25.  Dr. Albers drove her car from Shreveport and was present in the courtroom on August 25, 2021.  Dr. Albers testified at trial on August 26, 2021 and then drove back to Shreveport that same day.  Dkt. No. 831.  At $40.00 a day, LNC is entitled to a witness attendance fee of $80.00 for Dr. Albers.  According to Google Maps, the roundtrip distance between Dr. Albers office in the College of Business at LSU Shreveport and the Court House is 218 miles.  At $0.560 per mile, the total mileage charge for Dr. Albers car travel is $122.08.  Although Dr. Albers spent one-night stay at the Hilton Garden Inn at a cost of $208.43,

her per diem lodging expense is capped at $96.00 for the Monroe area.  Dr. Albers per diem for

meals and incidentals for the first day of travel (August 25, 2021) and last day of travel (August

26, 2021) is $41.25 per day.  The total allowable fees for Dr. Albers travel and attendance at trial

is $380.58.  Morse Aff., ¶ 22.

Mr. Hubbard traveled by car from his home in the Dallas, Texas area and was present in

the courtroom on August 26, 2021.  On August 27, 2021, Mr. Hubbard testified at trial on August

27, 2021 and drove back to Dallas that same day.  Dkt. No. 832.  At $40.00 a day, LNC is entitled

to a witness attendance fee of $80.00 for Mr. Hubbard.  According to Mr. Hubbard, the roundtrip

distance he drove to Monroe was 620 miles.  At $0.56 per mile, the total mileage charge for Mr.

Hubbard's car travel is $347.20.  Mr. Hubbard spent the night at the Hilton Garden Inn with his

overnight charges picked up by Liskow & Lewis and reimbursed by LNC.  Mr. Hubbard's per

diem lodging expense for Monroe is capped at $96.00 and his per diem for meals and incidentals

for the first day of travel (August 26, 2021) and last day of travel (August 27, 2021) is $41.25 per

day.  The total allowable fees for Mr. Hubbard's attendance at trial is $605.70.  Morse Aff., ¶ 23.

### 4.    LNC is Entitled to Recover the Costs for Exemplification and Making Copies – 28 U.S.C. § 1920(4)

"Under § 1920(4), costs for exemplification are taxable as costs, and this includes graphic

support and demonstratives and exhibits for trial."  *Morales v. Safeway Inc.*, 4:17-CV-825, 2020

WL 1190126, at *2 (E.D. Tex. March 12, 2020).  LNC seeks recovery of the costs of providing

the Court with two copies of its trial exhibits, the cost of a copy of the Trial Transcript, the cost of

exemplification of certain patent-related documents on LNC's Exhibit List, the costs associated

with the preparation of trial graphics and demonstratives, and the costs associated with LNC's

courtroom trial technician in the total amount of $181,068.19.  Morse Aff., ¶¶24-28, Ex. D thru D-

4.

### a.    Cost of Making Copies of Trial Exhibits

During the August 11, 2021 telephonic pretrial conference, the Court "directed each party to provide two paper copies of its exhibits to chambers no later that Friday, August 20, 2021." [Doc. No. 800].  Complying with the Court's request, the cost of printing two copies of LNC's trial exhibits totaled $5,504.33 with the copying services being provided by Southern Imaging Solutions, Inc. ("Southern Imaging").  Morse Aff. ¶ 24 and Ex. D.  The cost of providing two copies of LNC's trial exhibits at the Court's direction are properly recoverable under § 1920(4) as necessarily obtained for use in the case.  *Innovation Sciences, LLC v. Amazon.com, Inc.*, 4:18-CV-474, 2021 WL 2075676, at *3 (E.D. Tex. May 24, 2021) (Awarding costs of copying two sets of exhibits for trial per direction in the court's scheduling order).

### b.    Cost of LNC's Copy of the Trial Transcript

Recognized factors for determining whether a trial transcript was necessary for use in the case includes "whether the case was tried to the court or before a jury" and "whether proposed findings of fact were required."  *Two-Way Media, LLC v. AT&T Serv., Inc.*, SA-09-CA-00476, 2013 WL 12090356, at *2 (W.D. Tex. Nov. 22, 2013).  At the conclusion of the Bench Trial, the Court stated that it was "going to order a transcript." Dkt. No. 837, at p.1732, l. 9.  The Court also instructed the parties to "update your findings of fact, conclusions of law with the pages in the transcript where it says that."  *Id.* at ll. 13-14.  LNC ordered and paid for a copy of the trial transcript from the Court Reporter who charged a total fee of $6,285.30.  Morse Aff., ¶ 25 and Ex. D-1.  The cost of a copy of the trial transcript was necessarily obtained for use in the case in order for LNC to comply with the Court's request that it update its proposed findings of fact and conclusions of law to reflect what occurred during the Bench Trial.  *See* LNC's Post-Trial Proposed Findings of Fact and Conclusions of Law With Record Citations (Dkt. No. 847).

### c. Exemplification of USPTO Documents Listed on LNC's Trial Exhibit List

LNC incurred exemplification costs is obtaining certified copies of patent documents from the USPTO in order to head off any authentication issues that LNC anticipated might be raised by EZPZ during the Bench Trial.   Copies of patents or papers belonging to the USPTO and authenticated under the seal of the USPTO "shall be admissible in evidence with the same effect as the originals."  28 U.S.C. § 1744.  For many of LNC's trial exhibits representing patents or patent prosecution histories, authenticated copies we obtained from the USPTO and available in the courtroom in the event of an authentication objection raised by EZPZ.  These certified copies were necessarily obtained for use in the case.  The total cost of obtaining certified copies of patents and prosecution histories from the USPTO for potential use at the Bench Trial is $1,080.00.  Morse Aff., ¶ 26 and Ex. D-2.

### d. Cost of Trial Graphics

LNC seeks recovery of the costs of the preparation of trial graphics, trial boards and other demonstrative exhibits for trial in the total amount of $43,819.20.  Other Federal district courts, sitting within the Fifth Circuit, have held that costs for exemplification under § 1920(4) "includes graphics support and demonstratives and exhibits for trial."  *Morales v. Safeway Inc.,* 4:17-CV-825, 2020 WL 1190126, at *2 (E.D. Tex. March 12, 2020.).  *See Innovation Sciences, LLC v. Amazon.com, Inc.*, 4:18-CV-474, 2021 WL 2075676 (E.D. Tex. May 24, 2021) (awarding $76,137,08, under § 1920(4), for trial graphics) and *Eolas Tech. Inc. v. Adobe Sys., Inc.*, 891 F. Supp.2d 803, 808 (E.D. Tex. 2021) (awarding costs of demonstratives and trial exhibits).  The costs of employing trial technology, including trial graphics, are routinely taxed in complicated cases where they contribute to the presentation of evidence in a streamlined, orderly and efficient manner.  *See e.g. Versata Software, Inc. v. SAP Am., Inc.*, 2:07-CV-153, 2011 WL 4436283, at *2

(E.D. Tax. Sept. 23, 2011) and *Finisar Corp. v. DirecTV Group, Inc.*, 1:05-cv-264, 2006 WL 2699732, at *2 (E.D. Tex. Aug. 4, 2006).

LNC retained Courtroom Graphics & Animation, Inc. ("Courtroom Graphics") to provide specific trial graphics that were necessarily obtained for use during the Bench Trial. Courtroom Graphics charged $43,162.50 for providing trial graphics. The trial graphics distilled complex information and concepts into comprehensible electronic demonstrative exhibits illustrating key points from the evidence, various timelines, and key events taking place in the USPTO for use during the Bench Trial. The specific trial graphics prepared for LNC are identified by title in Courtroom Graphics' invoice. Morse Aff., ¶ 27 and Ex. D-3. The trial graphics created by Courtroom Graphics were used during LNC's opening argument, in the examination and cross-examination of witnesses at trial, and during closing argument. The fact that some of LNC's trial graphics were not used "in no way affects whether those costs are taxable. No party is required to be clairvoyant for its costs to be necessary and reasonable." *Core Wireless Licensing S.a.r.l. v. LG Elecs.; Inc.*, 2:14-cv-912, 2020 WL 1557492, at *4 (E.D. Tex. Apr. 1, 2020) (awarding $55,222.50 in graphics and exemplification costs). In addition, LNC also paid $656.70 to Southern Imaging for 3 Color Trial Board representing demonstrative exhibits available for use at trial. Morse Aff., ¶ 27 and Ex. D-3.

The costs associated with the preparation of trial graphics and demonstrative exhibits are correct and were necessarily incurred for use in this case. The services for which the fees LNC was charged by Courtroom Graphics and Southern Imaging were actually and necessarily performed. *Id.*

### e.    Cost of LNC's Courtroom Technician

LNC also seeks the costs of its courtroom technician, Ms. Stephanie L. Franks, of Trial

Concepts, in the amount of $124,379.36.  LNC's use of Ms. Franks in preparation for and during the Bench Trial permitted LNC to take advantage of all of the capabilities of the electronic courtroom to present its case in a streamlined, orderly and efficient manner within the time allotted by the Court.  Morse Aff., ¶ 28, and Ex. D-4.

In *Pioneer Natural Res. USA, Inc. v. Diamond Offshore Drilling, Inc.,* No. CIV.A. 05-0224, 2009 WL 4020563, at * 5 (E.D. La. Nov. 17, 2009), the District Court for the Eastern District of Louisiana, citing the Fifth Circuit's decision in *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 760 F.2d 613, 615 (5th Cir. 1985), overruled the Clerk and taxed $68,338.04 for the cost of a video technician as "'exemplification' under Section 1920(4)."  The court noted that "[g]iven the complexity and difficulty of the case, the Court does not see how the proceeding could have been conducted as efficiently in any other manner."  Similarly, in *Contogouris v. WestPac Res., LLC*, CV-10-4609, 2012 WL 13001308, at *3 (E.D. La. Oct. 15, 2012), the district court for the Eastern District of Louisiana affirmed the Clerk's award of exemplification costs under § 1920(4) for the hiring and use of "a trial technician who prepared all exhibits for use at trial by enabling those exhibits to be instantly enlarged and presented to jurors on their individual monitors and through the Court's projection screen."

Significantly, in *Contogouris,* the district court acknowledged that other Federal District Courts sitting within the Fifth Circuit have awarded costs for use of a trial technician.  *See e.g. SynQor, Inc. v. Artesyn Tech. Inc.*, 07-497, 2011 WL 4591893 (E.D. Tex. Sept. 30, 2011) (awarding $55,610.44 for the prevailing party's use of audio and video professional services); *Versata Software Inc. v. SAP Am. Inc.*, 07-153, 2011 WL 4436283 (E.D. Tex. Sept. 23, 2011) (awarding $90,090.00 for the prevailing party's use of audio and video professional services); and *Finstar Corp. v. DirecTV Grp., Inc.*, 05-264, 2006 WL 2699732 (E.D. Tex. Aug. 4, 2006)

(awarding prevailing party $18,255.00 for use of a trial technician).  "[M]any courts have considered that in highly technical cases, as the case at hand, trial technology is not only reasonable but necessary."  *Two-Way Media, LLC v. AT&T Serv., Inc.*, SA-09-CA-00476, 2013 WL 12090356, at *6 (W.D. Tex. Nov. 22, 2013) (awarding $60,659.56 "for graphic and visual consultation and equipment used in trial.")  More recently, a district court awarded $55,222.50 in exemplification costs for the prevailing party's graphics consultant in *Core Wireless Licensing S.a.r.L. v. LG Electronics, Inc.*, 2:14-CV-00912, 2020 WL 1557492, at *4 (E.D. Tex. April 1, 2020).  *See also In Re Ridgeway*, 16-10643, 2018 WL 3630156, at *22 (E.D. La. July 27, 2018) (upholding proof of claim to an award of a portion of costs of having vendor prepare and display trial exhibits in a separate federal lawsuit).

The Bench Trial was conducted in the Court's electronic courtroom.  The Court tried LNC's inequitable conduct, egregious misconduct and unclean hands claims presenting complex issues of fact and law.  The Bench Trial involved a large number of exhibits, displayed electronically, many of which made it into the trial record, the extensive use of graphics and video deposition testimony, and numerous witnesses.  The Court, moreover, had given each party 28 hours within which to present their respective cases with an additional 3 hours for opening and closing statements.  Dkt. No. 800.  Given the complexity of the issues, the number of witnesses, both live and by deposition, and the number of exhibits, a premium was placed on the economical and efficient presentation of the evidence to comply with the Court-ordered time limits.

Much of the trial testimony was presented by video for numerous witnesses who resided beyond the subpoena power of the Court.  *See* Section II.B.2.a., *supra*.  Ms. Frank prepared and edited all of the video testimony presented by LNC during the trial for the deposition testimony designated by LNC and counter-designated by EZPZ as well as all of the video clips that were

played in connection with the impeachment of EZPZ's witnesses.  *See* Doc. Nos. 842 & 843 (supplementing trial record with untranscribed video and audio clips played during trial).  This work had to be done in advance of trial as the parties continued to exchange designations and counter-designations of deposition testimony to be used at trial.  During trial, Ms. Franks further revised, at EZPZ's request, the video testimony of Messrs. Chua and Grayson for the Court's viewing outside the courtroom.

Ms. Frank's made it possible for LNC to make full use of the Court's electronic courtroom for the presentation of video depositions, the display of exhibits during testimony, the presentation of video clips for impeachment purposes during LNC's cross-examination of witnesses and running the PowerPoint presentations used by LNC's trial counsel in her opening and closing argument.  During the course of witness testimony, Ms. Frank's provided "on-the-fly" highlighting of portions of the electronic exhibits as witnesses were being questioned on specific portions of the exhibits.  At various times, Ms. Franks displayed electronic exhibits that EZPZ's counsel was otherwise unable to display for the witness and the Court.  Over 8 days of trial, LNC's presentation of evidence went flawlessly and provided a streamlined, orderly, efficient and economical use of the electronic courtroom.

Under the circumstances presented in this case, LNC's use of Ms. Frank's services were both necessary and reasonable in presenting this complex case and were "necessarily obtained for use in the case."  28 U.S.C. ¶ 1920(4).  The fees charged by Ms. Franks are correct, were necessarily incurred in this case and the services for which LNC was charged were actually and necessarily performed as evident throughout the dight day Bench Trial.  Morse Aff., ¶ 28.

### 5.    LNC is Entitled to Recover its Portion of the Fees of The Court Appointed Technical Expert – 28 U.S.C. § 1920(6).

Allowable costs under § 1920(6) includes recovery of the portion of the court-ordered

"[c]ompensation of court appointed experts" paid by LNC throughout this case.  By Order dated April 10, 2019, the Court appointed Scott Woloson to serve as the Court's technical advisor.  Dkt. No. 273.  The Court, citing *Two Appeals (San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956 (1st Cir. 1995), stated that it "taxes such costs to the parties pursuant to its inherent power to do so in the interest of promoting the efficient conduct of this complex litigation."  Each party was directed to pay one-half of Mr. Woloson's compensation.  As a cost specifically taxed to the parties, LNC is entitled to recovery that portion of the technical advisor fees under § 1920(6).  In an analogous situation, "[t]he taxing of the cost of a special master … is clearly withing a district court's discretion and no factual showing of necessity is required." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 713 F.2d 128, 134 (5th Cir. 1983).

The total portion of Mr. Woloson's fees paid by LNC during the course of this case totals $113,834.50.  Morse Aff., ¶ 29.  Mr. Woloson's fee statements and related Court Orders requiring the parties to pay their respective portions of Mr. Woloson's fees are publicly available through the Court's CM/ECF system.  *See* Dkt. Nos. 464, 464-1, 492, 492-1, 532, 532-1, 655, 655-1, 729, 729-1, 803, 803-1, 829, 829-1, 854, and 854-1.  These fees were taxed costs necessarily incurred in this case for services actually and necessarily performed by Mr. Woloson and paid by LNC per the Court's Orders.  Morse Aff., ¶ 29.

## III.    CONCLUSION

Under controlling Federal Circuit precedent, LNC is the prevailing party in this case and is entitled to the taxation of the full amount of its costs under Rule 54(d)(1) in its favor and against EZPZ in the amount of $399,712.28.

Dated:  January 20, 2022.

Respectfully submitted,

 /s/      *Carol Welborn Reisman*
Carol W. Reisman (La. Bar No. 20410)
George Denegre, Jr. (La Bar No. 0837)
Carey L. Menasco (La. Bar No. 28131)
Melanie N. Derefinko (La. Bar No. 37658)
**LISKOW & LEWIS, APLC**
701 Poydras Street, Suite 5000
New Orleans, LA  70139
Telephone:        (504) 581-7979
Facsimile:         (504) 556-4108
Email: cwreisman@liskow.com
            gdenegre@liskow.com
            clmenasco@liskow.com
            mderefinko@liskow.com

Hartwell P. Morse, III (La. Bar No. 38626)
Robert M. Chiaviello, Jr. (La. Bar No. 37370)
**Luv N' Care, Ltd.**
3030 Aurora Street, 2nd Floor
Monroe, LA  71201
Telephone:        (318) 338-3603
Facsimile:         (318) 388-5892
Email:  hartm@nuby.com
            bobc@nuby.com

**Attorneys for Luv n' care, Ltd. and
Nouri E. Hakim**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 20, 2020, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

   /s/    *Carol Welborn Reisman*    
