**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**LUV N' CARE, LTD.,**

    *Plaintiff,*

*v.*

**LAURAIN, et al.,**

    *Defendants.*

Civil Action No.: 3:16-cv-00777

Honorable Judge Terry A. Doughty

Magistrate Judge Joseph H. L. Perez-Montes

**<u>DEFENDANT EAZY-PZ, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR
ATTORNEY'S FEES PURSUANT TO LA.REV.STAT. § 51:1409
AND 15 U.S.C. § 1117(A)</u>**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF CASES AND AUTHORITIES ............................................................................... iv

I.  INTRODUCTION ......................................................................................................... 1

II.  BACKGROUND AND PROCEDURAL HISTORY ..................................................... 2

III.  ARGUMENT ................................................................................................................. 6

    a.  Legal Standard For Award of Attorney's Fees Under LUTPA ............................ 6

    b.  The LUTPA Claims Defined ................................................................................ 8

    c.  LNC's LUTPA and Lanham Act Claims Were
    Groundless And Without Merit. ........................................................................... 8

        1.  The Court's Ruling ................................................................................... 8

        2.  LNC Knew It Had No Evidence of Damages for the
        Alleged Actions of EZPZ at the Time it Brought the Lawsuit
        and During the Prosecution of the Lawsuit ............................................. 8

        3.  LNC Took Vexatious Positions With
        Respect to its LUTPA Claim ................................................................. 10

    d.  LNC's LUTPA Claim was Demonstrably Brought In Bad Faith and for the Purposes of
    Harassment .......................................................................................................... 10

        1.  LNC sued EZPZ and Lindsey Laurain "to shut her up" ........................ 10

        2.  The Lawsuit Was Demonstrably Not About LUTPA ............................. 11

        3.  The LUTPA and Lanham Act Claims Were Contrived .......................... 13

        4.  LNC's Words and Actions Directed to Ms. Laurain,
        EZPZ's Principal also Evidence LNC's Harassment .............................. 16

IV.  ARGUMENT: EZPZ IS ENTITLED TO AN AWARD OF
    ATTORNEY'S FEES UNDER THE LANHAM ACT ....................................................... 18

V.  EZPZ'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE ................................. 20

    1.  EZPZ is entitled to its Attorney's Fees for Claims "Inextricably Interwoven"

with the LUPTA and Lanham Act Claims. ................................................................... 20

2.   The Attorney's Fees Requested Are Reasonable. ........................................................... 22

    1.   The number of hours were reasonably expended ..................................... 23

    2.   EZPZ Apportions the Hours and Claims Only a
    Portion of Its Attorney's Fees ................................................................... 25

    3.   The hourly rates are reasonable. ............................................................... 28

    4.   Calculation of the Award. ......................................................................... 29

VI.   CONCLUSION .......................................................................................................................... 30

## TABLE OF CASES AND AUTHORITIES

*AAMCO Transmissions, Inc. v. Graham*, 1990 WL 118050 (E.D. Pa. 1990) ................... 20

*Allen v. Lowe*, No. 14-204, 2015 U.S. Dist. LEXIS 28643,
(E.D. La. Mar. 9, 2015)......................................................................................10

*Baker v. DeShong*, 821 F.3d 6205 (5th Cir. 2016) ........................................19

*Baker v. Urban Outfitters, Inc.*, 431 F.Supp.2d 351 (S.D.N.Y. 2006)
*aff'd*, 249 Fed.App'x 845 (2d. Cir. 2007)...............................................7

*Ballero v. 727 Inc.*, 744 F. App'x 871 (5th Cir. 2018) ...................................19

*Beauregard Par. Sch. Bd. v. Honeywell, Inc.*, No. 2:05 CV 1388,
2008 U.S. Dist. LEXIS 66954 (W.D. La. Aug. 26, 2008)..................................7

*Blum v. Stenson*, 465 U.S. 886 (1984) ..............................................................28

*Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*,
2020 WL 375596 E.D.La. 2020) .......................................................................29

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ...........................................24

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ............................................24

*Citizens Bank v. Tolani*, 2015 WL 5334153 (W.D. La. 2015) .........................22

*Chevron U.S.A., Inc. v. Aker Maritime, Inc.,* 389 F.3d 497 (5th Cir. 2012))....................22

*Contractual Obligation Productions, LLC v. AMC Networks, Inc.*,
546 F.Supp.2d 120 (S.D.N.Y. 2008).................................................................21

*Degussa Admixtures, Inc. v. Burnett*, 277 Fed.Appx. 530 (6th Cir. 2008)........................15, 16

*Frank's Casing Crew & Rental Tools, Inc. v. Sipos*, 6 So. 3d 298, 303
(La. App. 3 Cir 02/18/09) *writ of cert den'd*
*Frank's Casing Crew & Rental Tools, Inc. v. Sipos*,
8 So. 3d 585, 2009 La. LEXIS 1520 (La., 2009)...............................................7

*Gay Officers Action League v. Puerto Rico*, 247 F.3d 288 (1st Cir. 2001)......................24, 25

*Good Gov't v. Coalition for Better Gov't*, 919 F.3d 291
(5th Cir. 2019)). ..............................................................................................18, 25

*Haygood v. Begue,* No. 13-0335, 2021 U.S. Dist. LEXIS 156614,
 (W.D. La. Aug. 17, 2021) ................................................................................22

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) .................................................22, 23

*Indus. Print Techs., LLC v. Cenveo, Inc.,* No. 3:15-md-02614-M,
2020 U.S. Dist. LEXIS 156538 (N.D. Tex. June 12, 2020) ..............................25

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) .......................... 22, 23

*League of United Latin American Citizens No. 4552 v. Roscoe Indep. Sch. Dist.,*
119 F.3d 1228 (5th Cir. 1997) ...........................................................................24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 1182 (2014) .......................................................................................20

*Lipsett v. Blanco*, 975 F.2d 934 (1st Cir. 1992) ................................................24

*Louisiana Power and Light Company v. Kellstrom,*
50 F.3d 319 (5th Cir. 1995) ...............................................................................28

*Meineke Discount Muffler v. Jaynes,* 999 F.2d 120 (5th Cir. 1993) .................................22

*Mennen Co. v. Gillette Co.*, 565 F.Supp. 648 (S.D.N.Y. 1983,
*aff'd mem.*, 742 F.2d 1437 (2d. Cir. 1984) ....................................................19, 20

*Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,*
626 F.3d 958 (7th Cir. 2010) .............................................................................21

*Parasol Flavors LLC v. Snowizard, Inc.,* 2010 WL 745004 (E.D.La. 2010). ....................9

*Penn. v. Del. Valley Citizens Council for Clean Air,*
478 U.S. 546 (1986) .........................................................................................23

*Regeneron Pharmaceuticals, Inc. v. Merus N.V.,*
2018 WL 3425013 (S.D.N.Y. 2018) ...................................................................28

*Roor Int'l BV v. Stinky's Smoke Shop, LLC*, Civil Action No.
4:18-cv-735-KPJ, 2021 U.S. Dist. LEXIS 226335,
 (E.D. Tex. Nov. 24, 2021) ................................................................................18

*Samuels v. Fox*, 2000 WL 1059822 (E.D.La. 2000) ...........................................7

*Sapienza v. Trahan,* 2019 WL 1246540 (W.D. La. 2019)....................................................7

*Seven-Up Co. v. Coca-Cola Co*., 86 F.3d 1379 (5th Cir. 1996). ........................................19

*S. Snow Mfg. Co. v. SnowWizard Holdings, Inc*.,
829 F.Supp.2d 437 (E.D.La. 2011)................................................................................19, 20

*Tiffany and Company v. Costco Wholesale Corp.,*
2019 WL 120765 (S.D.N.Y. 2019)........................................................................................21

*Walker v. Hixson Autoplex of Monroe, LLC*,
245 So.3d. 1088 (La.App. 2 Cir. 2017) ...............................................................................6

*Wells Fargo Equipment Finance, Inc. v. Beaver Const., LLC*,
2011 WL 5525999 (W.D.La. 2011)...................................................................................... 22

*Yankee Candle Co., Inc. v. Bridgewater Candle Co*., LLC,
140 F.Supp.2d 111 (D.Mass 2001), *judgment aff'd,*
259 F.3d 25 (1st Cir. 2001)..................................................................................................21

*Zaman v. Kelly Servs.*, No. 15-cv-04601-HRL, 2017 U.S. Dist. LEXIS 82406,
 (N.D. Cal. May 30, 2017). .................................................................................................25

## I.   <u>INTRODUCTION</u>

Despite Luv N' Care ("LNC")'s best efforts to downplay and minimize the effect of LUTPA and Lanham Act claims before this Court, it cannot. The LUTPA and Lanham Act claims are the claims on which the entire litigation is based. It is the reason that an 8-day bench trial was held in this matter. And, it is the claim for which LNC continually threatened Eazy-PZ, LLC ("EZPZ") that it was seeking damages of at least $12 million dollars, with those damages increasing as the litigation progressed.[1]

LNC created jurisdiction in this Court by assertion of its LUTPA and Lanham Act claims. LNC first claimed reputational harm and loss sales for an alleged boycott campaign. Once it was established that LNC could not produce any evidence to support these so-called damages (a fact known to LNC *prior* to initiating the lawsuit), LNC attempted to morph its LUTPA claim to something new. LNC next contended that its LUTPA claim was based on EZPZ's alleged bad faith assertion and enforcement of patent rights which was inextricably intertwined with the defense of unenforceability of the patent based on inequitable conduct. LNC posits in the Pre-Trial Order that because the Court had already entered an order invalidating the U.S. Patent No. 9,462,903 ('903 Patent), LNC's assertion that "EZPZ [committed] inequitable conduct and egregious misconduct before the USPTO render[ing] the '903 Patent unenforceable, *is moot except to the extent that it supports LNC's LUTPA claim involving the bad faith assertion and enforcement of the '903 Patent . . .*" [Doc. No. 773 at 5](emphasis added).

LNC's insistence on moving forward with the unpleaded LUTPA allegation of EZPZ's

---

[1] LNC counsel sent an email to EZPZ's counsel on May 19, 2020, stating that "LNC still has a LUTPA claim that will be pursued in front of a jury and LNC will seek trebling of its attorneys' fees incurred" and that "last [she] checked, LNC's outside counsel's attorneys' fees had surpassed $4 million" further stating that "[o]ur fees will only continue to go up." [Exhibit 1]; *see also*, [Doc. No. 594-1 at 7, Doc. No. 773 at 20-21, ¶¶17, 18].

alleged bad faith assertion of patent rights is the reason that the trial schedule was disrupted just 1 month before the originally scheduled trial date. [Doc. No. 767]. That it, LNC's LUTPA claim is the reason that the inequitable conduct trial was scheduled at all. As the Court held, "[t]he Court will conduct a bench trial on inequitable conduct prior the jury trial. At the bench trial, LNC has the burden of proving that the patentee committed inequitable conduct in obtaining the '903 Patent. If LNC is successful in proving inequitable conduct, then EZPZ will be preclude[ed] from arguing that it acted in good faith in asserting the '903 Patent during the jury trial. If LNC is successful in proving inequitable conduct, then LNC's claim that EZPZ acted in bad faith by asserting the '903 Patent will be preempted under Federal patent law." [Doc. No. 783 at 6-7](internal citations omitted).

EZPZ respectfully moves the Court pursuant to La.Rev.Stat. § 51:1409 and 15 U.S.C. § 1117(a) to award EZPZ attorney's fees. EZPZ is entitled to recover the attorney's fees it has incurred defending against LNC's groundless claims under LUTPA that were blatantly done for purposes of bad faith and harassment. LNC's internal emails and actions can lead to no other conclusion. EZPZ is further entitled to its attorney's fees under Lanham Act for this case being "exceptional" for many of the same reasons shown under the LUTPA analysis.

As a result, EZPZ is entitled to recover the $1,095,809 in attorney's fees incurred in defending against and defeating LNC's LUTPA and Lanham Act claims and all other inextricably intertwined claims. The fees sought have been apportioned and are reasonable and fair, both in the total sought and the hourly rates charged by EZPZ's attorneys, given the claims alleged in this action, the potential exposure, and the complexity of the issues presented.

## II.      BACKGROUND AND PROCEDURAL HISTORY

LNC initiated this action on June 3, 2016 asserting four claims of false advertising, false representation, and unfair competition under the Lanham Act, 14 U.S.C. § 1051, *et. seq.* and the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. 15:1401, *et. seq*. ("LUTPA") against EZPZ. [Doc. No. 001]. LNC also sought a declaratory judgment that LNC does not directly or indirectly infringe the '327 Design Patent. *Id.*

EZPZ obtained the '903 Patent on October 11, 2016. [Trial Exhibit 935]. Thereafter, LNC filed its First Amended Complaint for False Advertising, False Representation, Unfair Competition and Declaratory Judgment on October 28, 2016, the operating complaint. [Doc. No. 021]. As part of LNC's LUTPA claims LNC alleged that EZPZ "knowingly interfered with plaintiff's [LNC's] existing and prospective contracts and business relationships with consumers, customers, and retailers in an effort to induce or have induced consumers, customers, and retailers not to purchase plaintiff's [LNC's] feeding mats." [Doc. No. 021 ¶111-112]. LNC claimed that it suffered "lost sales and damage to its reputation" as a result of EZPZ's violations of LUTPA and the Lanham Act. *Id*. at ¶¶ 76, 99, and 116.

Throughout the litigation EZPZ has repeatedly highlighted LNC's failure to identify any evidence of: (1) EZPZ interfering with LNC's relationships or contracts with retailers, and (2) damages (lost sales or damage to reputation) under the Lanham Act or LUTPA. Time after time, LNC evaded providing this identification. Specifically, EZPZ propounded written discovery upon LNC asking LNC to identify damages [Doc. No. 233-5], asked LNC's representatives to provide such evidence during depositions [Doc. No. 233, 237, and 240], and raised the issue in motions for summary judgment (lack of evidence and that attorney's fees cannot be damages) [Doc. No. 338]. Each time LNC was unable to identify any evidence and instead admitted that it

had no evidence to prove that EZPZ had threatened/interfered with its retailers or to prove damages it allegedly suffered in lost sales. Thus, it has been clear since the early stages of this case that essential elements of LNC's claims under the Lanham Act and LUTPA have been fatally absent. The evidence also shows that LNC knew it did not have damages *prior* to filing against EZPZ, as further explained below. Despite knowing it had no evidence of damages or interference with retailers, LNC persisted in asserting these claims against EZPZ in bad faith.

Because it had no evidence to support its allegations that EZPZ threated its retailers LNC ultimately withdrew the allegation but continued to proceed with prosecuting the LUTPA and Lanham Act claims. [Doc. Nos. 233-5, 240 at 7].

On July 21, 2021, the Court entered an Order confirming that LNC could not go forward with its unpleaded LUTPA claims related to EZPZ's alleged bad faith assertion and enforcement of patent rights, specifically a so-called "cease and desist" letter sent to LNC and EZPZ's litigation conduct. [Doc. No. 761 at 2-3]. This was again confirmed by the Court in its Ruling on Motions in Limine. [Doc. No. 784 at 14-15]

On June 30, 2021 the parties submitted a Proposed Pretrial Order setting forth contested issues of law. [Doc. No. 748]. In the Proposed Pretrial Order EZPZ again raised the issue that LNC cannot pursue a claim for damages under the Lanham Act and/or LUTPA violations due to LNC's failure to timely disclose damages claimed. [Doc. No. 748 at 48]. In addition, EZPZ again raised the issue in its pre-trial memorandum that attorney's fees cannot be damages. [Doc. No. 754 at 14-15].

On August 4, 2021, the Court issued a Memorandum Order. In it, the Court held, "[t]he Court will conduct a bench trial on inequitable conduct prior the jury trial. At the bench trial,

LNC has the burden of proving that the patentee committed inequitable conduct in obtaining the '903 Patent. If LNC is successful in proving inequitable conduct, then EZPZ will be preclude[ed] from arguing that it acted in good faith in asserting the '903 Patent during the jury trial. If LNC is successful in proving inequitable conduct, then LNC's claim that EZPZ acted in bad faith by asserting the '903 Patent will be preempted under Federal patent law." [Doc. No. 783 at 6-7](internal citations omitted)

The Court also held in that Memorandum Order that LNC cannot prove damages for the LUTPA claim or the Lanham Act claim, and therefore, LNC could not pursue claims for damages under the Lanham Act or LUTPA. [Doc. No. 783 at 4]. The Court also explicitly held that LNC could not seek injunction relief or nominal damages under LUTPA. *Id*. The Court had already previously held that the jury would not hear LNC's alleged damages of attorney's fees. [Doc. No. 761]. At this point, none of LNC's theories under LUTPA were still viable.

On August 11, 2021 however, LNC *still* insisted that the Court go forward with the inequitable conduct trial because of its remaining Lanham Act claim [Doc. No. 799 at 1, fn 1].[2] LNC took this position notwithstanding that it had earlier acknowledged that the so-called bad faith assertion and enforcement of patent rights was *only* was relevant to its LUTPA claim (not its Lanham Act claim). [Doc. No. 773 at 5](LNC's assertions that "EZPZ [committed] inequitable conduct and egregious misconduct before the USPTO render[ing] the '903 Patent unenforceable, *is moot except to the extent that it supports LNC's LUTPA claim involving the bad faith assertion and enforcement of the '903 Patent . . .*")(emphasis added).

An inequitable conduct bench trial was held in this matter August 25, 2021 through

---

[2] EZPZ's position that even LNC's Lanham Act claims for injunction were precluded was submitted to this Court [Doc. No. 795].

September 3, 2021 [Doc. Nos. 817-820, 822-825].

On December 21, 2021, the Court issued Findings of Fact and Conclusions of Law [Doc. No. 851] and a Final Judgment [Doc No. 852] finding that LNC did not meet its burden of proving that the '903 Patent should be rendered unenforceable due to inequitable conduct under any of its theories. In addition, in its Final Judgment the Court ordered that "LNC's only remaining claim for injunctive relief under the Lanham Act is dismissed without prejudice." [Doc. 852 at 1].

### III.  ARGUMENT: EZPZ IS ENTITLED TO AN AWARD OF FEES UNDER LUTPA

#### A.  Legal Standard For Award of Attorney's Fees Under LUTPA

LUTPA provides:

§ 1409. Private actions

A.  Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use of employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an actin individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. **Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.**

("Section 1409")(emphasis added).

The court has discretion in determining whether to award attorney's fees under LUTPA. *Walker v. Hixson Autoplex of Monroe, LLC*, 245 So.3d. 1088 (La.App. 2 Cir. 2017).  "[T]o recover under this section, the action must be found by the court to be both groundless and

EITHER (1) brought in bad faith, OR (2) for purposes of harassment." *Samuels v. Fox*, 2000 WL 1059822, *2 (E.D.La. 2000); *see also, Baker v. Urban Outfitters, Inc.*, 431 F.Supp.2d 351, 357 (S.D.N.Y. 2006), *aff'd,* 249 Fed.App'x 845 (2d. Cir. 2007)("[I]mproper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees."); *Sapienza v. Trahan,* 2019 WL 1246540, *15 (W.D. La. 2019)(interpreting similar provision under Louisiana's Uniform Trade Secrets Act, La.R.S. 51:1434)("[a]dvocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto." ).

"The defendant must demonstrate by a preponderance of the evidence that the suit was brought in bad faith or to harass to recover attorney's fees." *Beauregard Par. Sch. Bd. v. Honeywell, Inc.*, No. 2:05 CV 1388, 2008 U.S. Dist. LEXIS 66954, at *2 (W.D. La. Aug. 26, 2008).

Attorneys' fees have been awarded to defendants even when plaintiff's claims may have some merit. In *Frank's Casing Crew & Rental Tools, Inc. v. Sipos*, 6 So. 3d 298, 303 ( La. App. 3 Cir 02/18/09) *writ of cert den'd Frank's Casing Crew & Rental Tools, Inc. v. Sipos*, 8 So. 3d 585, 2009 La. LEXIS 1520 (La., 2009), attorneys' fees were awarded under Section 1409 despite the trial court earlier granting a partial summary judgment in favor of the plaintiff-employer. This did not preclude the jury from finding that the plaintiff-employer brought unfair trade practices in claims in bad faith, warranting recovery of attorneys' fees by the defendant. The appellate court held that "[t]he totality of the evidence shows that [plaintiff], a multimillion dollar company, intended to put [defendant] out of business."

### B.     The LUTPA Claims Defined

There are four categories of claims that LNC claimed under LUTPA during the course of the litigation; LNC attempted to morph the claim though the course of litigation. LNC's four sets of activities alleged to be an unfair and deceptive trade practice: (a) EZPZ's alleged social media smear and boycott campaign  [Doc. No. 573 at 1]; (b) EZPZ's alleged threats to retailers "if those retailers purchase feeding mats from [LNC]" [Doc. No. 001, ¶¶ 49-51, 97-100 (among other paragraphs); (c) EZPZ's alleged wrongful activities in sending a cease and desist letter to LNC  [Doc. No. 573 at 1]; and (d) EZPZ's alleged wrongful activity in bringing and maintaining a lawsuit. [Doc. No. 573 at 1].

Category (a) could not be pursued by LNC for failure to prove a necessary element of the claim. [Doc. No. 783 at 4] Category (b) was withdrawn by LNC, as further discussed below. It was held that categories (c) and (d) were not properly pleaded and could not be asserted. [Doc. No. 761, Doc. No. 784 at 15].

### C.     LNC's LUTPA and Lanham Act Claims Were Groundless And Without Merit.

#### 1.  The Court's Ruling

The Court found "LNC cannot pursue a claim for damages under . . . LUTPA" [Doc. No. 783 at 4] nor does LUTPA provide for injunctive relief or nominal damages. *Id*. LNC admittedly had no evidence of damages. *Id*:

#### 2.  LNC Knew It Had No Evidence of Damages for the Alleged Actions of EZPZ at the Time it Brought the Lawsuit and During the Prosecution of the Lawsuit

LUTPA provides for a private right action as follows:

*Any person who suffers any ascertainable loss of money or movable property corporeal*

8

*or incorporeal,* as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually, but not in a representative capacity to recover actual damages……

La. R.S. § 51:1409 (emphasis added).

Therefore, proof of an ascertainable loss is an essential element of a LUTPA claim.

*Parasol Flavors LLC v. Snowizard, Inc.,* 2010 WL 745004 (E.D.La. 2010).

During the pendency of this case LNC conceded it never had any evidence of an ascertainable loss. Specifically, the record demonstrates the following evidence that LNC *never* had any proof of ascertainable loss. This is shown as follows:

- As discussed above, prior to filing the claim, LNC knew it had "zero chance" of receiving any evidence of lost sales from retailers/retail buyers. [Exhibit 2].

- LNC never identified a numerical amount of damages that it alleged it suffered in lost sales. Instead, throughout the action, LNC merely cited to a few posts on social media by various individuals that are not witnesses in this case and are people that LNC did not attempt to contact.

- Eddie Hakim could not offer any testimony about lost sales in May 2018. [Doc. No. 188-4, E. Hakim Depo. Tr. 129:9 – 130:20, 277:7-12, 281:3-22]. Mr. Hakim states among other things "[c]an I prove it? Probably not." *Id.* 130:6. "[c]an I quantify the sales [I] lost? Probably not." *Id.* at 130:13-14. And, sitting in the deposition he "cannot" "identify a specific customer that did not buy an LNC mat as a result of any post on social media." *Id* at 130:15-18.

- During LNC's 30(b)(6) deposition in January 2019, LNC's corporate representative testified that LNC had **not** suffered any ascertainable loss. Specifically, he testified that EZPZ's alleged social media campaign did not impact orders from any of LNC's customers or retailers in 2017 or 2018. [Doc. No. 38-6, 30(b)(6) Depo. Tr. 62:9-20.]

- Eddie Hakim could still not offer any testimony about lost sales in June 2019 after expert disclosures in this matter. [Doc. No. 338-3, E. Hakim Depo. Tr. 138:5-p.139:2].

- LNC's experts did not offer any opinions about lost sales or provide any sales figures or a computation of damages demonstrating a loss of sales or any other

ascertainable loss.

- Initially LNC made claims about reputational harm that were unsupported by its expert. [Doc. No. 652]. LNC pressed on with this claim—even in the absence of requisite expert testimony—until the Court entered its Order on motions in limine, allowing evidence of Mr. Hakim's reputation to be put on in response, including Mr. Hakim's boycott of the NFL and Mr. Hakim's referring to the mayor of Monroe as a "animal" [Doc. No. 716]. LNC then withdrew the claim of reputational harm in the next draft of the Pre-Trial Order, which was entered by this Court. [Doc. No. 773].

- LNC stubbornly, however, continued to maintain all the way through the Pre-trial Order in this matter entered July 28, 2021, that it had "damages as a result of Mrs. Laurain and EZPZ's smear campaign and call for boycott of all of LNC's Nuby brand products *involve the loss of sales*." [Doc. No. 773 at 2](emphasis added).

### 3. LNC Took Vexatious Positions With Respect to its LUTPA Claim

Not only did LNC intractably persist in its LUTPA claim that it knew it could not prevail on, it continued to use LUTPA as a catch-all to proceed on other theories that were not pleaded. Notably, LNC claimed and briefed litigation conduct as grounds for its LUTPA claim notwithstanding clear case law that this cannot form the basis for a LUTPA claim. [Doc. No. 573]. A claim premised on another's litigation conduct is groundless. *See, Allen v. Lowe*, No. 14-204, 2015 U.S. Dist. LEXIS 28643, at *8 (E.D. La. Mar. 9, 2015)("Plaintiff's LUTPA claim is groundless because the Louisiana Supreme Court has held that unethical and/or abusive litigation conduct does not give rise to an action under the statute). LNC went as far as trying to preclude EZPZ from defending itself from LNC's groundless claim by requesting a motion in limine barring EZPZ's testimony. [Doc. No. 594-1 at 7-9].

### D.   LNC's LUTPA Claim was Demonstrably Brought In Bad Faith and for the Purposes of Harassment

### 1. LNC sued EZPZ and Lindsey Laurain "to shut her up"

LNC's motivation in bringing claims against EZPZ was in bad faith and/or for the

purposes of harassment. Rarely is direct smoking gun evidence available, as it is here. LNC's internal emails demonstrate that LNC's true intention in asserting claims against EZPZ was for the purpose to "shut [EZPZ] up."

March 26, 2016: Internal email stating *"I have a feeling she will bitterly regret the day she picked a fight with Eddie."* [Exhibit 3 (emphasis added)].

April 28, 2016: Internal email stating "[i]f there is a way to sue her [EZPZ] *in Louisiana court* for defamation/libel I would. *Small company like that does not want to waste $ defending a lawsuit like this and would sign a settlement promising to stop this shit…."* [Exhibit 4 (emphasis added)].

April 28, 2016   Internal email stating "100% it is a risk, but if we have a very strong defamation/libel case which the lawyers think we'd win *then we have the leverage to shut her [EZPZ] up."* [Exhibit 4 (emphasis added)].

April 28, 2016   Internal email stating, "[o]bviously it is your decision and it might backfire to sue, but if what she said is indeed defamation then why not sue her for defamation/libel? *As a small company she [EZPZ] would very likely wish to settle right away…"* [Exhibit 5 (emphasis added)].

April 29, 2016   Internal email stating "[w]e want to let them go and *give them [EZPZ] enough rope so they will hang themselves.*" [Exhibit 5 (emphasis added)].

May 2, 2016   Internal email stating about pricing *"[w]e are going to tear their [EZPZ's] ASS a new asshole."* [Exhibit 6 (emphasis added)].

### 2.  The Lawsuit Was Demonstrably Not About LUTPA

Once LNC decided to file a lawsuit ostensibly "to shut [EZPZ] up," it filed an action alleging so-called LUTPA and Lanham violations. This lawsuit, however, was demonstrably *never* about LUTPA. Rather, LNC used the lawsuit to create jurisdiction in Louisiana to litigate the anticipated utility patent case and seek fees. LNC did not actively prosecute this case until *after* the '903 Patent issued. Then, after ***five years of litigation*** and after the Court found the '903 patent invalid, LNC stated that it would "likely forego its LUTPA claims" if the Court further eliminated EZPZ's design patent and trade dress claims by a finding of unclean hands and it

could seek attorney's fees under 35 U.S.C. §285. [Doc. No. 765 at 8, 9]. The following is a timeline showing that LUTPA was nothing more than a pretext:

June 3, 2016:    Lawsuit commenced [Doc. No. 001]. Four of the five claims are directed to the alleged violation of LUTPA and Lanham. The fifth claim is directed towards EZPZ's design patent.

June 12, 2016    6 days after filing suit, LNC sent a settlement demand requesting that EZPZ pay it $50,000 and covenant not to sue for patent infringement for any patent including any patent it obtained based on its pending application, which became the '903 Patent. [Exhibit 7].

Sept. 15, 2016   The Court entered a Notice to Intent to Dismiss for Failure to Effect Service [Doc. No. 008]

Oct. 5, 2016     The Court entered a Notice of Intent to Dismiss for Failure to Prosecute [Doc. No. 010]

*Oct. 11, 2016    The '903 Patent issues. [Trial Exhibit 935].*

Oct. 12, 2016    EZPZ files its first paper in the case, by consent, requesting that the motion "satis[fied] Plaintiff's obligation to show good cause for Defendant's delay in pleading." [Doc. No. 014].

Oct. 28, 2016    LNC filed its First Amended Complaint for False Advertising, False Representation, Unfair Competition and Declaratory Judgment [Doc. No. 021] before any response was filed to the original Complaint [Doc. No. 001].

May 8, 2018      In deposition, Mr. Hakim acknowledged that *this* lawsuit was motivated by an unrelated lawsuit between the parties in Germany. When asked why he from a claim against EZPZ for "unfair trade practices or anything like that," he responded, in part, "[Ms. Laurain] brought a claim against us in Germany, and she lost half of that. She won half. She lost half. Public record. She knows she lost. *We have the right to be made whole*." [Doc. No. 188-4, E. Hakim Depo. Tr. 282:17-20].

July 22, 2021    After ***five years*** of litigation—commenced due to the alleged LUTPA and Lanham Act violations, LNC states, "[i]n the event the Court found EZPZ acted with unclean hands and dismissed all of EZPZ's claims, LNC *would likely forego a jury trial on its LUTPA claims* in favor of proceeding to a motion for fees under 35 U.S.C. §285. [Doc. No. 765 at 8, 9]

### 3.   The LUTPA and Lanham Act Claims Were Contrived

Review of the Complaint [Doc. No. 001] shows that the LUTPA and Lanham claims were deliberately contrived. LNC made allegations that it *knew* were not supported *prior* to filing the lawsuit (and then acknowledged at trial). For example, LCN stated in its original complaint and Amended Complaint EZPZ was "[u]nable to compete in the marketplace" so "resorted to a campaign of threats and intimidation . . . directed at Plaintiff and its customers." [Doc. Nos. 001 at 1, 021 at 1]. LNC knew that the allegation EZPZ failed in the marketplace was a fabrication, as demonstrated by their own internal emails dated *prior* to the filing of the Complaint and Amended Complaint.

Oct. 19, 2015   Internal emails stating "EZPZ['s] booth at the ABC show right now is *again* the most crowded here in the entire show and they have a new product." [Exhibit 8 (emphasis added)].

Dec. 2, 2015   Internal emails about "a bit of excitement over the last few weeks about this new mat from ezpz." [Exhibit 9]. Identifying the excitement as response from parents that "seem to genuinely like the brand," posts by parents who attended "Mommycon" and being one of 10 finalists for Intuit Small Business Contest (although not the winner). The response was "[w]ow, that's impressive!" [Exhibit 10].

Jan. 10, 2016   Internal emails about EZPZ's $5M valuation from Kevin [one of the Sharks] and Barabara [another Shark] "matched her $20M ask.' [Exhibit 11].

Oct. 6, 2016   Internal email about a different product on Kickstarter but stating "the last time I saw numbers that big in the infant category from Kickstarter were with the EZPZ mat" [Exhibit 12].

Sept. 3, 2021   Counsel acknowledged that "[Ms. Laurain] worked very hard, and she made a successful product with sales." [Doc. No. 837:18-19].

LNC then relied on this fabricated reason that EZPZ "failed in the marketplace" in their Complaint and First Amended Complaint to support an allegation that it was for this reason

EZPZ sought a competitive edge and violated LUTPA by "knowingly interfer[ing] with plaintiff's [LNC's] existing and prospective contracts and business relationships with consumers, customers, *and retailers* in an effort to induce or have induced consumers, customers, *and retailers* not to purchase plaintiff's [LNC's] feeding mats." [Doc. No. 21 at ¶¶111-112]. Again, LNC knew allegations that EZPZ threatened retailers were false yet asserted these allegations anyway.

Internal LNC emails sent prior to initiating the lawsuit reveal that LNC knew at the time it filed these claims that it had **no** evidence that EZPZ interfered with any retailers in an effort to induce them not to purchase LNC's mats. When LNC was pressed for details before EZPZ even prepared its Answer to the Complaint, LNC equivocated and was not able to provide a straight answer and then conceded that there were no "threats" by retailers, just a belief. These events are shown below:

April 29, 2016     Internal emails reveal that Steve Ariel of Nuby emailed the owner of LNC, Eddie Hakim, the following:  "*[w]e have next to zero chance of receiving any evidence from retailers/retail buyers*" [Exhibit 2].

April 29, 2016     In response, Mr. Hakim agreed with this and stated: "[t]he only thing I see they did wrong was to say they have a Utility Patent of which there are laws against this." *Id*.

*June 3, 2016*     *LNC filed its Complaint alleging that EZPZ threatened its retailers. [Doc. No. 21 at ¶¶111-112]*

June 7, 2016     Just four days after the lawsuit was commenced, LNC began its equivocation on the issue when pressed by EZPZ's counsel and stated it "need[ed] to correct what I told you about the retailers who reported the suit threats to us." [Exhibit 13].

Aug. 15, 2016     LNC effectively conceded that no retailer ever said that EZPZ threatened a lawsuit. Rather LNC's "sales rep," "was left with the conviction that both buyers had been threatened by someone affiliated with [EZPZ]" *See*, [Exhibit 14].

LNC persisted, however, with its claim. Once it became clear that LNC not going to get away with asserting a groundless claim after being asked for evidence to support the allegations, LNC withdrew its allegations. Specifically, in response to written discovery requests regarding the claim, LNC withdrew the allegations in paragraphs 32-34, 52, 60, 61, 66, 120, and 123 of the First Amended Complaint [Doc No. 021] related to this request and stated the following: "[u]pon further investigation, LNC has elected to withdraw those allegations solely with respect to Defendant's threats and intimidation against WalMart, Target, Toys R Us, and Babies R Us prior to the issuance of the '903 patent that are the subject matter of this interrogatory."[3] [Doc. No. 233-5]. LNC continued to evade providing any evidence of this allegation during depositions of LNC representatives: [Doc. No. 771-1, N. Shamosh Depo. Tr. 75:2-22].

LNC knew it did not have evidence of EZPZ threatening or interfering with customers/retailers and did not even attempt to present evidence of the claim. Instead, upon being pushed to produce such evidence, it withdrew the claim and thereafter refused to answer any questions regarding the allegations.

The case here is analogous to *Degussa Admixtures, Inc. v. Burnett*, 277 Fed.Appx. 530 (6th Cir. 2008). In *Degussa, supra,* the 6th Circuit Court found bad faith under similar circumstances and upheld an award of attorney's fees under Michigan's Uniform Trade Secrets

---

[3] LNC later made clear that the allegation was withdrawn regarding all retailers/ customers, not just Wal-Mart, Target, Toys R Us, and Babies R Us. Specifically, in response to LNC's Motion for Protective Order Regarding EZPZ's Rule 30(b)(6) Deposition Notice, EZPZ argued that LNC sought a protective order with respect to certain deposition topics [Topics 82 and 79] on the basis that it had withdrawn this claim, however, LNC's withdrawal of the allegation in its discovery response of "threats against customers," was not an unqualified withdrawal; rather LNC argued that LNC withdrew its allegations only as to certain customers it had previously claimed were threatened, namely Wal-Mart, Target, Toys R Us, and Babies R Us. [Doc. No. 237-1 at 15]. EZPZ stated that if LNC amended its interrogatory response to an unqualified withdrawal of all allegations of "threats against customers," EZPZ would agree to withdraw the deposition topic. *Id.* LNC replied: "[w]ith respect to topic 82, LNC has unequivocally informed EZPZ that the claim has been withdrawn and is not being pursued by LNC." [Doc. No. 240 at 7, FN 3].

Act [4] . Specifically, in *Degussa, supra*, the court found that the plaintiff asserted the misappropriation claim in bad faith because in filing the action the plaintiff acknowledged that it had no direct evidence that the defendant has used, or was threatening to use, plaintiff's alleged trade secrets. *Id.* at 534. This was based on the following: (a) plaintiff's counsel conceded that plaintiff "did not catch [Defendant] red-handed," (b) plaintiff's vice president disclaimed any allegation that defendant "threatened to disclose information," and (c) plaintiff's sales manager testified that he had "no evidence" that defendant had disclosed confidential information to anyone at his new employment. *Id.*

Similarly, here, as outlined above, LNC conceded in internal emails that they had no evidence that EZPZ threatened/interfered with retailers/customers. [Exhibit 2]. This was later acknowledged by counsel even before an Answer was filed by EZPZ. Accordingly, as in *Degussa,* LNC disclaimed the allegations by withdrawing them. Also, for the reasons defined above, LNC knew it had *no* evidence of damages for *any* of its LUTPA claims.

### 4. LNC's Words and Actions Directed to Ms. Laurain, EZPZ's Principal also Evidence LNC's Harassment

The timeline of the lawsuit further shows that the purpose of the lawsuit was done in bad faith and for the purposes of harassment of EZPZ, and specifically its principal Ms. Laurain. The following events demonstrate this:

Sept. 2016:     EZPZ prevailed on a preliminary injunction against LNC in Germany causing LNC to remove its displayed products at Kind+Jugend, the premier international baby trade show. In response, Joseph Hakim, executive of LNC and Mr. Eddie Hakim's brother stated to Ms. Laurain "we will take the mats down but you will be responsible for our losses and

---

[4] The Michigan Uniform Trade Secrets Act has similar language requiring bad faith for the award of attorney fees. It provides: "If a claim of misappropriation is made in bad faith...the court may award reasonable attorney's fees to the prevailing party. *See, Degussa, supra* at 532, quoting Mich.Comp.Laws § 455.1905.

damages, do you think you can handle that?" "you sure?" and "*we will sue her again, in addition to what we have already sued her for, so it will be even more losses and damages*." *See, physical video*.

Nov. 2016     Ms. Laurain is dismissed from this action. [Doc. No. 031].

Jan. 2017     LNC brings suit against Ms. Laurain, personally, in State Court of Louisiana. *Luv n' Care, Ltd v. Laurain*, No. 17-0242 on the docket of the 4th Judicial District Court, Louisiana. The case is dismissed for lack of personal jurisdiction. [Exhibit 15].

May 8, 2018     In deposition, Mr. Hakim's testimony evidenced that he was motivated by personal reasons. Mr. Hakim testified that he "probably" cannot prove injury by the boycott but that Ms. Laurain said things about LNC online and "[n]obody gets away with anything for free for very long." [Doc. No. 188-4, E. Hakim Depo. Tr. 130:6, 281:21-22].

Nov. 2018     EZPZ was at the Denver airport on its way to a scheduled mediation in Dallas, TX when LNC cancelled the mediation. LNC's counsel, Ms. Reisman emailed EZPZ's in-house counsel stating that EZPZ "has further anger[ed] my clients and me" and "[y]our client has made a critical error today. *The case is going to get A LOT worse for her [Ms. Laurain]."* (capital emphasis in original). [Exhibit 16].

June 27, 2019     In deposition, Mr. Hakim's testimony evidenced that he was motivated by personal reasons. Mr. Hakim referred to Lindsey Laurain and her team as a "pack of wild animals" [*see,* Exhibit 17 (E. Hakim Depo. Tr. 48:8-13)]and said that Ms. Laurain was "not a normal person" [*Id*. at 50:7-16] stated that he spent "more in legal fees, probably four times more than what I have in sales" [*Id. at* 122:4-5].

June 28, 2019     LNC's counsel stating to Ms. Laurain, personally, "[t]he case has gotten a lot worse for you, Ms. Laurain. Believe me." [Exhibit 18 (Laurain Depo. Tr. 100:16-17)].

Sept. 2019     Ms. Laurain sees Mr. Hakim at Kind+Jugend trade show in Germany. He asks her "how are you handling responding to all the summary judgment motions [after 10 were filed]" and "how are you going to handle it when Nuby is written all over your booth?" In addition, Mr. Hakim made reference to Joey Chua, EZPZ's Canadian distributor, while walking away from her mimicking someone with their hands in handcuffs behind their back.

May 19, 2020     LNC ostensibly attempted to create discontent between EZPZ and its patent agent, former counsel, and current counsel with threats against all.

LNC suggested mediation and asked EZPZ to bring the following people to the table, while referencing LNC's LUTPA claim for which it was seeking damages in the minimum amount of $12 million that was increasing as the litigation progressed:

- insurance carriers for and all attorneys or agents who prosecuted or were substantively involved in the '903 patent;
- insurance carriers for and all counsel of record who have enrolled *pro hac vice* at any time in this litigation who engaged in unclean hands during both discovery and the claims construction process;
- insurance carriers for and all counsel of record who have enrolled *pro hac vice* at any time in this litigation who steadfastly pursued an infringement claim on a clearly invalid patent;
- insurance carriers for and all counsel of record who have enrolled *pro hac vice* at any time in the litigation who steadfastly pursued an infringement claim on a patent that was obtained by inequitable conduct; and
- any of the above who may be found personally liable (or who may provide insurance coverage for such liability) for unreasonably increasing the cost of the litigation in violation of 28 U.S.C. § 1927. *See Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817 (N.D. Ill. 2015).

[Exhibit 1].

| | |
|---|---|
| July 10, 2020 | The parties attended a mediation in Dallas, TX before the Honorable Judge Faulkner, Ret., which was scheduled for a whole day. The mediation came to a close around lunchtime once Judge Faulkner conveyed to EZPZ that *LNC was requesting that EZPZ provide its company financials to LNC*, and that it would not negotiate further in the absence of them and had left. |
| July 2021 | LNC continued to allege and threaten action against Ms. Laurain notwithstanding LNC's agreement to dismiss Ms. Laurain from the lawsuit. The final Pretrial Order [Doc. No. 773 at 2] states "[d]epending on the facts and circumstances, LNC reserves the right to seek to bring Mrs. Laurain back into the lawsuit as an individual defendant at the exceptional case phase of this litigation |

## IV.   ARGUMENT: EZPZ IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES UNDER THE LANHAM ACT

17 U.S.C. § 1117(a) provides that in an action under the Lanham Act a district court "in exceptional cases may award reasonable attorney fees to the prevailing party." "In the Lanham Act context, a prevailing party is 'a party in whose favor judgment is rendered' or 'one who has been awarded some relief by the court.'" *Roor Int'l BV v. Stinky's Smoke Shop, LLC*, Civil Action No. 4:18-cv-735-KPJ, 2021 U.S. Dist. LEXIS 226335, at *4 (E.D. Tex. Nov. 24, 2021) (citing *Alliance for Good Gov't v. Coalition for Better Gov't*, 919 F.3d 291, 295 n.16 (5th Cir.

2019)).

The determination as to whether a case is exceptional is left to the sound discretion of the trial court. *See, Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). "An exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). Lawsuits that are "either frivolous or motivated by bad faith [] are two of the most common situations that will support a fee award." *Ballero v. 727 Inc.*, 744 F. App'x 871, 873 (5th Cir. 2018)

For instance, in *Mennen Co. v. Gillette Co.*, 565 F.Supp. 648, 657 (S.D.N.Y. 1983, *aff'd mem.*, 742 F.2d 1437 (2d. Cir. 1984), a district court awarded counsel fees to a defendant which had successfully defended against trademark and unfair competition claims because "[t]here [wa]s a substantial overtone in this case to warrant an inference that this suit was initiated as a competitive ploy. As such it carries necessary damage to the defendant when the plaintiffs' claims are found, as they are here, to have no real substance."

First, here it is clear that EZPZ is the prevailing party on the Lanham Act claim.  The Court dismissed LNC's damages claim under the Act [Doc No. 783 at 4] and then dismissed the claim for injunctive relief under the Lanham Act in its Final Judgment. [Doc. 852 at 1]. This shows the weakness in LNC's litigation position.

Second, LNC's unreasonable manner in pursuing and litigating the claim is clear for some of the same reasons as set forth above concerning LNC's bad faith in pursuing the LUTPA claim. Specifically, at the time of filing the claim, LNC had no injury and knew it had no

evidence of injury.  Similar to the LUTPA claim, one of the essential elements of a claim under the Lanham Act is proof of injury. *S. Snow Mfg. Co. v. SnowWizard Holdings, Inc*., 829 F.Supp.2d 437, 444-45 (E.D.La. 2011)(one of the five elements to make out a prima facie case of false advertising under the Lanham Act is that "the plaintiff has been or is likely to be injured as a result of the statement at issue."); *Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 131-32 (2014)("to come within the zone of interest in a suit for false advertising under §1125(a) [Lanham Act], a plaintiff must allege an injury to a commercial interest in reputation or sales.").

Here, as discussed above concerning the LUTPA claim, LNC never had evidence of an injury to its reputation or lost sales. Despite this lack of evidence LNC continued to pursue its Lanham Act claim against EZPZ until the very end.

In addition, as discussed in detail above, LNC's internal emails and actions reveal that LNC brought the claims against EZPZ only for purposes of harassment. Accordingly, as in *Mennen, Co., supra*, not only has it been revealed that LNC's claim had no substance, "[t]here is a substantial overtone in this case to warrant an inference that this suit was initiated as a competitive ploy"; therefore, an award of attorney's fees is warranted.

## V.     EZPZ'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE

### 1.   EZPZ IS ENTITLED TO ITS ATTORNEY'S FEES FOR CLAIMS "INEXTRICABLY INTERWOVEN" WITH THE LUTPA AND LANHAM ACT CLAIMS.

When claims providing for the recovery of attorney's fees, such as those under LUTPA or the Lanham Act are "inextricably intertwined" with other claims, then the prevailing party may recover all its attorneys' fees. *AAMCO Transmissions, Inc. v. Graham*, 1990 WL 118050

(E.D. Pa. 1990)(refusing to deduct any amount from the total attorneys' fees award where the non-Lanham Act claims were intermingled with the Lanham Act claims that "it is impossible to separate the work done on each claim"); *Yankee Candle Co., Inc. v. Bridgewater Candle Co.*, LLC, 140 F.Supp.2d 111 (D.Mass 2001), *judgment aff'd*, 259 F.3d 25, 59 (1st Cir. 2001)(holding that segregation of federal claims from state claims impossible); *Contractual Obligation Productions, LLC v. AMC Networks, Inc*., 546 F.Supp.2d 120, 131-132 (S.D.N.Y. 2008)(attorney fees awarded to prevailing defendant on both Lanham act and "substantially similar" and "closely intermingled" California state law claims); *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 966 (7th Cir. 2010)(attorney fees awarded to prevailing defendant on both Lanham Act and state law claims where the work performed in defending against both claims "could not be separated."); *Tiffany and Company v. Costco Wholesale Corp.,* 2019 WL 120765, *8 (S.D.N.Y. 2019)(awarding attorney's fees for work on state law claims paralleling Lanham Act claims because apportionment was "impossible").

Here, the LUTPA claims and associated defenses in particular, as well as the patent infringement defenses, were substantially premised on allegations of inequitable conduct.

This was LNC stated position in the Pre-Trial Order; specifically, that because the Court had already entered an order invalidating the U.S. Patent No. 9,462,903 ('903 Patent), LNC's assertion that "EZPZ [committed] inequitable conduct and egregious misconduct before the USPTO render[ing] the '903 Patent unenforceable, *is moot except to the extent that it supports LNC's LUTPA claim involving the bad faith assertion and enforcement of the '903 Patent . . .*" [Doc. No. 773 at 5](emphasis added).

And, this was confirmed by the Court; specifically, "[i]f LNC is successful in proving

inequitable conduct then EZPZ will be precluded from arguing that it acted in good faith in asserting the '903 Patent. If LNC is unsuccessful in proving inequitable conduct, then LNC's claim that EZPZ acted in bad faith by asserting the '903 Patent will be preempted under Federal patent law." [Doc Np. 783 at 7].  Accordingly, defending against all of the claims asserted by LNC against EZPZ in this action cannot be separated.

## 2.   THE ATTORNEY'S FEES REQUESTED ARE REASONABLE.

In the Fifth Circuit, "whenever the award of reasonable attorneys' fees is authorized by statute," courts utilize the "lodestar" method and apply the twelve factors enumerated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), in determining what amount of attorneys' fees is reasonable. *Wells Fargo Equipment Finance, Inc. v. Beaver Const., LLC*, 2011 WL 5525999 (W.D.La. 2011); *Hensley v. Eckerhart,* 461 U.S. 424 (1983)(Supreme Court established the two-step process for calculating attorneys fees known as the "lodestar method."). *See also, Meineke Discount Muffler v. Jaynes,* 999 F.2d 120, 126 (5th Cir. 1993)(applying the Johnson factors in Lanham Act case).

With respect to EZPZ's entitlement to attorney's fees arising out of the state law LUTPA claim, Louisiana utilizes Rule 1.5 of the Rules of Professional Conduct when inquiring into the reasonableness of attorney fees. *Citizens Bank v. Tolani*, 2015 WL 5334153 (W.D. La. 2015)( *citing Chevron U.S.A., Inc. v. Aker Maritime, Inc.,* 389 F.3d 497, 505 (5th Cir. 2012)). Courts have found that under Rule 1.5(a) of the Louisiana Rules of Professional Conduct, the factors to be considered in determining the reasonableness of attorney's fees are substantially similar to those considered under the federal lodestar analysis. *Citizens Bank, supra; Haygood v. Begue,* No. 13-0335, 2021 U.S. Dist. LEXIS 156614, at *10 (W.D. La. Aug. 17, 2021); *Wells Fargo*

*Equipment Finance, Inc. v. Beaver Const., LLC,* 2011 WL 5525999, FN 3 (W.D. La. 2011)(finding that "Louisiana courts engage in an analysis similar to Johnson, and therefore, the same result is reached under either the state or federal analysis.").

Under the lodestar method, a court first determines the amount of reasonable attorney's fees by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Once the amount of reasonable attorney's fees is ascertained, the court evaluates whether that amount should be adjusted upward or downward. *Id.* The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled." *Penn. v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)(emphasis added).

In determining whether that amount should be modified, the court may consider the twelve factors laid out in *Johnson, supra*: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. EZPZ submits that none of the *Johnson* factors warrant an increase or decrease in the award sought by it.

### 1.    The number of hours were reasonably expended

EZPZ has submitted time sheets in compliance with Western District of Louisiana

LR54.2 and the declaration of Jennifer K. Fischer to support the respective time. *See,* Exhibit 19 (Time Entries of Carlson Gaskey Olds); Exhibit 20 (Time Entries of Hayes Harkey Smith & Cascio); Exhibit 21 (Time Entries of Fischer & Fischer, P.C.); Exhibit 22 (Time Entries of Patent Law Offices of Rick Martin, P.C.); and Exhibit 23 (Time Entries of Hudson, Potts & Bernstein, LLP).

All time claimed in a billing record must be reasonable in order for it to be compensable. *League of United Latin American Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). An additional factor to be considered when evaluating the reasonableness of the time expended is the novelty and complexity of the case. As the Supreme Court noted in *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), the difficulty of a case "is ordinarily reflected in the lodestar – either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced to do so." As the Court is aware, this was not a simple case of prosecuting a single simple claim. This case involved multiple claims (*e.g.,* LUTPA, Lanham Act, patent infringement) with changing theories, especially as it related to LUTPA.

Another important factor to consider when evaluating the reasonableness of the time expended by a party is the manner in which the opposing party approached the case. In *City of Riverside v. Rivera*, 477 U.S. 561, 580, n. 11 (1986), the Supreme Court stated, one party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [the opposing party] in response." *Id.*; *see also, Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001); *Lipsett v. Blanco*, 975 F.2d 934, 938-939 (1st Cir. 1992). The court in both *Gay Officers* and *Lipsett* found that the appellants had mounted a "Stalingrad

defense," resisting the plaintiffs at each juncture. *Gay Officers,* 247, F.3d at 298 (after "battling from rock to rock and tree to tree,….it seems disingenuous for the Commonwealth to castigate the plaintiffs for putting too many troops into the field.").

This case has been intensely litigated over the last five (5) years and aggressively prosecuted by LNC. There were few if any concessions. LNC stubbornly failed to admit that there was no evidence to support their allegations over five years only to then state it would not even pursue the claim if other unrelated EZPZ claims were eliminated.

## 2. EZPZ Apportions the Hours and Claims Only a Portion of Its Attorney's Fees

EZPZ recognizes that not all of its time was spent in defense of the LUTPA claim (which included rebutting an assertion of inequitable conduct) and Lanham Act claims and reduces its hours appropriately. *See, e.g. All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 297 (5th Cir. 2019)("When a party advances both Lanham Act and non-Lanham Act claims, a district court should make efforts to award fees only for successful Lanham Act claims"). Although an exact apportionment may be impossible an attempt to adjust the fee in an effort to reflect apportionment is appropriate. *See, Id.*. This adjustment can be made on a percentage basis. *See, Indus. Print Techs., LLC v. Cenveo, Inc.,* No. 3:15-md-02614-M, 2020 U.S. Dist. LEXIS 156538, at *16 (N.D. Tex. June 12, 2020)(collecting cases). "Under such circumstances, the court may exercise its discretion to award a percentage of the fees requested, provided that its choice of a percentage is guided by reason." *Zaman v. Kelly Servs.*, No. 15-cv-04601-HRL, 2017 U.S. Dist. LEXIS 82406, at *20 (N.D. Cal. May 30, 2017).

This matter largely had five distinct aspects at the beginning of the litigation, which changed over the course of the action: (1) LNC's LUTPA and Lanham Act claims (2)

Infringement and Invalidity of the '903 Patent; (3) LNC's assertion of the unenforceability of the '903 Patent for inequitable conduct; (4) Infringement and Invalidity of the D327 Design Patent and Trade Dress; (5) Miscellaneous claims, which were largely dismissed early in the litigation by EZPZ. *See,* Declaration of J. Fischer. As the matter proceeded to trial, LNC's LUTPA claims and its defense of LNC's defense of inequitable conduct collapsed into one, as discussed above. *Id*. No amounts are claimed post-trial after preparation and submission of the Post-Trial Findings of Fact and Conclusions of Law (e.g. Rule 59 Motions, research regarding bill of costs, or preparation of this Motion). *Id*.

EZPZ requests 20% of its hours expended in legal work through July 20, 2020. Up until this date, all five of the above described issues were being litigated in this case. This is the date that briefing on the Motion to Reconsider was complete, and work regarding infringement and invalidity of the '903 Patent ended. The sub-total amount of 850.5 hours, calculated as follows:

| Person | Number of Actual Hours (Through July 20, 2020) | Number of Apportioned Hours Claimed (20%) |
|---|---|---|
| **Attorneys** | | |
| Brian Tobin | 1217.2 | 243.44 |
| David Atallah | 847.8 | 169.56 |
| Brian Brown | 46 | 9.2 |
| Michael A. Szypa, Jr. | 38.7 | 7.74 |
| Jessica Fleetham f/k/a Jessica Zilberberg | 267.5 | 53.5 |
| Jennifer K. Fischer | 1703.5 | 340.7 |
| Lisa C. Secor | 1056.1 | 211.22 |
| Ronnie Fischer | 390 | 78 |
| Rick Martin | 452.2 | 90.44 |
| Katherine Condit | 110 | 22 |
| Tom Hayes | 188.5 | 37.7 |
| **Legal Staff** | | |
| Joe Venier | 40.3 | 8.06 |
| Michael J. Schwartz | 17.5 | 3.5 |
| Jaye Young | 20.5 | 4.1 |
| Deborah Edwards | 139.2 | 27.84 |
| JoAnn Hansen | 70.7 | 14.14 |
| Jennifer Kim | 20.5 | 4.1 |
| **SUBTOTAL** | 4252.5 | **850.5** |

EZPZ requests 70% of its hours expended in legal work between July 21, 2020 - August 11, 2021. As of July 21, 2020, work regarding infringement and invalidity of the '903 patent had ended, and on July 16, 2020, LNC asserted its argument that its LUTPA claimed was based on EZPZ's alleged bad faith assertion and enforcement of patent rights. [Doc. No. 578]. At this time, EZPZ defense of LUTPA became inextricably intertwined with its' defense of the charge of inequitable conduct against it. These two aspects of the case collapsed into one, leaving two aspects to the case: (1) LNC's LUTPA claims / assertion of the unenforceability of the '903 Patent for inequitable conduct; and (2) Infringement and Invalidity of the D327 Design Patent and Trade Dress. On August 11, 2021, the Court vacated the jury portion of the trial which was scheduled for the D327 Design Patent and Trade Dress. Approximately 70% of EZPZ's time preparing for trial was directed to the inequitable charge against it and 30% to the design patent/trade dress claim. This is a sub-total amount of 1368.4 hours, calculated as follows:

| Person | Number of Actual Hours (July 21, 2020 to August 11, 2021) | Number of Apportioned Hours Claimed (70%) |
|---|---|---|
| Attorneys | | |
| Jennifer K. Fischer | 826.4 | 578.48 |
| Lisa C. Secor | 880 | 616 |
| Ronnie Fischer | 192.1 | 134.47 |
| Katherine Condit | 42.2 | 29.54 |
| Tom Hayes | 4.5 | 3.15 |
| J.P. Christiansen | 9.7 | 6.79 |
| Legal Staff | | |
| Jennifer Kim | 414.4 | 290.08 |
| **SUBTOTAL** | 1954.9 | 1368.43 |

EZPZ requests 90% of its hours expended in legal work between August 11, 2021 – November 22, 2021. On August 11, 2021, the Court vacated the jury portion of the trial which was scheduled for the D327 Design Patent and Trade Dress. That made preparation of the case

directed to inequitable conduct, and unclean hands which had been added approximately two weeks before on July 27, 2021 [Doc. No. 772]. EZPZ contends that 90% of the time was devoted to inequitable conduct and 10% to unclean hands. This is a sub-total amount of 639.18 hours, calculated as follows:

| Person | Number of Actual Hours (August 12, 2021 to November 22, 2021) | Number of Apportioned Hours Claimed (90%) |
|---|---|---|
| **Attorney** | | |
| Jennifer K. Fischer | 298.4 | 268.56 |
| Lisa C. Secor | 214.7 | 193.23 |
| Ronnie Fischer | 120.7 | 108.63 |
| Katherine Condit | 4.7 | 4.23 |
| J.P. Christiansen | 71.7 | 64.53 |
| **Legal Staff** | | |
| Jennifer Kim | 97.9 | 88.11 |
| **SUBTOTAL** | 710.2 | 639.18 |

### 3.    The hourly rates are reasonable.

In *Blum v. Stenson*, 465 U.S. 886, 895 (1984), the Supreme Court made clear that fee awards should be calculated according to the prevailing market rates in the relevant community. An attorney's requested hourly rate is prima facie reasonable when he or she requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested. *Louisiana Power and Light Company v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

EZPZ asserts that $180-360, with the principal attorneys' billing rate of between $300-$360 per hour and local counsel's billing rate of $290 per hour, is well within the acceptable range of market rates for the legal community, particularly given the experience of counsel and the complex issues involved here. *See, e.g., Regeneron Pharmaceuticals, Inc. v. Merus N.V.*,

2018 WL 3425013, *4-5 (S.D.N.Y. 2018)(finding hourly rates of $799 for partners, $699 for senior associates, and $422-$664 for associates reasonable for an intellectual property case); *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, 2020 WL 375596, at *5 E.D.La. 2020)(finding hourly rates of $275-$450 reasonable in a case involving violations of the LUTSA and LUTPA). The rates are also consistent with the rates of the *21 attorneys* that LNC's outside counsel utilized in this matter and who billed to this file, with rates of $150-$300, with all the attorneys who entered an appearance at $300 per hour, with the exception of one attorney at $250 per hour. [Exhibit 24 (Excerpts of LNC billing records)].

Further $100-125 per hour for their legal staff, law clerks and paralegals, is well within the acceptable range of market rates for the legal community. LNC itself charged $160-$170 per hour for its law clerks and paralegals. [Exhibit 24].

**4.     Calculation of the Award.**

Application of each attorney and legal staff's hours at their customary billing rate yields an award of $1,095,809, calculated as below:

| Person | Apportioned Number of Hours | Rate | Subtotal |
|---|---|---|---|
| **Attorney** | | | |
| Brian Tobin | 243.44 | $360 | $87,638 |
| David Atallah | 169.56 | $300 | $50,868 |
| Brian Brown | 46 | $320 | $14,720 |
| Michael A. Szypa, Jr. | 7.74 | $190 | $1,470.60 |
| Jessica Fleetham | 53.5 | $180 | $9,630.00 |
| Jennifer K. Fischer | 1187.74 | $325 | $386,016 |
| Lisa Secor | 1020.45 | $300 | $306,135 |
| Ronnie Fischer | 321.1 | $325 | $104,358 |
| Katherine Condit | 55.77 | $300 | $16,731 |
| Rick Martin | 90.44 | $325 | $29,393 |
| Tom Hayes | 40.85 | $290 | $11,847 |
| J.P. Christiansen | 71.32 | $290 | $20,683 |
| **Legal Staff** | | | |
| Joe Venier | 8.06 | $110 | $886.60 |
| Michael J. Schwartz | 3.5 | $100 | $350 |
| Jaye Young | 20.5 | $100 | $2,050 |
| Deborah Edwards | 27.84 | $125 | $3,480 |
| JoAnn Hansen | 14.14 | $125 | $1,768 |
| Jennifer Kim | 382.29 | $125 | $47,786 |
| **TOTAL** | | | **$1,095,809** |

## VI.    CONCLUSION

For the reasons set forth herein, EZPZ respectfully requests that the Court grant its motion and award it $1,095,809 in attorney's fees pursuant to LA. Rev. Stat. §51:1409 and 15 U.S.C. § 1117(A).

Dated: February 1, 2022.

*Attorneys for Defendant EAZY-PZ, LLC*
FISCHER & FISCHER, P.C.

*s/ Jennifer K. Fischer*
Jennifer K. Fischer (CO Reg. No. 36590)
(Admitted *Pro Hac Vice*)

E-Mail: jennifer@fischeresq.com
Lisa C. Secor (CO Reg. No. 25394)
(Admitted *Pro Hac Vice)*
E-Mail: lisa@fischeresq.com
Ronnie Fischer
(Admitted *Pro Hac Vice)*
E-Mail: ronnie@fischeresq.com
1777 South Harrison Street, Suite 1500
Denver, Colorado 80210
Telephone: (303) 756-2500
Facsimile: (303) 756-2506

*/s/ J.P. Christiansen*
J.P. Christiansen
Hudson, Potts & Bernstein, LLP
1800 Hudson Lane, Suite 300
Monroe, Louisiana 71210
E-Mail: jpchris@hpblaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2022, a copy of the foregoing was filed via the CM/ECF Court E-filing which will serve the following:

Melanie Derefinko
Carol W. Reisman
George Denegre, Jr.
Carey L. Menasco
LISKOW & LEWIS, APLC
701 Poydras Street, Suite 5000
New Orleans, LA 70139
     *mderefinko@liskow.com*
     *cwreisman@liskow.com*
     *gdenegre@liskow.com*
     *clmenasco@liskow.com*

Hartwell P. Morse, III
Luv N' Care, Ltd.
3030 Aurora Street, 2nd Floor
Monroe, LA 71201
     *hartm@nuby.com*

_____
Jennifer K. Fischer (CO Reg. No. 36590)