UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

LUV N' CARE                         CIVIL ACTION NO. 3:16-00777

VERSUS                              JUDGE TERRY A. DOUGHTY

LINDSEY LAURAIN, ET AL.             MAG. JUDGE PEREZ-MONTES

## AMENDED RULING
## FOLLOWING REMAND FROM THE FEDERAL CIRCUIT

On June 9, 2022, the Court entered a ruling and order denying Luv n' care, Ltd. and Nouri

E. Hakim's (collectively, "LNC") motions for attorney's fees and refused to award costs. [Doc.

Nos. 932 & 933].[1] On April 12, 2024, a three-judge panel, consisting of Judges Jimmie Reyna,

Todd Hughes, and Leonard Stark vacated the Court's judgment on attorney fees and costs; and

remanded for further proceedings consistent with its opinion. *Luv N' Care, Ltd. v. Laurain*, 98

F.4th 1081, 1106-07 (Fed. Cir. 2024). Specifically, the court of appeals held that "LNC is the

prevailing party - and will remain so no matter how the remand turns out - the district court should

have an opportunity to reevaluate the closeness of the case, and any other factors it deems pertinent

to whether the 'strong presumption' in favor of awarding costs has been overcome, after it resolves

the issues we are remanding to it." *Id.* at 1106.

On remand, the parties filed a proposed supplemental briefing schedule and agreed to

attend a mediation in New Orleans on November 15, 2024, before Mr. John Perry. [Doc. No. 948

at 1]. The parties filed supplemental briefing pursuant to the schedule, which was modified to

extend the deadlines at the parties' requests. The parties subsequently notified the Court that they

were unable to settle the litigation during the mediation on November 15, 2024, and requested the

---

[1] Citations to the parties' filings are to the filing's number in the docket [Doc. No.] and pin cites
are to the page numbers assigned through ECF.

Court rule on LNC's pending motion for attorneys' fees and costs. [Doc. No. 967] (citing Doc. Nos. 870, 871, 877, 924, 951).

Accordingly, the Court reconsiders Plaintiff LNC's "Notice of Application to Tax Costs"; Defendant Eazy-PZ, LLC's ("EZPZ") response to the motion; and LNC's reply. [Doc. Nos. 866, 899 & 904]. For the following reasons, the Court award costs under Fed. R. Civ. P. 54(d)(1) as detailed below.

The Court also reconsiders LNC's "Motion for Attorney's Fees and Expenses Pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927 and/or the Court's Inherent Power"; EZPZ's and Attorney Jordan S. Bolton's response to the motion; and LNC's reply. [Doc. Nos. 877, 911, 912, 922 & 924]. The Court further considers LNC's "Supplemental Brief in Support of Its Previously Filed Motion for Attorneys' Fees and Expenses"; EZPZ's response to the supplemental brief; and LNC's supplemental reply. [Doc. Nos. 951, 964 & 970]. For the following reasons, the motion is **GRANTED IN PART and DENIED IN PART.**

The Court also reconsiders EZPZ's "Motion for Attorney's Fees Pursuant to La. Rev. Stat. § 51:1409 and 15 U.S.C. § 1117(a)"; LNC's response to the motion; and EZPZ's reply. [Doc. Nos. 874, 915 & 926]. For the following reasons, the motion is **DENIED.**

## I.    APPLICABLE LAW

### A.  Costs Under Fed. R. Civ. P. 54(d)(1).

Federal Rule of Civil Procedure 54(d) affords courts discretion to award costs to prevailing parties. *Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 565 (2012). This discretion is bridled by 28 U.S.C. § 1920, which limits the types of costs a court can tax against an unsuccessful party. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987); *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). Thus, unless otherwise authorized by statute, the types of costs that may be awarded under F.R.C.P. 54(d) are limited to

those enumerated in 28 U.S.C. §1920. Section 1920 permits only the following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A district court may decline to award costs listed in the statute, but it may not award costs omitted from the statute. *Crawford*, 482 U.S. at 441-42. "Although the prevailing party is entitled to its costs, the prevailing party must still demonstrate that its costs are recoverable under Fifth Circuit precedent, and the prevailing party should not burden the Court with costs that are clearly not recoverable under the law." *Eolas Techs. Inc. v. Adobe Sys.*, 891 F. Supp. 2d 803, 804 (E.D. Tex. 2012).

While a court cannot award a cost item unless that item is explicitly identified in 28 U.S.C. § 1920, a court does have discretion to deny the award of otherwise recoverable costs *Crawford*, 482 U.S. at 442 ("It is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party."); *Coats v. Penrod Drilling*, 5 F.3d 877, 891 (5th Cir. 1993) ("[A] district court may decline to award the costs listed in the statute"). The Fifth Circuit has suggested a wide range of reasons to justify withholding costs from the prevailing party, including misconduct by the prevailing party and close and difficult legal issues presented. *Smith v. Chrysler Grp., LLC,* 909 F.3d 744, 753 (5th Cir. 2018).

**B. Fees Pursuant to La. Rev. Stat. § 51:1409 and 15 U.S.C. § 1117(a).**

The court has discretion in determining whether to award attorney's fees under LUTPA. *Walker v. Hixson Autoplex of Monroe, LLC*, 245 So.3d. 1088 (La. App. 2 Cir. 2017). "[T]o recover

under this section, the action must be found by the court to be both groundless and EITHER (1) brought in bad faith, OR (2) for purposes of harassment." *Samuels v. Fox*, 2000 WL 1059822, *2 (E.D. La. 2000); *Sapienza v. Trahan*, No. 6:16-CV-01701, 2019 U.S. Dist. LEXIS 44689, at *41 (W.D. La. Mar. 18, 2019) (interpreting similar provision under Louisiana's Uniform Trade Secrets Act, La. R. S. 51:1434) ("[A]dvocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto."). "The defendant must demonstrate by a preponderance of the evidence that the suit was brought in bad faith or to harass to recover attorney's fees." *Beauregard Par. Sch. Bd. v. Honeywell, Inc.*, No. 2:05 CV 1388, 2008 U.S. Dist. LEXIS 66954, at *2 (W.D. La. Aug. 26, 2008).

15 U.S.C. § 1117(a) provides that in an action under the Lanham Act a district court "in exceptional cases may award reasonable attorney fees to the prevailing party." "In the Lanham Act context, a prevailing party is 'a party in whose favor judgment is rendered' or 'one who has been awarded some relief by the court.'" *Roor Int'l BV v. Stinky's Smoke Shop, LLC*, Civil Action No. 4:18-cv-735-KPJ, 2021 U.S. Dist. LEXIS 226335, at *4 (E.D. Tex. Nov. 24, 2021) (citing *Alliance for Good Gov't v. Coalition for Better Gov't*, 919 F.3d 291, 295 n.16 (5th Cir. 2019)).

The determination as to whether a case is exceptional is left to the sound discretion of the trial court. *See, Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). "An exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). Lawsuits that are "either frivolous or motivated by bad faith [] are two of the most common situations that will support a fee award." *Ballero v. 727*

*Inc.*, 744 F. App'x 871, 873 (5th Cir. 2018)

### C. Fees Pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927 and/or the Court's Inherent Power.

The case must be "exceptional" in order for a party to be entitled to attorney's fees under § 285. "Exceptional" means uncommon", "rare" or "not ordinary." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1756 (2014). An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. Relevant factors in assessing whether a case is exceptional include the "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756, n. 6. "Courts may look to pre-*Octane Fitness* case law for guidance on whether a case was litigated in an unreasonable manner." *Medicinova, Inc. v. Genzyme Corp.*, No. 14-CV-2513 JLS (KSC), 2021 U.S. Dist. LEXIS 135060, at *14 (S.D. Cal. July 20, 2021).

Attorney fees are not awarded to penalize a party for merely defending or prosecuting a lawsuit, but instead are awarded to avoid a gross injustice. *Revlon, Inc. v. Carson Prods. Co*., 803 F.2d 676, 679 (Fed. Cir. 1986). In upholding district court findings of exceptionality, the Federal Circuit has made it plain that the term "exceptional" does not apply to negligent conduct, miscalculations about the chances of prevailing, or run-of-the mill litigation problems. Case law also makes clear that awards of attorney's fees under § 285 are rare. See *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 169080, at *10 (E.D. Tex. Aug. 6, 2014) ("Attorney's fees in patent cases are reserved for rare and unusual circumstances.").

Even the legislative history of this section emphasizes the expected rarity of such an award. As the Federal Circuit has noted, the Senate report that accompanied the predecessor statute to §

285 stated that: "it is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits." *Forest Labs, Inc. v. Abbott Lab*s, 339 F.3d 1324, 1329 (Fed. Cir. 2003) (citation omitted). In interpreting § 285, the Federal Circuit has "been mindful of the limited circumstances in which an award of attorney fees is appropriate." *Id.* Such fees should be granted only to prevent a "gross injustice," i.e., where a party pursues litigation in bad faith. *Id.* at 1327. An award of attorneys' fees pursuant to a finding of exceptional cases is an extraordinary remedy and an exception to the well-established "American Rule," which requires each party to bear its own attorneys' fees and expenses. *Id.* at 1329.

Even upon a finding that a case is exceptional, the Court still has discretion to deny attorneys' fees. *See Medicinova, Inc.*, 2021 U.S. Dist. LEXIS 135060, at *15 ("*Octane Fitness* does not mandate a fee award in all exceptional cases; even if a court determines that a case is 'exceptional,' the court still has discretion to deny attorneys' fees."). The Federal Circuit has recognized "the substantial economic and reputational impact of an award of attorney fees." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011). "[A]ttorney fees under § 285 are compensatory, not punitive." *Rembrandt Techs., LP v. Comcast of Fla./Pa., LP (In re Rembrandt Techs. LP Patent Litig.)*, 899 F.3d 1254, 1278 (Fed. Cir. 2018). "In such a statutory sanction regime, a fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (internal quotations omitted).

Finally, Section 1927 sanctions should not be awarded lightly. *Gonzales v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 479 (5th Cir. 2012). "The imposition of sanctions is a serious matter and should be approached with circumspection." *O'Connell v. Champion International Corp.,* 812 F.2d 393, 395 (8th Cir. 1987). An attorney's name and reputation are his stock in trade and thus

any hasty sullying of that name strikes at the sanctioned attorney's livelihood. *See F.D.I.C. v. Tekfen Construction and Installation Co.*, 847 F.2d 440 (5th Cir. 1998).

Under Section 1927, three essential elements must be proved by clear and convincing evidence. First, the claimant must demonstrate that the accused attorney engaged in conduct which was both "vexatious" and "unreasonable." Second, that vexatious and unreasonable conduct must be demonstrated to have caused a multiplication of the proceedings. Finally, the claimant must prove a financial nexus, *i.e.*, showing that a particular amount of litigation expenses, including attorneys' fees, was incurred as a direct result of particular conduct which is vexatious and unreasonable. *Stewart v. Courtyard Mgmt. Corp.*, 155 F. App'x. 756, 760 (5th Cir. 2005).

"The standards for bad faith are necessarily stringent," and the court must exercise its power to levy fees for bad faith with restraint. *Batson v. Neal Spelce Associates, Inc.*, 805 F.2d 546, 550 (5th Cir. 1986). Importantly, section 1927 only authorizes shifting fees that are associated with "the persistent prosecution of a meritless claim." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) (citation omitted). The courts often cite repeated filings despite warnings from the court, or other proof of excessive litigiousness, to support imposing sanctions. *See, e.g., Nat'l Ass'n of Govt Employees v. Nat'l Fed'n of Fed. Employees,* 844 F.2d 216, 224 (5th Cir. 1988).

To prevent the courts from dampening "the legitimate zeal of an attorney in representing her client," *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991), the Fifth Circuit has interpreted section 1927 as penal in nature, *FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994). Moreover, courts sitting in the Fifth Circuit have made clear that allegations of negligence of counsel are wholly insufficient to support an award of sanctions under section 1927. *See Hahn v. City of Kenner*, 1 F.Supp.2d 614, 617-18 (E.D. La. 1998); *Bodenheimer v. Williams*, No. 14-740, 2015 U.S. Dist. LEXIS 97577, at *8 (E.D. La. July 27, 2015).

## II.    ARGUMENTS AND ANALYSIS

This was a complex case that was aggressively litigated by both sides. Indeed, the parties agree to the complexity of the case and the manner in which it was litigated. *See, e.g.*, Doc. No. 912 at 23 ("There is no doubt that this case was aggressively litigated by both sides."); Doc. No. 924 at 16 ("[T]he complexity of the case"); Doc. No. 874-1 at 31 ("This case has been intensely litigated over the last five (5) years and aggressively prosecuted by LNC."). LNC provides the following summary of the case:

> This was an extremely complex case with over 15 claims at issue between the two parties and over 850 docket entries to date. Fact discovery has been extensive. The initial fact discovery phase of this litigation commenced in the spring of 2017 and closed on January 31, 2019. EZPZ served 159 document requests on LNC. In response, LNC has produced over 110,000 pages of documents. Similarly, LNC served 255 document requests on EZPZ and EZPZ has produced over 250,000 pages of documents. LNC also served EZPZ with 363 Requests for Admissions and 25 Interrogatories. EZPZ served LNC with 217 Requests for Admissions and 24 Interrogatories. The parties took the depositions of approximately 30 fact witnesses and 9 expert witnesses in multiple cities in the United States and Canada, and served over 35 subpoenas on non-parties (largely to obtain documents and information that should have been provided by EZPZ, but were not). This complex litigation also required extensive use of expert reports and testimony. LNC employed 6 experts and EZPZ employed 3 experts. This case involved numerous discovery issues, including motions to compel the production of documents, motions for protective orders, motions to compel amended responses, and motions to take additional depositions due to the number of key players involved in the prosecution of the '903 Patent.

> At the outset, the parties engaged in substantial claims construction briefing. After the initial discovery phase of this litigation, LNC filed 12 motions for summary judgment, including invalidity motions and noninfringement motions, and two *Daubert* motions. EZPZ also filed one motion for summary judgment, one motion for judgment on the pleadings, and four *Daubert* motions (post-waiver, EZPZ filed a fifth *Daubert* Motion against Mr. Hubbard). Thereafter, there was extensive briefing in connection with LNC's Motion in Limine to Exclude EZPZ from Introducing Evidence as to Mr. Williams and Mrs. Laurain's Intent or State of

Mind in Their Dealings With the USPTO, which ultimately lead to EZPZ's waiver of the patent agent and attorney client privilege, and work product protection. After EZPZ waived privilege, the case went into a substantial second phase of discovery requiring additional written discovery and document productions, the depositions of 8 fact witnesses (three of whom had previously been deposed), and supplemental expert reports.

Once the Court dismissed EZPZ's infringement claims as a result of the invalidity of the '903 Patent, the Court set a jury trial on the remaining issues that was ultimately rescheduled a number of times due to Covid-19. Along the way, at LNC's repeated urging, the parties engaged in extensive efforts to resolve this case, including a mediation suggested and arranged by LNC and two lengthy settlement conferences with Magistrate Judge Perez-Montes. Ultimately the parties prepared for and tried the 8-day inequitable conduct and unclean hands trial and submitted lengthy post-trial findings of fact and conclusions of law based on the hundreds of documents introduced, the 12 deposition designations submitted to the Court and the 1735-page transcript of live testimony.

[Doc. No. 877-1 at 39-40] (footnotes omitted). With this background, the Court now turns to the specific requests by the parties.

### A. Costs Under Fed. R. Civ. P. 54(d)(1).

The Federal Rules of Civil Procedure, governing the taxation of costs, provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." An award of costs under Rule 54(d)(1) presents two separate inquiries. *Power Mosfet Tech., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1407 (5th Cir. 2004). "First, determining who is the 'prevailing party' within the meaning of Rule 54(d)(1). Second, how much (if any) costs should be awarded to the prevailing party." *McGinley v. Luv N' Care, Ltd.*, No. 3:17-CV-00821, 2019 U.S. Dist. LEXIS 121459, at *13-14 (W.D. La. July 19, 2019), *rev'd and remanded on other grounds*, 819 Fed. App'x 913 (Fed. Cir. 2020). The first inquiry has been decided by the court of appeals, which stated that "LNC is the prevailing party - and will remain so no matter how the remand turns out." *Luv N' Care, Ltd. v. Laurain*, 98

F.4th 1081, 1106 (Fed. Cir. 2024).

Regarding the second inquiry, the Fifth Circuit holds that "the prevailing party is prima facie entitled to costs," and a denial of costs is "in the nature of a penalty." *Pacheco v. Mineta*, 448 F.3d 783, 793-94 (5th Cir. 2006) (quoting *Schwarz v. Folloder*, 767 F.2d 124, 131 (5th Cir. 1985)). The award of costs under Rule 54(d) falls within the district court's discretion. *Taniguchi*, 566 U.S. at 565. In the Fifth Circuit, however, the district court's exercise of discretion under Rule 54(d)(1) is subject to "the judicially-created condition that a court 'may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so.'" *Pacheco, supra* at 794 (quoting *Swartz v. Folloder, supra* at 131). The Court in its discretion finds that LNC, as the prevailing party, should be awarded certain costs under Rule 54(d)(1) as enumerated in 28 U.S.C. 1920, for the following reasons.

### 1. Fees Charged by the Clerk – 28 U.S.C. § 1920(1)

LNC argues that it is entitled to recover the $809.00 fee charged by the clerk under 28 U.S.C. § 1920(1). [Doc. No. 866-1 at 1, 16-17]. EZPZ does not object to the fee amount of $809.00 identified by LNC. [Doc. No. 893 at 14]. Accordingly, the amount of $809.00 for fees charged by the clerk is properly taxable to EZPZ as costs and awarded to LNC.

### 2. Fees Paid for Printed and Electronically Recorded Deposition Transcripts – 28 U.S.C. § 1920(2)

LNC argues that "[c]osts related to the taking of depositions are allowed under § 1920(2) and (4) 'if the materials were necessarily obtained for use in the case.'" [Doc. No. 866-1 at 17-18] (citing *Marmillion v. American Intern. Ins. Co.*, 381 Fed. App'x 421, 429 (5th Cir. 2010) (quoting *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999)). LNC contends that the cost incurred by LNC for the fifty-one (51) depositions taken in this case is $103,014.31. [Doc. No. 866-2 at 24] (citing 866-3 at 30-31).

EZPZ responds that in order to be taxable, a deposition must be obtained for trial preparation, rather than mere discovery or the convenience of counsel. [Doc. No. 899 at 15] (citing *Fogelman v. ARAMCO (Arabian Am. Oil Co.),* 920 F.2d 278, 285 (5th Cir. 1991)). EZPZ argues that LNC fails to demonstrate that all of the depositions noticed by it were necessarily obtained for use in the case and not just taken for discovery or the convenience of counsel. *Id.* EZPZ also contends that LNC should not be entitled to the cost of depositions for issues on which it did not prevail. *Id.* EZPZ argues that $43,156.88 should be excluded from the amount, because the depositions went "directly and solely" to the failed LUTPA claim and inequitable conduct claim. *Id.* at 16.

In the Fifth Circuit, "prevailing parties are entitled to recover the costs of original depositions and copies under 28 U.S.C. § 1920(2) and § 1920(4), respectively, provided they were necessarily obtained for use in the case." *Fogleman*, 920 F.2d at 285 (internal quotations omitted). Furthermore. "a deposition need not be introduced into evidence at trial in order to be necessarily obtained for use in the case." *Id.* Costs associated with the deposition or copies thereof are taxable "[i]f, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery." *Id.* "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court," and the district court has "great latitude" in making this determination. *Id.* at 285-86. The Court notes that LNC has prevailed on the inequitable conduct claim on remand, and further finds that the depositions noticed by LNC were necessarily obtained for use in the case. Accordingly, the Court overrules EZPZ's objection and will not reduce the amount by $43,156.88, as requested by EZPZ.

EZPZ next argues that Courts within the Fifth Circuit have refused to award costs for both deposition transcripts and video recordings when the video recordings were not actually used at

trial. [Doc. No. 899 at 17] (citing *Centurytel of Chatham LLC v. Spring Communications, Company, LP*, 2016 WL 4005965 (W.D. La. 2016); *Motion Games LLC v. Nintendo Co., Ltd.,* 2016 WL 9136171, *6 (E.D.Tex. 2016)). EZPZ contends that of the 29 video recorded depositions for which LNC requests costs, only 12 of these videotaped depositions were used at the bench trial. [Doc. No. 899 at 17]. EZPZ further contends that the cost of the 17 video depositions that were not used at the bench trial is $17,078.35, and should be deducted from LNC's cost request. *Id.*

A deposition is necessarily obtained under § 1920(2) "[i]f, at the time the deposition was taken, a deposition could reasonably be expected to be used for trial preparation rather than merely for discovery." *Fogleman ,* 920 F.2d at 285. LNC opening brief details how all of the depositions taken by LNC for which allowable costs are sought were necessarily obtained for use in this action, and with the reasonable belief and expectation at the time that they would be used for trial preparation and at trial. [Doc. No. 866-1 at 19-24]. Accordingly, the Court overrules EZPZ's objection and will not reduce the amount by $17,078.35, as requested by EZPZ.

EZPZ next argues that LNC seeks to recover an amount totaling $10,990.37 for expedited transcript fees. [Doc. No. 899 at 18]. LNC argues that an expedited copy of the deposition transcript of Mr. Jordan Bolton (March 5, 2020) and Mr. Timothy McCarthy (March 10, 2020), for a total cost of $2,170,05, was necessary for an April 1, 2020 deadline after EZPZ decided to waive privilege including documents produced by Clark Hill PLLC. [Doc. No. 866-3 at 11]. The Court is satisfied with LNC's explanation for the costs associated with expediting the deposition transcripts of Mr. Bolton and Mr. McCarthy. Accordingly, the Court overrules EZPZ's objection and will not reduce the amount by $2,170,05, as requested by EZPZ.

However, LNC has provided no explanation for the expedited fees for the other depositions. Instead, LNC contends that they "are properly considered as part of the cost of

obtaining the original transcript over which LNC has no control and are therefore allowable under § 1920(2)." [Doc. No. 904 at 10]. The Court is not persuaded by LNC's conclusory argument. *Maurice Mitchell Innovations, L.P. v. Intel Corp.,* 491 F.Supp.2d 684, 687 (E.D.Tex. 2007)("Incidental expense related to taking the depositions, such as the costs . . . expedited delivery . . . are generally not recoverable."). Indeed, "the extra cost of obtaining a trial transcript on an expedited basis is not taxable unless prior court approval of expedition has been obtained or the special character of the litigation necessitates expedited receipt of the transcript." *Fogleman*, 920 F.2d at 286.

Specifically, EZPZ argues that LNC also seeks costs for expediting the deposition transcript of Lindsey Laurain in an amount of $1,205.82; an expedited transcript of Tamara Falcone in the amount of $4,464.50; an expedited deposition transcript of Jennifer Chua in the amount of $3,067.50; an expedited deposition transcript of Joseph Chua in the amount of $82.50. [Doc. No. 899 at 18] (citing Doc. No. 866-3 at 42, 72, 119). Other than the invoice for Mrs. Laurain's deposition, the expedited charge is not a separate line item for the other depositions, and LNC has not presented a way to distinguish the recoverable transcript cost from the improper expedited cost.

EZPZ contends that it is proper to disallow the entirety of these depositions, because it is LNC's burden to show the recoverable costs. [Doc. No. 899 at 19]. The Court agrees. *See, Realtime Data, LLC v. T-Mobile USA, Inc.,* Civil Action No. 6:10-cv-493, 2013 U.S. Dist. LEXIS 200143, at *7 (E.D. Tex. May 1, 2013) (holding that "[g]iven the lack of detail on [] these invoices and the fact that it is T-Mobile's burden to demonstrate that the costs it seeks are recoverable, the court will sustain Realtime's objection on this point and, because it is impossible to tell what portion of this invoice is recoverable under Section 1920, disallow the invoice entirely."). Accordingly, the

Court sustains EZPZ's objection and reduces the taxable costs for expedited transcript costs by $8,820.32.

EZPZ next argues that LNC seeks costs related to incidentals that are itemized on its Exhibit C, namely (1) litigation support charges; (2) shipping/delivery fees and (3) processing/handling fees, for a total cost of $1,823.90. [Doc. No. 899 at 20] (citing Doc. No. 866-3, Exhibit C (columns I, J, and K)). LNC contends that EZPZ's objection go to deposition charges that are plainly allowable under § 1920(2) such as exhibit tabs, binders, color copies, video synchronization and the like. [Doc. No. 904 at 10]. According to LNC, it "weeded out the voluntary charges to the extent they are unrecoverable as a matter of Fifth Circuit law and the additional incidental deposition charges to which EZPZ now objects are properly considered as part of the cost of obtaining the original transcript over which LNC has no control and are therefore allowable under § 1920(2)." *Id.* (citing *Morales v. Safeway Inc.*, No. 17-825, 2020 WL 1190126, at *4 (E.D. Tex. March 12, 2020)). In a footnote, LNC acknowledges that fact "[t]hat both sides can muster legal support within this circuit seemingly for and against the taxation of some of these incidental deposition costs under §1920 (2) is more a reflection of the exercise of the court's considerable discretion under the particular facts and circumstances involved than the slavish application of immutable Fifth Circuit precedent." [Doc. No. 904 at 10, n.19].

The Court agrees that there is no clear Fifth Circuit caselaw on whether administrative costs; general shipping costs (not expedited); exhibit costs; and binding costs are taxable. However, LNC has not shown that taxation of costs is appropriate for items such as (1) litigation support charges; (2) shipping/delivery fees and (3) processing/handling fees for a total cost of $1,823.90. Likewise, LNC has not shown that taxation of costs is appropriate for incidentals that are embedded within the "transcript" and "video" costs. These include charges such as duplicative

transcript copies, a conference call, a web deposition charge, electronic transcript files, meeting room rental rate, condensed transcripts, administrative fees, and video synchronization among other charges, as itemized by EZPZ in Exhibit 1. [Doc. No. 899-1 at 1-5]. The Court finds that in this case "[c]osts for electronic or digital transcripts, CDs, condensed transcripts, and administrative fees are likewise unrecoverable.". *Richards v. Lufkin Indus. LLC*, No. 9:14-CV-00136-RC, 2019 U.S. Dist. LEXIS 213457, at *10 (E.D. Tex. Mar. 26, 2019). (citing *Harris Corp v. Sanyo No. Am. Corp.*, Case No. 3-98-cv-2712-M, 2002 U.S. Dist. LEXIS 3608, 2002 WL 356755, at *3 (N.D. Tex. Mar. 4, 2002); *see also*, *Canion v. United States*, Case No. EP-03-CA-0347-FM, 2005 U.S. Dist. LEXIS 21265, 2005 WL 2216881, at *3 (W.D. Tex. Sept. 9, 2005)).

In addition, some line items characterized as "deposition exhibits" on Exhibit C include tabs and binders either separately or combined with the cost of "exhibits." [Doc. No. 866-3]. It is proper to disallow all amounts since it is LNC's burden to demonstrate that the amounts are recoverable. Accordingly, the Court concludes that LNC has not met its burden of showing that taxation of costs on EZPZ is warranted for remaining items in Exhibit 3. Therefore, the Court sustains EZPZ's objection and reduces the taxable cost for incidentals related to the depositions by $15,495.74.

EZPZ further argues that there is no itemized invoice for the deposition of Zachary Garthe, which LNC claims an amount of $3,866.72. [Doc. No. 899 at 22]. LNC does not respond or provide a reason why an invoice for this deposition was not included. [Doc. No. 904 at 9-10]. As discussed above, several of the invoice submitted by LNC included impermissible incidentals. Because this invoice cannot be analyzed, the Court find that LNC's asserted cost for this deposition should be denied in whole. Accordingly, the Court sustains EZPZ's objection and reduces the taxable cost for the deposition of Zachary Garthe by $3,866.72.

The following table summarizes the reduction and provides the total taxable cost under 28 U.S.C. § 1920(2).

| | |
|---|---|
| *LNC's Original Submission under 28 U.S.C. § 1920(2).* | $103,014.31 |
| Reduction for expedited transcript costs. | -$8,820.32 |
| Reduction for incidentals related to depositions. | -$15,495.74 |
| Reduction for the deposition of Zachary Garthe. | -3,866.72 |
| **Total allowable taxable cost under 28 U.S.C. § 1920(2).** | **$74,831.53** |

### 3. Fees and Disbursements for Witnesses – 28 U.S.C. §§ 1821 and 1920(3)

LNC next argues that it is entitled to recover fees and disbursements for witnesses under 28 U.S.C. §§ 1821 and 1920(3). [Doc. No. 866-1 at 25]. Specifically, LNC contends that it is entitled to $986.28 representing witness attendance fees, per diem costs and travel expenses for two of its trial witnesses: (1) Dr. Nancy Albers, LNC's survey expert; and (2) Mr. Marc Hubbard, LNC's patent law expert. [Doc. No. 866-1 at 25-26]. EZPZ does not object to the fee amount of $986.28 identified by LNC. [Doc. No. 899 at 23]. Accordingly, the amount of $986.28 for fees and disbursements for witnesses is properly taxable to EZPZ as costs and awarded to LNC.

### 4. The Costs of Exemplification and Making Copies – 28 U.S.C. § 1920(4)

LNC next contends that it is entitled to recover the costs for exemplification and making copies under 28 U.S.C. § 1920(4). [Doc. No. 866-1 at 26]. Specifically, LNC seeks recovery of the costs of providing the Court with two copies of its trial exhibits, the cost of a copy of the Trial Transcript, the cost of exemplification of certain patent-related documents on LNC's Exhibit List, the costs associated with the preparation of trial graphics and demonstratives, and the costs associated with LNC's courtroom trial technician in the total amount of $181,068.19. [Doc. No. 866-1 at 26].

EZPZ does not object to the fee amount of $5,504.33 identified by LNC for two copies of exhibit notebooks for the Court. [Doc. No. 899 at 23]. Accordingly, the amount of $5,504.33 for two copies of exhibit notebooks for the Court is properly taxable to EZPZ as costs and awarded to LNC.

EZPZ objects to LNC's request for the trial transcript of $6,285.30, which was used to update the findings of fact and conclusions of law at the Court's request. [Doc. No. 899 at 23]. EZPZ notes that the Court ordered the parties to each pay half of the transcript costs, and that it did not object. *Id.* at 24 (citing Doc. No. 837 at 1733:2-5). EZPZ contends that LNC is asking the Court to reallocate the costs the Court already ordered would be borne equally by both sides. The Court disagrees and finds that this cost is properly taxable to EZPZ as costs and awarded to LNC as the prevailing party under Rule 54(d) and § 1920(4). Accordingly, the Court overrules EZPZ's objection and will not reduce the amount by $6,285.30, as requested by EZPZ.

EZPZ next objects to LNC's request in the amount of $1,080.00 related to obtaining certified copies of patent documents from the USPTO. [Doc. No. 899 at 24]. According to EZPZ, this cost was not necessarily obtained for use in the case, because EZPZ stipulated to the '903 Patent and its file wrapper which was at issue in the bench trial. *Id.* The Court disagrees with EZPZ. These certified copies from the USPTO were "necessarily obtained for use in the case" under § 1920(4). For example, these certified records may have potentially dissuaded EZPZ from foundational challenges at the bench trial or facilitated EZPZ's stipulating to their authenticity. Accordingly, the Court overrules EZPZ's objection and will not reduce the amount by $1,080.00, as requested by EZPZ.

EZPZ also objects to LNC's request in the amount of $43,819.20 in costs for fees incurred by Courtroom Graphics & Animation, Inc. [Doc. No. 899 at 24] (citing Doc. No. 866-3 at ¶ 27 and

Exhibit D-3 attached thereto). EZPZ argues that the fees in this category are not simply for exemplification or making copies of exhibits to be used at trial but are for preparing charts, creating times lines, reviewing documents and deposition transcripts, and performing other research. *Id.* According to EZPZ, review of the entire Exhibit D-3 makes clear that all the costs listed on Exhibit D-3 appear to be costs incurred for performing paralegal type services and other assistance to counsel for counsel's convenience. *Id.* at 27.

EZPZ further contends that this District's Guide to Practice provides that "trial evidence assistance from outside company" is an item "not usually taxable." [Doc. No. 899 at 27] (citing GUIDE to PRACTICE IN THE U.S DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA ("GUIDE TO PRACTICE"), October 2019, https://www.lawd.uscourts.gov/guide-practice, p. 21, item (j)). EZPZ further argues that "it is well settled that costs for charts, models and photographs may be taxed as costs only if there is pretrial authorization by the trial court." [Doc. No. 899 at 27] (citing *J.T. Gibbons v. Crawford Fitting Co.,* 760 F.2d 613, 615 (5th Cir. 1985)). EZPZ contends that it is undisputed that LNC did not receive prior court approval for these services. [Doc. No. at 28]. Finally, EZPZ argues that demonstrative exhibits were unreasonable and unnecessary, because it was a bench trail. *Id.* (citing *Schmidt v. United States*, No. 1:18-CV-0088-DAE, 2021 U.S. Dist. LEXIS 252113, at *18 (W.D. Tex. Jan. 12, 2021)).

EPZP also objects to LNC's request in the amount of $124,379.36 in costs for its courtroom technician, Ms. Stephanie Franks of Trial Concepts. [Doc. No. 899 at 29] (citing Doc. No. 866-1 at 21-22 and Doc. No. 866-3 at ¶ 28 and D-4 attached thereto). EZPZ contends that the requested fees for Ms. Franks is not just for trial time, but also for time spent in the months leading up to the trial that Ms. Franks spent in preparing video clips and organizing documents. [Doc. No. 899 at 29]. EZPZ further contends that 28 U.S.C. § 1920 does not authorize the taxation of the fees of a

party's personal trial technician. *Id.* at 29-30 (citing *Coates v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5thCir. 1993)).

LNC responds that there are numerous decisions within this circuit where the requirement for pre-trial authorization is not imposed, including patent cases. [Doc. No. 904 at 13]. LNC also argues that courts have awarded the fees charged by a technical assistant consultant both before and during trial under § 1920(4) notwithstanding the defendant's objection that plaintiff did not receive pre-trial approval from the court. *Id.* (citing *Crane v. Rave Rest. Group, Inc.*, No. 20-13, 2022 WL 403291, at *13 (E.D. Tex. Feb. 9, 2022)). LNC further contends that courts in a host of cases have awarded these types of fees without preauthorization, because the services of the technical assistant consultant "were anticipated, useful, and necessary" in impeaching a critical witness using video clips, in highlighting and examining documents, and the display and enlargement of email and other written communications. [Doc. No. 904 at 13].

LNC also argues that the "Introduction" to the Court's Guide to Practice states that "[i]t is not a definitive statement of the law and may not be cited as such," and "[i]f there is a discrepancy with this Guide and the Federal Rules, the Federal Rules are controlling and not this Guide." [Doc. No. 904 at 12-13] (citing Guide at 1). Finally, LNC contends that the Court is in the best position to determine whether LNC's use of trial graphics and demonstrative exhibits during opening statement, in the examination and cross-examination of witnesses, and in closing argument contributed to the clarity of the facts and issues addressed and further promoted the economical and efficient presentation of evidence within the allotted time. [Doc. No. 904 at 14].

The Court notes that there is a circuit split concerning the meaning of the word "exemplification," as used in section 1920(4). The Seventh Circuit "has adopted a broad[] definition of exemplification, taken from standard English language dictionaries." *Summit Tech.,*

*Inc. v. Nidek Co.*, 435 F.3d 1371, 1377 (Fed. Cir. 2006). Other circuits, however, employ the "narrow" definition of "exemplification" that is set forth in Black's Law Dictionary, which defines exemplification as "an official transcript of a public record, authenticated as a true copy for use as evidence." *Id.* at 1375 (citing *Kohus v. Cosco, Inc.*, 282 F.3d 1355 (Fed. Cir. 2002)) (quoting Black's Law Dictionary 593 (7th ed. 1999)). The Federal Circuit was further persuaded "that the First Circuit would adopt the narrow, legal definition of the term 'exemplification' endorsed by *the Fifth Circuit*, the Eleventh Circuit, and this court applying Sixth Circuit law." *Id.* at 1377 (emphasis added).

Consistent with the Federal Circuit's analysis in *Summit Tech.*, EZPZ cites to the Fifth Circuit's decision in *Coats v. Penrod Drilling Corp.*, which held that fees incurred for a "video technician . . . are not included in § 1920 and therefore are not recoverable." 5 F.3d 877, 891 (5th Cir. 1993). LNC does not address *Coats*, but instead cites to a number of district court cases within the Fifth Circuit that have found these types of costs are taxable. [Doc. No. 904 at 13-14]. Although these cases are persuasive, LNC does not cite to any binding precedent. Accordingly, the Court finds that it is bound by the narrow interpretation of "exemplification," as identified in *Coats*.

The Court certainly agrees that Ms. Franks' services made the presentation of evidence more efficient and convenient to the parties, and aided LNC's presentation at the bench trial. However, the Court also agrees that "no plausible reading of its provision for 'fees for exemplification' permits recovery for expenses resulting from the time an A/V technician spends in trial." *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, No. 5:14-cv-35-RCL, 2021 U.S. Dist. LEXIS 93321, at *54 (W.D. Tex. May 17, 2021).

Indeed, this reading "transforms § 1920(4) from a tool to recover 'relatively minor, incidental expenses' into a roving warrant to recover potentially millions of dollars expended on

graphics and demonstratives." *Id.* at *36. "While Congress has provided specific statutory authority to award witness expenses, *see* 28 U.S.C. § 1821, it has not provided the necessary guidance to similarly apply § 1920's award of exemplification costs in today's high technology courtrooms." *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, No. C06-110-MWB, 2009 U.S. Dist. LEXIS 72572, at *38 (N.D. Iowa Aug. 17, 2009). Accordingly, the Court sustains EZPZ's objection and reduces the taxable costs for LNC's courtroom technician, Ms. Stephanie Franks of Trial Concepts cost by of $124,379.36.

Similarly, the court of appeals in *Summit Tech.* held that fees paid to a company that "prepar[ed] trial exhibits, including computer animations, videos, Powerpoint presentations, and graphic illustrations" were not exemplification costs recoverable under § 1920. *Summit Tech.*, 435 F.3d at 1375 (Fed. Cir. 2006); *see also Kohus v. Cosco, Inc.*, 282 F.3d 1355, 1359 (Fed. Cir. 2002) ("A video obviously is not a copy. Nor is it an exemplification when that term is given its legal definition of '[a]n official transcript of a public record, authenticated as a true copy for use as evidence.'") (quoting Black's Law Dictionary 593 (7th ed. 1999)); *Taniguchi*, 132 S. Ct. at 2006 ("Our decision is in keeping with the narrow scope of taxable costs.").

Furthermore, LNC has the burden of showing that it is entitled to these costs, and LNC has not met its burden. LNC argues that the date of the invoice, the date of the bench trial, and a review of the description of the fees broken out for the creation of each graphic identified by number and subject matter confirms that Courtroom Graphics was preparing trial graphics "necessarily obtained for use at trial." [Doc. No. 904 at 14]. The Court finds that a number of the entries appear to be costs incurred for performing paralegal type services and other assistance to counsel for counsel's convenience. These are not the costs of exemplification or copies or preparation of exhibits for trial. For example, the entries include "searched internet," "searched Fileshare

documents and spreadsheet for …," "[r]eviewed Olds deposition," "[r]ead MSJ to find LUTPA claims," and "[r]eviewed  marketing info received." [Doc. No. 866-3 at 152-156]. As discussed above, 28 U.S.C. § 1920 does not provide for the awards of such costs. Accordingly, the Court sustains EZPZ's objection and reduces the taxable costs for Courtroom Graphics & Animation, Inc. cost by $43,819.20.

The following table summarizes the reduction and provides the total taxable costs under 28 U.S.C. § 1920(4).

| | |
|---|---|
| *LNC's Original Submission under 28 U.S.C. § 1920(4).* | *$181,068.19* |
| Two copies of exhibit notebooks for Court. | $5,504.33 |
| Copy of Trial Transcript. | $6,285.30 |
| Cost of exemplification of certain patent-related documents. | $1,080.00 |
| Reduction for costs associated with preparation of trial graphics and demonstratives. | -$43,819.20 |
| Reduction for costs associated with courtroom trial technician. | -$124,379.36 |
| **Total allowable taxable cost under 28 U.S.C. § 1920(4).** | **$12,869.63** |

### 5.  The Portion of the Fees of the Court Appointed Technical Expert – 28 U.S.C. § 1920(6)

LNC argues that allowable costs under § 1920(6) includes recovery of the portion of the court-ordered "[c]ompensation of court appointed experts" paid by LNC throughout this case. [Doc. No. 866-1 at 32-33]. LNC notes that the Court appointed Mr. Scott Woloson to serve as the Court's technical advisor on April 10, 2019. *Id.* (citing Doc. No. 273). LNC further notes that each party was directed to pay one-half of Mr. Woloson's compensation. *Id.* LNC argues that it is entitled to recovery that portion of the technical advisor fees under § 1920(6), because it is a cost specifically taxed to the parties. *Id.*

EZPZ responds that Fed.R.Evid. 706(b) provides that expert's fees are taxable as costs to the losing party. [Doc. No. 899 at 32] (citing *Aiello v. Town of Brookhaven*, 149 F.Supp.2d 11 (E.D.N.Y. 2001)). EZPZ argues that the case law is clear that a technical advisor is not the same as a technical expert under Rule 706. [Doc. No. 899 at 33] (citing *TechSearch LLC v. Intel Corp.*, 286 F.3d 1360, 1380 (Fed. Cir. 2002)). EZPZ further contends that courts have held that when the expert is not appointed under Rule 706, their fees are not "costs" under Rule 54 and §1920(6). [Doc. No. 899 at 33] (citing *Nat'l Org for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 545, n. 7 (9th Cir. 1987)). EZPZ argues that the Order appoints Mr. Woloson as a technical advisor, and not as a court appointed expert pursuant to Rule 706. [Doc. No. 899 at 34]. EZPZ contends that LNC is asking the Court to reallocate the costs the Court already ordered would be borne equally by both sides. *Id.* EZPZ further contends that there is nothing here supporting a reallocation of the costs resulting in EZPZ paying 100% of Mr. Woloson's fees. *Id.* at 34-36.

LNC responds that it is not relevant that Mr. Woloson is not a Rule 706 expert for fees under § 1920(6). [Doc. No. 904 at 16]. LNC also argues that the Court's Order appointing Mr. Woloson does not preclude later taxation of these fees under Rule 54(d) and § 1920(6) to LNC as the prevailing party. *Id.* LNC further contends that such costs are routinely re-allocated and taxed in favor of the prevailing party under Rule 54(d) and § 1920(6) at the end of the case. *Id.* LNC also argues that this is such a common occurrence that the non-prevailing party in a patent case in this circuit frequently chooses not to contest the award of the fees paid for the technical advisor to the prevailing party. *Id.* According to LNC, all of the fees charged by Mr. Woloson should be awarded as costs in favor of LNC. *Id.* at 17.

Fed. R. Civ. P. Rule 54(d)(1) allows a "prevailing party" to recover "costs-other than attorney fees." Although the awarding of costs is discretionary, the costs under Fed. R. Civ. P.

Rule 54(d) are limited to those enumerated in 28 U.S.C. 1920. *Gaddis v. United States*, 381 F.3d 444 (5th Cir. 2004). The laws of the regional circuit govern the issue of costs in a patent infringement case. *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1325 (Fed. Cir. 2013).

In *Gaddis v. United States*, 381 F.3d 444 (5th Cir. 2004) (en banc), the Fifth Circuit determined whether a district court could tax guardian ad litem fees as costs against non-prevailing parties under the Federal Tort Claims Act. The district court appointed guardian ad litem for a minor child in accordance with Fed. R. Civ. P. Rule 17(c). Guardians' ad litem fees totaled $46,299.00. The district court ordered that the guardian ad litem fees be taxed as court costs. In opposing the guardian ad litem fees as costs, one of the defendants' arguments was that guardian ad litem fees are not authorized costs pursuant to 28 U.S.C. 1920.

The Fifth Circuit found the district court had inherent authority to tax the guardian ad litem fees as costs to the non-prevailing party. Likewise, under this Court's inherent authority, this Court has authority to tax and to reallocate the costs of the technical expert to the non-prevailing party.

The initial Order clearly intended the costs to be taxed to the parties. Additionally, the *In re Two Appeals* case, cited as authority in the Order, held that a district court possessed authority to reallocate court-imposed case management expenses. The technical advisor fees were a necessary part of this complex proceeding. The technical advisor was needed to assist the Court. Because LNC was the prevailing party in this proceeding, LNC's portion of the technical advisor costs should be allocated to EZPZ. Accordingly, the amount of $113,834.50 for the Court appointed Technical Advisor is properly taxable to EZPZ as costs and awarded to LNC.

### 6. Summary of Taxable Cost Under Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920.

The following summarizes the taxable costs against EZPZ and awarded to LNC, for the

reasons discussed above.

| | |
|---|---|
| Taxable costs under 28 U.S.C. § 1920(1). | $809.00 |
| Taxable costs under 28 U.S.C. § 1920(2). | $74,831.53 |
| Taxable costs under 28 U.S.C. §§ 1821 and 1920(3). | $986.28 |
| Taxable costs under 28 U.S.C. § 1920(4). | $12.869.63 |
| Taxable costs under 28 U.S.C. § 1920(6).[2] | $113,834.50 |
| **Total Fees properly taxable to EZPZ as costs and awarded to LNC.** | **$190,461.31** |

### B. Fees Pursuant to La. Rev. Stat. § 51:1409 and 15 U.S.C. § 1117(a).

As discussed above, the Court has discretion in determining whether to award attorney's fees under LUTPA. The Court in its discretion declines to award attorney's fees under LUTPA, because EZPZ failed to show by a preponderance of the evidence that the suit was brought in bad faith or for purposes to harass.

As discussed above, the Court has discretion in determining to whether a case is exceptional under 15 U.S.C. § 1117(a). The Court in its discretion declines to award attorney's fees under 15 U.S.C. § 1117(a), because as it relates to LNC's conduct, the case does not stand out from others with respect to the substantive strength of a party's litigating position; and EZPZ did not show that LNC litigated the case in an "unreasonable manner," as it relates to these claims.

### C. Fees Pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927 and/or the Court's Inherent Power.

As discussed above, the Court has discretion in determining whether to award attorney's fees under 35 U.S.C. § 285. The court of appeals resolved an essential prerequisite of the Section

---

[2] The Court notes that the technical advisor's fees at the time of this ruling does not include any post-appeal invoices from Mr. Woloson. Any post-appeals invoices are properly taxed to EZPZ for the same reason discussed herein. LNC is responsible for paying its portion of Mr. Woloson's fees for post-appeal invoices directly to Mr. Woloson and then collecting that portion from EZPZ.

285 analysis by holding "LNC is the prevailing party – and will remain so no matter how the remand turns out." *Luv N' Care*, 98 F.4th at 1106. The only issue before the Court is whether this case is "exceptional." The court of appeals noted that an "exceptional" case is "simply one that stands out from others" with respect to either "the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)" or "the unreasonable manner in which the case was litigated." *Id.* at 1105 (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014)). The court of appeals also noted that "[t]he determination whether a case is 'exceptional' requires the consideration of 'the totality of the circumstances.'" *Id.*

Courts asked to find a patent case exceptional consider the following factors: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *In re Rembrandt Techs. LP Patent Litigation*, 899 F. 3d 1254, 1277 (Fed. Cir. 2018) (internal citation omitted). The totality of circumstances in this case indicates that an award of attorneys' fees is warranted, especially given the Court's find of inequitable conduct on remand and the finding of unclean hands. It is clear that EZPZ litigated this case in an unreasonable manner. Indeed, the court of appeals affirmed this Court's ruling that EZPZ "by deceit and reprehensible conduct attempted to gain an unfair advantage" in the litigation, and that EZPZ's conduct was "offensive to the integrity of the [c]ourt." *Luv N' Care*, 98 F.4th at 1095. Likewise, the calculated manner by which Mr. Williams and Mrs. Laurain committed inequitable conduct before the PTO also weighs in favor of an award of fees under § 285. *Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, 421 F. Supp. 3d 410, 413 (E.D. Tex. 2019).

The following is a summary of the findings that indicate that the case is exceptional. A

detailed explanation for each of these findings is included in the Court's Second Amended Findings of Fact and Conclusions of Law.[3] Considering the totality of circumstances, it is clear to the Court that if this case is not determined to be exceptional, then there would be no deterrence for litigants from being dishonest and evasive with their opponents, and/or there would be no deterrence for patent applicants from purposely hiding the ball when dealing with the PTO. This is the complete opposite of the goal for each of these forums, which is to promote justice and fairness in "an honest search for the light of truth." *Mathis v. Spears*, 857 F.2d 749, 757 (Fed. Cir. 1988) (affirming award of expenses under § 285). EZPZ's actions resulted in a significant amount of wasted time and resources, and LNC should be made whole by EZPZ for the tremendous costs, distraction, and business interruption it has inflicted upon LNC in the last eight and a half years of this litigation.

Specifically, Mrs. Laurain's and Mr. Williams' choice to misrepresent the Platinum Pets mat to the PTO during prosecution was purposeful, deliberate, and egregious.[4] The evidence before the Court establishes that (1) the Platinum Pets mat exhibits self-sealing, (2) Mrs. Laurain and Mr. Williams knew the Platinum Pets mat self-sealed because they had observed the Platinum Pets self-sealing to the underlying surface to some extent before separating from the surface, and (3) Mrs. Laurain and Mr. Williams knew the examiners were looking for a silicone mat that self-

---

[3] Cites to the record can be found in the Court's Second Amended Findings of Fact and Conclusions of Law.

[4] In its supplemental briefing, EZPZ argues that the reexamination "provides valuable context on materiality, especially when omitted information does not affect patentability." [Doc. No. 964 at 19]. The Court finds that whatever happened during reexamination has no relevance to affirmative egregious misconduct during the original prosecution. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) ("Unlike other deficiencies, inequitable conduct cannot be cured by reissue, *Aventis*, 525 F.3d at 1341, n. 6 or reexamination, *Molins PLC v. Textron, Inc*., 48 F.3d 1172, 1182 (Fed. Cir. 1995)."); *In re Serekin*, 479 F.3d 1359, 1362 (Fed. Cir. 2007) (deliberate action of an inventor or attorney during prosecution cannot be corrected through reissue).

sealed to replace the Lion reference. Mrs. Laurain and Mr. Williams misrepresented the characteristics and actual functionality of the Platinum Pets mat by listing it as a prior art device made of silicone that does not "Effect Surface Contact Self-Sealing," and specifically argued that "[e]ven though made of silicone, [the Platinum Pets mat] fails to make sealable contact with an underlying surface."



Mrs. Laurain and Mr. Williams further perpetuated the misrepresentation by creating two possible videos of the Platinum Pets mat to submit to the PTO. The first video contained a clearly audible suction sound because the mat had created a partial vacuum under the surface. Mr. Williams made a conscious and deliberate choice, and Mrs. Laurain knowingly agreed, not to disclose the first video (*i.e.*, the Undisclosed Video) to the PTO where the mat made a "suctioning noise" and "tries to self-seal." They instead decided to disclose only the second video (*i.e.*, the Disclosed Video) where "the dog bowl comes away very easily without making a suctioning noise." This was an affirmative and intentional decision to mislead the PTO. Their argument that Platinum Pets mat "fails to make sealable contact with an underlying surface" was shown to be completely false by Mr. Hubbard's demonstration during the bench trial. Contrary to what they

told the PTO, the Platinum Pets mat made "sealable contact with an underlying" glass surface and prevented air from infiltrating underneath the mat. Indeed, EZPZ's own technical expert admitted on cross-examination that the Platinum Pets mat does self-seal to some extent.

Mrs. Laurain and Mr. Williams also intentionally did not disclose prior art references that: (1) were made of silicone, (2) were preventative of lateral displacement, and (3) had the self-sealing characteristic, which would have taught more than the Platinum Pets mat as misrepresented by Mrs. Laurain and Mr. Williams, and therefore were non-cumulative. These other self-sealing references were the type of prior art the PTO was looking for. Furthermore, Mrs. Laurain and Mr. Williams submitted false affidavits to the PTO claiming that the product achieved commercial success due to the product itself and/or its self-sealing property "without a need for extensive advertising or branding whatsoever," "absent persuasion by branding or marketing strategies," and "not due to any advertising or branding." Mrs. Laurain and Mr. Williams were fully aware of EZPZ's branding and marketing activities, and therefore knew (based on direct evidence) that the statements in the declarations concerning a lack of "marketing strategies" and 'branding" were false. The evidence further shows that Mrs. Laurain and Mr. Williams were significantly involved in the preparation of the false declarations submitted to the PTO.

Regarding litigation misconduct, EZPZ did not disclose and withheld held documents during discovery regarding the filing and prosecution of related patent applications. These applications had the identical specification consisting of the background of the invention, the field of the invention, the summary of the invention, the drawings, and the detailed description of the drawings as found in the '903 Patent. Specifically, Application 15/700,403 ("'403 Application") was never published, and never made available to the public from the PTO. Thus, LNC could not have learned of its existence unless disclosed by EZPZ. Likewise, Application 16/207,976 ("'976

Application) and Application 16/717,824 ("'824 Application"), were not published until January 31, 2020 and April 23, 2020, respectively. Again, LNC could not have learned of their existence or the contents of the file wrapper unless EZPZ identified and produced them at an earlier time. Moreover, EZPZ only produced the '403 Application, the '824 Application, and the '976 Application to LNC after LNC obtained an Order of this Court requiring their production. As the court of appeals confirmed, "EZPZ's failure to disclose the prior art searches undermined LNC's ability to press its invalidity and unenforceability challenges." *Luv N' Care,* 98 F.4th at 1096.

Mrs. Laurain also failed to disclose her prior art searches during the course of the litigation, despite LNC's Requests for Production requesting all documents reflecting prior art searches. These documents were only produced when Clark Hill, Brenda Speer, and Mr. Williams were subpoenaed. None of the Patent Searches performed by Mrs. Laurain were listed on EZPZ's privilege log. When asked whether she had a printout of any prior art searches or whether she had maintained a file of her searches during her May 14, 2018 deposition, Mrs. Laurain requested definitions of simple words with ordinary and commonly understood meanings (*i.e.,* the word "file,"). For example, Mrs. Laurain testified she did not "know what a  file" was and repeatedly asked for LNC's counsel to "show" her what prior art searches he was referring to.

Yet, the evidence at trial established that Mrs. Laurain prepared no less than  three versions of her Patent Search documents.  The various versions of Mrs. Laurain's Patent  Searches are crucial evidence and reflect that Mrs. Laurain had located key prior  art during her initial prior art searches well before the July 17, 2014 filing of the '682  Application. Only when LNC subpoenaed EZPZ's patent attorneys and patent agents did LNC finally obtain Mrs. Laurain's various prior art searches. Mrs. Laurain h a d  n o  c r e d i b l e  explanation for not producing the Word document of  the patent search documents. Indeed, Mrs. Laurain sent her patent search

to various counsel (including counsel of record) and her patent agent. Mrs. Laurain was aware that Mr. Williams, Mr. Bolton, and Mr. McCarthy were in possession of her patent searches. They could have retrieved and produced the patent search from the emails they received, even if Mrs. Laurain no longer had the emails she sent.

Furthermore, Mrs. Laurain and Mr. Bolton gave evasive testimony in depositions and during the bench trial. Ms. Laurain remembered very little that was not in a document placed before her when asked by opposing counsel, but had no problem recalling information that she deemed favorable to her case. Likewise, Mrs. Laurain testified that she didn't start a boycott with the social media #boycottnuby campaign, which was directly contradicted by the documentary evidence.

For his part, Mr. Bolton could not recall virtually anything that occurred during the prosecution of the '903 Patent. In the three hours played from his video deposition taken March 5, 2020, Mr. Bolton responded with "I don't recall," "I don't know," or some variation thereof, to nearly every question asked of him (nearly 300 times). When shown emails to refresh his recollection, Mr. Bolton claimed his memory was not refreshed. Mr. Bolton's testimony was purposefully evasive, generally dismissive of the contemporaneous documentary evidence, and lacked credibility.

Accordingly, after considering of the totality of the circumstances in this case, the Court finds that it stands out from others because of the unreasonable manner in which the case was litigated, and the inequitable conduct of Mrs. Laurain and Mr. Williams during the prosecution of the '903 Patent. Ultimately, LNC would not have incurred the costs and fees sought to be recovered had EZPZ not engaged in such improper and reprehensible conduct both before the USPTO and during this litigation. Therefore, the Court finds the case is exceptional.

After determining that a case is exceptional, a district court retains the discretion to award attorney's fees based on its familiarity with the litigation and the interest of justice. *See, Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 2015). As discussed above, this was an extremely complex case with over 15 claims at issue between the two parties and over 970 docket entries to date. The vast majority of work in this case related to the prosecution or defense of EZPZ's infringement claim based on the now unenforceable '903 Patent. Indeed, the '903 Patent was the pre-eminent claim in this litigation in terms of the focus of discovery, motion practice, expert witness testimony and damages. But for EZPZ's claim that LNC had copied Mrs. Laurain's then unissued patent and assertion of infringement of the '903 Patent, none of this work would have been necessary. The billing records indicate that LNC spent a much smaller amount of legal effort defending EZPZ's claims of willful design patent infringement and trade dress infringement, which were the only claims remaining after dispositive motion practice.

In addition to seeking fees for the prosecution of its declaratory judgment claim and defense against EZPZ's utility patent infringement claim, LNC also seeks to recover for the work it did in connection with EZPZ's design patent and trademark infringement claims which were dismissed as part of the Court's unclean hands ruling. [Doc. No. 877-1 at 42]. LNC states that it does not seek to recover legal fees incurred for prosecuting its claims under the LUTPA and the Lanham Act. *Id.* According to LNC, it has carefully reviewed each bill to remove any time incurred by LNC related solely to its LUTPA and Lanham Act claims against EZPZ (and not also necessary for the presentation of evidence at the bench trial on other issues or used in support of this motion), and other time that LNC deemed to be excludable. *Id.* Based on this, LNC seeks the amount of $5,121,809.24 incurred from Liskow & Lewis; $984,240.82 for in-house council; and $161,101.71 from Lewis Roca for fees and expenses pre-appeal. [Doc. No. 951 at 1]. LNC also seeks the amount

of $790,559.34 incurred from Liskow & Lewis; and $162,158.64 for in-house council for fees related to the appeal. *Id.* LNC has submitted declarations attesting to the reasonableness of the rates charged by Liskow & Lewis to LNC for the work performed in this matter. (Doc. Nos. 877-13, 877-14].

LNC also argues that in connection with serving subpoenas, it was forced to hire the Lewis Roca law firm to compel the production of documents from Mr. Williams' company, Williams Intellectual Property ("WIP"), and from Blue Basin Medical, a company owned by Mrs. Laurain's husband, Brad Laurain. In both cases, the subpoena recipient working with counsel for EZPZ strenuously resisted LNC's efforts to obtain documents, requiring a substantial amount of legal work. However, in both cases LNC prevailed. The United States District Court for the District of Nevada found Brad Laurain and Blue Basin Medical in contempt of court for failing to produce documents pursuant to the Court's order and ordered Blue Basin Medical and Mr. Laurain to pay LNC's reasonable attorney's fees and costs. *Luv N' Care Ltd. v. Laurain*, No. 2:18-cv-02224-JAD-EJY, 2019 U.S. Dist. LEXIS 154761, at *2 (D. Nev. Sep. 10, 2019).

Additionally, the United States District Court for the District of Colorado found numerous documents listed on the WIP privilege log were not protected from disclosure under any asserted privilege due to WIP's failure to provide sufficient information to establish the alleged privilege and ordered WIP to produce over 800 documents. *Luv N' Care, Ltd. v. Williams Intell. Prop.*, No. 18-00212, 2019 WL 2471318 (D. Colo. June 12, 2019). WIP's production resulted in the disclosure of some of the most significant documents in this case (including Mrs. Laurain's prior art search that had not been produced by EZPZ during fact discovery, Mrs. Laurain's lack of candor under oath, and despite repeated representations from EZPZ and its counsel that all such documents had already been produced and were not being withheld on grounds of privilege).

EZPZ responds that most of LNC's fees relate to the '903 Patent, and that LNC did not distinguish between its infringement defenses, invalidity claims, and unenforceability defense. (Doc. No. 912 at 45). EZPZ also argues that LNC has made no attempt to apportion its attorneys' fees appropriately to address just the misconduct identified. *Id.* According to EZPZ, multiple entries listed by LNC include fees incurred for infringement defense, invalidity defense, inequitable conduct, the LUTPA claim, trade dress and design patent defense that go far and beyond any finding of unclean hands. *Id.* EZPZ also contends that LNC has not requested an award that bears any relation to the extent of the misconduct. *Id.* EZPZ further contends that it has already paid a significant price for the identified misconduct, including the loss of design patent infringement damages and trade dress claim damages. *Id.* at 46.

EZPZ next contends that to the extent that LNC is entitled to attorneys' fees, most of the identified misconduct did not exist at the beginning of the case. *Id.* at 47. EZPZ argues that LNC fails to identify specifically what time was spent to redress the identified misconduct, and it has failed to meet its burden of proof. *Id.* at 55-58. EZPZ also contends that LNC cannot meet the requisite standard to recover $323,622.69 in expert's fees under the "inherent power" of the court. *Id.* at 58. EZPZ argues that the Court must first find this case "very exceptional," that the misconduct was "egregious," and that to not award these fees would be "grossly unjust." *Id.* (citing *Amsted Indust. Inc. v. Buckley Steel Casings Co.*, 23 F.3d 374 (Fed. Cir. 1994)). EZPZ also argues that the time consumed in settlement negotiations involved patent infringement, inequitable conduct and LUTPA claims, should not be included, because EZPZ previously prevailed on these claims. [Doc. No. 912 at 59]. Likewise, EZPZ contends that there is no rational basis for awarding attorneys' fees on or preparing for trial regarding LUTPA, inequitable conduct and patent infringement issues, because EZPZ was previously the prevailing party. *Id.* at 59-60.

In its supplemental briefing, EZPZ argues that even if the Court were to find inequitable conduct and that it is an exceptional case, the Court should exercise its discretion to decline an award of attorneys' fees. [Doc. No. 964 at 35]. EZPZ contends that the "[e]ven if the Federal Circuit's remand results in a different outcome, EZPZ's initial success highlights that this was a close question, falling short of the threshold for exceptionality." *Id.*at 36. EZPZ also argues that the Court should also take into account the protracted and challenging nature of this litigation. *Id.* at 37. EZPZ further argues that it also achieved a favorable ruling at the Federal Circuit, which confirmed that its patent was not obvious as a matter of law. *Id.* According to the EZPZ, awarding fees to LNC under these circumstances would not further justice, but instead would penalize a party that defended itself in good faith. *Id.* at 38.

EZPZ also argues that several factors support the denial of costs. *Id.* at 40 (citing *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006)). EZPZ contends that it is a small business whereas LNC self-identifies as "one of the leading baby product companies in the world" *Id.* (citing Doc. No. 21 at 5, ¶ 9). EZPZ also argues that LNC's aggressive, scorched-earth litigation tactics have been the primary driver behind the bulk of its own costs and fees. [Doc. No. 964 at 40-41]. Finally, EZPZ contends that the Court has already recognized the close and difficult legal issues at stake in this case. *Id.* at 41.

Contrary to EZPZ's contention, the Court's finding of inequitable conduct significantly changes the consideration in awarding attorney fees and expenses. To be sure, the majority of the fees that EZPZ contends should not be award relate to the '903 Patent. If Mr. Williams and Mrs. Laurain were candid and acted in good faith before the PTO, then the examiner could have reached a different conclusion, and the '903 Patent would not have existed. Instead, "this case was … conducted by a party which, from the filing of the first application in the PTO through this

[litigation], has dwelt in the darkness of deceit and distortion." *Mathis*, 857 F.2d at 757 (affirming award of expenses under § 285). As the Supreme Court explained, "[c]ompensation for a wrong, after all, tracks the loss resulting from that wrong." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108, 137 S. Ct. 1178, 1186 (2017).

Along these lines, EZPZ's unclean hands commenced near the inception of the case in connection with EZPZ's failure to properly respond to discovery requesting other patent applications and Laurain's prior art searches. Thus, "the development of LNC's litigation strategy" was affected from the outset such that all legal efforts beyond that were infected by EZPZ's unclean hands. *Luv N' Care*, 98 F.4th at 1095. Indeed, the court of appeals expressly stated "the record supports a finding of an 'immediate and necessary' connection between EZPZ's misconduct and its '903 patent infringement claim." *Id.* at 1096. There is no question that Mrs. Laurain's "evasive and false testimony during depositions and at trial further deprived LNC of material information for consideration by its experts, for use in connection with dispositive motion practice, and as part of both its declaratory judgment claim and its defenses against EZPZ's counterclaims." *Id.* EZPZ's actions are the exact opposite of defending itself in good faith. [Doc. No. 964 at 38].

Indeed, EZPZ's claim of "scorched-earth" discovery tactics is ironic, given that LNC was forced to pursue extensive discovery from third parties given EZPZ's failure to produce highly relevant documents. For example, Mrs. Laurain's prior art searches. As discussed, LNC only obtained Mrs. Laurain's first of many patent searches after the federal court in Colorado ordered Williams Intellectual Property to produce it. *Luv N' Care, Ltd. v. Williams Intellectual Prop.*, Civil Action No. 18-mc-00212-WJM-KLM, 2019 U.S. Dist. LEXIS 98960 (D. Colo. June 12, 2019). LNC was never able to obtain documents from Mrs. Laurain's husband's company (Blue Basin Medical, LLC), and obtained a contempt judgment from a Nevada federal court, which found both

Mr. Laurain, personally, and his company liable in the amount of $29,891.00. *Luv N' Care Ltd. v. Laurain*, No. 2:18-cv-02224-JAD-EJY, 2019 U.S. Dist. LEXIS 154761, at *23 (D. Nev. Sep. 10, 2019).

EZPZ now argues that it has "limited financial resources" and LNC has "enormous financial resources." [Doc. No. 964 at 40]. EZPZ, however, offers no evidence in support of its "limited financial resources" assertion. Moreover, EZPZ's arguments are at odds with the testimony at trial stating that at one time the evaluation of the company was "25 million." (Doc. No. 836 at 1505:24-25). In addition, EZPZ completely ignores the "substantial benefit conferred to the public" factor, because it weighs heavily in favor of awarding costs to LNC. *Pacheco*, 448 F.3d at 794. LNC's efforts to invalidate or render unenforceable the '903 Patent will permit LNC and other competitors to freely and fairly participate in the market. This will confer an overall benefit to the purchasing public as a result of a competitive as opposed to monopolistic market. Accordingly, the Court will now turn to determining the amount of fee and expenses that should be awarded.

An award of fees under Section 285 is typically calculated by "multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case," *i.e.*, the 'lodestar' method. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). The Court may, in its discretion, exclude any hours that are excessive, redundant, or otherwise unnecessary and may reduce the hourly rate if it deems it excessive. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). A rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *SUFI Network Servs., Inc. v. United States*, 785 F.3d 585, 594 (Fed. Cir. 2015) (citation omitted). In all, "[t]here is no precise rule or formula for making

these determinations," *Eckerhart*, 461 U.S. at 436, and a court may exercise its discretion to adjust the figure based on a variety of factors, including the novelty and difficulty of the issues and the degree of the success achieved, *see Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (enumerating factors).

In light of these principles and pursuant to the Court's finding that this case is exceptional, the Court awards LNC reasonable attorney fees incurred in this litigation from inception through post-appeal. EZPZ does not object to the rate charged for each attorney listed in LNC's Motion. [Doc. No. 912 at 60]. Thus, the only remaining tasks is to determine whether the number of hours and the amount requested by LNC is reasonable. Specifically, LNC request the following fees:

| Description | Fees |
|---|---|
| Liskow | $5,121,809.24 |
| LNC (In-house) | $984,270.82 |
| Lewis Roca | $161,101.71 |
| Liskow (supplemental) | $790,559.34 |
| LNC (In-house) (supplemental) | $162,158.64 |
| **Total Fees** | **$7,219,899.75** |

[Doc. No. 951 at 1]. The Court has reviewed the tasks performed by LNC's counsel, which is documented in over 2,200 pages of invoices. *See* Doc. Nos. 870, 871, 872, 877, 924, 951. The Court is persuaded that most of these tasks were reasonable and necessary to this litigation. However, the Court finds that the number of hours expended on these tasks is unreasonable. As one indication of reasonable fees, the Court has consulted the 2023 American Intellectual Property Law Association (AIPLA) Economic Survey, which is routinely relied upon in intellectual property cases to determine the reasonableness of fee requests. *See, e.g., T&M Inventions, LLC v.*

*Acuity Brands Lighting, Inc.*, No. 14-C-947, 2016 U.S. Dist. LEXIS 178767, at *2 (E.D. Wis. Dec. 27, 2016). Specifically, the AIPLA survey "examines the economic aspects of intellectual property law practice, including individual billing rates and typical charges for representative IP law services." Accordingly, based on a review of the billing records in this case, the Court in its discretion believes $2,526,964.91 to be an appropriate and just award of exceptional case fees under Section 285. As calculated, this is 35% of the requested fees. The Court does not award LNC all of the requested fees because at some point a party must be mindful of the use and conservation of judicial and party resources and cannot continue to incur fees far in excess of any proportional relationship to the amount at stake. Accordingly, this portion of LNC's fees are awarded to LNC and are imposed upon and payable by EZPZ.

Furthermore, the Court has the inherent power to sanction conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The inherent power allows the Court to address "a full range of litigation abuses." *Id.* at 46. This includes imposing sanctions in the form of reasonable expert fees in excess of what is provided for by statute. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (citations omitted). LNC argues that is entitled to recover its expert fees and expenses paid to Marc Hubbard, LNC's patent prosecution expert, and Nancy Albers, LNC's marketing and survey expert. [Doc. No. 877-1 at 44]. LNC notes that both expert testified at the bench trial and that their testimony was relied upon by the Court in rendering its recent rulings. [Doc. No. 877-1 at 44].

| Description | Expenses |
|---|---|
| Hubbard (expert) | $270,997.54 |
| Albers (expert) | $52,625.15 |
| **Total Fees** | **$323,622.69** |

[Doc. No. 951 at 1]. For the reason discussed above, the Court finds that this case is "very exceptional," that the misconduct was "egregious," and that to not award these fees would be "grossly unjust." *Amsted Indust. Inc. v. Buckley Steel Casings Co.*, 23 F.3d 374 (Fed. Cir. 1994)). However, the Court will only award reasonable expert fees. Accordingly, the Court in its discretion believes $210,354.75 to be an appropriate and just award of expert fees to address the full range of litigation abuses. As calculated, this is 65% of the requested expert expenses. Again, the Court does not award LNC all of the requested expert fees because at some point a party must be mindful of the use and conservation of judicial and party resources and cannot continue to incur fees far in excess of any proportional relationship to the amount at stake. Accordingly, this portion of LNC's expert expenses are awarded to LNC and are imposed upon and payable by EZPZ.

LNC also argues that the Court should hold Mrs. Laurain personally liable for the attorneys' fees, expenses, and costs awarded to LNC. LNC argues that EZPZ now claims that it is a small business with "limited financial resources." [Doc. No. 970 at 25] (citing Doc. No. 964 at 40). LNC further argues that it is undisputed that Mrs. Laurain is the sole owner of EZPZ. [Doc. No. 970 at 27]. LNC also contends that Mrs. Laurain is the driving force and dominant cause of the unclean hands, litigation misconduct, and inequitable conduct that make this case exceptional. *Id.* at 27-29.

At this time, the Court declines to hold Mrs. Laurain personally liable for the attorneys' fees, expenses, and costs awarded to LNC. There is insufficient evidence that EZPZ will be unable to pay the fee award, and the record is not sufficient at this point to reach through the corporate entity to Mrs. Laurain. Fees will therefore be taxed only against EZPZ. That said, Mrs. Laurain future actions before the Court will be carefully reviewed, and at some point the Court may find it necessary to hold Mrs. Laurain joint and severally liable in this case.

Finally, the Court will not impose sanctions under 28 U.S.C. § 1927. The Court does not find that the actions of Attorney Jordan Bolton's rise to the level that he should be personally sanctioned. This would unnecessarily harm his livelihood. Accordingly, the Court will exercise restraint and not impose sanctions under 28 U.S.C. § 1927. However, the Court finds that Mr. Bolton went right up to the edge of sanctionable conduct, and reminds him that his duty to a client does not trump or relieve him of his duty of candor as an officer of the court.

## III.   CONCLUSION

For the foregoing reasons, LNC's "Notice of Application to Tax Costs" [Doc. No. 866] is **GRANTED-IN-PART and DENIED-IN-PART** as specifically set forth herein. The taxable costs against EZPZ and awarded to LNC is **$190,461.31.**

For the foregoing reasons, LNC's "Motion for Attorney's Fees and Expenses Pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927 and/or the Court's Inherent Power" [Doc. No. 877] is **GRANTED-IN-PART and DENIED-IN-PART** as specifically set forth herein. The Court awards LNC attorneys' fees and expenses in the total amount of **$2,737,319.66.**

For the foregoing reasons, EZPZ's "Motion for Attorney's Fees Pursuant to La. Rev. Stat. § 51:1409 and 15 U.S.C. § 1117(a)" [Doc. No. 874] is **DENIED.**

MONROE, LOUISIANA, this 26th day of February 2025.

Terry A. Doughty
United States District Judge